products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**&#174.

EXHIBIT

3, part 4

25

**Lincoln/Fields 1904**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, October 8, 2024 3:49 PM |
| **To:** | entrprserip |
| **Subject:** | FW: D FIELDS 1230051807 |
| **Attachments:** | D FIELDS 1230051807 FINAL REPORT.pdf |

---

**From:** Morfeld, Joann <Joann.Morfeld@lfg.com>
**Sent:** Tuesday, October 8, 2024 3:48:54 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Cc:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** D FIELDS 1230051807

Please index as:

Business Area: GPDISCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT

**Joann Morfeld**
File support, Administrative Services

**Lincoln Financial**
LincolnFinancial.com

800-423-2765 Office

*Notice of Confidentiality: **This email and its attachments may contain information that is privileged, confidential, proprietary, or subject to copyright belonging to the Lincoln National Corporation or its companies. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. Additionally, please notify the sender immediately and permanently delete any copies of this email and destroy any printouts.***

**ClaimsHOAdmin**

**From:** Disability Claims
**Sent:** Thursday, September 26, 2024 10:13 AM
**To:** entrprserip
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)
**Attachments:** 20240925 165407.jpg; 20240925 165355.jpg

---

**From:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Sent:** Thursday, September 26, 2024 10:12:29 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

Please add to claim 1230051807.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD
855 818 2883 x 7157 Office

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, September 25, 2024 3:56 PM
**To:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** Re: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Here you are. Thank you for your help.

On Wed, Sep 25, 2024, 1:30 PM Charles Zimmer <[Charles.Zimmer@lfg.com](mailto:Charles.Zimmer@lfg.com)> wrote:

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group®

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230051807

Please review the attached letter and/or document(s) regarding the Claim #1230051807 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Charles Zimmer**
**Sr. Claims Examiner, LTD 2**
The Lincoln National Life Insurance Company
8801 Indian Hills Dr
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 855-818-2883 x7157
Fax: 402 951-8544
Email: Charles.Zimmer@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**&#174.

**From:** Disability Claims
**Sent:** Wednesday, September 25, 2024 4:56 PM
**To:** entrprserip
**Subject:** FW: Return of TEE Form
**Attachments:** 20240925_165407.jpg; 20240925_165355.jpg

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, September 25, 2024 4:55:32 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** Return of TEE Form

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

I am returning the form Charles Zimmer requested.  Thank you.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, September 17, 2024 2:35 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE) |
| **Attachments:** | 20240912_063610.jpg |

---

**From:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Sent:** Tuesday, September 17, 2024 2:34:59 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

Please ad to claim 1230051807.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD
855 818 2883 x 7157 Office

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Friday, September 13, 2024 4:12 PM
**To:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** Fwd: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

---------- Forwarded message ---------
From: **Melinda Fields** <melindafields1@gmail.com>
Date: Thu, Sep 12, 2024, 6:38 AM
Subject: Re: Lincoln Financial Group Information for Claim 1230051807 (SECURE)
To: Charles Zimmer <Charles.Zimmer@lfg.com>

I have attached David's proof of income for you. Has the Dr's sent everything you need from them?

On Fri, Aug 23, 2024, 1:20 PM Charles Zimmer <Charles.Zimmer@lfg.com> wrote:

This message was sent securely using Zix®

L communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230051807

Please review the attached letter and/or document(s) regarding the Claim #1230051807 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.


**Charles Zimmer**
**Sr. Claims Examiner, LTD 2**
LN10-Lincoln National Life Insurance Co.
8801 Indian Hills Dr
Omaha, NE 68114
Toll Free Phone: 1 800 423 2765
Phone: 855 818 2993 x7157
Fax: 402 951 9544
Email: Charles.Zimmer@lfg.com



Insurance products are issued by the insurance company affiliates of Lincoln Financial Group. The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation


You're In Charge®


Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix&#174.

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, September 12, 2024 3:50 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE) |
| **Attachments:** | 20240912_063610.jpg |

---

**From:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Sent:** Thursday, September 12, 2024 3:49:47 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims <disabilityclaims@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

Please add to claim 1230051807.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD
855 818 2883 x 7157 Office

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Thursday, September 12, 2024 5:39 AM
**To:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** Re: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

I have attached David's proof of income for you. Has the Dr's sent everything you need from them?

On Fri, Aug 23, 2024, 1:20 PM Charles Zimmer <Charles.Zimmer@lfg.com> wrote:

This message was sent securely using Zix

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230051807

Please review the attached letter and/or document(s) regarding the Claim #1230051807 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Charles Zimmer**
**Sr. Claims Examiner, LTD 2**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Dr
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 855-818-2883 x7157
Fax: 402 951-8544
Email: Charles.Zimmer@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**&#174.

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Friday, August 2, 2024 11:35 AM |
| **To:** | entrprserip |
| **Subject:** | FW: DAVID FIELDS- 1230051807 - LFG AUTH.pdf |
| **Attachments:** | DAVID FIELDS- 1230051807 - LFG AUTH.pdf |

---

**From:** Wingfield, Stephanie
**Sent:** Friday, August 2, 2024 11:33:08 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Roloff, Keshia
**Subject:** DAVID FIELDS- 1230051807 - LFG AUTH.pdf

Please upload the attached auth into AWD.
Thank you.
Steph

**Stephanie Wingfield**
Lead Medical Records Coordinator
Group Protections

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 Office
402-361-7250 Mobile

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Friday, July 19, 2024 11:21 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE) |
| **Attachments:** | 20240719 060657.jpg |

---

**From:** Zimmer, Charles
**Sent:** Friday, July 19, 2024 11:20:21 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

Please add to claim 1230051807.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD
855 818 2883 x 7157 Office

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Friday, July 19, 2024 5:08 AM
**To:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** Re: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

I hope this helps.

On Thu, Jul 18, 2024, 2:00 PM Charles Zimmer <Charles.Zimmer@lfg.com> wrote:

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230051807

Please review the attached letter and/or document(s) regarding the Claim #1230051807 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.


**Charles Zimmer**
**Sr. Claims Examiner, LTD 2**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills Dr
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 855-818-2883 x7157
Fax: 402 951-8544
Email: Charles.Zimmer@lfg.com



Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge®

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**&#174.

## ClaimsHOAdmin

**From:** Disability Claims
**Sent:** Tuesday, April 30, 2024 10:39 AM
**To:** entrprserip
**Subject:** FW: claim 1230051807
**Attachments:** JOB DESCRIPTION Driver.doc

---

**From:** Zimmer, Charles
**Sent:** Tuesday, April 30, 2024 10:39:16 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: claim 1230051807

Please add to claim 1230051807.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD
855 818 2883 x 7157 Office

---

**From:** Robin MacLellan <robin@easttniron.com>
**Sent:** Tuesday, April 30, 2024 9:19 AM
**To:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Subject:** RE: claim 1230051807

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

*Thanks,*
*Robin MacLellan*
*Accounting Manager*
*East TN Iron & Metal*
*423-235-0272*

---

**From:** Zimmer, Charles <Charles.Zimmer@lfg.com>
**Sent:** Monday, April 29, 2024 1:24 PM
**To:** Robin MacLellan <robin@easttniron.com>
**Subject:** claim 1230051807

**IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender Charles.Zimmer@lfg.com**

Please provide a written job description for Mr. David L Fields.

Thank you

**Charles Zimmer**
Sr. Claims Examiner, LTD 2
LTD

LincolnFinancial.com

855 818 2883 x 7157
Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln's products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

## ClaimsHOAdmin

**From:** Disability Claims
**Sent:** Thursday, March 7, 2024 8:53 AM
**To:** entrprserip
**Subject:** FW: DAVID FIELDS LTD 1230051807 (SECURE) GR LIFE 1230070518

---

**From:** Jones, Lori
**Sent:** Thursday, March 7, 2024 8:52:40 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Melinda Fields
**Cc:** Disability Claims; Olson, Heather L
**Subject:** RE: DAVID FIELDS LTD 1230051807 (SECURE) GR LIFE 1230070518

Hi Heather,

Could you please see the email from Melinda Fields for David Fields and respond to her questions regarding David's Life insurance?

Thank you.

**Lori Jones**
Social Security Specialist
Risk

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 ext 2787
Office

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, March 6, 2024 11:31 AM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Subject:** Re: DAVID FIELDS LTD 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good afternoon Lori,

I wanted to ask if it is possible for Lincoln to take a look back at David's life insurance policy? In the letters we received he was not eligible because he was no longer working for his company and he was not deemed by Lincoln Financial as totally disabled. Obviously he was and he is nearly impossible to insure due to his medical condition. Would they consider going back and making his policy retroactive and we catch the payments up since he was totally disabled and it was not our mistake?

Thanks in advance for your help.

On Thu, Feb 15, 2024, 8:45 AM Jones, Lori <Lori.Jones@lfg.com> wrote:

This message was sent securely using Zix®

Good morning, Melinda,

Thank you for sending in David's Social Security Disability Notice of Award letter. I have processed the notice of award letter. I am forwarding to the Financial Review Service Team to review for any overpayment and someone from that team will reach out to you over the next 7-10 business days to advise you of any overpayment and new LTD benefit.

Thank you.

Lori


Lori Jones
Social Security Specialist
Risk

Lincoln Financial Group
LincolnFinancial.com

800-423-2765 ext 2787
Office

LincolnFinancial.com



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**


**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, February 14, 2024 3:40 PM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Subject:**

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This message was secured by Zix®.

**From:** Disability Claims
**Sent:** Thursday, February 15, 2024 8:46 AM
**To:** entrprserip
**Subject:** FW: DAVID FIELDS LTD 1230051807
**Attachments:** 20240214_163721.jpg; 20240214_163648.jpg; 20240214_163714.jpg; 20240214_163656.jpg; 20240214_163702.jpg; 20240214_163708.jpg

---

**From:** Jones, Lori
**Sent:** Thursday, February 15, 2024 8:45:28 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: DAVID FIELDS LTD 1230051807

completed

**Lori Jones**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, February 14, 2024 3:40 PM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Subject:**

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

## ClaimsHOAdmin

**From:** Disability Claims
**Sent:** Thursday, February 15, 2024 8:45 AM
**To:** entrprserip
**Subject:** FW: DAVID FIELDS LTD 1230051807 (SECURE)

---

**From:** Jones, Lori
**Sent:** Thursday, February 15, 2024 8:44:54 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Melinda Fields
**Cc:** Disability Claims
**Subject:** RE: DAVID FIELDS LTD 1230051807 (SECURE)

Good morning, Melinda,

Thank you for sending in David's Social Security Disability Notice of Award letter. I have processed the notice of award letter. I am forwarding to the Financial Review Service Team to review for any overpayment and someone from that team will reach out to you over the next 7-10 business days to advise you of any overpayment and new LTD benefit.

Thank you.

Lori


**Lori Jones**
Social Security Specialist
Risk

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 ext 2787
Office

LincolnFinancial.com



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**


---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Wednesday, February 14, 2024 3:40 PM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Subject:**

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Thursday, January 18, 2024 8:35 AM |
| **To:** | entrprserip |
| **Subject:** | FW: DAVID FIELDS LTD 1230051807 (SECURE) |

---

**From:** Jones, Lori
**Sent:** Thursday, January 18, 2024 8:35:23 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Pam Jenkins
**Cc:** Disability Claims
**Subject:** DAVID FIELDS LTD 1230051807 (SECURE)

Good morning, Pam,

Please provide our office with proof of filing for Mr. Fields stating the date the initial claim application was filed by February 6, 2024.

Thank you.

Lori


**Lori Jones**
Social Security Specialist
Risk

**Lincoln Financial Group**
LincolnFinancial.com

800-423-2765 ext 2787
Office

LincolnFinancial.com



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**


---

**From:** Pam Jenkins (via Google Docs) <plj1969@gmail.com>
**Sent:** Wednesday, January 17, 2024 2:20 PM
**To:** Jones, Lori <Lori.Jones@lfg.com>
**Subject:** Letter of Representation

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

# Pam Jenkins attached a document

Pam Jenkins (plj1969@gmail.com) has attached the following document:

David Fields

Letter of Representation

*Snapshot of the item below:*

January 12, 2024
Re: David Fields

To whom it may concern:
The above named individual has a disability claim pending with the Social Security Administration.
That claim is pending with the Department of Disability Determination at the state level.
I am currently representing this individual as a non attorney disability representative.
If I can be of further assistance, please contact me at your convenience.
Respectfully,
Pamela L. Jenkins
423.754.3849 Voice
423.272.6878 fax

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because plj1969@gmail.com shared a document with you from Google Docs.

Google™

## ClaimsHOAdmin

**From:** Disability Claims
**Sent:** Wednesday, August 30, 2023 4:20 PM
**To:** entrprserip
**Subject:** FW: DAVID FIELDS 1230051807
**Attachments:** 79396285.pdf

---

**From:** Hoffman, Virginia
**Sent:** Wednesday, August 30, 2023 4:18:08 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Nixon, Janice A
**Subject:** DAVID FIELDS 1230051807

Please upload the attached records into AWD.
Thank you.
Virginia

**Virginia Hoffman**
Medical Records Coordinator

800-423-2765 Office
402-361-7554 Mobile

**Lincoln Financial Group**
LincolnFinancial.com

**ClaimsHOAdmin**

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, August 8, 2023 8:58 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE) |
| **Attachments:** | LFG(5).pdf |

---

**From:** Nixon, Janice A
**Sent:** Tuesday, August 8, 2023 8:57:44 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Subject:** FW: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

---

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Monday, August 7, 2023 4:52 PM
**To:** Nixon, Janice A <Janice.Nixon@lfg.com>
**Subject:** Re: Lincoln Financial Group Information for Claim 1230051807 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

On Mon, Aug 7, 2023, 12:44 PM Janice Nixon <Janice.Nixon@lfg.com> wrote:

This message was sent securely using Zix

E-communication from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230051807

Please review the attached letter and/or document(s) regarding the Claim #1230051807 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Janice Nixon**
**Associate, LTD Claims**

LN10-Lincoln National Life Insurance Co
400 Interstate North Pkwy SE Suite 1400
Atlanta, GA 30339
Toll Free Phone: 1-800-423-2765
Phone: 678-295-3161
Fax: 402-938-7936
Email: Janice.Nixon@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix**&#174.

# STD CLAIM PROFILE

**Date:** 5/21/2026 **LFG** **Claim #:** 1230012611

| | | | | | |
|---|---|---|---|---|---|
| **Insurer:** | The Lincoln National Life Insurance Company | **Posted:** | 2/10/2023 | **Location:** | ATLANTA |
| **Policy:** | 00001020986200000 - | **Status:** | CLOSED | **User ID:** | JANIXON |
| | East Tennessee Iron & Metal Works, Inc. | **Business:** | TRUE STD | | |

**Close Date:** 2/16/2024 **Close Reason:** Maximum Benefit Reached (T65, RBD, etc.)

**Claimant Information**

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | DAVID L FIELDS | **Phone:** | ( | **DOB:** | |
| **SSN:** | | **Sex:** | M | **Hire:** | 3/14/2005 |
| **Address:** | | **Ins Eff:** | 12/1/2015 | | |
| | USA | **Occ:** | TRUCK DRIVER, HEAVY (ar**DOT**lustry) | | 905663014 |
| | | **Salary:** | $64,157.77 | **Period:** | Annual |

**Claim Information**

**LTD Pol:** 1624932

**Special Provisions:** **Min Ben:** $74.00

**Ben:** 60% / $1,800.00 **Flat:** **Labor:** 3 **Age:** 45 **Elim Per:** 14 day

**DLW:** 2/7/2023 **DOD:** 2/8/2023 **S/A:** S **W/R:** N **Ben Amt:** $740.00

**Diagnosis** **Pri:** I50.30 Unspecified diastolic (congestive) heart **Max Weeks:** 24

**Sec:** I10 Essential (primary) hypertension **Max Days:** 0

**Recovery Date:** 8/9/2023

**Benefit Information**

**Date Ben Begin:** 2/22/2023 **Weeks Paid:** 24

**Policy Information**

**SS Offset:** Primary & Family **Prex:** NONE

**Offset Information**

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| FED TX | PROCESSED | | | $10.00 | |
| SS EMP | PROCESSED | 8/1/2023 | | $537.69 | $0.00 |

**Alert Information**

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|

**Action Plan**

# Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | DAVID FIELDS | | | **Occupation:** | TRUCK DRIVER, HEAVY (any industry) | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 2/10/2023 | **Months Dis:** | 171 |
| **Claim #:** | 1230012611 | **DOD:** | 2/8/2023 | **Ben:** | $740.00 | **Months Pd:** | 24 |
| **Coverage:** | STD | **Status:** | CLOSED | **Close Date:** | 2/16/2024 | **Assignee:** | JANIXON |
| **Policy Holder:** | East Tennessee Iron & Metal Works, Inc. | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Maximum Benefit Reached (T65, RBD, etc.) | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 2/12/2023 | Documents/Mail<br>2023-02-10-16.02.23.471840O01 | 1 | Fax | Completed | REDSA2 |
| 2/12/2023 | Documents/Mail<br>2023-02-10-16.02.23.566840O01 | 3 | Incoming Correspondence | Completed | REDSA2 |
| 2/12/2023 | Documents/Mail<br>2023-02-10-16.02.23.501840O01 | 2 | Claim Form - EE, ER, APS | Completed | REDSA2 |
| 2/12/2023 12:40:12 PM | Claim Tasks<br>DOT/Occupation w as Unknow n | 1 | Verify Occupation | Requested | REDSA2 |
| 2/12/2023 12:40:13 PM | Claim Tasks<br>Verify Offsets | 2 | Verify Offsets | Requested | REDSA2 |
| 2/12/2023 12:40:13 PM | Claim Tasks<br>The Date Last Worked Is Prior To The Effective Date | 3 | DLW Before Effective Date | Requested | REDSA2 |
| 2/13/2023 | Documents/Mail<br>2023-02-13-09.28.34.619960O01 | 4 | Claim Form - EE, ER, APS | Completed | REDSA2 |
| 2/14/2023 | Documents/Mail<br>2023-02-14-09.20.05.301960O01 | 8 | Medical Records | Completed | REDSA2 |
| 2/14/2023 | Documents/Mail<br>2023-02-14-09.20.05.172960O01 | 5 | Fax | Completed | REDSA2 |
| 2/14/2023 | Documents/Mail<br>2023-02-14-09.20.05.225960O01 | 6 | Claim Form - EE, ER, APS | Completed | REDSA2 |
| 2/14/2023 | Documents/Mail<br>2023-02-14-09.20.05.259960O01 | 7 | Claim Form - Authorization | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-09.00.08.454860O01 | 9 | Fax | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-09.00.08.583860O01 | 12 | Medical Records | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-09.00.08.502860O01 | 10 | Claim Form - EE, ER, APS | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-12.26.31.832860O01 | 14 | Medical Records | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-09.00.08.530860O01 | 11 | Claim Form - Authorization | Completed | REDSA2 |
| 2/17/2023 | Documents/Mail<br>2023-02-14-12.26.16.032860O01 | 13 | Fax | Completed | REDSA2 |
| 2/17/2023 4:17:43 PM | Documents/Mail<br>2023-02-17-15.27.38.346860O01 | 15 | Fax | Received | REDSA2 |
| 2/17/2023 4:17:45 PM | Documents/Mail<br>2023-02-17-15.27.38.382860O01 | 16 | Claim Form - EE, ER, APS | Received | REDSA2 |
| 2/17/2023 4:17:46 PM | Documents/Mail<br>2023-02-17-15.27.38.430860O01 | 17 | Medical Records | Received | REDSA2 |
| 2/21/2023 | Documents/Mail<br>STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | 19 | STD Approval Letter Generic | Completed | REDSA2 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/21/2023 | Documents/Mail | 18 | STD Approval Letter Generic | Completed | REDSA2 |
| | STD Approval Letter GenericAttachments:Translation servicesGroup Continuance of Disability | | | | |
| 2/21/2023 | Documents/Mail | 16 | Claim Form - EE, ER, APS | Completed | REDSA2 |
| | 2023-02-17-15.27.38.382860O01 | | | | |
| 2/21/2023 | Documents/Mail | 15 | Fax | Completed | REDSA2 |
| | 2023-02-17-15.27.38.346860O01 | | | | |
| 2/21/2023 | Documents/Mail | 17 | Medical Records | Completed | REDSA2 |
| | 2023-02-17-15.27.38.430860O01 | | | | |
| 2/21/2023 | Claim Tasks | 2 | Verify Offsets | Completed | REDSA2 |
| | Verify Offsets | | | | |
| 2/21/2023 | Claim Tasks | 1 | Verify Occupation | Completed | REDSA2 |
| | DOT/Occupation w as Unknow n | | | | |
| 2/21/2023 | Claim Tasks | 3 | DLW Before Effective Date | Completed | REDSA2 |
| | The Date Last Worked Is Prior To The Effective Date | | | | |
| 2/21/2023 | Telephone (IN) | 1 | DAVID L. FIELDS | Completed | REDSA2 |

Spoke w ith David

Confirm Demos: Correct
Correspondence by email/mail: Correct
Confirm Direct Deposit Information:
Occupation: Truck Driver
DLW: 02/ 07/2023
DOD: 02/08/2023
Diagnosis (DX): CHF
Treatment: Heart Cath & w ent w ell, has w eak heart muscle
He's in a life vest for 90 days as of 02/18/2023 and meds.

Advised of approval and explained DD - REDSA2 - Feb 21, 2023 11:14:32 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/21/2023 11:13:40 AM | Summary/Assessment/Pa | 1 | h | Requested | JANIXON |

Summary Notes

Assessment Notes

Path Notes
Summary
Claimant age / sex: 45/MOccupation title / level: Driver
DLW: 02/07/2023DOD : 02/08/2023

Eligibility Assessment
List or Self-Billed: List BilledClass: 02 All Other Full-Time EmployeesEE/ER Contribution: 100% ER Pre-Tax
FIT: 10%Benefit Amount: 60% of basic w eekly earnings; subject to a $1800 maximumElim: 14/14
Pre-Ex: NO1st Day Hospitalization: NODOH: 03/14/2005STD EFF: 12/01/2015LTD EFF: 12/01/2015
Salary/Frequency: $64,157.77Hours Scheduled: 40Salary Continuance : NO

Medical Assessment:
Ht: 72 inWt: 296.8 lbsDX: CHF With EF 10-15% & Hypertension
Initial TX: 04/19/2010DOD: 02/08/2023LOV: 08/29/2022NOV: 02/27/2023
Subjective symptoms: SOB, sw elling, cough, and fatigue
Objective symptoms: Severe global left ventricular dysfunction w ith an EF of 10-15% & Hypertension
R & L: They do not assess
TX: Heart Echo 02/09/2022 & Heart Cath 02/17/2023
ERTW per physician: None Given
APS Dated 02/10/2023
Marke J Dalle-Ave
4307 HW 66 S
Rogerville TN 37857

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Phone: 423-921-1624
Fax: 423-921-1677
Referred to Cardiology

APS dated 02/09/2023
DX: I50.9 Heart Failure & I10 Hypertension
Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Barry I Michelson, MD
10800 Parkside Dr Ste 331
Knoxville TN 37934
Phone: 865-392-3400
Fax: 865-392-3449

Per EE as of 02/18/2023 he is in a life vest for 90 days and using meds.

Path:
Current Claim Status: Approved - It is reasonable to approve claim to 05/19/2023 w hich is 90 days after he started using the life vest. Will require updated MR/OVN giving specific R&L's as w ell as TX update to consider benefits past that date.
- REDSA2 - Feb 21, 2023 11:13:58 am

Udpated Assessment
Spoke w ith EE
How is he doing? Feeling about 40-50% Better than he did in feb
NOV: 05/08/2023 goes in for ECHO to be
MRI of Heart 06/15/2023
Any recent Hospitalizations? NO
Complications NO.
He is in a life vest til 05/18/2023

Path remains approved to 05/19/2023 w ill need an update after that time,. - REDSA2 - Apr 24, 2023 02:35:10 pm

Assessment - Rec'd 05/08/2023 ECHO Report

Path Remains approved to 05/19/2023 Will require medical documentation (OVN, MR, etc.) that provide update on condition, treatment and restrictions and limitations to review for benefits past that date. - REDSA2 - May 18, 2023 11:53:19 am

Updated Assessment
Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023

Updated Path - Approved - it is reasonable to approve claim to STD Max 08/09/2023. Will send claim for LTD roll over for review of continuation of benefits.
- REDSA2 - Jun 01, 2023 09:31:02 am

UPDATED PATH
Updated APS recd, indicating L ventricular function less than 35%, on maximum tolerable therapy. Next steps pending MRI of heart. - EMFSM3 - Jun 27, 2023 02:46:04 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/21/2023 11:14:42 AM | Claim Tasks | 4 | Call Claimant | Requested | REDSA2 |

Check in w ith EE - REDSA2 - Feb 21, 2023 11:15:07 am

EE has called in and given update - REDSA2 - Apr 24, 2023 02:30:26 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/3/2023 9:27:26 PM | Payments | | DEPOSIT 2/22/2023 - 3/8/2023 | INITIAL | REDSA2 |
| 4/20/2023 | Telephone (IN) | 4 | Robin Maclellan | Completed | REDSA2 |

robin maclellan, plan admin
david fields
1230012611

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | DOB<br>ER east tennessee iron and metal<br><br>GR calling to speak w ith CE, offered assistance and she stated she found the info needed | | | | |
| 4/20/2023 | Telephone (IN) | 3 | ROBIN MCCULLEN | Completed | REDSA2 |
| | Name: ROBIN MCCULLEN<br>CB#:423-921-0207<br>Insured/GA/BR: admin<br>Group ID: ETIM<br>Company Name:<br>SSN:<br>Policy/Acct/Claim#: 1230012611<br>Remarks:checking status of claim, usually get a letter on new claims, member needs assistance w ith claim transferred to disability<br>Transferred on 4/20/2023 9:13:16 AM by toeco8 -<br><br>IS: David Fields<br>Advised that approval email w as sent to GR on 2/21/23<br>Gave name of CE. | | | | |
| 4/20/2023 | Telephone (IN) | 2 | Robin MacLellan | Completed | REDSA2 |
| | Name: Robin MacLellan<br>CB#:423-921-0207<br>Insured/GA/BR: admin<br>Group ID: ETIM<br>Company Name:<br>SSN:<br>Policy/Acct/Claim#: 1230012611<br>Remarks:checking status of claim, usually get a letter on new claims, member needs assistance w ith claim transferred to disability | | | | |
| 4/24/2023 | Claim Tasks | 4 | Call Claimant | Completed | REDSA2 |
| | Check in w ith EE - REDSA2 - Feb 21, 2023 11:15:07 am<br><br><br>EE has called in and given update - REDSA2 - Apr 24, 2023 02:30:26 pm | | | | |
| 4/24/2023 | Telephone (OUT) | 5 | DAVID L. FIELDS | Completed | REDSA2 |
| | Spoke w ith David<br><br>How is he doing? Feeling about 40-50% Better than he did in feb<br>NOV: 05/08/2023 goes in for ECHO to be<br>MRI of Heart 06/15/2023<br>Any recent Hospitalizations? NO<br>Complications NO.<br>He is in a life vest til 05/18/2023<br><br>- REDSA2 - Apr 24, 2023 02:34:36 pm | | | | |
| 4/25/2023 9:56:03 AM | Documents/Mail | 20 | Medical Records | Received | REDSA2 |
| | 2023-04-21-14.20.41.639600O01 | | | | |
| 4/26/2023 | Telephone (IN) | 6 | Cindy Pitman | Completed | REDSA2 |
| | Name Cindy Pitman RN from AP office<br>CB# 8653923415<br>DAVID L FIELDS<br><br><br>Nurse from doctor office called to make sure w e got the MR she sent in MR are in file | | | | |
| 5/4/2023 | Documents/Mail | 20 | Medical Records | Completed | REDSA2 |
| | 2023-04-21-14.20.41.639600O01 | | | | |

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/12/2023 11:52:57 AM | Documents/Mail | 21 | Medical Records | Received | REDSA2 |
| | 2023-05-11-11.03.49.972580O01 | | | | |
| 5/12/2023 9:05:04 PM | Status | | Disability Duration Guidelines | CLOSED | BRMCLSDIRY |
| 5/18/2023 | Documents/Mail | 21 | Medical Records | Completed | REDSA2 |
| | 2023-05-11-11.03.49.972580O01 | | | | |
| 5/24/2023 | Telephone (OUT) | 7 | DAVID L. FIELDS | Completed | REDSA2 |
| | Returned call to David<br><br>Advised rec'd echo results but no recommendation of RTW or OOW<br><br>neeed update on condtion, TX & R&L to review for further benefits - REDSA2 - May 24, 2023 09:55:27 am | | | | |
| 5/26/2023 8:12:27 AM | Documents/Mail | 22 | Medical Records | Received | REDSA2 |
| | 2023-05-25-14.09.40.828660O01 | | | | |
| 5/30/2023 | Telephone (IN) | 8 | DAVID L FIELDS | Completed | REDSA2 |
| | David fields<br><br>1230012611<br>east TN iron and metal<br><br>Mr on 05/26/2023<br>5-7bus days to review | | | | |
| 6/1/2023 | Documents/Mail | 23 | STD Extension Letter | Completed | REDSA2 |
| | STD Extension Letter | | | | |
| 6/1/2023 | Documents/Mail | 24 | STD Extension Letter | Completed | REDSA2 |
| | STD Extension Letter | | | | |
| 6/1/2023 | Documents/Mail | 22 | Medical Records | Completed | REDSA2 |
| | 2023-05-25-14.09.40.828660O01 | | | | |
| 6/1/2023 9:31:56 AM | Status | | | REOPENED | REDSA2 |
| 6/1/2023 9:44:42 AM | Claim Tasks | 5 | LINKS Review | Requested | JANIXON |
| | DOD2/8/2023<br>LTD EP180<br>STD APPROVED TO: 8/9/2023<br>STD MBD: 8/9/2023<br>LTD BCD:8/7/2023<br>LTD EFF:12/1/2015<br>RGO:Indianapolis<br>SUMMARY /CURRENT STATUS/UPDATE:<br>Claimant age / sex: 45/MOccupation title / level: Driver<br>DLW: 02/07/2023DOD : 02/08/2023<br><br>Medical Assessment:<br>Ht: 72 inWt: 296.8 lbsDX: CHF With EF 10-15% & Hypertension<br>Initial TX: 04/19/2010DOD: 02/08/2023LOV: 08/29/2022NOV: 02/27/2023<br>Subjective symptoms: SOB, swelling, cough, and fatigue<br>Objective symptoms: Severe global left ventricular dysfunction with an EF of 10-15% & Hypertension<br>R & L: They do not assess<br>TX: Heart Echo 02/09/2022 & Heart Cath 02/17/2023<br>ERTW per physician: None Given<br>APS Dated 02/10/2023<br>Marke J Dalle-Ave<br>4307 HW 66 S<br>Rogerville TN 37857<br>Phone: 423-921-1624<br>Fax: 423-921-1677<br>Referred to Cardiology | | | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

APS dated 02/09/2023
DX: I50.9 Heart Failure & I10 Hypertension
Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Barry I Michelson, MD
10800 Parkside Dr Ste 331
Knoxville TN 37934
Phone: 865-392-3400
Fax: 865-392-3449

Per EE as of 02/18/2023 he is in a life vest for 90 days and using meds.

Path:
Current Claim Status: Approved - It is reasonable to approve claim to 05/19/2023 w hich is 90 days after he started using the life vest. Will require updated MR/OVN giving specific R&L's as w ell as TX update to consider benefits past that date.
 - REDSA2 - Feb 21, 2023 11:13:58 am

Udpated Assessment
Spoke w ith EE
How is he doing? Feeling about 40-50% Better than he did in feb
NOV: 05/08/2023 goes in for ECHO to be
MRI of Heart 06/15/2023
Any recent Hospitalizations? NO
Complications NO.
He is in a life vest til 05/18/2023

Path remains approved to 05/19/2023 w ill need an update after that time,. - REDSA2 - Apr 24, 2023 02:35:10 pm

Assessment - Rec'd 05/08/2023 ECHO Report

Path Remains approved to 05/19/2023 Will require medical documentation (OVN, MR, etc.) that provide update on condition, treatment and restrictions and limitations to review for benefits past that date. - REDSA2 - May 18, 2023 11:53:19 am

Updated Assessment
Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023

Updated Path - Approved - it is reasonable to approve claim to STD Max 08/09/2023. Will send claim for LTD roll over for review of continuation of benefits.
 - REDSA2 - Jun 01, 2023 09:31:02 am

 - REDSA2 - Jun 01, 2023 09:58:28 am

agree w / roll - RXBOGGE - Jun 02, 2023 09:59:27 am

LTD CLAIM CREATED AND ASSIGNED TO JANIXON - LMLOBDO - Jun 29, 2023 10:41:33 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/2/2023 2:23:57 PM | Claim Tasks | 6 | Set Final Periodic Payment | Requested | JANIXON |
| 6/23/2023 4:47:53 PM | Documents/Mail<br>2023-06-22-14.42.34.716120O01 | 25 | Fax | Received | EMFSM3 |
| 6/23/2023 4:47:55 PM | Documents/Mail<br>2023-06-22-14.42.34.780120O01 | 26 | Claim Form - EE, ER, APS | Received | EMFSM3 |
| 6/23/2023 4:47:55 PM | Documents/Mail<br>2023-06-22-14.42.34.841120O01 | 27 | Claim Form - Authorization | Received | EMFSM3 |
| 6/23/2023 4:47:56 PM | Documents/Mail<br>2023-06-22-14.42.34.871120O01 | 28 | Medical Records | Received | EMFSM3 |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/27/2023 | Documents/Mail<br>2023-06-22-14.42.34.780120O01 | 26 | Claim Form - EE, ER, APS | Completed | EMFSM3 |
| 6/27/2023 | Documents/Mail<br>2023-06-22-14.42.34.841120O01 | 27 | Claim Form - Authorization | Completed | EMFSM3 |
| 6/27/2023 | Documents/Mail<br>2023-06-22-14.42.34.716120O01 | 25 | Fax | Completed | EMFSM3 |
| 6/27/2023 | Documents/Mail<br>2023-06-22-14.42.34.871120O01 | 28 | Medical Records | Completed | EMFSM3 |
| 6/30/2023 | Claim Tasks | 5 | LINKS Review | Completed | JANIXON |

DOD2/8/2023
LTD EP180
STD APPROVED TO: 8/9/2023
STD MBD: 8/9/2023
LTD BCD:8/7/2023
LTD EFF:12/1/2015
RGO:Indianapolis
SUMMARY /CURRENT STATUS/UPDATE:
Claimant age / sex: 45/MOccupation title / level: Driver
DLW: 02/07/2023DOD : 02/08/2023

Medical Assessment:
Ht: 72 inWt: 296.8 lbsDX: CHF With EF 10-15% & Hypertension
Initial TX: 04/19/2010DOD: 02/08/2023LOV: 08/29/2022NOV: 02/27/2023
Subjective symptoms: SOB, sw elling, cough, and fatigue
Objective symptoms: Severe global left ventricular dysfunction w ith an EF of 10-15% & Hypertension
R & L: They do not assess
TX: Heart Echo 02/09/2022 & Heart Cath 02/17/2023
ERTW per physician: None Given
APS Dated 02/10/2023
Marke J Dalle-Ave
4307 HW 66 S
Rogerville TN 37857
Phone: 423-921-1624
Fax: 423-921-1677
Referred to Cardiology

APS dated 02/09/2023
DX: I50.9 Heart Failure & I10 Hypertension
Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Barry I Michelson, MD
10800 Parkside Dr Ste 331
Knoxville TN 37934
Phone: 865-392-3400
Fax: 865-392-3449

Per EE as of 02/18/2023 he is in a life vest for 90 days and using meds.

Path:
Current Claim Status: Approved - It is reasonable to approve claim to 05/19/2023 w hich is 90 days after he started using the life vest. Will require updated MR/OVN giving specific R&L's as w ell as TX update to consider benefits past that date.
- REDSA2 - Feb 21, 2023 11:13:58 am

Udpated Assessment
Spoke w ith EE
How is he doing? Feeling about 40-50% Better than he did in feb
NOV: 05/08/2023 goes in for ECHO to be
MRI of Heart 06/15/2023
Any recent Hospitalizations? NO

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Complications NO.
He is in a life vest til 05/18/2023

Path remains approved to 05/19/2023 w ill need an update after that time,. - REDSA2 - Apr 24, 2023 02:35:10 pm

Assessment - Rec'd 05/08/2023 ECHO Report

Path Remains approved to 05/19/2023 Will require medical documentation (OVN, MR, etc.) that provide update on condition, treatment and restrictions and limitations to review for benefits past that date. - REDSA2 - May 18, 2023 11:53:19 am

Updated Assessment
Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023

Updated Path - Approved - it is reasonable to approve claim to STD Max 08/09/2023. Will send claim for LTD roll over for review of continuation of benefits.
- REDSA2 - Jun 01, 2023 09:31:02 am

- REDSA2 - Jun 01, 2023 09:58:28 am

agree w / roll - RXBOGGE - Jun 02, 2023 09:59:27 am

LTD CLAIM CREATED AND ASSIGNED TO JANIXON - LMLOBDO - Jun 29, 2023 10:41:33 am

| 7/10/2023 | Telephone (IN) | 9 | DAVID L FIELDS | Completed | JANIXON |
|---|---|---|---|---|---|

Name: david fields
CB#
Insured/GR/BR: insured
Group ID: ETIM
Company name:
SS#:
Policy/Acct/Claim#: 1230012611
Remarks: returning call from claims examiner thursday
transferred to disability

| 8/2/2023 | Claim Tasks | 6 | Set Final Periodic Payment | Completed | JANIXON |
|---|---|---|---|---|---|
| 8/7/2023 | Summary/Assessment/Pa | 1 | h | Completed | JANIXON |

Summary Notes

Assessment Notes

Path Notes
Summary
Claimant age / sex: 45/MOccupation title / level: Driver
DLW: 02/07/2023DOD : 02/08/2023

Eligibility Assessment
List or Self-Billed: List BilledClass: 02 All Other Full-Time EmployeesEE/ER Contribution: 100% ER Pre-Tax
FIT: 10%Benefit Amount: 60% of basic w eekly earnings; subject to a $1800 maximumElim: 14/14
Pre-Ex: NO1st Day Hospitalization: NODOH: 03/14/2005STD EFF: 12/01/2015LTD EFF: 12/01/2015
Salary/Frequency: $64,157.77Hours Scheduled: 40Salary Continuance : NO

Medical Assessment:
Ht: 72 inWt: 296.8 lbsDX: CHF With EF 10-15% & Hypertension
Initial TX: 04/19/2010DOD: 02/08/2023LOV: 08/29/2022NOV: 02/27/2023
Subjective symptoms: SOB, sw elling, cough, and fatigue
Objective symptoms: Severe global left ventricular dysfunction w ith an EF of 10-15% & Hypertension

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

R & L: They do not assess
TX: Heart Echo 02/09/2022 & Heart Cath 02/17/2023
ERTW per physician: None Given
APS Dated 02/10/2023
Marke J Dalle-Ave
4307 HW 66 S
Rogerville TN 37857
Phone: 423-921-1624
Fax: 423-921-1677
Referred to Cardiology

APS dated 02/09/2023
DX: I50.9 Heart Failure & I10 Hypertension
Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Barry I Michelson, MD
10800 Parkside Dr Ste 331
Knoxville TN 37934
Phone: 865-392-3400
Fax: 865-392-3449

Per EE as of 02/18/2023 he is in a life vest for 90 days and using meds.

Path:
Current Claim Status: Approved - It is reasonable to approve claim to 05/19/2023 which is 90 days after he started using the life vest. Will require updated MR/OVN giving specific R&L's as well as TX update to consider benefits past that date.
- REDSA2 - Feb 21, 2023 11:13:58 am

Udpated Assessment
Spoke with EE
How is he doing? Feeling about 40-50% Better than he did in feb
NOV: 05/08/2023 goes in for ECHO to be
MRI of Heart 06/15/2023
Any recent Hospitalizations? NO
Complications NO.
He is in a life vest til 05/18/2023

Path remains approved to 05/19/2023 will need an update after that time,. - REDSA2 - Apr 24, 2023 02:35:10 pm

Assessment - Rec'd 05/08/2023 ECHO Report

Path Remains approved to 05/19/2023 Will require medical documentation (OVN, MR, etc.) that provide update on condition, treatment and restrictions and limitations to review for benefits past that date. - REDSA2 - May 18, 2023 11:53:19 am

Updated Assessment
Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023

Updated Path - Approved - it is reasonable to approve claim to STD Max 08/09/2023. Will send claim for LTD roll over for review of continuation of benefits.
- REDSA2 - Jun 01, 2023 09:31:02 am

UPDATED PATH
Updated APS recd, indicating L ventricular function less than 35%, on maximum tolerable therapy. Next steps pending MRI of heart. - EMFSM3 - Jun 27, 2023 02:46:04 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2023 | Telephone (IN) | 11 | DAVID L FIELDS | Completed | JANIXON |

Name:David Fields
PH#
SSN:

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

DOB:
CL# 1230012611
GR ID:ETIM
EM//melindafields1@gmail.com

Clmnt said her Sw call her this morning tht she w as going EM docs toi get full out and sen bck us.
But hve not rec it.

I check not seeing w ht doc sto sen , he satteh his w ife just text him and let himn knw they rec teh EM eith the docs w e .
UPDATED PATH
Updated APS recd, indicating L ventricular function less than 35%, on maximum tolerable therapy. Next steps pending MRI of heart. - EMFSM3 - Jun 27, 2023 02:46:04 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/7/2023 10:38:38 AM | Telephone (IN) | 10 | DAVID L FIELDS | Requested | JANIXON |

david fields

1230012611
dob
East Tennessee Iron & Metal
approved 8/9
mAX DURATION 8/9/23
LTD EFF 12/01/2015

ret pc- confirmed auth rec'd. Ce sent response to email/ w ife's email. - JANIXON - Aug 08, 2023 03:26:39 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/8/2023 | Telephone (IN) | 10 | DAVID L FIELDS | Completed | JANIXON |

david fields

1230012611
dob
East Tennessee Iron & Metal
approved 8/9
mAX DURATION 8/9/23
LTD EFF 12/01/2015

ret pc- confirmed auth rec'd. Ce sent response to email/ w ife's email. - JANIXON - Aug 08, 2023 03:26:39 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/8/2023 8:54:42 PM | Status | | Maximum Benefit Reached (T65, RBD, etc.) | CLOSED | BRMCLSDIRY |
| 2/16/2024 | Referrals | 1 | SSDI - Primary | Completed | B2MILLE |

SS VENDOR: non vendor
DATE OF ENTITLEMENT 08/01/2023
BENEFIT AMOUNT IS $2330.00 AMOUNT. OFFSET IN SYSTEM
NO DEPENDENTS
PLEASE REFER TO AWD or DOC LIST FOR DETAILED AWARD INFORMATION. OP referral to FRS to calculate potential overpayment.
**emailed clmt spouse: Thank you for sending in your Social Security Disability Notice of Aw ard letter. I have processed the notice of aw ard letter. I am forw arding to the Financial Review Service Team to review for any overpayment and someone from that team w ill reach out to you over the next 7-10 business days to advise you of any overpayment and new LTD benefit.
Thank you.
--- - LLJONES - Feb 15, 2024 07:43:27 am

NOA dated 2/10/24
PDB $10,596.00 for Aug 23 thru Jan 24
Offset $2,330.00 verified
Rep Fee $3,532.00 - B2MILLE

Wizard recalc, OVP $567.50, applied atty fee to credit and clear, closed referral - B2MILLE - Feb 16, 2024 09:21:54 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/16/2024 9:10:05 AM | Status | | | REOPENED | B2MILLE |
| 2/16/2024 9:16:10 AM | Payments | | RECALC 7/28/2023 - 8/9/2023 | CURRENT | B2MILLE |
| 2/16/2024 9:27:19 AM | Status | | Maximum Benefit Reached (T65, RBD, etc.) | CLOSED | B2MILLE |

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

Group Policyholder:

East Tennessee Iron & Metal Works, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on January 1, 2016, and on the same day of each month after that. Policy anniversaries will be each December 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska. The issue date of this Policy is December 1, 2015.

SECRETARY PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010209862
PROVIDING
WEEKLY DISABILITY INCOME INSURANCE

**TABLE OF CONTENTS**

Schedule of Insurance........................................................................................................3

Definitions........................................................................................................4

General Provisions........................................................................................................9

Provisions Applicable to Participating Employers.......................................................... 11

Eligibility and Effective Dates........................................................................................12

Individual Terminations........................................................................................14

Premiums and Premium Rates........................................................................................15

Grace Period........................................................................................................16

Policy Termination........................................................................................................16

Claims Procedures for Weekly Disability Income Benefits............................................. 17

Weekly Disability Income Insurance........................................................................21

Vocational Rehabilitation Benefit........................................................................26

Rehabilitation Incentive Benefit........................................................................ 27

Reasonable Accommodation Benefit........................................................................28

Family Income Benefit........................................................................................ 29

Notice........................................................................................................30

Prior Insurance Credit Provision........................................................................32

**East Tennessee Iron & Metal Works, Inc.**
**000010209862**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASSES**

| | |
|---|---|
| Class 1 | Owners |
| Class 2 | All Other Full-Time Employees |

This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**East Tennessee Iron & Metal Works, Inc.**
**000010209862**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - Owners**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Employees are required to contribute to the cost of the Weekly Disability Income Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**

BENEFIT PERCENTAGE: 60%

MAXIMUM WEEKLY BENEFIT: $1,800

MINIMUM WEEKLY BENEFIT: 10% of the Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 15th consecutive day of Disability due to Accidental Injury; and
15th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 24 weeks

The Maximum Weekly Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.

Weekly Disability Income Insurance will terminate when an Insured Person retires.

ADDITIONAL FEATURES:

Family Income Benefit: 3 times the Insured Person's last Weekly Benefit payable immediately prior to death.

Rehabilitation Assistance Benefit:
- Rehabilitation Incentive Benefit of 5% of Basic Weekly Earnings
- Reasonable Accommodation Benefit
- Vocational Rehabilitation Benefit

**East Tennessee Iron & Metal Works, Inc.**
**000010209862**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - All Other Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Employees are not required to contribute to the cost of the Weekly Disability Income Insurance.

**WEEKLY DISABILITY INCOME INSURANCE**

BENEFIT PERCENTAGE: 60%

MAXIMUM WEEKLY BENEFIT: $1,800

MINIMUM WEEKLY BENEFIT: 10% of the Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 15th consecutive day of Disability due to Accidental Injury; and
15th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 24 weeks

The Maximum Weekly Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.

Weekly Disability Income Insurance will terminate when an Insured Person retires.

## DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
(1) the Employer's place of business; or
(2) any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is not due to the Employee's own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means 1/52 of the Insured Person's annual gross earnings from the Employer during the tax year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It is figured from the income box on the Insured Person's W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes the Insured Person's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:
1. any Employer contributions to a deferred compensation plan;
2. income received from any car, housing or moving allowance; or
3. income from a source other than the Employer.

It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by this Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records. For an Insured Person who did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the weekly gross earnings received during the actual period of employment, as shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:

(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary**,** on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under this Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:

(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:

(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours the Insured Person was regularly scheduled to work, at his or her Own Occupation, during the week just prior to:

(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while the Insured Person is continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of this Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:

(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before the Insured Person's Effective Date under this Policy.

The term "Injury" shall not include any:

(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:

(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

(1) are normally required to perform the Insured Person's Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

(1) the Employer is subject to the Act; or
(2) the Insured Person has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Person unable to perform the Main Duties of the job.

Main Duties include those job tasks:

(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Person's Disability. Such treatment must be rendered:

(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:

(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:

(1) in which the Insured Person was employed with the Employer prior to Disability; and
(2) which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, the Insured Person:

(1) is unable to perform one or more of the Main Duties of his or her Own Occupation, or is unable to perform such duties Full-Time; and
(2) is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Person is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:

(1) the Insured Person's hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) the Insured Person is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:

(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:

(1) who is a member of an Employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by this Policy on Insured Persons.

**PHYSICIAN** means:

(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Person's disabling condition.

Physician does **not** include the Insured Person or a relative of the Insured Person receiving treatment. Relatives include:

(1) the Insured Person's spouse, siblings, parents, children and grandparents; and
(2) his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means the Insured Person:

(1) personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
(2) receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**--See Own Occupation or Regular Occupation definition.

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:

(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by an Insured Person (Payments representing Employee contributions are deemed to be received over the Insured Person's expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
    (a) early or normal retirement; or
    (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).


**Lincoln/Fields 1948**

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which the Insured Person is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of an Insured Person's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Person for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy (including its complications) or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to the Insured Person who is Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
(1) this Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy, unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
(1) determine the insurability of a group or any individual within a group;
(2) make a contract in the Company's name;
(3) amend or waive any provision of this Policy; or
(4) extend the time for payment of any premium.
No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
(1) this Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
(1) an Insured Person incurs a claim during the first two years of coverage; and
(2) the Company discovers that the Insured Person made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for Insured Person's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NONPARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Group Policyholder and any Participating Employers may be required to furnish any information needed to administer this Policy, including:
(1) information about Persons:
  (a) who become eligible for insurance;
  (b) whose amounts of coverage change; or
  (c) whose eligibility or coverage ends;
(2) occupational information and other facts that may be needed to manage a claim; and
(3) any other information that the Company may reasonably require.
The Company may inspect the Group Policyholder's or any Participating Employer's records that relate to this Policy, at any reasonable time.

Clerical error by the Group Policyholder or Participating Employer:
(1) will not void or terminate insurance that otherwise would be in effect;
(2) will not result in insurance coverage that otherwise would not be in effect; and
(3) will not continue insurance that otherwise would be terminated.

Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof such an adjustment should be made.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:
(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under this Policy.

If an Insured Person's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER.** In administering this Policy, the Group Policyholder must:
(1) treat Employees the same in like situations; and
(2) allow the Company, without inquiry, to rely on its acts.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of this Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CERTIFICATES.** The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES.** If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY.** In administering this Policy:
(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** This Policy does not replace or provide benefits required by:
(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Policy may not be assigned.

## PROVISIONS APPLICABLE TO PARTICIPATING EMPLOYERS

A Participating Employer has no rights under this Policy except as provided in this Section. The Participating Employer will be responsible for all premiums payable with respect to any of its Employees who are Insured Persons under this Policy.

PARTICIPATING EMPLOYER means an employer who has been approved by the Company for participation in the coverage provided by this Policy. The following are Participating Employers:

Brooks Sports Management, LLC

EFFECTIVE DATE. As it applies to any Participating Employer, the Effective Date of this Policy will be the later of:

(a) the date this Policy is issued;
(b) the first day of the Insurance Month following the Company's approval of the employer's Participation Agreement; or
(c) a date agreed upon by the Company, the Participating Employer, and the Group Policyholder.

TERMINATION: A Participating Employer's participation under this Policy ends on the earliest of the following dates:

(a) the date the employer no longer meets the definition of a Participating Employer;
(b) the date the Participating Employer has fewer than 10 Insured Persons;
(c) the date the Participating Employer suspends active business operations, is placed in bankruptcy or receivership, dissolves, merges or relocates;
(d) the date the Participating Employer, without good cause, fails to:
    (a) promptly furnish the Company any information it may reasonably require; or
    (b) perform its duties pertaining to this Policy in good faith;
(e) the last day of the Insurance Month for which premium is paid;
(f) the last day of the Insurance Month in which the Company receives the Participating Employer's written request to cease participation; or
(g) the date the Company terminates the coverage under this Policy for all Participating Employers in this state.

On the day participation ends, Policy coverage will terminate for all the Participating Employer's employees and their Dependents. If an employer ceases to be a Participating Employer, it may not be a Participating Employer again; until the Company reapproves it as such.

## ELIGIBILITY AND EFFECTIVE DATES

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Insurance. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY.** A Person becomes eligible for coverage provided by this Policy on the later of:
(1) this Policy's date of issue; or
(2) the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Insurance. Prior service in an Eligible Class will apply toward the Waiting Period, when:
(1) a former Employee is rehired within one year after his or her employment ends; or
(2) an Employee returns from an approved Family or Medical Leave within:
  (a) the 12-week leave period required by federal law; or
  (b) any longer period required by a similar state law; or
(3) an Employee returns from a Military Leave within the period required by federal USERRA law.

**EFFECTIVE DATE.** A Person's initial amount of Personal Insurance becomes effective at 12:01 a.m. on the latest of:
(1) the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for coverage and signs:
  (a) a payroll deduction order, if the Insured Person pays any part of this Policy's premiums; or
  (b) an order to pay premiums from the Person's Flexible Benefits Plan account, if Employer contributions are made through such an account; or
(4) the date the Company approves the Person's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the date on which the Insured Person becomes eligible for the increase, if Actively at Work on that day;
(2) the date the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Person is Actively at Work.

**Evidence of Insurability**. Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
(1) a Person makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for coverage after he or she has requested:
  (a) to cancel insurance;
  (b) to stop payroll deductions for the insurance; or
  (c) to stop premium payments from the Flexible Benefits Plan account.

**Effective Date for Change in Eligible Class.** An Insured Person may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
(1) on the first day of the Insurance Month coinciding with or next following the date of the change;
(2) except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Person's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for this Policy's coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

(1) return from an approved Family or Medical Leave within:
  (a) the 12-week period required by federal law; or
  (b) any longer period required by a similar state law;
(2) return from a Military Leave within the period required by federal USERRA law;
(3) return from any other approved leave of absence within six months after the leave begins;
(4) return within 12 months following a lay off; or
(5) return within 12 months following termination of employment for any other reason.

To reinstate coverage, the Insured Person must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Person returns to Active Work.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 51 of 548
PageID #: 2005

## INDIVIDUAL TERMINATIONS

**TERMINATION OF COVERAGE.** An Insured Person's coverage will terminate at 12:00 midnight on the earliest of:

(1) the date this Policy terminates or the Employer's participation terminates (but without prejudice to any claim incurred prior to termination);
(2) the date the Insured Person's Class is no longer eligible for insurance;
(3) the date the Insured Person ceases to be a member of an Eligible Class;
(4) the last day of the Insurance Month in which the Insured Person requests termination;
(5) the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(6) the end of the period for which the last required premium has been paid;
(7) with respect to any particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
(8) the date the Insured Person's employment with the Group Policyholder or Participating Employer terminates (unless coverage is continued as provided below); or
(9) the date the Insured Person enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium).

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Person's eligibility for coverage, but coverage may be continued as follows.

**Disability.** If the Insured Person is absent due to Total Disability or engaged in Partial Disability Employment, coverage may be continued:

(1) until the Day Benefits Begin; and
(2) during the period for which benefits are payable.

The Company must receive the required premium from the Employer.

**Family or Medical Leave.** If an Insured Person goes on an approved Family or Medical Leave and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued until the earliest of:

(1) the end of the leave period approved by the Employer;
(2) the end of the leave period required by federal law, or any more favorable period required by a similar state law;
(3) the date the Insured Person notifies the Employer that he or she will not return; or
(4) the date the Insured Person begins employment with another employer.

The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Military Leave.** If an Insured Person goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Lay Off or Other Leave.** When an Insured Person ceases work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Conditions.** In administering the above continuations, the Employer must not act so as to discriminate unfairly among Insured Persons in similar situations. Insurance may **not** be continued when an Insured Person ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Person's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUMS.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

**PREMIUM RATE CHANGE.** The Company may change any premium rate on any of the following dates:

(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Company's liability is changed because the Group Policyholder (or any covered division, subsidiary or affiliated company):
   (a) relocates, dissolves or merges, or is added to or removed from this Policy; or
   (b) ceases to be covered by the state Worker's compensation program or any other program of like intent; or
   (c) ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**PREMIUM AMOUNT.** The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.

(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

| | | |
|---|---|---|
| Monthly Weekly Disability Income Rate | $.32 | per $10 of weekly benefit |

The above rate or rates are guaranteed until December 1, 2017, unless an exception listed in the Premium Rate Change section applies. After that, any premium rate change will be as shown in the renewal letter. The Company will send the Group Policyholder a renewal letter prior to each Policy Anniversary.

## GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:

(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
    (a) promptly furnish any information the Company reasonably requires; or
    (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance or weekly disability income insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

## CLAIMS PROCEDURES
## FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE AND PROOF OF CLAIM -- Notice of Claim.** Written notice of a Disability claim must be given:

(1) within 20 days after the Injury or Sickness causing Disability begins; or
(2) as soon as reasonably possible after that.*****

The notice must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days, the Insured Person may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send the Insured Person additional claim forms.

**Proof of Claim.** The Company must be given written proof of a Disability claim:

(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.*****

Proof of claim must be provided at the Insured Person's own expense. It must show the date the Disability began, its cause and degree. Documentation must include the following:

(1) completed statements by the Insured Person and the Employer;
(2) a completed statement by the attending Physician, which must describe any restrictions on the performance of the duties of the Insured Person's Regular Occupation;
(3) proof of any other income received, and of any other benefits available from other income sources, which may affect Policy benefits;
(4) a signed authorization for the Company to obtain more information; and
(5) any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

***Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim, if it is shown that it was done:

(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the Insured Person lacks legal capacity.

**EXAMINATION.** The Company may have the Insured Person examined:

(1) by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
(2) as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Person has:

(1) failed to cooperate with an examiner;
(2) failed to take an exam scheduled by the Company; or
(3) postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

## CLAIMS PROCEDURES
## (Continued)

**TIME OF PAYMENT OF CLAIMS.** Weekly Disability Income Benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability. Such benefits will be paid biweekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a pro rata basis. The daily rate will equal 1/7 of the Weekly Benefit. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

**TO WHOM PAYABLE**. All Weekly Disability Income Benefits are payable to the Insured Person, while living. After the Insured Person's death, such benefits will be payable to his or her estate.

**NOTICE OF CLAIM DECISION**. The Company will send the Insured Person a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:

(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the Insured Person may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice**. The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Person a written delay notice:

(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain:

(1) what additional information is needed to determine liability; and
(2) when a decision can be expected.

If the Insured Person does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Person to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE**. Within 180 days after receiving a denial notice, the Insured Person may request a claim review by sending the Company:

(1) a written request; and
(2) any written comments or other items to support the claim.

He or she may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the Insured Person a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:

(1) any further appeal procedures available under this Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1. (1) an extension of up to 45 more days will be permitted; and
2. (2) the Company will send the Insured Person a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. (1) the special circumstances which require the delay;
2. (2) whether more information is needed to review the claim; and
3. (3) when a decision can be expected.

**Exception:** The Company may need more information from the Insured Person to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1. (1) an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. (2) the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1. (1) reduce future benefits and suspend payment of the Minimum Weekly Benefit under this Policy, until full reimbursement is made;
2. (2) reduce benefits payable to the Insured Person or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. (3) recover such overpayments from the Insured Person or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1. (1) the Company's error in processing a claim;
2. (2) the claimant's receipt of Other Income Benefits;
3. (3) fraud, misrepresentation or omission of relevant facts; or
4. (4) any other reason.

However, if the overpayment is due solely to the Company's error in processing the claim; then this right of recovery will be limited to overpayments made within the 15 months prior to the Company's discovery of the error and request for reimbursement.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than five years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY**. Except for the functions that this Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to manage this Policy, interpret its provisions, administer claims and resolve questions arising under it. The Company's authority includes (but is not limited to) the right to:
1. (1) establish administrative procedures, determine eligibility and resolve claims questions;
2. (2) determine what information the Company reasonably requires to make such decisions; and
3. (3) resolve all matters when an internal claim review is requested.

The Insured Person has the right to request a state insurance department review or to bring legal action.
This provision does not apply to residents of California.

Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 58 of 548
PageID #: 2012

## WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT**. The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if the Insured Person:

(1) becomes Totally Disabled while insured for this benefit;
(2) is under the Regular Care of a Physician; and
(3) at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

**Duration.** Benefits start on the Day Benefits Begin, and end on the earliest of:

(1) the date the Insured Person ceases to be Totally Disabled or dies;
(2) the date the Maximum Benefit Period ends; or
(3) the date the Insured Person is able, but chooses not to engage in Partial Disability Employment in his or her Own Occupation.

Proportional benefits will be paid for a partial week of Total Disability.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date the Insured Person (without good cause):
  (a) fails to take a required medical exam;
  (b) fails to cooperate with an examiner; or
  (c) postpones a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of the Insured Person's application for any Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Total Disability Benefit equals the lesser of:

(1) the Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage; minus Other Income Benefits except any pay received under the Employer's Sick Leave or Salary Continuance Plan;
(2) 100% of the Insured Person's Basic Weekly Earnings; minus Other Income Benefits including any pay received under the Employer's Sick Leave or Salary Continuance Plan; or
(3) the Maximum Weekly Benefit.

In no event will the amount of the Weekly Total Disability Benefit plus any pay received under the Employer's Sick Leave or Salary Continuance Plan exceed 100% of the Insured Person's Basic Weekly Earnings.

The amount of the Weekly Total Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT**. The Company will pay a Weekly Partial Disability Benefit, if the Insured Person:

(1) becomes Partially Disabled while insured for this benefit;
(2) is engaged in Partial Disability Employment;
(3) is earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
(4) is under the Regular Care of a Physician; and
(5) at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Person is not required to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination of these. Proportional benefits will be paid for a partial week of Partial Disability.

**Duration.** Benefits start on the Day Benefits Begin, and will cease on the earliest of:

(1) the date the Insured Person ceases to be Partially Disabled or dies;
(2) the date the Maximum Benefit Period ends;
(3) the date the Insured Person earns more than 99% of Basic Weekly Earnings; or
(4) the date the Insured Person is able, but chooses not to work Full-Time or part-time in his or her Own Occupation.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date the Insured Person (without good cause):
  (a) fails to take a required medical exam;
  (b) fails to cooperate with an examiner; or
  (c) postpones a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of the Insured Person's application for Other Income Benefits to which he or she may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:

(A) (1) The Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
  (2) Other Income Benefits, except for earnings the Insured Person receives from Partial Disability Employment; or
(B) The Insured Person's Basic Weekly Earnings minus Other Income Benefits.

The amount of the Weekly Partial Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of the Insured Person's Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 60 of 548
PageID #: 2014

**OTHER INCOME BENEFITS** means Earnings, benefits, awards, or settlements from the following sources. These amounts will be offset, in determining the Insured Person's Weekly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Weekly Benefit is payable under this Policy.

**Compulsory Benefits.** Any disability income benefits the Insured Person is eligible to receive under:
- (1) state temporary disability income benefit laws;
- (2) state no fault auto insurance laws; or
- (3) any other compulsory benefit act or law (except Workers' Compensation and laws of like intent).

**Other Insurance Plans.** Any disability income benefits for which the Insured Person is eligible under any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which the Insured Person is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay, or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits the Insured Person receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
- (1) **disability benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's Disability;
- (2) **unreduced retirement benefits** for which the Insured Person and any spouse or child is eligible, because of the Insured Person's eligibility for unreduced retirement benefits; or
- (3) **reduced retirement benefits** actually received by the Insured Person and any spouse or child, because of the Insured Person's receipt of reduced retirement benefits.

As used above, "**Government Retirement Plans"** include disability and retirement benefits under:
- (1) the federal Social Security Act, Jones Act or Railroad Retirement Act;
- (2) the Canada Pension Plan or Quebec Pension Plan;
- (3) any similar plan or act of any country, state, province or other political unit; or
- (4) any plan provided in place of one of the above plans.

**"Earnings"**, as used in this provision, means pay the Insured Person earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
- (1) salaried or hourly Employee's gross earnings (shown on Form W-2); including:
  - (a) wages, tips, commissions, bonuses and overtime pay; and
  - (b) any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
- (2) proprietor's net profit (figured from Form 1040, Schedule C);
- (3) professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
- (4) partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
- (5) Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Recovery from Third Party.** Any amount the Insured Person recovers from a third party as a result of the Disability and which is specified to be for loss of time or loss of wages (whether by judgment, settlement or otherwise). The offset:
- (1) will be reduced by attorney fees and other reasonable costs of recovery; and
- (2) will not exceed 100% of the net settlement.

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Weekly Benefit:

(1) a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
(2) reimbursement for hospital, medical or surgical expense;
(3) reimbursement for attorney fees or other reasonable costs of claiming Other Income Benefits;
(4) group credit or mortgage disability insurance;
(5) early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
(6) any amounts under the Employer's Retirement Plan that:
  (a) represent the Insured Person's contributions; or
  (b) are received upon termination of employment without being disabled or retired;
(7) benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
(8) vacation pay, holiday pay, or severance pay; or
(9) disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

**RULES CONCERNING OTHER INCOME BENEFITS.** If the Insured Person may be entitled to Other Income Benefits that affect Policy benefits, he or she is required to actively claim them. For example, if Social Security or other Government Retirement Plan benefits may be payable, the Insured Person:

(1) must promptly apply for such benefits; and, if denied
(2) must file an appeal or request an administrative hearing, upon Company request.

If the Insured Person fails to promptly pursue such benefits, the Company has the option to deny or suspend Weekly Benefits or to reduce them by an estimated amount.

If Workers' Compensation or similar benefits may be payable for the same Disability, the Insured Person and Employer are required to cooperate in filing for those benefits. The Company will require proof of the denial or duration of those benefits to confirm its liability under this Policy.

**Refunding Overpayments.** Upon receiving Other Income Benefits, the Insured Person must refund any resulting overpayment of Weekly Benefits under this Policy. If he or she does not promptly refund an overpayment to the Company within 60 days, in a lump sum, then:

(1) the Company will reduce or eliminate future payments; and
(2) the Minimum Weekly Benefit will not apply, until the amount is repaid.

**Cost of Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Weekly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

**RECURRENT DISABILITY. "Recurrent Disability"** means a Disability caused by an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Weekly Benefits were payable.

(1) A Recurrent Disability will be treated as a new period of Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for two consecutive weeks or more.
  A new Day Benefits Begin and new Maximum Benefit Period will apply.
(2) A Recurrent Disability will be treated as part of the prior Disability, if the Insured Person:
  (a) has returned to his or her Own Occupation; and
  (b) has worked on a full-time basis, for less than two consecutive weeks.
  The same Day Benefits Begin and same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.

To qualify for a Weekly Benefit for a Recurrent Disability, the Insured Person must earn less than the percentage of Predisability Income specified in the Partial Disability Benefit section. Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Person who becomes eligible for coverage under any other group short-term disability policy.

**EXCLUSIONS.** Weekly Benefits will not be payable for any period of Disability:

(1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
(2) during which the Insured Person is not under the Regular Care of a Physician;
(3) which is the result of war (declared or undeclared) or any act of war;
(4) which is the result of a Sickness or Injury for which the Insured Person receives benefits under Workers' Compensation or similar coverage; or
(5) which arises out of (or in the course of) any employment for wage or profit, when the Disability would be covered by Workers' Compensation or similar coverage if:
    (a) the Employer had enrolled the Insured Person for such coverage; and
    (b) the Insured Person and Employer had cooperated in filing a claim under that plan.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 63 of 548
PageID #: 2017

## VOCATIONAL REHABILITATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, he or she may be eligible for a Vocational Rehabilitation Benefit. This benefit consists of services which may include:

(1) vocational evaluation, counseling, training or job placement;
(2) job modification or special equipment; and
(3) other services which the Company deems reasonably necessary to help the Insured Person return to work.

The Company will determine the Insured Person's eligibility and the amount of any benefit payable.

**ELIGIBILITY.** An Insured Person may be eligible for the Vocational Rehabilitation Benefit if the Company finds that he or she:

(1) has a Disability that prevents the performance of the Main Duties of his or her Own Occupation;
(2) has the physical and mental abilities needed to complete a Rehabilitation Program; and
(3) is reasonably expected to return to work after completing the Rehabilitation Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Person's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** The Company, the Insured Person, or his or her Physician may first propose vocational rehabilitation. When a Rehabilitation Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; however, it will be reapplied after the Rehabilitation Program ends. The Company will determine the amount and duration of any Weekly Disability benefits payable after the Rehabilitation Program ends.

**LIMITATION.** This Policy will not cover any period of Disability for an Insured Person who has received a Vocational Rehabilitation Benefit and has failed to complete the Rehabilitation Program, without Good Cause.

**DEFINITIONS.**

**"Good Cause,"** as used in this provision, means the Insured Person's:

(1) documented physical or mental impairments, which render the Insured Person unable to take part in or complete a Rehabilitation Program;
(2) involvement in a medical program, which prevents or interferes with the Insured Person's taking part in or completing a Rehabilitation Program; or
(3) participating in good faith in some other vocational rehabilitation program, which:
    (a) conflicts with taking part in or completing a Rehabilitation Program developed by the Company; and
    (b) is reasonably expected to return the Insured Person to work.

**"Rehabilitation Program"** means a written vocational rehabilitation program:

(1) which the Company develops with input from:
    (a) the Insured Person;
    (b) the Insured Person's Physician; and
    (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## REHABILITATION INCENTIVE BENEFIT

**BENEFIT.** The Company will pay a Rehabilitation Incentive Benefit to an Insured Person who is Totally or Partially Disabled and who actively participates in a Rehabilitation Program approved by the Company.

This benefit is included in the premium rate for the Policy. You will not be charged any additional premium for this benefit.

**AMOUNT.** The amount of the Rehabilitation Incentive Benefit is shown in the Schedule of Insurance.

The Rehabilitation Incentive Benefit is paid in addition to any other Policy benefits, and is not subject to Policy provisions that would otherwise reduce the benefit amount, such as the Other Income Benefits provision.

**DURATION.** The Rehabilitation Incentive Benefit starts on the latest of:

(1) the date the Insured Person begins to participate in an approved Rehabilitation Program; or
(2) the date the Company approves the Insured Person's Rehabilitation Program.

The Rehabilitation Incentive Benefit will cease on the earliest of:

(1) the date the Weekly Total or Partial Disability Benefits would otherwise cease under this Policy; or
(2) the date the Insured Person ceases participation in an approved Rehabilitation Program.

**DEFINITION.**

**"Rehabilitation Program"** means a written vocational rehabilitation program:

(1) which the Company develops with input from:
    (a) the Insured Person;
    (b) the Insured Person's Physician; and
    (c) any current or prospective employer, when appropriate; and
(2) which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

**PROOF.** Written proof of active participation in a Rehabilitation Program must be given:

(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.

Proof of active participation must be provided at the Insured Person's own expense. The proof must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name and address and the number of this Policy.

**Exception:** Failure to furnish proof of active participation in a Rehabilitation Program within the required time period will not invalidate the benefit, if it is shown that it was done:

(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the Insured Person lacks legal capacity.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## REASONABLE ACCOMMODATION BENEFIT

**BENEFIT.** If an Insured Person is Disabled and is receiving Weekly Benefits under this Policy, then the Group Policyholder may be eligible for a Reasonable Accommodation benefit. This benefit reimburses the Group Policyholder for 50% of the expense incurred for reasonable accommodation services for the Insured Person, but will not exceed the lesser of:

(1) a maximum benefit of $2500 for any one Insured Person; or
(2) the Company's expected liability for the Insured Person's Weekly Disability Income claim.

Such services may include:

(1) providing the Insured Person a more accessible parking space or entrance;
(2) removing barriers or hazards to the Insured Person from the worksite;
(3) special seating, furniture or equipment for the Insured Person's work station;
(4) providing special training materials or translation services during the Insured Person's training; and
(5) other services the Company deems reasonably necessary to help the Insured Person return to work with the Group Policyholder.

**ELIGIBILITY.** The Company will determine the Group Policyholder's eligibility to receive the Reasonable Accommodation benefit. To qualify for the Reasonable Accommodation benefit, the Group Policyholder must have an Insured Person:

(1) whose Disability prevents the performance of his or her Own Occupation at the Group Policyholder's worksite;
(2) who has the physical and mental abilities needed to perform his or her Own Occupation or another occupation at the Group Policyholder's worksite, but only with the help of the proposed accommodation; and
(3) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation benefit is less than the expected liability for the Insured Person's Weekly Disability Income claim.

**WRITTEN PROPOSAL.** The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

(1) the Group Policyholder;
(2) the Insured Person; and
(3) the Insured Person's Physician, when appropriate.

The proposal must state:

(1) the purpose of the proposed accommodation; and
(2) the times, dates, and costs of the services.

**CONDITIONS.** The Company, the Group Policyholder, the Insured Person, or the Insured Person's Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will reimburse the Group Policyholder upon receipt of proof that the Group Policyholder:

(1) has provided the services for the Insured Person; and
(2) has paid the provider for the services.

**OTHER PROVISIONS.** Unless stated otherwise, the Reasonable Accommodation benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## FAMILY INCOME BENEFIT

**BENEFIT.** The Company will pay a benefit to the Eligible Survivor(s) when satisfactory written proof is received that an Insured Person died:

(1) after Disability had continued for at least 14 consecutive days; and
(2) while receiving a Weekly Benefit.

If payment becomes due to the Insured Person's children; then payment will be made to:

(1) the surviving children, in equal shares; or
(2) a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the Insured Person's children.

If there are no Eligible Survivors, payment will be made to the Insured Person's estate.

**AMOUNT.** The Family Income Benefit is shown in the Schedule of Insurance. Reductions for Other Income Benefits will not apply.

If any state disability plan compulsory death benefits become payable upon the Insured Person’s death, then any Family Income Benefit amount payable will be reduced by such compulsory death benefits.

**DEFINITION.**

**"Eligible Survivor(s)"** means the Insured Person's:

(1) surviving spouse or domestic partner; or, if none,
(2) surviving children who are under age 25 on the Insured Person's date of death.

**OTHER PROVISIONS.** Unless stated otherwise, this benefit is subject to all the Definitions, Exclusions, Claims Procedures, and other provisions of this Policy.

## NOTICE CONCERNING COVERAGE UNDER

## THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of the insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. **This summary does not cover all provisions of the law or describe all of the conditions and limitations relating to coverage. This summary does not in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.**

COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, an annuity, or if they are insured under a group insurance contract issued by an insurer authorized to conduct business in Tennessee. Health insurance includes disability and long term care policies. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

1) They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2) The insurer was not authorized to do business in this state;

3) Their policy was issued by an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does not provide coverage for:

1) Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2) Any policy of reinsurance (unless an assumption certificate was issued);

3) Interest rate yields that exceed an average rate;

4) Dividends;

5) Credits given in connection with the administration of a policy by a group contractholder;

6) Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

7) Unallocated annuity contracts (which give rights to group contractholders, not individuals);

LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Guaranty Association is obligated to pay out. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. For any one insured life, the Guaranty Association guarantees payments up to a stated maximum no matter how many policies and contracts there were with the same company, even if they provided different types of coverage. These aggregate limits per life are as follows:

- $300,000 for policies and contracts of all types, except as described in the next point
- $500,000 for basic hospital, medical and surgical insurance and major medical insurance issued by companies that become insolvent after January 1, 2010

Within these overall limits, the Guaranty Association cannot guarantee payment of benefits greater than the following:

- Life insurance death benefits - $300,000
- Life insurance cash surrender value - $100,000
- Present value of annuity benefits for companies insolvent before July 1, 2009 - $100,000
- Present value of annuity benefits for companies insolvent after June 30, 2009 - $250,000
- Health insurance benefits for companies declared insolvent before January 1, 2010 - $100,000
- Health insurance benefits for companies declared insolvent on or after January 1, 2010:
    - $100,000 for limited benefits and supplemental health coverages
    - $300,000 for disability and long term care insurance
    - $500,000 for basic hospital, medical and surgical insurance or major medical insurance

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

Tennessee Life and Health Insurance Guaranty Association
1200 One Nashville Place
150 4th Avenue North
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

**AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO: 000010209862**

**ISSUED TO: East Tennessee Iron & Metal Works, Inc.**

**The Policy is amended by the addition of the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF DISABILITY INCOME INSURANCE CARRIERS**

This provision prevents loss of disability income coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan**" means a prior carrier's group disability income policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to premium payments, this Policy will provide disability income coverage to a Person who:

(1) was insured by the prior plan on its termination date; and
(2) was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE. Until the Person satisfies this Policy's Active Work rule, his or her disability income coverage will not exceed that provided by the prior plan, had it remained in force. The Company will pay:

(1) the benefit the prior plan would have paid; minus
(2) any amount for which the prior carrier is liable.

**This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Charles A. Brawley III

Officer of the Company

The Lincoln National Life Insurance Company
A Stock Company Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765 Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. GL 000010209862 has been issued to
East Tennessee Iron & Metal Works, Inc.
(The Group Policyholder)

The issue date of the Policy is December 1, 2015.

Certificate of Insurance for Class 2 of Plan 1

You are entitled to the benefits described in this Certificate only if you are eligible, become and remain insured under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms. If the provisions of this Certificate and the Policy do not agree, the provisions of the Policy will apply.

Ellen Cooper
PRESIDENT

**CERTIFICATE OF GROUP INSURANCE**
**PROVIDING**
**WEEKLY DISABILITY INCOME INSURANCE**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

## ELIGIBLE CLASS

**Class 2 - All Other Full-Time Employees**

The Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

**East Tennessee Iron & Metal Works, Inc.**
**000010209862**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - All Other Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: You are not required to contribute to the cost of the Weekly Disability Income Insurance.

## WEEKLY DISABILITY INCOME INSURANCE

BENEFIT PERCENTAGE: 60%

MAXIMUM WEEKLY BENEFIT: $1,800

MINIMUM WEEKLY BENEFIT: 10% of your Weekly Total Disability Benefit

DAY BENEFITS BEGIN: 15th consecutive day of Disability due to Accidental Injury; and
15th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

MAXIMUM BENEFIT PERIOD: 24 weeks

The Maximum Weekly Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.

Weekly Disability Income Insurance will terminate when you retire.

**TABLE OF CONTENTS**

Definitions....................................................................................................3

General Provisions..........................................................................................8

Eligibility and Effective Dates.......................................................................10

Individual Terminations................................................................................12

Claims Procedures for Weekly Disability Income Benefits.......................... 13

Weekly Disability Income Insurance............................................................16

Prior Insurance Credit Provision...................................................................21

## DEFINITIONS

**As used throughout the Policy, the following terms shall have the meanings indicated below. Other parts of the Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means your performance of all Main Duties of your Own Occupation, for the regularly scheduled number of hours, at:

(1) the Employer's place of business; or
(2) any other business location where the Employer requires you to travel.

Unless disabled on the prior workday or on the day of absence, you will be considered Actively at Work on the following days:

(1) a Saturday, Sunday or holiday that is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is not due to your own health condition.

**BASIC WEEKLY EARNINGS** or **PREDISABILITY INCOME** means 1/52 of your annual gross earnings from the Employer during the tax year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It is figured from the income box on your W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes your income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:

1. any Employer contributions to a deferred compensation plan;
2. income received from any car, housing or moving allowance; or
3. income from a source other than the Employer.

It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Weekly Earnings permitted by the Policy; whichever is less. (Maximum Covered Weekly Earnings equals the Maximum Weekly Benefit divided by the Benefit Percentage shown in the Schedule of Insurance.) Exception: For purposes of determining the Partial Disability Weekly Benefit, Basic Weekly Earnings will not exceed the amount shown in the Employer's financial records. If you did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the weekly gross earnings received during the actual period of employment, as shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Group Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY or DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit that:

(1) is payable under a Retirement Plan due to disability as defined in that plan; and
(2) does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

**EMPLOYEE or FULL-TIME EMPLOYEE** means a person:

(1) whose employment with the Employer is the person's main occupation;
(2) whose employment is for regular wage or salary, on a full-time basis;
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance;
(4) who is a member of an Eligible Class which is eligible for coverage under the Policy;
(5) who is not a temporary or seasonal employee; and
(6) who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Group Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of your medical history. The Company uses this to determine your acceptance for insurance or an increased amount of insurance. Such proof will be provided at your own expense.

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:

(1) is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
(2) is taken in accord with the Employer's leave policy and the law which applies; and
(3) does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period as defined by the Employer. The 12 weeks:

(1) may consist of consecutive or intermittent work days; or
(2) may be granted on a part-time equivalency basis.

If you are entitled to a leave under both the federal FMLA law and a similar state law, you may elect the more favorable leave (but not both). If you are on an FMLA leave due to your own health condition on the date Policy coverage takes effect, you are not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Benefit, means the average number of hours you were regularly scheduled to work, at your Own Occupation, during the week just prior to:

(1) the date Disability begins; or
(2) the date an approved leave of absence begins, if Disability begins while you are continuing coverage during a leave of absence.

**GROUP POLICYHOLDER** means the person, company, trust or other organization as shown on the Title Page of the Policy.

**INJURY** means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Benefits, a Disability will be considered caused by a Sickness if:

(1) the Disability begins more than 60 days after the Injury; or
(2) the Injury occurred before your Effective Date under the Policy.

The term "Injury" shall not include any:

(1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
(2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
(3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
(4) pregnancy; except for complications that result from an Injury.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:

(1) beginning at 12:01 a.m. Standard Time, at the Group Policyholder's place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a Person for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

(1) are normally required to perform your Own Occupation; and
(2) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

(1) the Employer is subject to the Act; or
(2) you have requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render you unable to perform the Main Duties of the job.

Main Duties include those job tasks:

(1) as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
(2) as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing your Disability. Such treatment must be rendered:

(1) by a Physician whose license and any specialty are consistent with the disabling condition; and
(2) according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:

(1) is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
(2) is taken in accord with the Employer's leave policy and the federal USERRA law; and
(3) does not exceed the period required by that law.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:

(1) in which you were employed with the Employer prior to Disability; and
(2) which was your main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

(1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or
(2) whether a suitable opening is currently available with the Employer or in the local labor market.

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** means that, due to an Injury or Sickness, you:

(1) are unable to perform one or more of the Main Duties of your Own Occupation, or are unable to perform such duties Full-Time; and
(2) are engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means you are working at your Own Occupation or any other occupation; however, because of a Partial Disability:
(1) your hours or production is reduced;
(2) one or more Main Duties of the job are reassigned; or
(3) you are working in a lower-paid occupation.

During Partial Disability Employment, your current earnings:
(1) must be at least 20% of Predisability Income; and
(2) may not exceed the percentage specified in the Partial Disability Benefit section.

**PERSON** means an Employee of the Employer:
(1) who is a member of an Employee class which is eligible for coverage under the Policy; and
(2) who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by the Policy on Insured Persons.

**PHYSICIAN** means:
(1) a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
(2) any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for your disabling condition.

Physician does **not** include you or your relatives. Relatives include:
(1) your spouse, siblings, parents, children and grandparents; and
(2) your spouse's relatives of like degree.

**POLICY** means the group insurance Policy issued by the Company to the Group Policyholder.

**PREDISABILITY INCOME**--See Basic Weekly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** means you:
(1) personally visit a Physician, as often as medically required according to standard medical practice to effectively manage and treat your disabling condition; and
(2) receive Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION--**See Own Occupation or Regular Occupation definition.

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
(1) is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
(2) does not represent contributions made by you (Payments representing Employee contributions are deemed to be received over your expected remaining life, regardless of when they are actually received.); and
(3) is payable upon:
    (a) early or normal retirement; or
    (b) disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
(1) provides Retirement Benefits to Employees; and
(2) is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
(1) which is part of any federal, state, county, municipal or association retirement system; and
(2) for which you are eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
(1) is established and maintained by the Employer for the benefit of Employees; and
(2) continues payment of all or part of your Predisability Income for a specified period after you become Disabled.

It does **not** include compensation the Employer pays you for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy (including its complications) or disease.

**TOTAL DISABILITY** or **TOTALLY DISABLED** means your inability, due to Sickness or Injury, to perform each of the Main Duties of your Own Occupation. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time you must be employed in an eligible class with the Employer, before you become eligible to enroll for coverage under the Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

**WEEKLY BENEFIT** means the amount payable weekly by the Company to you while you are Totally Disabled or Partially Disabled.

**WORKERS' COMPENSATION OR SIMILAR COVERAGE** means coverage under a law that compensates for job related Injury or Sickness. It includes (but is not limited to):
(1) coverage under any Workers' Compensation or occupational disease law;
(2) coverage under the Jones Act; the Longshoreman's and Harbor Worker's Act; the Maritime Doctrine of Maintenance, Wages or Cure; or
(3) any plan provided in place of one of those plans.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:

(1) the Policy and any amendments to it;
(2) the Group Policyholder's application (a copy of which is attached to the Policy);
(3) any Participating Employers' applications or Participation Agreements; and
(4) any individual applications of Insured Persons.

In the absence of fraud, all statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by the Policy, unless:

(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement has been furnished to that Insured Person.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy after it has been in force for two years from its date of issue; and as to any Insured Person, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:

(1) the Policy's eligibility requirements, exclusions and limitations; and
(2) other Policy provisions unrelated to the validity of coverage.

**RESCISSION**. The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:

(1) you incur a claim during the first two years of coverage; and
(2) the Company discovers that you made a Material Misrepresentation on your application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for your claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**MISSTATEMENTS OF FACTS.** If relevant facts about any Person were misstated:

(1) a fair adjustment of the premium will be made; and
(2) the true facts will decide if and in what amount insurance is valid under the Policy.

If your age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**GROUP POLICYHOLDER'S AGENCY.** For all purposes of the Policy, the Group Policyholder acts on its own behalf or as an agent of the Insured Person. Under no circumstances will the Group Policyholder be deemed the agent of the Company.

**CURRENCY.** In administering the Policy:

(1) all Predisability Income will be expressed in U.S. dollars; and
(2) all premium and benefits must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** The Policy does not replace or provide benefits required by:

(1) Workers' Compensation laws; or
(2) any state temporary disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Certificate may not be assigned.

## ELIGIBILITY AND EFFECTIVE DATES

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Insurance. The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY.** A Person becomes eligible for coverage provided by the Policy on the later of:
(1) the Policy's date of issue; or
(2) the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Insurance. Prior service in an Eligible Class will apply toward the Waiting Period, when:
(1) you are a former Employee and are rehired within one year after your employment ends;
(2) you return from an approved Family or Medical Leave within:
  (a) the 12-week period required by federal law; or
  (b) any longer period required by a similar state law; or
(3) you return from a Military Leave within the period required by federal USERRA law.

**EFFECTIVE DATE.** Your initial amount of Personal Insurance becomes effective at 12:01 a.m. on the latest of:
(1) the first day of the Insurance Month coinciding with or next following the date you become eligible for the coverage;
(2) the date you resume Active Work, if not Actively at Work on the day you become eligible;
(3) the date you make written application for coverage and sign:
  (a) a payroll deduction order, if you pay any part of the Policy premiums; or
  (b) an order to pay premiums from your Flexible Benefits Plan account, if Employer contributions are made through such an account; or
(4) the date the Company approves your Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the day on which you become eligible for the increase, if Actively at Work on that day;
(2) the date you resume Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not you are Actively at Work.

**Evidence of Insurability.** Evidence of Insurability satisfactory to the Company must be submitted at your expense; when:
(1) you make written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage; or
(2) you make written application for coverage after you have requested:
  (a) to cancel insurance;
  (b) to stop payroll deductions for the insurance; or
  (c) to stop premium payments from the Flexible Benefits Plan account.

**Effective Date for Change in Eligible Class.** You may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
(1) on the first day of the Insurance Month coinciding with or next following the date of the change;
(2) except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If your coverage terminates due to one of the following breaks in service, you will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

(1) return from an approved Family or Medical Leave within:
   (a) the 12-week period required by federal law; or
   (b) any longer period required by a similar state law;
(2) return from a Military Leave within the period required by federal USERRA law;
(3) return from any other approved leave of absence within six months after the leave begins;
(4) return within 12 months following a lay off; or
(5) return within 12 months following termination of employment for any other reason.

To reinstate coverage, you must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date you return to Active Work.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 83 of 548
PageID #: 2037

## INDIVIDUAL TERMINATIONS

**TERMINATION OF COVERAGE.** Your coverage will terminate at 12:00 midnight on the earliest of:

(1) the date the Policy terminates or the Employer's participation ends (but without prejudice to any claim incurred prior to termination);
(2) the date your class is no longer eligible for insurance;
(3) the date you cease to be a member of an Eligible Class;
(4) the last day of the Insurance Month in which you request termination;
(5) the last day of the last Insurance Month for which premium payment is made on your behalf;
(6) the end of the period for which the last required premium has been paid;
(7) with respect to any particular insurance benefit, the day the portion of the Policy providing that benefit terminates;
(8) the date your employment with the Group Policyholder or Participating Employer terminates (unless coverage is continued as provided below); or
(9) the date you enter the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of your eligibility for coverage, but coverage may be continued as follows.

**Disability.** If you are absent due to Total Disability or engaged in Partial Disability Employment, coverage may be continued:

(1) until the Day Benefits Begin; and
(2) during the period for which benefits are payable.

The Company must receive the required premium from the Employer.

**Family or Medical Leave.** If you go on an approved Family or Medical Leave and are **not** entitled to the more favorable continuation available during Disability, coverage may be continued until the earliest of:

(1) the end of the leave period approved by the Employer;
(2) the end of the leave period required by federal law, or any more favorable period required by a similar state law;
(3) the date you notify the Employer that you will not return; or
(4) the date you begin employment with another employer.

The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Military Leave.** If you go on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Lay Off or Other Leave.** If you cease work due to a temporary lay off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

**Conditions.** In administering the above continuations, the Employer must not act so as to discriminate unfairly among Insured Persons in similar situations. Insurance may **not** be continued when you cease Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of your coverage during a Disability will have no effect on benefits payable for that period of Disability.

## CLAIMS PROCEDURES
## FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE AND PROOF OF CLAIM -- Notice of Claim**. Written notice of a Disability claim must be given:
(1) within 20 days after the Injury or Sickness causing Disability begins; or
(2) as soon as reasonably possible after that.*****

The notice must be sent to the Company's Group Insurance Service Office. It should include your name and address, and the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days, you may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send you additional claim forms.

**Proof of Claim.** The Company must be given written proof of a Disability claim:
(1) within 90 days after the Day Benefits Begin; or
(2) as soon as reasonably possible after that.*****

Proof of claim must be provided at your own expense. It must show the date the Disability began, its cause and degree. Documentation must include the following:
(1) completed statements by you and your Employer;
(2) a completed statement by the attending Physician, which must describe any restrictions on the performance of the duties of your Regular Occupation;
(3) proof of any other income received, and of any other benefits available from other income sources, which may affect Policy benefits;
(4) a signed authorization for the Company to obtain more information; and
(5) any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

***Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim, if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while you lack legal capacity.

**EXAMINATION.** The Company may have you examined:
(1) by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
(2) as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) you have:
(1) failed to cooperate with an examiner;
(2) failed to take an exam scheduled by the Company; or
(3) postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.** Weekly Disability Income Benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability. Such benefits will be paid biweekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a pro rata basis. The daily rate will equal 1/7 of the Weekly Benefit. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

**TO WHOM PAYABLE**. All Weekly Disability Income Benefits are payable to you, while living. After your death, such benefits will be payable to your estate.

**NOTICE OF CLAIM DECISION**. The Company will send you a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:

(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how you may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice**. The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send you a written delay notice:

(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain:

(1) what additional information is needed to determine liability; and
(2) when a decision can be expected.

If you do not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from you to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE**. Within 180 days after receiving a denial notice, you may request a claim review by sending the Company:

(1) a written request; and
(2) any written comments or other items to support the claim.

You may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send you a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:

(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:

(1) an extension of up to 45 more days will be permitted; and
(2) the Company will send you a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:

(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** The Company may need more information from you to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:

(1) an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
(2) the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:

(1) reduce future benefits and suspend payment of the Minimum Weekly Benefit under the Policy, until full reimbursement is made;
(2) reduce benefits payable to you or your beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
(3) recover such overpayments from you or your estate.

Such reimbursement is required whether the overpayment is due to:

(1) the Company's error in processing a claim;
(2) the claimant's receipt of Other Income Benefits;
(3) fraud, misrepresentation or omission of relevant facts; or
(4) any other reason.

However, if the overpayment is due solely to the Company's error in processing the claim; then this right of recovery will be limited to overpayments made within the 15 months prior to the Company's discovery of the error and request for reimbursement.

**LEGAL ACTIONS**. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than five years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY**. Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to manage the Policy, interpret its provisions, administer claims and resolve questions arising under it. The Company's authority includes (but is not limited to) the right to:

(1) establish administrative procedures, determine eligibility and resolve claims questions;
(2) determine what information the Company reasonably requires to make such decisions; and
(3) resolve all matters when an internal claim review is requested.

You have the right to request a state insurance department review or to bring legal action.
This provision does not apply to residents of California.

# WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT**. The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if you:

(1) become Totally Disabled while insured for this benefit;
(2) are under the Regular Care of a Physician; and
(3) at your own expense, submit proof of continued Total Disability and Physician's care to the Company upon request.

**Duration.** Benefits start on the Day Benefits Begin, and end on the earliest of:

(1) the date you cease to be Totally Disabled or die;
(2) the date the Maximum Benefit Period ends; or
(3) the date you are able, but choose not to engage in Partial Disability Employment in your Own Occupation.

Proportional benefits will be paid for a partial week of Total Disability.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date you (without good cause):
    (a) fail to take a required medical exam;
    (b) fail to cooperate with an examiner; or
    (c) postpone a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of your application for any Other Income Benefits to which you may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Total Disability Benefit equals the lesser of:

(1) your Basic Weekly Earnings multiplied by the Benefit Percentage; minus Other Income Benefits except any pay received under the Employer's Sick Leave or Salary Continuance Plan;
(2) 100% of your Basic Weekly Earnings; minus Other Income Benefits including any pay received under the Employer's Sick Leave or Salary Continuance Plan; or
(3) the Maximum Weekly Benefit.

In no event will the amount of the Weekly Total Disability Benefit plus any pay received under the Employer's Sick Leave or Salary Continuance Plan exceed 100% of your Basic Weekly Earnings.

The amount of the Weekly Total Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of your Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT**. The Company will pay a Weekly Partial Disability Benefit, if you:

(1) become Partially Disabled while insured for this benefit;
(2) are engaged in Partial Disability Employment;
(3) are earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
(4) are under the Regular Care of a Physician; and
(5) at your own expense, submit proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

You are not required to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination of these. Proportional benefits will be paid for a partial week of Partial Disability.

**Duration.** Benefits start on the Day Benefits Begin, and will cease on the earliest of:

(1) the date you cease to be Partially Disabled or die;
(2) the date the Maximum Benefit Period ends;
(3) the date you earn more than 99% of Basic Weekly Earnings; or
(4) the date you are able, but choose not to work Full-Time or part-time in your Own Occupation.

At the Company's option, benefits may also be denied or suspended on any of the following dates:

(1) the date you (without good cause):
    (a) fail to take a required medical exam;
    (b) fail to cooperate with an examiner; or
    (c) postpone a required exam more than twice;
(2) the 45th day after the Company requests additional proof, if not given; or
(3) the 45th day after the Company requests proof of your application for Other Income Benefits to which you may be entitled (and which affect Policy benefits); if not given.

**Amount.** The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:

(A) (1) Your Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
    (2) Other Income Benefits, except for earnings you receive from Partial Disability Employment; or
(B) Your Basic Weekly Earnings minus Other Income Benefits.

The amount of the Weekly Partial Disability Benefit will not be less than the Minimum Weekly Benefit, unless the Minimum Weekly Benefit plus Other Income Benefits would exceed 100% of your Basic Weekly Earnings.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, and Minimum Weekly Benefit are shown in the Schedule of Insurance.

**OTHER INCOME BENEFITS** means Earnings, benefits, awards, or settlements from the following sources. These amounts will be offset, in determining your Weekly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Weekly Benefit is payable under the Policy.

**Compulsory Benefits.** Any disability income benefits you are eligible to receive under:
- (1) state temporary disability income benefit laws;
- (2) state no fault auto insurance laws; or
- (3) any other compulsory benefit act or law (except Workers' Compensation and laws of like intent).

**Other Insurance Plans.** Any disability income benefits for which you are eligible under any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which you are eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay, or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits you receive under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
- (1) **disability benefits** for which you and any spouse or child is eligible, because of your Disability;
- (2) **unreduced retirement benefits** for which you and any spouse or child is eligible, because of your eligibility for unreduced retirement benefits; or
- (3) **reduced retirement benefits** actually received by you and any spouse or child, because of your receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
- (1) the federal Social Security Act, Jones Act or Railroad Retirement Act;
- (2) the Canada Pension Plan or Quebec Pension Plan;
- (3) any similar plan or act of any country, state, province or other political unit; or
- (4) any plan provided in place of one of the above plans.

**"Earnings"**, as used in this provision, means pay you earn or receive from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
- (1) salaried or hourly Employee's gross earnings (shown on Form W-2); including:
  - (a) wages, tips, commissions, bonuses and overtime pay; and
  - (b) any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
- (2) proprietor's net profit (figured from Form 1040, Schedule C);
- (3) professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
- (4) partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
- (5) Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 90 of 548
PageID #: 2044

**Recovery from Third Party.** Any amount you recover from a third party as a result of the Disability and which is specified to be for loss of time or loss of wages (whether by judgment, settlement or otherwise). The offset:

(1) will be reduced by attorney fees and other reasonable costs of recovery; and
(2) will not exceed 100% of the net settlement.

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Weekly Benefit:

(1) a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
(2) reimbursement for hospital, medical or surgical expense;
(3) reimbursement for attorney fees or other reasonable costs of claiming Other Income Benefits;
(4) group credit or mortgage disability insurance;
(5) early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
(6) any amounts under the Employer's Retirement Plan that:
  (a) represent your contributions; or
  (b) are received upon termination of employment without being disabled or retired;
(7) benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
(8) vacation pay, holiday pay, or severance pay; or
(9) disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

**RULES CONCERNING OTHER INCOME BENEFITS.** If you may be entitled to Other Income Benefits that affect Policy benefits, you are required to actively claim them. For example, if Social Security or other Government Retirement Plan benefits may be payable, you:

(1) must promptly apply for such benefits; and, if denied
(2) must file an appeal or request an administrative hearing, upon Company request.

If you fail to promptly pursue such benefits, the Company has the option to deny or suspend Weekly Benefits or to reduce them by an estimated amount.

If Workers' Compensation or similar benefits may be payable for the same Disability, you and your Employer are required to cooperate in filing for those benefits. The Company will require proof of the denial or duration of those benefits to confirm its liability under the Policy.

**Refunding Overpayments.** Upon receiving Other Income Benefits, you must refund any resulting overpayment of Weekly Benefits under the Policy. If you do not promptly refund an overpayment to the Company within 60 days, in a lump sum, then:

(1) the Company will reduce or eliminate future payments; and
(2) the Minimum Weekly Benefit will not apply, until the amount is repaid.

**Cost of Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Weekly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 91 of 548
PageID #: 2045

**RECURRENT DISABILITY.** **"Recurrent Disability"** means a Disability caused by an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Weekly Benefits were payable.

(1) A Recurrent Disability will be treated as a new period of Disability, if you:
   (a) have returned to your Own Occupation; and
   (b) have worked on a full-time basis, for two consecutive weeks or more.

   A new Day Benefits Begin and new Maximum Benefit Period will apply.

(2) A Recurrent Disability will be treated as part of the prior Disability, if you:
   (a) have returned to your Own Occupation; and
   (b) have worked on a full-time basis, for less than two consecutive weeks.

   The same Day Benefits Begin and same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.

To qualify for a Weekly Benefit for a Recurrent Disability, you must earn less than the percentage of Predisability Income specified in the Partial Disability Benefit section. Benefit payments will be subject to all other terms of the Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply when you become eligible for coverage under any other group short-term disability policy.

**EXCLUSIONS.** Weekly Benefits will not be payable for any period of Disability:

(1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
(2) during which you are not under the Regular Care of a Physician;
(3) which is the result of war (declared or undeclared) or any act of war;
(4) which is the result of a Sickness or Injury for which you receive benefits under Workers' Compensation or similar coverage; or
(5) which arises out of (or in the course of) any employment for wage or profit, when the Disability would be covered by Workers' Compensation or similar coverage if:
   (a) the Employer had enrolled you for such coverage; and
   (b) you and your Employer had cooperated in filing a claim under that plan.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 92 of 548
PageID #: 2046

**AMENDMENT TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000010209862**

**ISSUED TO: East Tennessee Iron & Metal Works, Inc.**

**Your Certificate is amended by adding the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF DISABILITY INCOME INSURANCE CARRIERS**

This provision prevents loss of disability income coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan"** means a prior carrier's group disability income policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to premium payments, the Policy will provide disability income coverage if you:

(1) were insured by the prior plan on its termination date; and
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE. Until you satisfy the Policy's Active Work rule, your disability income coverage will not exceed that provided by the prior plan, had it remained in force. The Company will pay:

(1) the benefit the prior plan would have paid; minus
(2) any amount for which the prior carrier is liable.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains unchanged.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Charles A. Brawley III

Officer of the Company

## What Does Lincoln Financial Do with Your Personal Information?

The Lincoln Financial companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information We May Collect and Use

We collect personal information about you:

- to help us identify you as a consumer, our customer, or our former customer;
- to process your requests and transactions;
- to offer investment, insurance, retirement, and other financial services to you;
- to pay your claim;
- to enhance our products and services;
- to tell you about our products or services we believe you may want and use; and
- as otherwise permitted by law.

The types of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name; address; Social Security number; your financial health; and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies:** If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer:** If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative to enroll you in the plan.

When you are no longer our customer, we continue to share your information as described in this notice.

## How We Share and Use Your Personal Information

We may share your personal information within our companies and with certain service providers. They may use this information:

- to process transactions you, your employer, or your group representative have requested;
- to provide customer service;
- to evaluate or enhance our products and services;
- to gain customer insight; to provide education and training to our workforce and customers; and/or
- to inform you of products or services we offer that you may find useful.

Our service providers may or may not be affiliated with us. Affiliates are companies related by common ownership or control. Nonaffiliates are companies not related by common ownership or control. They include:

- Financial service providers: third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with which we have joint marketing agreements. A joint marketing agreement is a formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include, but are not limited to, insurance providers and financial technology solutions.
- Non-financial companies and individuals: consultants; vendors; and companies that perform marketing services on our behalf.

Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products:

- We may share information about your application with credit bureaus.
- We may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers).
- We may provide information to regulatory authorities, law enforcement officials, and to other nonaffiliated or affiliated parties as permitted by law.
- In the event of a sale of all or part of our businesses, we may share customer information with the acquiror as part of the sale.
- **We do not sell or release your information to outside marketers who may want to offer you their own products and services unless we receive your express consent; nor do we release information we receive about you from a consumer reporting agency.**

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Lincoln chooses to share, and whether you can limit this sharing.

| Reasons we can share your personal information | Does Lincoln share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**—to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**—information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | No | We Don't Share |
| **For our affiliates to market to you** | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

Federal law gives you the right to limit only:

- sharing for our affiliates' everyday business purposes – information about your creditworthiness;
- sharing for our affiliates to market to you; and
- sharing for nonaffiliates to market to you.

State laws and individual companies may give you additional rights to limit sharing. California residents can review our California Privacy Notice located at https://www.lincolnfinancial.com/public/general/privacy/californiaprivacynotice.

## Security of Information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secure files, and buildings. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your Rights Regarding Your Personal Information

Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). We will send you notification within 30 business days if we need additional time to respond to your request. If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records because of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information, and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend, or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the recipients and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to exercise your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. **The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice.**

For general account service requests or inquiries unrelated to this Privacy Notice, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial companies:

First Penn-Pacific Life Insurance Company
Lincoln Retirement Services Company, LLC
Lincoln Life & Annuity Company of New York
Financial Investments Corporation (formerly
Lincoln Investment Advisors Corporation)

Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company, Inc.
Lincoln Variable Insurance Products Trust Lincoln
The Lincoln National Life Insurance Company
Lincoln Financial Insurance Agency Incorporated



**Lincoln/Fields 1999**

Tennova™ Heart

**TURKEY CREEK OFFICE**
10800 Parkside Drive, Suite 331
Knoxville, TN 37934
Phone: 865-392-3400
FAX: 865-392-3449

Knoxville HMA Cardiology PPM, LLC

Date: ______________________

To: ______________________

Attention: ______________________

Fax Number: ______________________

From: ______________________

Dept. Name: ______________________

Phone Number: (865) 392-3400

Fax Number: (865) 392-3449

Pages: ______________________
(includes the fax cover sheet)

Notes: ______________________

**Confidentiality Notice** The documents accompanying this transmission contain confidential health information that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been filled.

If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of the contents of these documents, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of these documents.

Fax Cover Sheet
gfax01 04/2015

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

FIELDS, DAVID 10/20/77 #98454 SHORT

* 01238330y10667 Last Page Admin

## 1. Patient Information

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number |
|---|---|---|---|
| David | L. | Fields | |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| 6' | 263.4 | 108/64 | East Tennessee Iron & Metal |

## 2. Diagnosis

| Primary ICD diagnostic Code (Required) | Primary ICD diagnosis Description |
|---|---|
| I42.0 | Non Ischemic Congestive Cardiomyopathy |

| Secondary ICD Diagnosis Code | Secondary ICD Diagnosis Description |
|---|---|
| I50.22 | Chronic Systolic heart failure |

Pregnancy: First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery __/__/__ ☐ Vaginal ☐ C-Section

Symptoms: dyspnea, Swelling, hypertension

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings):
Left ventricular function <35% on maximum tolerable medical therapy.
MRI of heart pending @ UT

## 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances:

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 02/01/2023 | 02/06/2023 | 02/06/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 02/06/2023 | 06/08/2023 | 06/23/2023 |

Dates hospital confined: __/__/__ to __/__/__

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 4. Limitations and Restrictions

Avoid heavy lifting
Restrictions (what the patient SHOULD NOT do)

Avoid chainsaw, welding
Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | | Standing | O | Crouching | | Overhead | |
| 6-10 lbs. | O | Walking | O | Crawling | | Desk Level | |
| 11-25 lbs. | N | Sitting | O | Grasping | | Below Waist | |
| 26-50 lbs. | N | Balancing | | Climbing | | | |
| 51-100 lbs. | N | Stooping | | Pushing | | these are until further notice. | |
| 100 + lbs. | N | Kneeling | | Pulling | | | |
| | | Fingering | | Bending | | | |

What job modifications would allow the patient to return to work?

## 5. Treatment

Medication optimization and probable subcutaneous ICD - this will be decided after cardiac MRI

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

## 6. Prognosis

guarded

Describe the patients prognosis for recovery

## 7. Physician's Information

Nilam Patel
Name

10800 Parkside Dr. #331
Street Address

Knoxville
City

TN
State

37934
Zip Code

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ___/___/______

Dressing ___/___/______

Transferring ___/___/______

Bathing ___/___/______

Toileting ___/___/______

Eating ___/___/______

Date patient experienced loss of

Cognitive Functioning: ___/___/______

Medication, possible SQ ICD
Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

___/___/______ to ___/___/______

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

865-392-3400
Phone Number

865-392-3449
Fax Number

[signature]
Signature

6/19/2023
Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia, and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________
(Last) (First) (Middle)

Date of Birth: ____________ Social Security Number: XXX-XX-____________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization.To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

FIELDS, David L (id #98454, dob:

## Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 06/08/2023 09:00AM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | NILAM PATEL, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. | | |

## Chief Complaint

**Transition of Care Encounter**
Left ventricular dysfunction, New Patient

## Patient's Care Team

**Primary Care Provider** (Primary Insurance): DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677
**Other:** W KYLE STRIBLING MD: 4230 HARDING RD STE 330, NASHVILLE, TN 37205, Ph (615) 222-3078, Fax (615) 222-5399 NPI: 1720241185
**Clinical Cardiac Electrophysiologist:** NILAM PATEL MD: 10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934, Ph (865) 392-3400, Fax (865) 392-3449 NPI: 1376664672

## Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

## Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 06/08/2023 08:50 am | **Wt:** 263.4 lbs 06/08/2023 09:06 am | **BP:** 108/64 sitting R arm 06/08/2023 09:06 am |
| **BMI:** 35.7 06/08/2023 09:06 am | **HR:** 65 06/08/2023 09:06 am | |

## Measurements

None recorded.

## Allergies

Reviewed Allergies
**PENICILLINS**: Rash

## Medications

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet every day by oral route for 90 days. | 06/08/23 | entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet twice a day by oral route for 90 days. | 06/08/23 | entered |
| **cetirizine 10 mg tablet**<br>Take 1 tablet(s) every day by oral route. | 06/08/23 | entered |
| **Entresto 49 mg-51 mg tablet**<br>Take 0.5 tablets twice a day by oral route for 90 days. | 06/08/23 | entered |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule every day by oral route. | 06/08/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet twice a day by oral route. | 06/08/23 | entered |
| **Farxiga 5 mg tablet** | 06/08/23 | entered |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name :

Sex/Age :

| | | | | | | |
|---|---|---|---|---|---|---|
| 5-29-23 | 93 | 56 | 60 | 2:30PM | 9:00AM | 250.4 |
| 5-30-23 | 94 | 58 | 62 | 2:00PM | 6:30AM | 254.0 |
| 5-31-23 | 100 | 57 | 63 | 1:15PM | 7:15AM | 252.2 |
| 6-1-23 | 98 | 54 | 63 | 10:00AM | 6:30AM | [illegible] 25[illegible].6 |
| 6-2-23 | 92 | 52 | 73 | 1:30PM | 6:45AM | 251.6 |
| 6-3-23 | 90 | 49 | 62 | 10:30AM | 8:30AM | 251.4 |
| 6-4-23 | 94 | 52 | 62 | 2:30PM | 10:00AM | 248.5 |
| 6-5-23 | 93 | 56 | 55 | 10:00AM | 7:00AM | 251.4 |
| 6-6-23 | 95 | 60 | 62 | 2:00PM | 7:00AM | 253.0 |
| 6-7-23 | 93 | 55 | 61 | 2:30PM | 7:00AM | 253.0 |
| 6-8-23 | 92 | 57 | 64 | 6:00PM | 6:00AM | 252.8 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name :

Sex/Age :

| | | | | | | |
|---|---|---|---|---|---|---|
| 5-2-23 | 104 | 57 | 67 | 7:15Am | 7:00Am | 252.0 |
| 5-3-23 | 95 | 56 | 62 | 11:00Am | 7:15Am | 253.6 |
| 5-4-23 | 92 | 51 | 68 | 9:00Am | 7:15Am | 253.3 |
| 5-5-23 | 96 | 51 | 70 | 8:15Am | 7:15Am | 254.0 |
| 5-6-23 | 93 | 54 | 55 | 10:00Am | 8:00AM | 253.0 |
| 5-7-23 | 91 | 51 | 67 | 3:30Pm | 8:15AM | 253.0 |
| 5-8-23 | 91 | 51 | 69 | 9:45Am | 8:15Am | 253.9 |
| 5-9-23 | 91 | 52 | 67 | 11:00Am | 6:15Am | 254.5 |
| 5-10-23 | 91 | 52 | 59 | 9:30Am | 7:00Am | 254.3 |
| 5-11-23 | 94 | 48 | 59 | 11:30Am | 7:00Am | 254.5 |
| 5-12-23 | 92 | 51 | 57 | 9:15Am | 8:00Am | 252.5 |
| 5-13-23 | 96 | 48 | 60 | 8:45Am | 8:15Am | 253.1 |
| 5-14-23 | 97 | 59 | 63 | 9:15Am | 8:15Am | 254.5 |
| 5-15-23 | 91 | 52 | 60 | 10:30Am | 10:30Am | 254.0 |
| 5-16-23 | 96 | 48 | 65 | 8:30Am | 7:00Am | 253.5 |
| 5-17-23 | 97 | 48 | 59 | 1:30Pm | 6:45Am | 254.5 |
| 5-18-23 | 97 | 51 | 60 | 1:45Pm | 6:45Am | 255.5 |
| 5-19-23 | 96 | 59 | 64 | 7:00Am | 6:30Am | 255.3 |
| 5-20-23 | 92 | 57 | 59 | 1:00Pm | 8:45Am | 255.5 |
| 5-21-23 | 91 | 53 | 62 | 10:30Am | 8:45Am | 256.5 |
| 5-22-23 | 98 | 60 | 71 | 6:45Am | 6:30Am | 256.3 |
| 5-23-23 | 95 | 58 | 66 | 3:45Pm | 6:30Am | 254.2 |
| 5-24-23 | 96 | 59 | 60 | 11:15Am | 6:30Am | 256.2 |
| 5-25-23 | 96 | 58 | 64 | 1:00Pm | 6:30Am | 254.0 |
| 5-26-23 | 97 | 57 | 66 | 3:30Pm | 6:30Am | 254.3 |
| 5-27-23 | 99 | 49 | 54 | 1:30Am | 10:00Am | 252.0 |
| 5-28-23 | 100 | 62 | 66 | 12:30Pm | 10:00Am | 252.5 |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name : D Fields

Sex/Age :

Pulse

| | | | | | | |
|---|---|---|---|---|---|---|
| 4-5-23 | 93 | 56 | 69 | 11:00AM | 6:00Am | 258.2 |
| 4-6-23 | 95 | 58 | 67 | 1:00Pm | 7:00AM | 256.9 |
| 4-7-23 | 93 | 57 | 68 | 2:00 Pm | 11:00AM | 255.5 |
| 4-8-23 | 93 | 55 | 59 | 4:30pm | 10:30Am | 252.6 |
| 4-9-23 | 88 | 43 | 64 | 10:45Am | 9:30Am | 252.1 |
| 4-10-23 | 90 | 58 | 62 | 2:00PM | 7:00AM | 254.0 |
| 4-11-23 | 95 | 58 | 59 | 11:00Am | 7:00AM | 253.5 |
| 4-12-23 | 96 | 58 | 66 | 8:00Am | 8:00Am | 255.6 |
| 4-13-23 | 94 | 56 | 63 | 8:45Am | 8:45AM | 254.8 |
| 4-14-23 | 91 | 51 | 61 | 8:00Am | 7:45Am | 254.9 |
| 4-15-23 | 96 | 55 | 69 | 8:30Am | 8:30AM | 254.4 |
| 4-16-23 | 98 | 58 | 66 | 10:30AM | 7:30Am | 255.4 |
| 4-17-23 | 105 | 52 | 69 | 9:30Am | 9:30AM | 255.5 |
| 4-18-23 | 90 | 52 | 68 | 7:45Am | 7:30AM | 255.9 |
| 4-19-23 | 92 | 56 | 62 | 7:30Am | 7:30Am | 256.5 |
| 4-20-23 | 92 | 56 | 64 | 8:00Am | 7:30Am | 258.9 |
| 4-21-23 | 99 | 59 | 65 | 7:00Am | 7:00AM | 257.7 |
| 4-22-23 | 95 | 53 | 58 | 11:00Am | 10:30Am | 257.3 |
| 4-23-23 | 91 | 51 | 57 | 9:15Am | 8:15Am | 259.0 |
| 4-24-23 | 94 | 56 | 61 | 8:00Am | 6:45AM | 257.4 |
| 4-25-23 | 98 | 48 | 66 | 11:00Am | 7:15Am | 257.2 |
| 4-26-23 | 101 | 58 | 65 | 6:45Am | 8:00Am | 257.5 |
| 4-27-23 | 99 | 56 | 62 | 9:00Am | 7:00Am | 258.0 |
| 4-28-23 | 92 | 53 | 59 | 9:30Am | 6:00AM | 256.5 |
| 4-29-23 | 92 | 55 | 59 | 9:45Am | 9:30Am | 256.4 |
| 4-30-23 | 94 | 56 | 66 | 3:00Pm | 9:15Am | 254.9 |
| 5-1-23 | 93 | 54 | 64 | 7:00Am | 7:00Am | 255.3 |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name : David F

Sex/Age :

| | | | | | | |
|---|---|---|---|---|---|---|
| 3-9-23 | 108 | 62 | Pule 62 | 10:00AM | | 272.5 |
| 3-10-23 | 100 | 60 | 66 | 11:00 | | 272.5 |
| 3-11-23 | 105 | 60 | 60 | 12:30 | | 269.2 |
| 3-12-23 | 104 | 59 | 60 | 11:00 | | 270.2 |
| 3-13-23 | 100 | 53 | 63 | 4:00 PM | | 268.2 |
| 3-14-23 | 100 | 58 | 63 | 9:15AM | | 268.9 |
| 3-15-23 | 98 | 59 | 64 | 8:30AM | | 267.5 |
| 3-16-23 | 101 | 58 | 60 | 8:00AM | | 264.8 |
| 3-17-23 | 98 | 57 | 71 | 8:00Am | | 265.4 |
| 3-18-23 | 103 | 69 | 70 | 6:00Am | 8:00Am → | 265.9 |
| 3-19-23 | 108 | 53 | 59 | 9:00AM | 800 → | 264.7 |
| 3-20-23 | 98 | 56 | 59 | 12:30PM | 6:30 | 265.0 |
| 3-21-23 | 104 | 58 | 60 | 8:00AM | 6:00Am | 264.6 |
| 3-22-23 | 100 | 58 | 58 | 9:00AM | 8:00 AM | 263.4 |
| 3-23-23 | 95 | 59 | 59 | 10:30Am | 7:00AM | 261.8 |
| 3-24-23 | 93 | 55 | 58 | 3:00Pm | 8:00AM | 261.8 |
| 3-25-23 | 96 | 43 | 6[illegible] | 1:45Pm | 9:45 Am | 261.6 |
| 3-26-23 | 97 | 52 | 63 | 8:00am | → | 260 |
| 3-27-23 | 107 | 58 | 59 | | 7:00AM | 259.7 |
| 3-28-23 | 99 | 58 | 64 | 7:30AM | 7:30 AM | 259.9 |
| 3-29-23 | 100 | 60 | 64 | 7:30Am | → | 256.5 |
| 3-30-23 | 98 | 58 | 64 | 11:00Am | 7:45AM | 257.3 |
| 3-31-23 | 100 | 63 | 62 | 1:00Pm | 8:00AM | 254.5 |
| 4-1-23 | 99 | 58 | 60 | 2:00PM | 8:00 Am | 252.5 |
| 4-2-23 | 95 | 56 | 63 | 8:30Am | 8:30AM | 254.7 |
| 4-3-23 | 95 | 56 | 65 | 11:30Am | 6:30 AM | 256.4 |
| 4-4-23 | 91 | 53 | 65 | 12:00Pm | 8:30 AM | 256.2 |

Take 1 tablet every day by oral route for 90 days.

**Multi Vitamin** 02/06/23 entered
Mens vitafusion 1 daily

**spironolactone 25 mg tablet** 06/08/23 entered
Take 1 tablet every day by oral route.

CPAP
immune plus
6/8/2023 bottles...bfm

## Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

## Problems

Reviewed Problems

- Obesity - Onset: 06/08/2023
- Obstructive sleep apnea syndrome - Onset: 06/08/2023
- Essential hypertension - Onset: 02/06/2023
- Nonischemic congestive cardiomyopathy - Onset: 06/08/2023
- First degree atrioventricular block - Onset: 06/08/2023
- Heart failure - Onset: 02/09/2023
- Left ventricular cardiac dysfunction - Onset: 03/06/2023
- History of SARS-CoV-2 - Onset: 06/08/2023

## Family History

Discussed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65)<br>- Cerebrovascular accident (died age: 65)<br>- Myocardial infarction (died age: 65)<br>- Diabetes mellitus<br>- Hypertensive disorder |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |
| Paternal Aunt | - Cerebrovascular accident |
| Mother | - Hypertensive disorder |
| Brother | - Hypertensive disorder |

No family history of sudden cardiac death 2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Discussed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 06/08/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional (Notes: ADL)
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Education and Occupation**
What is the highest grade or level of school you have completed or the highest degree you have received?: (Notes: local truck driver)
**Public Health and Travel**

**FIELDS, David L (id #98454, dob:**

Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
Cardiac catheterization (surg) - 2/2023
Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Discussed Past Medical History
CHEST PAIN: Y
CONGESTIVE HEART FAILURE: Y
GERD/REFLUX: Y
HIGH BLOOD PRESSURE/HYPERTENSION: Y
OBESITY: Y
PALPITATIONS: Y
SLEEP APNEA: Y
Notes: Please refer to Problem section for most recent PMH/NNP

## Screening

None recorded.

## HPI

Referred by Dr. Barry Michelson for ICD evaluation
Here with wife
Works as a truck driver
He is a nephew of Cindy-one of the nurses in our office

HTN for 15 yrs was seen by Dr.Michelson for it
diagnosed after covid infections
after 3rd covid episode he started feeling sob/tired/fatigue
thought it was sinus problem at first
No syncope or near syncope
denies chest pain/palpitation
Feels slightly better but still not back to normal
wearing lifevest and have not received alerts

Never smoked
No ETOH
No caffeine

## ROS

**Cardio Basic:** Cardiovascular Symptoms: no chest pressure or pain; no lightheadedness, fatigue, syncope, orthopnea, PND, claudication, dyspnea on exertion, or leg edema; and **palpitations (skipping)**.

**Constitutional:** Constitutional: no fever, night sweats, significant weight loss, or exercise intolerance.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds or nose/sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Respiratory:** Respiratory: no cough, wheezing, coughing up blood, or shortness of breath and**sleep apnea (uses cpap)**.

**Musculoskeletal:** Musculoskeletal: no muscle aches, arthralgias/joint pain, back pain, or swelling in the extremities.

**gastrointestinal:** gastrointestinal no nausea, vomitting, diarrhea, or constipation.

**Additionally reports:**
**I have reviewed these findings and agree. np**

## Physical Exam

**FIELDS, David L (id #98454, dob:**

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect.

**Eyes:** Lids and Conjunctivae: no discharge or pallor and non-injected and anicteric. Pupils: PERRLA.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Ears: no lesions on external ear. Nose: no lesions on external nose. Oropharynx: no cyanosis or pallor.

**Neck:** Neck: supple. Carotid Arteries: no bruits. Jugular Veins: normal jugular venous pressure. Thyroid: not enlarged, non tender, or no nodules.

**Lungs:** Respiratory Effort: unlabored. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Rate And Rhythm: regular. Heart Sounds: no rub, gallop, or click and normal S1. Systolic Murmur: not heard. Extremities: no cyanosis or edema.

**Peripheral Pulses:** Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender and soft and no bruit.

**Musculoskeletal:** Inspection: no joint tenderness or swelling and no erythema.

**Neurologic:** Gait: normal gait. Motor: normal strength and tone.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Nonischemic congestive cardiomyopathy -**
2022

LHC: 2/2023: normal coronaries, EF 10-15%, LVEDP 40, mod MR
Echo: 5/2023: EF 20%, mod LAE, mild AI/TR, mild to mod MR, RVSP 40, LVIDd6.56
Echo: 2/2023: EF 10-15%
EKG: 2/2023: ST 90, PR 220, QRS 126, RBBB/LPFB, QTc 443
EKG: 6/2023: SR 65, PR 260, QRS 131 RBBB/LPFB, QTc 433
Cardiac MRI: pending at UT

on Entresto 24-26mg BID/Farxiga 5mg daily/spironolactone 25mg daily/carvedilol 6.25mg BID

ICD is indicated for primary prevention of sudden cardiac arrest in patient with non ischemic cardiomyopathy. LV systolic function remain <35% despite maximum tolerable medical therapy for HF.

ICD implantation procedure was discussed in detail with benefit, risk and complication including but not limited to bleeding, infection, vascular injury, lung perforation, emergent surgery, emergent procedure and death. Future possibility of lead fracture, device infection, were discussed briefly. Importance of follow up in clinic or via remote monitoring system discussed. Patient understood well and prefer to pursue implantation. Defibrillation threshold testing and its risk/complication discussed. Its necessary for SQ ICD.

fup Dr.Michelson/Dr.Stribbling
I42.0: Dilated cardiomyopathy

- ELECTROCARDIOGRAM
- INSERTION OR REPLACEMENT OF PERMANENT SUBCUTANEOUS IMPLANTABLE DEFIBRILLATOR SYSTEM, WITH SUBCUTANEOUS ELECTRODE (SURG)
  Admission Status: Outpatient    Anesthesia: General
  Weight (lbs): 263

**2. Chronic systolic heart failure -**
as above
I50.22: Chronic systolic (congestive) heart failure

**3. Essential hypertension -**
2006
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

**4. History of SARS-CoV-2 -**

FIELDS, David L (id #98454, dob:

FIELDS, DAVI 8454 SHORT

* 91238331x10667 First Page Admin

3 episodes so far, no hospitalization
1st and 3rd was severe
diagnosed with HF after 3rd episode
Z86.16: Personal history of COVID-19

**5. First degree atrioventricular block** -
asymptomatic

I44.0: Atrioventricular block, first degree
- HEART BLOCKS: CARE INSTRUCTIONS

**6. Obstructive sleep apnea syndrome** -
2012
compliant to CPAP
G47.33: Obstructive sleep apnea (adult) (pediatric)
- SLEEP APNEA: CARE INSTRUCTIONS

**7. Obesity** -
BMI 35
weight loss advised by diet/exercise
E66.9: Obesity, unspecified
- WHEN YOU ARE OVERWEIGHT: CARE INSTRUCTIONS

ELECTROCARDIOGRAM
- Result Note: SR 65, PR 260, QRS 131 RBBB/LPFB, QTc 433

Return to Office
- Barry Michelson, MD for *Follow-up 15 at ETHC_South on 06/23/2023 at 01:45 PM

Encounter Sign-Off
Encounter signed-off by Nilam Patel, MD, 06/08/2023.

Encounter performed and documented by Nilam Patel, MD
Encounter reviewed & signed by Nilam Patel, MD on 06/08/2023 at 9:55am

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

FIELDS, DA\ 18454 SHORT

* 01238330y10667 Last Page Admin

### 1. Patient Information

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number |
|---|---|---|---|
| David | L. | Fields | |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| 6' | 263.4 | 108/64 | East Tennessee Iron & Metal |

### 2. Diagnosis

| Primary ICD diagnostic Code (Required) | Primary ICD diagnosis Description |
|---|---|
| I42.0 | Non Ischemic Congestive Cardiomyopathy |

| Secondary ICD Diagnosis Code | Secondary ICD Diagnosis Description |
|---|---|
| I50.22 | Chronic Systolic heart failure |

Pregnancy: First Treated __/__/____ Estimated Delivery __/__/____ Date of Delivery __/__/____ ☐ Vaginal ☐ C-Section

Symptoms: dyspnea, swelling, hypertension

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings):
Left ventricular function <35% on maximum tolerable medical therapy.
MRI of heart pending @ UT

### 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances:

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 02/01/2023 | 02/06/2023 | 02/06/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 02/06/2023 | 06/08/2023 | 06/23/2023 |

Dates hospital confined: __/__/____ to __/__/____

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

Avoid heavy lifting
Restrictions (what the patient SHOULD NOT do)

Avoid chainsaw, welding
Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | | Standing | O | Crouching | | Overhead | |
| 6-10 lbs. | O | Walking | O | Crawling | | Desk Level | |
| 11-25 lbs. | N | Sitting | O | Grasping | | Below Waist | |
| 26-50 lbs. | N | Balancing | | Climbing | | | |
| 51-100 lbs. | N | Stooping | | Pushing | | these are | |
| 100 + lbs. | N | Kneeling | | Pulling | | until further | |
| | | Fingering | | Bending | | notice. | |

What job modifications would allow the patient to return to work?

**5. Treatment**

Medication optimization and probable subcutaneous ICD - this will be decided after cardiac MRI

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

**6. Prognosis**

guarded

Describe the patients prognosis for recovery

**7. Physician's Information**

Nilam Patel
Name

10800 Parkside Dr. #331
Street Address

Knoxville | TN | 37934
City | State | Zip Code

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ___/___/___

Dressing ___/___/___

Transferring ___/___/___

Bathing ___/___/___

Toileting ___/___/___

Eating ___/___/___

Date patient experienced loss of Cognitive Functioning: ___/___/___

Medication, possible SQ ICD
Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

___/___/___ to ___/___/___

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

865-392-3400
Phone Number

865-392-3449
Fax Number

[signature] 6/19/2023
**Signature** **Date**

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion. (Please see FRAUD NOTICES attached)

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia, and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________
(Last) (First) (Middle)

Date of Birth: ____________ Social Security Number: XXX-XX-____________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ______________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ______________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________





**Lincoln/Fields 2019**

100/60 to 130/80

# BLOOD PRESSURE LOG

Name :

Sex/Age :

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|
| 5-29-23 | 93 | 56 | 60 | 2:30Pm | 9:00AM | 250.4 |
| 5-30-23 | 94 | 58 | 62 | 2:00Pm | 6:30AM | 254.0 |
| 5-31-23 | 100 | 57 | 63 | 1:15Pm | 7:15Am | 252.2 |
| 6-1-23 | 98 | 54 | 63 | 10:00Am | 6:30AM | 251.6 |
| 6-2-23 | 92 | 52 | 73 | 1:30Pm | 6:45AM | 251.6 |
| 6-3-23 | 90 | 49 | 62 | 10:30Am | 8:30AM | 251.4 |
| 6-4-23 | 94 | 52 | 62 | 2:30Pm | 10:00AM | 248.5 |
| 6-5-23 | 93 | 56 | 55 | 10:00Am | 7:00Am | 251.4 |
| 6-6-23 | 95 | 60 | 62 | 2:00PM | 7:00Am | 253.0 |
| 6-7-23 | 93 | 55 | 61 | 2:30Pm | 7:00Am | 253.0 |
| 6-8-23 | 92 | 57 | 64 | 6:00Am | 6:00AM | 252.8 |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name :

Sex/Age :

| | | | | | | |
|---|---|---|---|---|---|---|
| 5-2-23 | 104 | 57 | 67 | 7:15Am | 7:00Am | 252.0 |
| 5-3-23 | 95 | 56 | 62 | 11:00Am | 7:15Am | 253.6 |
| 5-4-23 | 92 | 51 | 68 | 9:00Am | 7:15Am | 253.3 |
| 5-5-23 | 96 | 51 | 70 | 8:15Am | 7:15Am | 254.0 |
| 5-6-23 | 93 | 54 | 55 | 10:00Am | 8:00 AM | 253.0 |
| 5-7-23 | 91 | 51 | 67 | 3:30Pm | 8:15AM | 253.0 |
| 5-8-23 | 91 | 51 | 69 | 9:45Am | 8:15Am | 253.9 |
| 5-9-23 | 91 | 52 | 67 | 11:00Am | 6:15Am | 254.5 |
| 5-10-23 | 91 | 52 | 59 | 9:30Am | 7:00AM | 254.3 |
| 5-11-23 | 94 | 48 | 59 | 11:30Am | 7:00Am | 254.5 |
| 5-12-23 | 92 | 51 | 57 | 9:15Am | 8:00Am | 252.5 |
| 5-13-23 | 96 | 48 | 60 | 8:45Am | 8:15Am | 253.1 |
| 5-14-23 | 97 | 59 | 63 | 9:15Am | 8:15Am | 254.5 |
| 5-15-23 | 91 | 52 | 60 | 10:30Am | 10:30Am | 254.0 |
| 5-16-23 | 96 | 48 | 65 | 8:30Am | 7:00Am | 253.5 |
| 5-17-23 | 97 | 48 | 59 | 1:30Pm | 6:45Am | 254.5 |
| 5-18-23 | 97 | 51 | 60 | 1:45Pm | 6:45Am | 255.5 |
| 5-19-23 | 96 | 59 | 64 | 7:00Am | 6:30Am | 255.3 |
| 5-20-23 | 92 | 57 | 59 | 1:00Pm | 8:45Am | 255.5 |
| 5-21-23 | 91 | 53 | 62 | 10:30Am | 8:45AM | 256.5 |
| 5-22-23 | 98 | 60 | 71 | 6:45Am | 6:30Am | 256.3 |
| 5-23-23 | 95 | 58 | 66 | 3:45Pm | 6:30Am | 254.2 |
| 5-24-23 | 96 | 59 | 60 | 11:15Am | 6:30Am | 256.2 |
| 5-25-23 | 96 | 58 | 64 | 1:00Pm | 6:30Am | 254.0 |
| 5-26-23 | 97 | 57 | 66 | 3:30Pm | 6:30AM | 254.3 |
| 5-27-23 | 99 | 49 | 54 | 1:30Am | 10:00AM | 252.0 |
| 5-28-23 | 100 | 62 | 66 | 12:30Pm | 10:00Am | 252.5 |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name : D Fields

Sex/Age :

Pulse

| | | | | | | |
|---|---|---|---|---|---|---|
| 4-5-23 | 93 | 56 | 69 | 11:00AM | 6:00Am | 258.2 |
| 4-6-23 | 95 | 58 | 67 | 1:00PM | 7:00AM | 256.9 |
| 4-7-23 | 93 | 57 | 68 | 2:00PM | 11:00AM | 255.5 |
| 4-8-23 | 93 | 55 | 59 | 4:30pm | 10:30Am | 252.6 |
| 4-9-23 | 88 | 43 | 64 | 10:45Am | 9:30AM | 252.1 |
| 4-10-23 | 90 | 58 | 62 | 2:00PM | 7:00AM | 254.0 |
| 4-11-23 | 95 | 58 | 59 | 11:00Am | 7:00AM | 253.5 |
| 4-12-23 | 96 | 58 | 66 | 8:00Am | 8:00Am | 255.6 |
| 4-13-23 | 94 | 56 | 63 | 8:45Am | 8:45AM | 254.8 |
| 4-14-23 | 91 | 51 | 61 | 8:00Am | 7:45Am | 254.9 |
| 4-15-23 | 96 | 55 | 69 | 8:30Am | 8:30AM | 254.4 |
| 4-16-23 | 96 | 58 | 66 | 10:30AM | 7:30Am | 255.4 |
| 4-17-23 | 105 | 52 | 69 | 9:30Am | 9:30AM | 255.5 |
| 4-18-23 | 90 | 52 | 68 | 7:45Am | 7:30AM | 255.9 |
| 4-19-23 | 92 | 56 | 62 | 7:30Am | 7:30Am | 256.5 |
| 4-20-23 | 92 | 56 | 64 | 8:00Am | 7:30Am | 258.9 |
| 4-21-23 | 99 | 59 | 65 | 7:00Am | 7:00AM | 257.7 |
| 4-22-23 | 95 | 53 | 58 | 11:00Am | 10:30Am | 257.3 |
| 4-23-23 | 91 | 51 | 57 | 9:15Am | 8:15Am | 259.0 |
| 4-24-23 | 94 | 56 | 61 | 8:00Am | 6:45AM | 257.4 |
| 4-25-23 | 98 | 48 | 66 | 11:00Am | 7:15Am | 257.2 |
| 4-26-23 | 101 | 58 | 65 | 6:45Am | 8:00Am | 257.5 |
| 4-27-23 | 99 | 56 | 62 | 9:00Am | 7:00Am | 258.0 |
| 4-28-23 | 92 | 53 | 59 | 9:30Am | 6:00AM | 256.5 |
| 4-29-23 | 92 | 55 | 59 | 9:45Am | 9:30Am | 256.4 |
| 4-30-23 | 94 | 56 | 66 | 3:00Pm | 9:15Am | 254.9 |
| 5-1-23 | 93 | 54 | 64 | 7:00Am | 7:00Am | 255.3 |

100/60 to 130/80

# BLOOD PRESSURE LOG

Name : David F

Sex/Age :

| | | | | | | |
|---|---|---|---|---|---|---|
| 3-9-23 | 108 | 62 | Pule 62 | 10:00AM | | wt 272.5 |
| 3-10-23 | 100 | 60 | 66 | 11:00 | | 272.5 |
| 3-11-23 | 105 | 60 | 60 | 18:30 | | 269.2 |
| 3-12-23 | 104 | 59 | 60 | 11:00 | | 270.2 |
| 3-13-23 | 100 | 53 | 63 | 4:00 PM | | 268.2 |
| 3-14-23 | 100 | 58 | 63 | 9:15AM | | 268.9 |
| 3-15-23 | 98 | 59 | 64 | 8:30Am | | 267.5 |
| 3-16-23 | 101 | 58 | 60 | 8:00AM | | 264.8 |
| 3-17-23 | 98 | 57 | 71 | 8:00Am | | 265.4 |
| 3-18-23 | 103 | 69 | 70 | 6:00Am | 8:00Am → | 265.9 |
| 3-19-23 | 108 | 53 | 59 | 9:00AM | 8:00 → | 264.7 |
| 3-20-23 | 98 | 56 | 59 | 12:30PM | 6:30 | 265.0 |
| 3-21-23 | 104 | 58 | 60 | 8:00AM | 6:00 Am | 264.6 |
| 3-22-23 | 100 | 58 | 58 | 9:00AM | 8:00 AM | 263.4 |
| 3-23-23 | 95 | 59 | 59 | 10:30Am | 7:00AM | 261.8 |
| 3-24-23 | 93 | 55 | 58 | 3:00PM | 8:00 AM | 261.8 |
| 3-25-23 | 96 | 43 | 6[illegible] | 1:45PM | 9:45 Am | 261.6 |
| 3-26-23 | 97 | 52 | 63 | 8:00Am | → | 260 |
| 3-27-23 | 107 | 58 | 59 | | 7:00AM | 259.7 |
| 3-28-23 | 99 | 58 | 64 | 7:30AM | 7:30 AM | 259.9 |
| 3-29-23 | 100 | 60 | 64 | 7:30AM | → | 256.5 |
| 3-30-23 | 98 | 58 | 64 | 11:00Am | 7:45AM | 257.3 |
| 3-31-23 | 100 | 63 | 62 | 1:00PM | 8:00AM | 254.5 |
| 4-1-23 | 99 | 58 | 60 | 2:00PM | 8:00 AM | 252.5 |
| 4-2-23 | 95 | 56 | 63 | 8:30Am | 8:30AM | 254.7 |
| 4-3-23 | 95 | 56 | 65 | 11:30Am | 6:30 AM | 256.4 |
| 4-4-23 | 91 | 53 | 65 | 12:00PM | 8:30 AM | 256.2 |

FIELDS, David L (id #98454, dob:

## Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 06/08/2023 09:00AM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | NILAM PATEL, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. | | |

## Chief Complaint

**Transition of Care Encounter**
Left ventricular dysfunction, New Patient

## Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677
**Other:** W KYLE STRIBLING MD: 4230 HARDING RD STE 330, NASHVILLE, TN 37205, Ph (615) 222-3078, Fax (615) 222-5399 NPI: 1720241185
**Clinical Cardiac Electrophysiologist:** NILAM PATEL MD: 10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934, Ph (865) 392-3400, Fax (865) 392-3449 NPI: 1376664672

## Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

## Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 06/08/2023 08:50 am | **Wt:** 263.4 lbs 06/08/2023 09:06 am | **BP:** 108/64 sitting R arm 06/08/2023 09:06 am |
| **BMI:** 35.7 06/08/2023 09:06 am | **HR:** 65 06/08/2023 09:06 am | |

## Measurements

None recorded.

## Allergies

Reviewed Allergies
**PENICILLINS**: Rash

## Medications

Reviewed Medications

| | |
|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet every day by oral route for 90 days. | 06/08/23 entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet twice a day by oral route for 90 days. | 06/08/23 entered |
| **cetirizine 10 mg tablet**<br>Take 1 tablet(s) every day by oral route. | 06/08/23 entered |
| **Entresto 49 mg-51 mg tablet**<br>Take 0.5 tablets twice a day by oral route for 90 days. | 06/08/23 entered |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule every day by oral route. | 06/08/23 entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet twice a day by oral route. | 06/08/23 entered |
| **Farxiga 5 mg tablet** | 06/08/23 entered |

FIELDS, David L (id #98454, dob:

Take 1 tablet every day by oral route for 90 days.

**Multi Vitamin** 02/06/23 entered
Mens vitafusion 1 daily

**spironolactone 25 mg tablet** 06/08/23 entered
Take 1 tablet every day by oral route.

CPAP
immune plus
6/8/2023 bottles...bfm

## Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

## Problems

Reviewed Problems

- Obesity - Onset: 06/08/2023
- Obstructive sleep apnea syndrome - Onset: 06/08/2023
- Essential hypertension - Onset: 02/06/2023
- Nonischemic congestive cardiomyopathy - Onset: 06/08/2023
- First degree atrioventricular block - Onset: 06/08/2023
- Heart failure - Onset: 02/09/2023
- Left ventricular cardiac dysfunction - Onset: 03/06/2023
- History of SARS-CoV-2 - Onset: 06/08/2023

## Family History

Discussed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| | - Hypertensive disorder |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |
| Paternal Aunt | - Cerebrovascular accident |
| Mother | - Hypertensive disorder |
| Brother | - Hypertensive disorder |

No family history of sudden cardiac death 2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Discussed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 06/08/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional (Notes: ADL)
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Education and Occupation**
What is the highest grade or level of school you have completed or the highest degree you have received?: (Notes: local truck driver)
**Public Health and Travel**

**FIELDS, David L (id #98454, dob:**

Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
  Cardiac catheterization (surg) - 2/2023
  Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Discussed Past Medical History
CHEST PAIN: Y
CONGESTIVE HEART FAILURE: Y
GERD/REFLUX: Y
HIGH BLOOD PRESSURE/HYPERTENSION: Y
OBESITY: Y
PALPITATIONS: Y
SLEEP APNEA: Y
Notes: Please refer to Problem section for most recent PMH/NNP

## Screening

None recorded.

## HPI

Referred by Dr. Barry Michelson for ICD evaluation
Here with wife
Works as a truck driver
He is a nephew of Cindy-one of the nurses in our office

HTN for 15 yrs was seen by Dr.Michelson for it
diagnosed after covid infections
after 3rd covid episode he started feeling sob/tired/fatigue
thought it was sinus problem at first
No syncope or near syncope
denies chest pain/palpitation
Feels slightly better but still not back to normal
wearing lifevest and have not received alerts

Never smoked
No ETOH
No caffeine

## ROS

**Cardio Basic:** Cardiovascular Symptoms: no chest pressure or pain; no lightheadedness, fatigue, syncope, orthopnea, PND, claudication, dyspnea on exertion, or leg edema; and **palpitations (skipping)**.

**Constitutional:** Constitutional: no fever, night sweats, significant weight loss, or exercise intolerance.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds or nose/sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Respiratory:** Respiratory: no cough, wheezing, coughing up blood, or shortness of breath and**sleep apnea (uses cpap)**.

**Musculoskeletal:** Musculoskeletal: no muscle aches, arthralgias/joint pain, back pain, or swelling in the extremities.

**gastrointestinal:** gastrointestinal no nausea, vomitting, diarrhea, or constipation.

**Additionally reports:**
**I have reviewed these findings and agree. np**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect.

**Eyes:** Lids and Conjunctivae: no discharge or pallor and non-injected and anicteric. Pupils: PERRLA.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Ears: no lesions on external ear. Nose: no lesions on external nose. Oropharynx: no cyanosis or pallor.

**Neck:** Neck: supple. Carotid Arteries: no bruits. Jugular Veins: normal jugular venous pressure. Thyroid: not enlarged, non tender, or no nodules.

**Lungs:** Respiratory Effort: unlabored. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Rate And Rhythm: regular. Heart Sounds: no rub, gallop, or click and normal S1. Systolic Murmur: not heard. Extremities: no cyanosis or edema.

**Peripheral Pulses:** Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender and soft and no bruit.

**Musculoskeletal:** Inspection: no joint tenderness or swelling and no erythema.

**Neurologic:** Gait: normal gait. Motor: normal strength and tone.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Nonischemic congestive cardiomyopathy -**
2022

LHC: 2/2023: normal coronaries, EF 10-15%, LVEDP 40, mod MR
Echo: 5/2023: EF 20%, mod LAE, mild AI/TR, mild to mod MR, RVSP 40, LVIDd6.56
Echo: 2/2023: EF 10-15%
EKG: 2/2023: ST 90, PR 220, QRS 126, RBBB/LPFB, QTc 443
EKG: 6/2023: SR 65, PR 260, QRS 131 RBBB/LPFB, QTc 433
Cardiac MRI: pending at UT

on Entresto 24-26mg BID/Farxiga 5mg daily/spironolactone 25mg daily/carvedilol 6.25mg BID

ICD is indicated for primary prevention of sudden cardiac arrest in patient with non ischemic cardiomyopathy. LV systolic function remain <35% despite maximum tolerable medical therapy for HF.

ICD implantation procedure was discussed in detail with benefit, risk and complication including but not limited to bleeding, infection, vascular injury, lung perforation, emergent surgery, emergent procedure and death. Future possibility of lead fracture, device infection, were discussed briefly. Importance of follow up in clinic or via remote monitoring system discussed. Patient understood well and prefer to pursue implantation. Defibrillation threshold testing and its risk/complication discussed. Its necessary for SQ ICD.

fup Dr.Michelson/Dr.Stribbling
I42.0: Dilated cardiomyopathy

- ELECTROCARDIOGRAM
- INSERTION OR REPLACEMENT OF PERMANENT SUBCUTANEOUS IMPLANTABLE DEFIBRILLATOR SYSTEM, WITH SUBCUTANEOUS ELECTRODE (SURG)

  Admission Status: Outpatient — Anesthesia: General

  Weight (lbs): 263

**2. Chronic systolic heart failure -**
as above
I50.22: Chronic systolic (congestive) heart failure

**3. Essential hypertension -**
2006
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

**4. History of SARS-CoV-2 -**

**FIELDS, David L (id #98454, dob:**

FIELDS, DAVID 454 SHORT
* 91238331x10667 First Page Admin

3 episodes so far, no hospitalization
1st and 3rd was severe
diagnosed with HF after 3rd episode
Z86.16: Personal history of COVID-19

**5. First degree atrioventricular block -**
asymptomatic

I44.0: Atrioventricular block, first degree
- HEART BLOCKS: CARE INSTRUCTIONS

**6. Obstructive sleep apnea syndrome -**
2012
compliant to CPAP
G47.33: Obstructive sleep apnea (adult) (pediatric)
- SLEEP APNEA: CARE INSTRUCTIONS

**7. Obesity -**
BMI 35
weight loss advised by diet/exercise
E66.9: Obesity, unspecified
- WHEN YOU ARE OVERWEIGHT: CARE INSTRUCTIONS

ELECTROCARDIOGRAM
- Result Note: SR 65, PR 260, QRS 131 RBBB/LPFB, QTc 433

Return to Office
- Barry Michelson, MD for *Follow-up 15 at ETHC_South on 06/23/2023 at 01:45 PM

Encounter Sign-Off
Encounter signed-off by Nilam Patel, MD, 06/08/2023.

Encounter performed and documented by Nilam Patel, MD
Encounter reviewed & signed by Nilam Patel, MD on 06/08/2023 at 9:55am

Date: Thu Jun 01 09:35:39 CDT 2023
From: Becky Saathoff <Becky.Saathoff@lfg.com>
To: melindafields2@gmail.com
Message-ID: <532563445.3460.1685630139978.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230012611 (SECURE)

E-communication from Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230012611

Please review the attached letter and/or document(s) regarding the Claim #1230012611 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Becky Saathoff**
**Claims Examiner II, STD 2**
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 3057
Fax: 402-951-0635
Email: Becky.Saathoff@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge®

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 1, 2023

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986200000
Claim Number: 1230012611
Claimant: David Fields

Dear Mr. Fields:

We are writing to you regarding your claim for Short Term Disability benefits. We previously approved benefits to 06/02/2023 and have received additional medical documentation for consideration of additional benefits.

Based on the information provided to our office, benefits are being considered to the Short Term Disability maximum benefit period of 08/09/2023.

This letter does not guarantee benefits for Long Term Disability. Eligibility and certain Policy provisions may exclude you from your Long Term Disability benefits. We will evaluate your capacity to perform work-related activity, taking into consideration your restrictions and limitations and treatment plan supported by objective medical evidence. Objective medical evidence can include office and treatment notes, therapy notes, test results, consultation reports and/or laboratory results, etc.

At this time, your file is being referred to Long Term Disability specialist for further handling of your claim.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Becky Saathoff
800-423-2765 x 3057
Claims Examiner II, STD 2
The Lincoln National Life Insurance Company

CC: East Tennessee Iron & Metal Works, Inc.
ATTN: Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Date: Thu Jun 01 09:35:42 CDT 2023
From: Becky Saathoff <Becky.Saathoff@lfg.com>
To: robin@easttniron.com
E-communication from Lincoln Financial Group
Message-ID: <246835883.3465.1685630142780.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230012611 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230012611

Please review the attached letter and/or document(s) regarding the Claim #1230012611 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.


**Becky Saathoff**
**Claims Examiner II, STD 2**
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 3057
Fax: 402-951-0635
Email: Becky.Saathoff@lfg.com



Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 1, 2023

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986200000
Claim Number: 1230012611
Claimant: David Fields

Dear Mr. Fields:

We are writing to you regarding your claim for Short Term Disability benefits. We previously approved benefits to 06/02/2023 and have received additional medical documentation for consideration of additional benefits.

Based on the information provided to our office, benefits are being considered to the Short Term Disability maximum benefit period of 08/09/2023.

This letter does not guarantee benefits for Long Term Disability. Eligibility and certain Policy provisions may exclude you from your Long Term Disability benefits. We will evaluate your capacity to perform work-related activity, taking into consideration your restrictions and limitations and treatment plan supported by objective medical evidence. Objective medical evidence can include office and treatment notes, therapy notes, test results, consultation reports and/or laboratory results, etc.

At this time, your file is being referred to Long Term Disability specialist for further handling of your claim.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Becky Saathoff
800-423-2765 x 3057
Claims Examiner II, STD 2
The Lincoln National Life Insurance Company

CC: East Tennessee Iron & Metal Works, Inc.
ATTN: Robin McLellan
P.O. Box 460
Rogersville, TN 37857

# Tennova™ Heart

**TURKEY CREEK OFFICE**
10800 Parkside Drive, Suite 331
Knoxville, TN 37934
Phone: 865-392-3400
FAX: 865-392-3449

**Knoxville HMA Cardiology PPM, LLC**

**Date:** 5.24.23

**To:** Lincoln National

**Attention:** Becky Saathoff

**Fax Number:** 1-877-843-3950

**From:** Dr. Barry Michelson

**Dept. Name:** Cindy Pittman RN

**Phone Number:** (865) 392-3400 nurse direct line 865.392.3415

**Fax Number:** (865) 392-3449

**Pages:** 6
(includes the fax cover sheet)

**Notes:** David Fields
Claim # 12300126l1

**Confidentiality Notice** The documents accompanying this transmission contain confidential health information that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been filled.

If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of the contents of these documents, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of these documents.

Fax Cover Sheet
gfax01 04/2015

**FIELDS, David L (id #98454, dob:**

Claim # 12300012611

# Care Plan for David Fields

Generated on 05/24/2023 01:18 PM

## After Visit Note

**Date:** 05/24/2023

**Patient Notes:** Patient continues to wear Life Vest. He will have a clinical cardiac electrophysilogy consult with Dr. Nilam Patel on June 8, 2023. He continues to follow up with the heart failure specialist, Dr. Stribling. He is scheduled for an MRI, heart function and morphology with & without contrast scheduled for 6/15/23 at University of Tennessee Medical Center, Knoxville.

## Reasons for Care Plan

Primary idiopathic dilated cardiomyopathy
Left ventricular cardiac dysfunction
Essential hypertension

## Patient Goals

Improved left ventricular ejection fraction

## Patient Tasks

Continue wearing Life Vest as directed
continue meds and testing as indicated

## Medication List

| | |
|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 04/19/23 filled |
| **Entresto 49 mg-51 mg tablet**<br>Take 0.5 tablet(s) twice a day by oral route for 90 days. | 04/10/23 entered |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 90 days. | 04/18/23 filled |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 entered |
| **spironolactone 25 mg tablet**<br>Take 1 tablet(s) every day by oral route. | 03/08/23 filled |

3/8/23...memory...csp

## Care Team Members

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677
**Other:** W KYLE STRIBLING MD: 4230 HARDING RD STE 330, NASHVILLE, TN 37205, Ph (615) 222-3078, Fax (615) 222-5399 NPI: 1720241185
**Clinical Cardiac Electrophysiologist:** NILAM PATEL MD: 10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934, Ph (865) 392-3400, Fax (865) 392-3449 NPI: 1376664672

ETHC_KNOXVILLE HMA CARDIOLOGY PPM LLC • 10800 PARKSIDE DR STE 331, KNOXVILLE TN 37934-1982

**FIELDS, David L (id #98454, dob:**

FIELDS, DAVID 10/20/77 #98454

* 71231320w10667 Admin

Claim #
12300126 11

Tennova™ Heart

Knoxville HMA Cardiology Turkey Creek
10800 PARKSIDE DR STE 331
KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400, Fax: (865) 392-3449

**Return to Work / School**

**Patient:** FIELDS, DAVID L
**DOB:**
**Address:** 1199 STANLEY VALLEY
ROGERSVILLE, TN 37857

**Date:** 05/24/2023
**Patient ID:** 98454

Note to Patient:

___ Was Seen in my office on: ___

___ May return to work/school on: ___

✓ May Not return to work/school for: 3 months

___ Work limitations: ___

___ May Not participate in physical education: ___

___ May return to physical education: ___

___ Limitations for physical education: ___

___ May Not participate in jury duty: ___

[signature]

**FIELDS, David L (id #98454, dob:**

# Referral Order

Claim # 1230012611

05/09/2023 12:00am05/24/2023 01:05 PM

| To Provider | From Provider |
|---|---|
| **NILAM PATEL MD**<br><br>**10800 PARKSIDE DR STE 331**<br>**KNOXVILLE, TN 37934**<br>**Phone:**<br>**Phone: (865) 392-3400**<br>**Fax:**<br>**Fax: (865) 392-3449** | **BARRY MICHELSON, MD**<br>**ETHC_Turkey Creek**<br>**10800 PARKSIDE DR STE 331**<br>**KNOXVILLE, TN 37934-1982**<br>**Phone: (865) 392-3400**<br>**Fax: (865) 392-3449** |

## Referral Order Information

| | |
|---|---|
| **Diagnosis** | **Left ventricular cardiac dysfunction**<br>**ICD-10: I50.30: Unspecified diastolic (congestive) heart failure** |
| **Order Name** | **Orders included: 1**<br><br>**Left ventricular cardiac dysfunction**<br>**ICD-10: I50.30: *Unspecified* diastolic (congestive) heart failure**<br>• **CLINICAL CARDIAC ELECTROPHYSIOLOGIST REFERRAL**<br>**Schedule Within: provider's discretion** |
| **Notes** | |

## Patient Information

| | |
|---|---|
| **Patient Name** | **FIELDS, DAVID L** |
| **Sex - DOB - Age** | ***M*** **45yo** |
| **Address** | |
| **Phone** | **H:**<br>**M:** |
| **Primary Insurance** | **BCBS-TN (PPO)**<br>**ID: ZEB902762636**<br>**Group: 87792**<br>**Policy Holder: FIELDS, DAVID L**<br><br>**Eligibility: Member is eligible. (Verified 05/10/2023)** |
| **Secondary Insurance** | **None recorded.** |

Electronically Signed by: BARRY MICHELSON, MD



BARRY MICHELSON, MD
05/09/2023 12:00am

# Medical Reorder Form

ZOLL LifeVest®

Region ________ Z# ________________

**_PLEASE COMPLETE ALL FIELDS_**

Page 2 of 3

Claim # 12300126 11

**_1) Patient Information and Condition_**

a) Patient Name (Print First and Last Name) DAVID FIELDS

b) Date of Birth (MM/DD/YYYY) ________ / ________ / ____________

c) Estimated Start Date (MM/DD/YYYY) 05 / 17 / 2023

d) Estimated Length of Need: ☐ 2 months ☐ 1 month ☑ Other 3 months

*Note: If left blank, the minimum length of 1 month will be applied, and a new order will be required to extend use.*

e) Reason for LifeVest - HCPCS: K0606 (Check One):

FIELDS, DAVII 38454 ZOLL L

* 41227693x10667 First Page Order

- ☐ Cardiac arrest due to VF or sustained VT
- ☐ Familial or inherited condition with SCA risk
- ☐ MI with an EF of ≤35%
- ☑ DCM (including NICM) with an EF of ≤35%
- ☐ ICD explantation
- ☐ Other condition with high risk of VT/VF (Describe) ____________________

*Note: Documentation supporting Reason for LifeVest is required. Please see the following page for instructions.*

**_2) LifeVest Settings_** (Check one of the two options below to either Use the Existing LifeVest Settings or Change to New LifeVest Settings. If neither box is checked, Existing LifeVest Settings will be applied.)

☑ Use the Existing LifeVest Settings (Shown below for each setting)

| a) VT heart rate threshold | b) VF heart rate threshold | c) Treatment energy |
|---|---|---|
| 160 | 190 | 1st 150 2nd 150 3rd 150 4th 150 5th 150 |
| *(Increments of 10)* | *(Increments of 10)* | *(Increments of 25 between 75J – 150J)* |

☐ Change to New LifeVest Settings (Enter value for each setting. Existing settings will be applied if left blank)

| a) VT heart rate threshold **Default: 150 BPM** | b) VF heart rate threshold **Default: 200 BPM** | c) Treatment energy **Default: 150 Joules, all five shocks** |
|---|---|---|
| | | 1st ____ 2nd ____ 3rd ____ 4th ____ 5th ____ |
| *(Increments of 10)* | *(Increments of 10)* | *(Increments of 25 between 75J – 150J)* |

**_3) Prescriber Information_**

a) Prescriber's Designated Contact Person ____________________

b) Contact Person's Phone Number ( ______ ) – ______ – ________

c) **Prescriber Name** (Print First and Last Name) BARRY I MICHELSON

d) **Prescriber Signature—_Do Not Stamp_** [signature]

e) **Signature Date** (MM/DD/YYYY) 5 / 3 / 2023

f) **Prescriber National Provider Identifier (NPI #)** 1538159017

**Once complete, please fax form back to ZOLL at 866-567-7615**

90h0003_rf_revc

BT ID: 283761

1|8303|1489477

Claim # 12300126l1

# Treatment Plan

**Including Wearable Cardioverter Defibrillator (WCD)**

ZOLL. LifeVest

***PLEASE COMPLETE ALL FIELDS***

Patient Name (Print First and Last Name) DAVID FIELDS

Date of Birth (MM/DD/YYYY) ____ Z# Z6289102

1. What is the date of the patient's next appointment? (MM/DD/YYYY) 06 / 23 / 2023

2. Is there a planned date for ICD placement? ☐YES ☒NO
   a. If yes, what is the (planned) date of ICD placement? (MM/DD/YYYY) ____ / ____ / ____
   b. If no, what is planned date to re-assess EF? (MM/DD/YYYY) 05 / 08 / 2023 EF = 20% (echo 5/8/23)
   and heart failure clinic wants cardiac MRI on 6/15/2023

***Section #3 and #4 must be completed by the treating Healthcare Professional***

3. If your patient is not scheduled to receive an ICD, what is the clinical reason an ICD is not appropriate at this time for your patient?

   plan to see how effective med management & optimization
   pt. to have MRI for function of heart & has been referred to EP doctor.

Please outline the medical management plan for the patient during this time.

Pt currently taking GDMT - Entresto - carvedilol - Farxiga and spironolactone. Unable to uptitrate meds due to hypotensive response.

4. Please check all that apply:
   ☒ Patient is at risk for sudden cardiac death and is currently adhering with my instructions related to WCD use.
   ☒ Patient is at risk for sudden cardiac death and has agreed to adhere with my instructions for future WCD use.
   ☐ I have discharged this patient from the LifeVest (WCD)

*My signature attests that this information is true, accurate, and complete to the best of my knowledge.*

Signature [signature] Date 5/3/23

Once complete, please fax form back to ZOLL at 866-567-7615

This communication is privileged and confidential and could contain protected health information.
If received in error, please contact ZOLL immediately at 800.543.3267.

Phone 800.543.3267 Fax 866.567.7615

FIELDS, DAVID 198454 ZOLL L

* 41227693y10667 Last Page Order

22a0125_revc

# Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:**

**Attention: Becky Saathoff**

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 05/10/2023**

**This document contains the following records of the patient:**
- **Imaging Results**

**Note:** CLAIM # 1230012611

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation.
[ID:98454-A-10667]

## Imaging Results

US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
(#9128815, 05/08/2023 12:00am)

Tennova Healthcare

**Jefferson Memorial Hospital**

110 Hospital Dr.
Jefferson City, TN 37760
Phone: (865) 471-2500

Status: Finalized

# TTE echo report

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | FIELDS DAVID | | | **Procedure Staff** | |
| **MRN:** | 00809309 | | | **Referring Physician:** | Barry Michelson, MD |
| **Date of birth:** | | **Age:** | 45 year(s) | **Sonographer:** | Kristin Briggs, RCS |
| **Gender:** | Male | **BMI:** | 34.31 kg/m² | **Interpreting physician:** | Barry Michelson, MD |
| **Weight:** | 114.76 kg | **BSA:** | 2.35 m² | | |
| **Height:** | 182.88 cm | | | | |

**Procedure Information**

| | | | |
|---|---|---|---|
| **Exam date time:** | 5/8/2023 12:53 PM | | |
| **Procedure type:** | Echo | | |
| **Proc. sub type:** | TTE procedure: NI Echo TTE 2D Complete w Color Doppler. | | |
| **Blood pressure:** | 91 / 51 mmHg | **Accession no:** | 3002312800279 |
| **HR:** | 59 bpm | **FIN Number:** | 4463150 |
| | | **Study location:** | Jefferson City |
| | | **Technical quality:** | Adequate visualization |

**Indications**

Congestive heart failure.

**Physician Conclusions**

**Summary:**

Left ventricle size is moderately dilated.
Left ventricular systolic function is estimated at 20%.
Diastolic filling pattern Grade II, which is consistent with moderately elevated LV filling pressure..
Right ventricle systolic function is mildly impaired.

Mild aortic regurgitation.
Left atrium is mild to moderately enlarged.
Mild to moderate mitral regurgitation is present.
Mild tricuspid regurgitation is present.
Right ventricular systolic pressure is mildly elevated and is estimated at 40 mmHg.



PAGE 3/6 * RCVD AT 5/10/2023 10:59:22 AM [Eastern Daylight Time] * SVR:VA1PWFAX301/3 * DNIS:8778433950 * CSID:athena * ANI:2148973891 * DURATION (mm-ss):02-41

**Jefferson Memorial Hospital**

Tennova Healthcare

110 Hospital Dr.
Jefferson City, TN 37760
Phone: (865) 471-2500

Status: Finalized

# TTE echo report

**Obervations**

| | |
|---|---|
| **Left ventricle:** | Left ventricle size is moderately dilated.<br>Left ventricular systolic function is estimated at 20%.<br>Diastolic filling pattern Grade II, which is consistent with moderately elevated LV filling pressure. |
| **Right ventricle:** | Right ventricle systolic function is mildly impaired. |
| **Left atrium:** | Left atrium is mild to moderately enlarged. |
| **Right atrium:** | Right atrium is normal in size. |
| **Mitral valve:** | Mitral valve appears normal.<br>Mild to moderate mitral regurgitation is present. |
| **Aortic valve:** | Aortic valve structure is trileaflet and is structurally normal.<br>Mild aortic regurgitation. |
| **Tricuspid valve:** | Tricuspid valve appears normal.<br>Mild tricuspid regurgitation is present.<br>Right ventricular systolic pressure is mildly elevated and is estimated at 40 mmHg. |
| **Pulmonic valve:** | Pulmonic valve appears normal. |
| **Pericardial:** | No evidence of pericardial effusion.<br>Pericardium appears normal. |
| **Aorta/Great vessels:** | Normal aortic root. |
| **Pleural:** | No evidence of pleural effusion. |

Electronically signed by Barry Michelson, MD (Interpreting physician) on 5/9/2023 at 3:16 PM

Tennova Healthcare

**Jefferson Memorial Hospital**

110 Hospital Dr.
Jefferson City, TN 37760
Phone: (865) 471-2500

Status: Finalized

# TTE echo report

**Left Ventricle**

| | | | |
|---|---|---|---|
| Diastolic dimension: | 6.56 cm **(4.2 - 5.8 cm)** | Systolic dimension: | 5.99 cm **(2.5 - 4 cm)** |
| 2D septum diastolic: | 0.62 cm | FS Normal Range (30-45%): | 9 % |
| 2D post wall diastolic: | 0.86 cm | | |
| LV mass (ASE formula): | 198.13 g | | |
| LV mass index: | 84.16 g/m² | | |
| RWT: | 0.26 | | |

**LV M-Mode**

**LV Ejection Fraction**

| | | | |
|---|---|---|---|
| LVEDV Teichholz: | 282 ml **(62 - 150 ml)** | LVESV Teichholz: | 215 ml **(21 - 61 ml)** |
| LVEDVI Teichholz: | 119.79 ml/m² **(34 - 74 ml/m²)** | LVESVI Teichholz: | 91.33 ml/m² **(11 - 31 ml/m²)** |
| EF Teichholz: | 24 % | | |

**LV 3D/Strain**

**Right Ventricle**

| | | | |
|---|---|---|---|
| Diastolic dimension: Normal Range (2.7-3.4cm): | 2.94 cm | Systolic pressure: | 40.47 mmHg |

**Left Atrium**

| | | | |
|---|---|---|---|
| **LA diameter (2D) Normal Range (2.0-4.0cm):** | 4.1 cm | **LA/Aorta (2D):** | 1.41 |
| **LA area:** | 26.7 cm² | **LA volume index:** | 38.23 ml/m² **(16 - 34 ml/m²)** |
| **LA volume:** | 90 ml | | |

**Right Atrium**

| | | | |
|---|---|---|---|
| | | **Systolic pressure:** | 10 mmHg |

Jefferson Memorial Hospital

Tennova Healthcare

110 Hospital Dr.
Jefferson City, TN 37760
Phone: (865) 471-2500

Status: Finalized

# TTE echo report

**Aortic Valve**

| | | | |
|---|---|---|---|
| **Peak velocity Normal Range (0.9-1.7m/s) :** | 0.97 m/s | **Mean velocity:** | 0.69 m/s |
| **Peak gradient Normal Range (<10mmHG):** | 3.76 mmHg | **Mean gradient Normal Range (<10mmHG) :** | 2 mmHg |
| **AV VTI:** | 17 cm | **Dimensionless index:** | 0.77 |
| **Peak velocity:** | 74.4 cm/s | **Mean velocity:** | 52.5 cm/s |
| **Peak gradient:** | 2 mmHg | **Mean gradient:** | 1 mmHg |
| | | **LVOT VTI Normal Range (0.7-1.1m/s):** | 14 cm |

**Mitral Valve**

| | | | |
|---|---|---|---|
| **Peak E-wave Normal Range (0.60-1.30m/s) :** | 80.5 cm/s | **Peak gradient:** | 2.59 mmHg |
| **MR velocity:** | 366 cm/s | **Deceleration time Normal Range (160-240msec):** | 179 ms |

**Tricuspid Valve**

| | | | |
|---|---|---|---|
| **Estimated RVSP:** | 33 mmHg | **Estimated RAP:** | 10 mmHg |
| **TR velocity:** | 276 cm/s | **TR gradient:** | 30.47 mmHg |

**Pulmonic Valve**

| | | | |
|---|---|---|---|
| **Peak velocity Normal Range (0.5-1.0m/s):** | 78.3 cm/s | **Peak gradient:** | 2.45 mmHg |
| | | **Estimated PASP:** | 40.47 mmHg |
| | | **Acceleration time:** | 53 ms |

**Aorta/Great Vessels**

| | | | |
|---|---|---|---|
| **Aortic root (2D):** | 2.9 cm | **ACS (M-mode) Normal Range (1.5-26cm):** | 1.8 cm |

Electronically signed by Barry Michelson, MD (interpreting physician) on 5/9/2023 at 3:15 PM

# Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** BECKY SAATHOFF PAC

5200 S 56TH ST, LINCOLN, NE 68516
Phone: (402) 421-6200
Fax: (402) 421-6070

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 04/19/2023**

**This document contains the following records of the patient:**
- **Clinical Documents**
- **Encounters and Procedures**
- **Imaging Results**

**Note:** Claim# 1230012611
David L. Fields dob

This is an update to Mr. Fields STD claim. He will be having an MRI of the heart as well as another echocardiogram to evaluate his heart function in the very near future.

When we have those results, we will forward them to you as well. Should you have questions, please do not hesitate to contact me at 865-392-3415 is my direct line.

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation.
[ID:98454-A-10667]

## Clinical Documents

# CONFIDENTIAL Fax

**FROM:**

WARREN K STRIBLING MD
10800 Parkside Drive, KNOXVILLE, TN 37934-1922
Phone: (615) 222-3945
Fax: (615) 222-5399

**TO:**

BARRY I MICHELSON MD
Fax: (865) 392-3449

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:117720256-H-7654]

STMP_Saint Thomas Medical Partners • 10800 Parkside Drive, KNOXVILLE TN 37934-1922

**FIELDS, David L (id #3189388, dob:**
**Ascension Medical Group Saint Thomas Turkey Creek**
10800 Parkside Drive
KNOXVILLE, TN 37934-1922
Phone: (615) 222-3945
Fax: (615) 222-5399

**Send To:** Barry I Michelson MD
**Encounter Summary - Progress Note**
Date Printed: 04/17/2023
Appointment Date:04/13/2023

Documents sent via fax will include the followingmessage:

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:117720256-H-7654]

| | |
|---|---|
| **Patient** | Fields, David L (45yo, M) #3189388 |
| **DOB** | |

Patient Demographics:

| | | | |
|---|---|---|---|
| **Address** | | **Home Phone** | |
| | | **Work Phone** | |

Encounter Notes:

| | | |
|---|---|---|
| **History of Present Illness** | Mr. Fields is a 45 yo male with PMH significant for COVID19 diagnosed in 2022 and more recent diagnosis of NICM EF 10-15% along with CSHF after presenting in Feb w/ wt gain, abd swelling, LE swelling, dyspnea and reflux symptoms. He has been referred by Dr. Michaelson for additional med mgmt.<br><br>Since then, he has done much better. He has lost as much as 40 lbs and reports improvement in all of his symptoms. He is able to walk regularly but is not specific about distance or duration. He has some positional dizziness and Entresto was recently reduced bc of hypotension. Denies syncope. | |
| **Past Medical History** | (none recorded) | |
| **Patient Social History** | None recorded | |
| **Medications** | **aspirin 81 mg tablet,delayed release**<br>Take 1 tablet(s) every day by oral route. | 04/12/23 entered |
| | **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 04/12/23 entered |
| | **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 04/12/23 entered |
| | **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 04/12/23 entered |
| | **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 04/12/23 entered |
| | **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route. | 04/12/23 entered |

| | |
|---|---|
| | **multivitamin** 1 tab daily — 04/12/23 entered |
| **Allergies List** | Reviewed Allergies<br>**PENICILLINS** |
| **Family History** | None recorded |
| **Vaccine History** | None recorded |
| **Review of Systems** | None recorded |
| **Vitals** | **Wt:** 266.2 lbs (120.75 kg) 04/13/2023 01:06 pm — **BP:** 94/61 04/13/2023 01:54 pm — **Pulse:** 62 bpm 04/13/2023 01:54 pm |
| **Physical Exam** | **Constitutional:** General Appearance: appears stated age and **overweight**. Level of Distress: comfortable.<br>**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.<br>**Eyes:** Lids and Conjunctivae: no discharge, pallor, or xanthelasma and anicteric.<br>**ENMT:** Lips, Teeth, and Gums: normal dentition. Ears: no lesions on external ear and (normal) hearing. Nose: no lesions on external nose or nasal discharge and nares patent. Oropharynx: no cyanosis or pallor.<br>**Neck:** Neck: supple and trachea midline. Jugular Veins: normal jugular venous pressure.<br>**Lungs:** Respiratory Effort: unlabored. Auscultation: no wheezing, rales, or rhonchi and clear.<br>**Cardiovascular:** Rate And Rhythm: regular. Heart Sounds: normal S1 and S2 and no rub, gallop, or click. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: no cyanosis or edema.<br>**Abdomen:** Inspection and Palpation: non distended or tender and soft and no masses. Liver: non tender or no hepatomegaly. Spleen: non tender.<br>**Musculoskeletal:** Inspection: no joint tenderness or swelling and normal back.<br>**Neurologic:** Gait: normal gait. Neurological: no focal deficits and cranial nerves intact.<br>**Skin:** Inspection and Palpation: warm and dry. Nails: no clubbing. |
| **Results/Interpretations** | None recorded |

| | |
|---|---|
| **Assessment and Plan** | **1. Chronic systolic heart failure -**<br>He has stage C HF w/ improving NYHA class II symptoms. He is on reasonable GDMT that cannot be uptitrated due to relative hypotension and is not requiring loop diuretics any longer. c/w current GDMT and check BMP and BNP after recent initiation of spiro. He will fu with us in 6mo and Dr. Michaelson in interim<br>I50.22: Chronic systolic (congestive) heart failure<br>• BASIC METABOLIC PANEL (7)<br>• B-TYPE NATRIURETIC PEPTIDE<br><br>**2. Nonischemic congestive cardiomyopathy -**<br>? etiology. May be r/t myocarditis from COVID19 or idiopathic. c/w current GDMT. Would advise repeat assessment of LVSF in 4-6 weeks w/ cardiac MRI rather than echo to determine need for PP ICD and better evaluate etiology of CM. No options for CRT based on recent EKG review. Will dw Dr. Michaelson.<br>I42.0: Dilated cardiomyopathy<br><br>**3. Body mass index 40+ - severely obese -**<br>This is improving. I have advised ongoing wt loss and moderate exercise.<br>Z68.42: Body mass index [BMI] 45.0-49.9, adult<br>• BODY MASS INDEX: CARE INSTRUCTIONS<br>• LEARNING ABOUT HEALTHY WEIGHT<br><br>**4. Obstructive sleep apnea syndrome -**<br>On CPAP and tolerating.<br>G47.33: Obstructive sleep apnea (adult) (pediatric)<br>• SLEEP APNEA: CARE INSTRUCTIONS<br><br>Return to Office<br>• Warren K Stribling MD for Established Patient 20 at STPS_Turkey Creek Hrt Failure on 10/12/2023 at 11:20 AM |

Electronically Signed by: WARREN K STRIBLING MD



Patient Name: **FIELDS. DAVID**
MRN: **809309** FIN: **8945682** DOB:
Admission Date: **02/17/23 11:40:00**

Cardiac Catheterization Report

Facility:
Tennova - Turkey Creek Medical Center
10820 Parkside Dr
Knoxville TN 379341956

# * Final Report *

**Indication for Surgery**
Unexplained heart failure

**Preoperative Diagnosis**
Severe left ventricular dysfunction

**Postoperative Diagnosis**
Dilated nonischemic cardiomyopathy

**Operation**
Left heart catheterization
Coronary angiography
Left ventriculography
Conscious sedation 21 minutes

**Surgeon(s)**
Michaelson

**Assistant**
Kate Williams

**Circulating Nurse**
Gigi Ragos

**Anesthesia**
Moderate sedation

**Estimated Blood Loss**
5 cc

**Findings**
Left coronary artery

Left main
Peers small

Underfilled but no plaque or stenosis identified

Left anterior descending artery
This is a vessel which does reach the cardiac apex but is small in caliber. No significant stenoses were identified

Circumflex

| | |
|---|---|
| Result type: | Cardiac Catheterization Report |
| Result date: | February 17, 2023 15:13 EST |
| Result status: | Auth (Verified) |
| Result title: | Op Note |
| Performed by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Verified by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Encounter info: | 8945682, TN Turkey Creek Medical Center, Outpatient in a Bed, 2/17/2023 - 2/17/2023 |

Patient Name: **FIELDS, DAVID**
MRN: **809309** FIN: **8945682** DOB:
Admission Date: **02/17/23 11:40:00**

Cardiac Catheterization Report

Facility:
Tennova - Turkey Creek Medical Center
10820 Parkside Dr
Knoxville TN 379341956

Is a small nondominant system. Angiographically it appears normal

Right coronary artery
This is a large dominant system. Angiographically appears normal. Gives rise to acute marginals, moderate to large sized PDA which almost the apex. There are several posterolateral branches which are free of disease

Left ventricle
Left ventricle is dilated. There is severe global left ventricular dysfunction EF estimated at 10 to 15%. There is probably moderate mitral regurgitation. Left ventricular end-diastolic pressure was estimated at approximately 40 mmHg. There was no gradient across the aortic valve.

Impression dilated nonischemic cardiomyopathy
Recommendations
Intensify medical regimen consider ICD consider advanced heart failure consult

**Specimen(s)**
None

**Complications**
None

**Technique**
The patient was prepped and draped in usual fashion. Using Seldinger technique a 6 French sheath was introduced in the right radial artery. Patient received 5 mg of intra-arterial verapamil 300 mcg of intra-arterial nitroglycerin and 4000 units of intravenous heparin. We advanced a Jacky catheter into the ascending aorta. We used this catheter selectively engage both the right and left coronaries. We exchanged for a pigtail catheter. We crossed the aortic valve. EDP was measured. Left ventriculography was performed in the RAO projection. A pullback was performed. The catheter was removed over a J-wire. The sheath was removed and hemostasis obtained with a TR band.

Conscious sedation patient received conscious sedation for period of 21 minutes. He received aliquots of fentanyl and Versed administered under my direct supervision. He was continuously monitored with pulse oximetry ECG and visually.

**Date of Operation**
February 17, 2023

**Start Time**
2:14 PM

**End Time**
2:36 PM

**Signature Line**

| | |
|---|---|
| Result type: | Cardiac Catheterization Report |
| Result date: | February 17, 2023 15:13 EST |
| Result status: | Auth (Verified) |
| Result title: | Op Note |
| Performed by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Verified by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Encounter info: | 8945682, TN Turkey Creek Medical Center, Outpatient in a Bed, 2/17/2023 - 2/17/2023 |

Patient Name: **FIELDS. DAVID**
MRN: **809309** FIN: **8945682** DOB: ·
Admission Date: **02/17/23 11:40:00**

Cardiac Catheterization Report

Facility:
Tennova - Turkey Creek Medical Center
10820 Parkside Dr
Knoxville TN 379341956

Electronically Signed on 02/17/2023 15:19 EST

MICHELSON, BARRY I MD

| | |
|---|---|
| Result type: | Cardiac Catheterization Report |
| Result date: | February 17, 2023 15:13 EST |
| Result status: | Auth (Verified) |
| Result title: | Op Note |
| Performed by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Verified by: | MICHELSON, BARRY I MD on February 17, 2023 15:19 EST |
| Encounter info: | 8945682, TN Turkey Creek Medical Center, Outpatient in a Bed, 2/17/2023 - 2/17/2023 |

## Encounters and Procedures

Clinical Encounter Summaries

**Encounter Date: 03/08/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 03/08/2023 09:30AM |
| **DOB** | | **Service Dept.** | ETHC_South |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Followup: Heart failure
Followup: Essential hypertension
Followup: Left ventricular cardiac dysfunction

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

**Ht:** 6 ft 03/08/2023 09:31 am

**Wt:** 281 lbs 03/08/2023 09:31 am

**BP:** 110/62 sitting L arm 03/08/2023 09:31 am
110/58 standing L arm 03/08/2023 09:32 am

**BMI:** 38.1 03/08/2023 09:31 am

**HR:** 72 03/08/2023 09:32 am

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS**: Rash

Medications

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **carvediloL 12.5 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 03/08/23 | prescribed |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/10/23 | filled |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/10/23 | filled |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/10/23 | filled |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |
| **spironolactone 25 mg tablet**<br>Take 1 tablet(s) every day by oral route. | 03/08/23 | prescribed |

3/8/23...memory...csp

## Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

## Problems

Reviewed Problems
- Left ventricular cardiac dysfunction - Onset: 03/06/2023
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

## Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker

How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 03/08/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Cardiac catheterization (surg)
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Documents for Discussion

**Discussed the following documents:**
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW - 03/06/23
- UNKNOWN - 02/17/23
  Results:
  - SODIUM: 138
  - POTASSIUM: 5.1
  - CHLORIDE: 105
  - CARBON DIOXIDE: 26
  - BUN: 12
  - CREATININE: 0.88
  - GLUCOSE: 85
  - CALCIUM: 9.2
  - EGFR NON AFRICAN AMERICAN: 104
  - EGFR AFRICAN AMERICAN: 120
  - ANION GAP: 7
  - BUN/CREA RATIO: 14
  - OSMOL CALC: 285
- PT/INR - 02/17/23
  Results:
  - **PT: 17.0 HIGH**
  - INR: 1.4
- PARTIAL THROMBOPLASTIN TIME - 02/17/23
  Result:
  - THROMBOPLASTIN TIME PARTIAL: 31.8
- UNKNOWN - 02/17/23
  Results:
  - WBC: 4.9
  - RBC CNT: 5.00
  - HGB: 15.2
  - HCT: 45.1
  - MCV: 90
  - MCH: 30
  - MCHC: 34

- RDW: 14.3
- PLT CNT: 234
- MPV: 10.2
- INSTR WBC: 4.9

• US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW - 02/09/23
• UNKNOWN - 02/09/23
• CARDIAC CATHETERIZATION (SURG) - TENNOVA HEALTH (CENTRAL SCHEDULING ALL LOCATIONS) - 02/20/23
• CARDIAC CATHETERIZATION (SURG) - TENNOVA HEALTHCARE (MEDICAL RECORDS) - 02/17/23
• CONGESTIVE HEART FAILURE CLINIC - 03/06/23

Screening

None recorded.

HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

Catheterization was performed. Left ventricle was severely dilated with an EF estimated 10 to 15% end-diastolic pressure was estimated at 40 mmHg. He did not have significant blockages in his coronaries. Appropriate medical therapy was continued. He has lost approximately 20 pounds with diuresis. Overall the patient's breathing has improved. He is not having significant orthopnea. His exercise tolerance is marginally better. He is scheduled to see the St. Thomas heart failure service in April. He has not been monitoring blood pressures at home but I suggested that he do this. His ICD has not discharged (ZOLL LifeVest).

ROS

**Constitutional:** Constitutional: **weight loss (23 lbs)**.

**Cardiovascular:** Cardiovascular: **palpitations**.

**Respiratory:** Respiratory: **cough**.

**Neurologic:** Neurologic: **dizziness**.

Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally**.

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Primary idiopathic dilated cardiomyopathy** -
Patient has severe global left ventricular dysfunction in the absence of significant coronary disease. We will add spironolactone to his medical regiment increase the dose of carvedilol. He is scheduled for follow-up or evaluation by advanced heart failure team from St. Thomas. He will continue with the LifeVest until we reassess LV function probably in 2 months
I42.0: Dilated cardiomyopathy

- BASIC METABOLIC PANEL
- NT PROBNP
- BASIC METABOLIC PANEL
- carvedilol 12.5 mg tablet - Take 1 tablet(s) twice a day by oral route. Qty: (180) tablet Refills: 3
  Pharmacy: U-SAVE DRUG CENTER
- spironolactone 25 mg tablet - Take 1 tablet(s) every day by oral route. Qty: (90) tablet Refills: 3
  Pharmacy: U-SAVE DRUG CENTER

**2. Heart failure** -
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified

**3. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

### Return to Office

- to see Barry Michelson, MD at ETHC_South on or around 05/07/2023

## Encounter Sign-Off

Encounter signed-off by Barry Michelson, MD, 03/08/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 03/08/2023 at 9:53am

## Imaging Results

FIELDS, David L (id #98454, dob:

ICD MONITORING, REMOTE (#8993017, 03/18/2023 2:15pm)

# ECG Report

ZOLL

**Patient Name:** DAVID FIELDS
**Date of Birth**
**Prescriber:** Barry Michelson
**Rx Expiration Date:** 2023 05 16

**Date:** 2023-03-18 02:15:17 PM
**Last Monitor Upload:** 2023-03-29

## Event Details

| | |
|---|---|
| Type | Detected Not Treated |
| Date/Time | 2023 03 18 02:15:17 PM |
| Length | 52 seconds |

## Treatment Settings

| | |
|---|---|
| VT Rate Threshold | 160 bpm |
| VF Rate Threshold | 190 bpm |
| VT Response Time | 60 seconds |
| VF Response Time | 25 seconds |
| Pulse Energy | 150,150,150,150,150 Joules |











**Lincoln/Fields 2062**

## ECG Report

ZOLL.

**Patient Name:** DAVID FIELDS
**Date of Birth:**

**Date:** 2023-03-18 02:15:17 PM
**Last Monitor Upload:** 2023-03-29

**Event Date/Time:** 2023-03-18 02:15:17 PM

**Event Type:** Detected Not Treated

SS Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




FB Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




SS Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




FB Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second





©2021 ZOLL Medical Corporation
Confidential Patient Information
Printed 2023-03-30 02:34 PM

# ECG Report

ZOLL.

**Patient Name:** DAVID FIELDS
**Date of Birth:**

**Date:** 2023-03-18 02:15:17 PM
**Last Monitor Upload:** 2023-03-29

**Event Date/Time:** 2023-03-18 02:15:17 PM

**Event Type:** Detected Not Treated

SS Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




FB Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




SS Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




FB Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second





©2021 ZOLL Medical Corporation
Confidential Patient Information

# ECG Report

ZOLL.

**Patient Name:** DAVID FIELDS
**Date of Birth:**

**Date:** 2023-03-18 02:15:17 PM
**Last Monitor Upload:** 2023-03-29

**Event Date/Time:** 2023-03-18 02:15:17 PM

**Event Type:** Detected Not Treated

SS Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second




FB Channel: Amplitude Scale = 1 mv/10mm Recording Speed - 25 mm/Second



Date: Tue Feb 21 12:37:57 CST 2023
From: Becky Saathoff <Becky.Saathoff@lfg.com>
To: robin@easttniron.com
E-communication from Lincoln Financial Group
Message-ID: <340415694.72.1677004677314.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230012611 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230012611

Please review the attached letter and/or document(s) regarding the Claim #1230012611 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Becky Saathoff**
**Claims Examiner II, STD 1**
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 3057
Fax: 402-951-0635
Email: Becky.Saathoff@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

February 21, 2023

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986200000
Claim Number: 1230012611
Claimant: David Fields

Dear Mr. Fields:

This letter is to advise you your claim for Short Term Disability benefits has been approved beginning on 02/08/2023.

The policy issued to East Tennessee Iron & Metal Works, Inc., has a 14 day elimination period during which no benefits are payable. Your benefits will begin on 02/22/2023. Your first payment will be received separately within the next business week. Subsequent payments will be issued weekly or biweekly depending on your specific policy language.

Based on your Basic Weekly Earnings, your benefit will equal $740.00. However, if you are receiving Other Income Benefits as defined by your policy, your benefit may be reduced based on policy provisions.

We are currently unable to determine the recovery period for your condition.

- We will continue to work with you and your physician's office for updates and to obtain additional medical records to help us better understand your prognosis and treatment
- You do not need to do anything further at this time

Let us know as soon as possible if you return to work on a full-time or part-time basis to avoid an overpayment.

At this time your benefits are being allowed to 05/19/2023. This date represents the recovery period that has been suggested by your physician or the usual and customary recovery period for your disability and occupation.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you are unable to return to work on this date due to your disability, please provide the attached form to your doctor to complete and return to Lincoln Financial for consideration of additional disability benefits; or provide medical documentation that supports continued disability.

Medical documentation may include, but is not limited to, office and treatment notes, physical examination notes, progress notes, testing and or laboratory results, operative reports, hospitalization records, all types of therapy notes and consultations. This information may be obtained from your physicians and should be provided at your own expense. A note from your physician without any supporting documentation may not be sufficient to approve further benefits.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Becky Saathoff
800-423-2765 x 3057
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

Enclosure(s): Group Continuance DISB APS

CC: East Tennessee Iron & Metal Works, Inc.
ATTN: Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

## GROUP CONTINUANCE OF DISABILITY
## (PLEASE see FRAUD NOTICES attached)

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
East Tennessee Iron & Metal Works, Inc. IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

### Attending Physician's Statement

1. Patient's Name David Fields ______ Date of Birth ______
2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any) ______
3. a) Date of First Treatment ______
   b) Date of Most Recent Treatment ______
   c) Frequency of Treatments ______
   d) Type of Treatment Rendered ______
   e) Is surgery scheduled? If so, when? ______
4. The patient has been continuously Totally Disabled (unable to perform regular job) from ______ to ______
   The patient has been continuously Partially Disabled (some restrictions or light duty) from ______ to ______
   If the patient is still disabled, when should the patient be able to return to work? ______
5. Remarks or Comments: ______
6. List Restrictions and Limitations: ______
7. Physical Impairment:

- ☐ Class 1 – No limitation – capable of heavy work – No restrictions (1-10%)
- ☐ Class 2 – Medium manual activity (15 – 30%)
- ☐ Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
- ☐ Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
- ☐ Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments (if applicable)

- ☐ Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)
- ☐ Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
- ☐ Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
- ☐ Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
- ☐ Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date ______ (Month Day Year) Signed ______ (Attending Physician, No Stamps, please) /Degree/Specialty ______

Street Address ______

City, State ______

Phone Number ______

Fax Number ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫį̨óóǫéą̨ą́ǫą́íę́ę.

E-communication from Lincoln Financial Group

Date: Tue Feb 21 12:37:53 CST 2023
From: Becky Saathoff <Becky.Saathoff@lfg.com>
To: melindafields2@gmail.com
Message-ID: <1964096220.67.1677004673097.JavaMail.webadmin@ne1plwas107.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230012611 (SECURE)

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230012611

Please review the attached letter and/or document(s) regarding the Claim #1230012611 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Becky Saathoff**
**Claims Examiner II, STD 1**
8801 Indian Hills Drive
Omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 x 3057
Fax: 402-951-0635
Email: Becky.Saathoff@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

February 21, 2023

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986200000
Claim Number: 1230012611
Claimant: David Fields

Dear Mr. Fields:

This letter is to advise you your claim for Short Term Disability benefits has been approved beginning on 02/08/2023.

The policy issued to East Tennessee Iron & Metal Works, Inc., has a 14 day elimination period during which no benefits are payable. Your benefits will begin on 02/22/2023. Your first payment will be received separately within the next business week. Subsequent payments will be issued weekly or biweekly depending on your specific policy language.

Based on your Basic Weekly Earnings, your benefit will equal $740.00. However, if you are receiving Other Income Benefits as defined by your policy, your benefit may be reduced based on policy provisions.

We are currently unable to determine the recovery period for your condition.

- We will continue to work with you and your physician's office for updates and to obtain additional medical records to help us better understand your prognosis and treatment
- You do not need to do anything further at this time

Let us know as soon as possible if you return to work on a full-time or part-time basis to avoid an overpayment.

At this time your benefits are being allowed to 05/19/2023. This date represents the recovery period that has been suggested by your physician or the usual and customary recovery period for your disability and occupation.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

If you are unable to return to work on this date due to your disability, please provide the attached form to your doctor to complete and return to Lincoln Financial for consideration of additional disability benefits; or provide medical documentation that supports continued disability.

Medical documentation may include, but is not limited to, office and treatment notes, physical examination notes, progress notes, testing and or laboratory results, operative reports, hospitalization records, all types of therapy notes and consultations. This information may be obtained from your physicians and should be provided at your own expense. A note from your physician without any supporting documentation may not be sufficient to approve further benefits.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Becky Saathoff
800-423-2765 x 3057
Claims Examiner II, STD 1
The Lincoln National Life Insurance Company

Enclosure(s): Group Continuance DISB APS
CC: East Tennessee Iron & Metal Works, Inc.
ATTN: Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Lincoln Financial Group®

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll free (800) 423-2765 Toll free Fax (877) 843-3950
www.LincolnFinancial.com

# GROUP CONTINUANCE OF DISABILITY (PLEASE see FRAUD NOTICES attached)

TO AVOID DELAY, PLEASE ANSWER ALL QUESTIONS COMPLETELY.
East Tennessee Iron & Metal Works, Inc. IS NOT RESPONSIBLE FOR CHARGES INCURRED FOR COMPLETION OF THIS FORM. IT IS THE INSURED'S RESPONSIBILITY TO PROVIDE PROOF OF CONTINUED DISABILITY AT HIS/HER EXPENSE.

## Attending Physician's Statement

1. Patient's Name David Fields ______ Date of Birth ______
2. Diagnosis, Nature of Sickness or Injury (Describe complications, if any) ______

3. a) Date of First Treatment ______
   b) Date of Most Recent Treatment ______
   c) Frequency of Treatments ______
   d) Type of Treatment Rendered ______
   e) Is surgery scheduled? If so, when? ______
4. The patient has been continuously Totally Disabled (unable to perform regular job) from ______ to ______
   The patient has been continuously Partially Disabled (some restrictions or light duty) from ______ to ______
   If the patient is still disabled, when should the patient be able to return to work? ______
5. Remarks or Comments: ______
6. List Restrictions and Limitations: ______
7. Physical Impairment:

☐ Class 1 – No limitation – capable of heavy work – No restrictions (1-10%)
☐ Class 2 – Medium manual activity (15 – 30%)
☐ Class 3 – Slight limitation of functional capacity, capable of light work (35 – 55%)
☐ Class 4 – Moderate limitations of functional capacity, capable of sedentary/clerical activity (60 – 70%)
☐ Class 5 – Severe limitation of functional capacity, incapable of minimum (sedentary) activity (75 – 100%)

8. Mental Impairments (if applicable)

☐ Class 1 – Patient is able to function under stress and engage in personal relations (no limitations)
☐ Class 2 – Patient is able to function in most stress situation & engage in most interpersonal relations (slight limitation)
☐ Class 3 – Patient is able to engage in limited stress situation & limited interpersonal relations (moderate limitation)
☐ Class 4 – Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation)
☐ Class 5 – Patient has significant loss of psychological, physiological, personal & social adjustment (severe limitations)

Date ______ (Month Day Year) Signed ______ (Attending Physician, No Stamps, please) /Degree/Specialty ______

Street Address ______

City, State ______

Phone Number ______

Fax Number ______

**FRAUD NOTICES. For your protection, certain states require that the following notices appear on this form.**

**Alabama.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Alaska.** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

**Arizona.** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Arkansas, Louisiana, Rhode Island and West Virginia.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**California.** For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado.** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Delaware.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia.** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida.** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Idaho.** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement or claim containing any false, incomplete or misleading information is guilty of a felony.

**Indiana.** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky.** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland.** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota.** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire.** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey.** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New Mexico.** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio.** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma.** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon.** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Pennsylvania.** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico.** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Tennessee, Virginia and Washington.** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas.** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FOR ALL OTHER STATES EXCLUDING CONNECTICUT AND KANSAS.** A person may be committing insurance fraud, if he or she submits an application or claim containing a false or deceptive statement with intent to defraud (or knowing that he or she is helping to defraud) an insurance company.

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'déé' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.

East Tennessee Heart Consultants

Knoxville HMA Cardiology PPM, LLC

**TURKEY CREEK OFFICE**
10800 Parkside Drive, Suite 331
Knoxville, TN 37934
Phone: 865-392-3400
FAX: 865-392-3449

**Date:** 2.16.23

**To:** Lincoln Nat'l Life Ins.

**Attention:**

**Fax Number:** 877.843.3950

**From:** Dr. Barry Michelson

**Dept. Name:**

**Phone Number:** (865) 392-3400

**Fax Number:** (865) 392-3449

**Pages:** 21
(includes the fax cover sheet)

**Notes:** If you have questions - call Cindy, RN
(w) 865-392-3415

**Confidentiality Notice** The documents accompanying this transmission contain confidential health information that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been filled.

If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of the contents of these documents, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of these documents.

Fax Cover Sheet
gfax01 04/2015

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

| | | | |
|---|---|---|---|
| Full Name (First): David | (M.I.): L. | (Last Name): Fields | Social Security Number: |
| Height: 6' | Weight: 296.8 | Blood Pressure: R 124/62 L 124/88 | Employer Name: East TN Iron & Metal |

## 2. Diagnosis

| | |
|---|---|
| Primary ICD diagnostic Code **(Required)**: I 50.9 | Primary ICD diagnosis Description: heart failure |
| Secondary ICD Diagnosis Code: I 10 | Secondary ICD Diagnosis Description: Hypertension |

**Pregnancy** First Treated: __/__/__ Estimated Delivery: __/__/__ Date of Delivery: __/__/__ ☐ Vaginal ☐ C-Section

Symptoms:
Swelling of abdomen, extremities, back
Short of breath
fatigue
cough

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings):
Ejection fraction 10-15% per echo
Pro-BNP= 3,953
pt. to have heart cath 2/17/2023

## 3. Disability Circumstances - *Check if applicable*

☑ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances:

Date of:

| | | |
|---|---|---|
| Symptoms first Appeared: 01/31/2023 | Reduced Ability to work: 02/06/23 | Advised to stop work: 02/09/2023 |
| Initial Treatment: 02/09/2023 | Most Recent Treatment: __/__/__ | Next Treatment: 02/17/2023 |

Dates hospital confined: __/__/__ to __/__/__

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

no driving - no lifting -
Restrictions (what the patient SHOULD NOT do)

No lifting greater than 25 lbs
Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | | Standing | O | Crouching | | Overhead | N |
| 6-10 lbs. | | Walking | O | Crawling | | Desk Level | O |
| 11-25 lbs. | O | Sitting | F | Grasping | | Below Waist | O |
| 26-50 lbs. | N | Balancing | O | Climbing | N | | |
| 51-100 lbs. | N | Stooping | | Pushing | N | | |
| 100 + lbs. | N | Kneeling | | Pulling | N | | |
| | | Fingering | | Bending | | | |

What job modifications would allow the patient to return to work?

**5. Treatment**

optimize meds
Cardiac cath - 2/17/23
Refer to heart failure clinic

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

**6. Prognosis**

guarded to see effect of treatment

Describe the patients prognosis for recovery

**7. Physician's Information**

Barry Michelson, MD
Name

10800 Parkside Dr, #331
Street Address

| City | State | Zip Code |
|---|---|---|
| Knoxville | TN | 37934 |

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

Date patient experienced loss of

Cognitive Functioning: ____/____/________

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

____/____/________ to ____/____/________

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

Phone Number

Fax Number

[signature]
Signature

02/09/23
Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Fields, David (MR # 00577368) DOB

**PATIENT:Fields, David** **(MR # 00577368)**

**Pro B-Type Natriuretic Peptide: Patient Communication**

2/7/2023 9:57 AM ✕ Not seen

**Pro B-Type Natriuretic Peptide (Order 7292678)**
**Lab**

Ordering: **Greene, Sarah A**
Authorizing: **Barry I Michelson, MD**

Date: **2/7/2023**
Ordering Department: **HCMH CLINICAL LAB**

**Pro B-Type Natriuretic Peptide (Accession R23-038-A0004)**

**Results:**

**Abnormal !**

Status: **Final result**
**(Resulted: 2/7/2023 9:57 AM)**

| Component | Value | Ref Range & Units | Status |
|---|---|---|---|
| **pro B-Type Natriuretic Peptide** | **3,953 ^** | 0 - 125 pg/mL | Final |

**Additional Information**

| Specimen ID | Type | Source | Comment |
|---|---|---|---|
| R23-038-A0004 | Blood | | |

| Specimen Date Taken | Specimen Time Taken | Specimen Received Date | Specimen Received Time | Result Date | Result Time |
|---|---|---|---|---|---|
| Feb 7, 2023 | 9:18 AM | Feb 7, 2023 | 9:24 AM | Feb 7, 2023 | 9:57 AM |

**Lab Information**

Lab
HCMH CLINICAL LAB

**Associated Diagnoses**

**Other form of dyspnea** [R06.09] - Primary

**Order Provider Info**

| | | Office phone | Pager | E-mail |
|---|---|---|---|---|
| Ordering User | Sarah A Greene | -- | -- | -- |
| Authorizing Provider | Barry I Michelson, MD | 865-392-3400 | -- | -- |

# US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023)

| | | | |
|---|---|---|---|
| Ordering Provider | BARRY MICHELSON, MD | Performing facility | TURKEY CREEK MEDICAL CTR (LAB) |
| Reported Date | 02/09/2023 11:38 | Accession ID | 3042304000360 |
| Performed Date | 02/09/2023 09:44 | | |

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309
DOB: Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession
304-23-040-00360

Exam Date/Time
2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid.
Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata.
Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

| Ordering Provider | , | Performing facility | |
|---|---|---|---|
| Reported Date | | Accession ID | |
| Performed Date | | | |

View XML Save XML

# Encounter Summary for David Fields

## Most Recent Encounter

Connie A Manz Hinkle, MD: 1 Medical Park Blvd, Bristol, TN 37620, Ph. tel:+1-423-844-5560

## Reason for Visit

- | Reason | Comments |
  |---|---|
  | Abdominal Pain | C/O ongoing lower abdominal pain x 5 days. Reports sharp pain with feeling of "heartburn and nausea." Denies any vomiting or diarrhea. |

## Encounter Details

| Date | Type | Department | Care Team | Description |
|---|---|---|---|---|
| 01/31/2023 | Emergency | Hawkins County Memorial Hospital Emergency Dept.<br><br>851 Locust Street<br><br>Rogersville, TN 37857-2407<br><br>423-921-7000 | Hinkle, Connie A Manz, MD<br><br>1 Medical Park Blvd<br><br>Bristol, TN 37620<br><br>423-844-5560 (Work)<br><br>423-844-5569 (Fax) | Abdominal pain, unspecified abdominal location (Primary Dx) |

## Social History

| Tobacco Use | Types | Packs/Day | Years Used | Date |
|---|---|---|---|---|
| Smoking Tobacco: Never | | | | |
| Smokeless Tobacco: Never | | | | |

| Alcohol Use | Standard Drinks/Week | Comments |
|---|---|---|
| No | 0 (1 standard drink = 0.6 oz pure alcohol) | |

| Sex Assigned at Birth | Date Recorded |
|---|---|
| Not on file | |

| COVID-19 Exposure | Response | Date Recorded |
|---|---|---|
| In the last 10 days, have you been in contact with someone who was confirmed or suspected to have Coronavirus/COVID-19? | No / Unsure | 1/31/2023 4:46 PM EST |

documented as of this encounter

## Last Filed Vital Signs

| Vital Sign | Reading | Time Taken | Comments |
|---|---|---|---|
| Blood Pressure | 141/89 | 01/31/2023 7:12 PM EST | |
| Pulse | 91 | 01/31/2023 7:12 PM EST | |
| Temperature | 36.7 C (98 F) | 01/31/2023 7:12 PM EST | |
| Respiratory Rate | 17 | 01/31/2023 7:12 PM EST | |
| Oxygen Saturation | 98% | 01/31/2023 7:12 PM EST | |
| Inhaled Oxygen Concentration | - | - | |
| Weight | 127 kg (280 lb) | 01/31/2023 5:06 PM EST | |
| Height | 182.9 cm (6') | 01/31/2023 5:06 PM EST | |
| Body Mass Index | 37.97 | 01/31/2023 5:06 PM EST | |

documented in this encounter

## Discharge Instructions

- Attachments:

  The following attachments cannot be sent through Care Everywhere.

  - Abdominal Pain (English)

documented in this encounter

## Medications at Time of Discharge

| Medication | Sig | Dispensed | Refills | Start Date | End Date |
|---|---|---|---|---|---|
| aspirin 81 MG chewable tablet | Chew 81 mg by mouth daily. | | 0 | | |
| cetirizine (ZyrTEC) 10 MG tablet | Take 10 mg by mouth daily. | | 0 | | |
| lisinopril (PRINIVIL,ZESTRIL) 20 MG tablet | Take 20 mg by mouth daily. | | 0 | | |

documented as of this encounter

## Miscellaneous Notes

- Discharge Instructions - Connie A Manz Hinkle, MD - 01/31/2023 6:49 PM EST: Formatting of this note might be different from the original.
  Your x-ray is negative for any obstruction or acute finding. Your urine test is normal. And your COVID viral testing is also normal.
  Please follow-up with your primary care for your abdominal pain.
  Electronically signed by Connie A Manz Hinkle, MD at 01/31/2023 6:49 PM EST
- ED Provider Notes - Connie A Manz Hinkle, MD - 01/31/2023 5:16 PM EST: Formatting of this note is different from the original.
  Images from the original note were not included.

  History

  Chief Complaint
  Patient presents with
  Abdominal Pain
  C/O ongoing lower abdominal pain x 5 days. Reports sharp pain with feeling of "heartburn and nausea." Denies any vomiting or diarrhea.

  Patient reports 5 day history of left greater than right lower abdominal pain that he describes as a soreness and aching. He also reports acid reflux symptoms with nausea. Denies vomiting or diarrhea. He also reports shortness of breath over the last several days. Denies chest pain or cough. Pain is helped by lying on stomach.

  The history is provided by the patient. No language interpreter was used.

  Past Medical History:
  Diagnosis Date
  High blood pressure

  Past Surgical History:
  Procedure Laterality Date
  CARDIAC CATHETERIZATION

Family History
Problem Relation Age of Onset
Heart disease Father
Diabetes Father
Stroke Father
Cancer Maternal Aunt
Cancer Maternal Uncle
Heart disease Maternal Uncle
Sleep apnea Paternal Aunt
Diabetes Paternal Aunt
Stroke Paternal Aunt
Depression Paternal Aunt
Heart disease Paternal Uncle
Sleep apnea Paternal Uncle
Heart disease Paternal Grandmother

Social History

Tobacco Use
Smoking status: Never
Smokeless tobacco: Never
Substance Use Topics
Alcohol use: No
Drug use: No

Review of Systems
Constitutional: Negative for activity change, chills, diaphoresis, fatigue and fever.
HENT: Negative. Negative for congestion, ear pain and sinus pain.
Eyes: Negative. Negative for pain, discharge and itching.
Respiratory: Positive for shortness of breath. Negative for cough, chest tightness and wheezing.
Cardiovascular: Negative. Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Positive for abdominal pain and nausea. Negative for constipation, diarrhea and vomiting.
Genitourinary: Negative for dysuria and flank pain.
Musculoskeletal: Negative. Negative for back pain.
Skin: Negative for wound.
Allergic/Immunologic: Negative.
Neurological: Negative. Negative for speech difficulty, weakness, numbness and headaches.
Psychiatric/Behavioral: Negative. Negative for confusion, hallucinations and self-injury.
All other systems reviewed and are negative.

Physical Exam
Triage Vitals:
ED Triage Vitals [01/31/23 1706]
Temp 97.6 F (36.4 C)
Temp src Oral
Heart Rate 93 bpm
BP (!) 146/102
Resp 18
SpO2 100 %

Physical Exam
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: Normal appearance. He is obese.
HENT:
Head: Normocephalic and atraumatic.
Mouth/Throat:
Mouth: Mucous membranes are moist.
Pharynx: Oropharynx is clear.
Eyes:
Pupils: Pupils are equal, round, and reactive to light.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulses: Normal pulses.
Heart sounds: Normal heart sounds.
Pulmonary:
Effort: Pulmonary effort is normal.
Breath sounds: No wheezing, rhonchi or rales.
Abdominal:
General: Abdomen is flat. Bowel sounds are normal. There is no distension.
Palpations: Abdomen is soft.
Tenderness: There is abdominal tenderness in the right lower quadrant and left lower quadrant. There is no right CVA tenderness, left CVA tenderness, guarding or rebound. Negative signs include Murphy's sign, McBurney's sign, psoas sign and obturator sign.

Musculoskeletal:
General: No swelling or tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm and dry.
Capillary Refill: Capillary refill takes less than 2 seconds.
Neurological:
General: No focal deficit present.
Mental Status: He is alert and oriented to person, place, and time. Mental status is at baseline.
Psychiatric:
Mood and Affect: Mood normal.
Behavior: Behavior normal.
Thought Content: Thought content normal.
Judgment: Judgment normal.

ED Course

Vitals Recorded in This Encounter
1/31/2023
1706

Temp: 97.6 F (36.4 C)
Temp src: Oral
Pulse: 93
Pulse Source: Right
Heart Rate: 93 bpm
Heart Rate Source: Monitor
Resp: 18
BP: 146/102
BP Location: Right arm
BP Method: Automatic
Patient Position: Sitting
SpO2: 100 %
O2 Device: None (Room air)
Pulse Oximetry Type: Intermittent

Procedures

Medical Decision Making
Patient seen with NP and assumed care at 6pm. Patient presents with lower abdominal pain, that he has stated his pain did improve with GI cocktail and he thinks he has reflux. Work up reviewed and is benign. Discharged in stable condition, follow up with primary care.

Abdominal pain, unspecified abdominal location: acute illness or injury
Amount and/or Complexity of Data Reviewed
Radiology: ordered.

Risk
OTC drugs.
Prescription drug management.

Connie A Manz Hinkle, MD
01/31/23 1913

Electronically signed by Connie A Manz Hinkle, MD at 01/31/2023 7:13 PM EST

documented in this encounter

## Plan of Treatment

Not on file

documented as of this encounter

## Procedures

| Procedure Name | Priority | Date/Time | Associated Diagnosis | Comments |
|---|---|---|---|---|
| BH URINE MICROSCOPIC | STAT | 01/31/2023 6:05 PM EST | | Results for this procedure are in the results section. |
| BH UA W/REFLEX MICROSCOPIC AND/OR CULTURE | STAT | 01/31/2023 6:05 PM EST | | Results for this procedure are in the results section. |
| XR ABDOMEN COMPLETE SERIES | STAT | 01/31/2023 5:51 PM EST | | Results for this procedure are in the results section. |
| COVID VIRAL 4PLEX | STAT | 01/31/2023 5:45 PM EST | | Results for this procedure are in the results section. |

documented in this encounter

## Results

- (ABNORMAL) Urine Microscopic (01/31/2023 6:05 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| UR WBC | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| UR RBC | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Squamous Epithelial Cells | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Bacteria | Trace (A) | Negative /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Mucus | Present (A) | None Seen | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Reflex Status of Urine Culture | No - criteria not met | | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| Urine | URINE SPECIMEN COLLECTION, CLEAN CATCH / Unknown | Non-Blood Collection / Unknown | 01/31/2023 6:05 PM EST | 01/31/2023 6:07 PM EST |

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | URINE ORDERABLES |

| Performing Organization | Address | City/State/ZIP Code | Phone Number |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

- (ABNORMAL) Urinalysis w/ Reflex Microscopic and/or Culture (01/31/2023 6:05 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| Color | Yellow | Yellow/Straw | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB | |
| Appearance | Clear | Clear | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB | |
| Glucose | Negative | Negative | | 01/31/2023 | HCMH | |

| | | | | |
|---|---|---|---|---|
| | | mg/dL | 6:26 PM EST | CLINICAL LAB |
| Ketones (Acetone) | Negative | Negative mg/dL | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Bilirubin | Negative | Negative | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| pH | 5.0 | 5.0 - 8.0 | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Urine Specific Gravity | >=1.030 | 1.005 - 1.030 | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Urobilinogen | 1.0 | 0.2 - 1.0 mg/dL | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Blood | Negative | Negative | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Protein Semi-Quantitative | 30 (A) | Negative mg/dL | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Nitrite | Negative | Negative | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Leukocyte Esterase | Negative | Negative | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| Urine | URINE SPECIMEN COLLECTION, CLEAN CATCH / Unknown | Non-Blood Collection / Unknown | 01/31/2023 6:05 PM EST | 01/31/2023 6:07 PM EST |

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | URINE ORDERABLES |

| Performing Organization | Address | City/State/ZIP Code | Phone Number |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

- XR Abdomen Comp W Pa Chest (01/31/2023 5:51 PM EST):

| Anatomical Region | Laterality | Modality |
|---|---|---|
| Abdomen | | Digital Radiography |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|

**Impressions**
01/31/2023 5:58 PM EST

IMPRESSION:
No acute cardiopulmonary disease with a normal bowel gas pattern.

Report dictation location: DESKTOP-PACS
**Narrative**
01/31/2023 5:58 PM EST

EXAM DESCRIPTION:
XR ABDOMEN COMPLETE SERIES

CLINICAL INFORMATION:

Abdominal pain and shortness of breath

COMPARISON:
Chest x-ray dated February 17, 2021.

FINDINGS:
No pulmonary edema or pneumonia. No suspicious pulmonary nodules. No pneumothorax or pleural effusion. The hilar and mediastinal contours are normal. There is borderline cardiomegaly.

The bowel gas pattern is unremarkable without ileus or obstruction. No gross free intraperitoneal air. Normal amount of colonic stool. No visualized urinary calculi.

**Procedure Note**

Ellis, Paul D, MD - 01/31/2023

Formatting of this note might be different from the original.
EXAM DESCRIPTION:
XR ABDOMEN COMPLETE SERIES

CLINICAL INFORMATION:
Abdominal pain and shortness of breath

CXR

COMPARISON:
Chest x-ray dated February 17, 2021.

FINDINGS:
No pulmonary edema or pneumonia. No suspicious pulmonary nodules. No pneumothorax or pleural effusion. The hilar and mediastinal contours are normal. There is borderline cardiomegaly.

The bowel gas pattern is unremarkable without ileus or obstruction. No gross free intraperitoneal air. Normal amount of colonic stool. No visualized urinary calculi.

IMPRESSION:
IMPRESSION:
No acute cardiopulmonary disease with a normal bowel gas pattern.

Report dictation location: DESKTOP-PACS

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | IMG DIAGNOSTIC IMAGING ORDERABLES |

- COVID VIRAL 4PLEX (01/31/2023 5:45 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| Influenza A RNA, PCR | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Influenza B RNA, PCR | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Respiratory Syncytial Virus | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| SARS-CoV-2 | NEGATIVE | NotDet/Neg | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Covid 4Plex Comment | | | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |

Comment:
Testing was performed using Xpert Xpress SARS-CoV-2/Flu/RSV plus produced by Cepheid and authorized for use under Emergency Use Authorization (EUA). Users should refer to fact sheets for healthcare providers and

for patients that are associated with this authorization on the FDA website ( https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/vitro-diagnostics-euas ).

Interpretation:

NEGATIVE - Viral nucleic acids not detected
POSITIVE - Viral nucleic acids detected for stated organism.
INVALID - Presence or absence of the viral nucleic acids targets cannot be determined. Control results showed failure of amplification procedure. Possible causes include presence of a PCR inhibitor, improper specimen or collection procedure. Recollection may clarify the issue.

Test limitations:

Performance of the Xpert Xpress SARS-CoV-2 has only been established in nasopharyngeal swab specimens. Also acceptable are nasal swabs and nasal wash/aspirates but performance characteristics have not been established for these specimens.

Viral quantitation is not reported with this assay. It does not differentiate Influenza A subtypes, Influenza B lineages, or RSV subgroups. Potential for competitive interference exists when more than one viral target is present; clinical significance of this potential has not been evaluated.
Detection of viral nucleic acid does not necessarily indicate that infectious organisms are present. Results should not be used as the sole basis for treatment or other patient management decisions.

False negative results may occur if a specimen is improperly collected,

transported or handled, or if inadequate numbers of organisms are present in the specimen. Mutations within the target regions for the viruses that affect primer and/or probe binding could also cause false negatives, but manufacturer's studies show that these regions are highly conserved.

Interference studies showed absence of significant interference with a variety of substances that may occur in clinical specimens or with selected respiratory pathogens including other coronaviruses. Interference from non-tested substances or organisms cannot be excluded. Live attenuated viruses may cause false positive results, e.g. recent administration of Flumist.

This test cannot rule out diseases caused by other bacterial or viral pathogens. PCR respiratory panel is available for other common pathogens (order Respiratory Viral Panel).

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| Nasopharyngeal | SWAB FROM NASAL SINUS / Unknown | Non-Blood Collection / Unknown | 01/31/2023 5:45 PM EST | 01/31/2023 5:56 PM EST |

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | MICROBIOLOGY - GENERAL ORDERABLES |

| Performing Organization | Address | City/State/ZIP Code | Phone Number |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

documented in this encounter

## Visit Diagnoses

**Diagnosis**

Abdominal pain, unspecified abdominal location - Primary

documented in this encounter

## Administered Medications

**Inactive Administered Medications - up to 3 most recent administrations**

| Medication Order | MAR Action | Action Date | Dose | Rate | Site |
|---|---|---|---|---|---|
| alum & mag - simeth (Maalox) 200-200-20 MG/5ML suspension 15 mL<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose, Shake well before use. | Given | 01/31/2023 5:44 PM EST | 15 mL | | |
| lidocaine (Xylocaine) 2 % mouth solution 15 mL<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose | Given | 01/31/2023 5:44 PM EST | 15 mL | | |

documented in this encounter

## Active and Recently Administered Medications

Times are shown in EST.**Scheduled**

| Medication Order | 01/29/2023 | 01/30/2023 | 01/31/2023 |
|---|---|---|---|
| alum & mag - simeth (Maalox) 200-200-20 MG/5ML suspension 15 mL (COMPLETED)<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose, Shake well before use. | | | • 1744 (Given - Provider: Pamela J Williams, RN) |
| lidocaine (Xylocaine) 2 % mouth solution 15 mL (COMPLETED)<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose | | | • 1744 (Given - Provider: Pamela J Williams, RN) |

documented in this encounter

## Care Teams

| Team Member | Relationship | Specialty | Start Date | End Date |
|---|---|---|---|---|
| Dalle-Ave, Mark Joseph, MD<br>4307 Hwy 66 South<br>Ste 4<br>Rogersville, TN 37857-3155<br>423-921-1600 (Work)<br>423-921-1677 (Fax) | PCP - General | | 3/23/13 | |

documented as of this encounter

## Demographics

| | | | |
|---|---|---|---|
| **Sex:** | Male | **Ethnicity:** | Not Hispanic or Latino |
| **DOB:** | | **Race:** | White or Caucasian |
| **Preferred language:** | English | **Marital status:** | Married |
| **Contact:** | 1199 STANLEY VALLEY RD, USA, Ph. tel:+1-423-921-4434 | | |

## Care Team Members

**Primary Care Provider**

Mark Joseph Dalle-Ave, MD, Ballad Health - Epic — 4307 Hwy 66 South, Ste 4, Rogersville, TN 37857-3155, Ph. tel:+1-423-921-1600

# NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023, tied to order #8815636)

| | | | |
|---|---|---|---|
| Ordering Provider | BARRY MICHELSON, MD | Performing facility | TURKEY CREEK MEDICAL CTR (LAB) |
| Reported Date | 02/09/2023 12:56 | Accession ID | 3042304000241 |
| Performed Date | 02/09/2023 07:53 | | |

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309
DOB: Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession
304-23-040-00241

Exam Date/Time
2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure Staff
MRN: 00809309
Referring Physician: Barry Michelson, MD
Date of birth: Age: 45 year(s)
Sonographer: Brandon Odom, RCS

Gender: Male BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no: OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no: 3042304000241

FIN Number: 8945033

Study location: Turkey Creek

Technical quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.

Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.

Valve is trileaflet and normal in structure. No evidence of stenosis.

Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global hypokinesis.

Non-Invasive Cardiology

Report

Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic function is mildly diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of stenosis. Trace mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No evidence of stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of stenosis. Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of stenosis. Trace pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no pericardial effusion visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more than 50% respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM

Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm (2.5 - 4 cm)

2D septum diastolic: 0.87 cm

2D post wall diastolic: 1.01 cm
(0.6 - 1 cm)

Area systolic: 37.3 cm^2

FS Normal Range (30-45%): 3%

Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml
(62 - 150 ml)

LVESV Teichholz: 175 ml
(21 - 61 ml)

LVEDVI Teichholz: 77.87 ml/m^2
(34 - 74 ml/m^2)

LVESVI Teichholz: 70.25 ml/m^2
(11 - 31 ml/m^2)

EF Teichholz: 15 %

EF Simpson (BP) Normal Range (55-85%): 16 %
(51 - 72 %)

LVEDV Simpson (BP) Normal Range (56-155ml): 167 ml
(62 - 150 ml)

LVEDV (A2C) Normal Range (56-155ml): 160 ml
(62 - 150 ml)

LVESV Simpson (BP) Normal Range (19-58ml): 141 ml
(21 - 61 ml)

LVESV (A2C) Normal Range (19-58ml): 136 ml
(21 - 61 ml)

LVEDVI (A2C): 64.23 ml/m^2

LVEDV (A4C) Normal Range (56-155ml) : 173 ml
(62 - 150 ml)

LVESVI (A2C): 54.59 ml/m^2
(11 - 31 ml/m^2)

LVESV (A4C) Normal Range (19-58ml): 145 ml
(21 - 61 ml)

EF (A2C) Normal Range (50-85%) : 15 %

LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology Report

LVESVI (A4C): 58.2 ml/m^2
(11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: 3.91 cm
Normal Range (2.7-3.4cm):

Systolic pressure: 44.94 mmHg

Left Atrium
LA diameter (2D) Normal Range (2.0-4.0cm): 4.5 cm

LA/Aorta (2D): 1.55

LA volume index: 40.14 ml/m^2
(16 - 34 ml/m^2)

LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal 4.3 cm
Range (2.0-4.0cm):

Systolic pressure: 5 mmHg

Aortic Valve

| | | | |
|---|---|---|---|
| Peak velocity Normal Range (0.9-1.7m/s) : | 0.87 m/s | Mean velocity: | 0.56 m/s |
| Peak gradient Normal 3.02 mmHg Range (<10mmHG): | | Mean gradient Normal 1 mmHg Range (<10mmHG) : | |
| | | Dimensionless index: 0.49 | |
| Area (cont VTI): | 1.99 cm^2 (> 2 cm^2) | Mean velocity: | 27.6 cm/s |
| AV VTI: | 13.5 cm | Mean gradient: | 0 mmHg |
| Peak velocity: | 42.6 cm/s | LVOT VTI Normal Range (0.7-1.1m/s): | 6.46 cm |
| Peak gradient: | 1 mmHg | | |
| LVOT diameter: | 2.3 cm | | |

Mitral Valve

| | | |
|---|---|---|
| Peak E-wave Normal 53.7 cm/s Range (0.60-1.30m/s) : | Peak A-wave Normal 30.2 cm/s Range( 0.30-0.60m/s) : | |
| | E/A ratio Normal Range 1.78 (0.8-2.5): | |
| | Peak gradient: | 1.15 mmHg |
| | Deceleration time Normal Range (160-240msec): | 148 ms |
| | E' lateral velocity: | 8.2 cm/s |
| | E/E' lateral: | 6.55 |

Tricuspid Valve

| | | | |
|---|---|---|---|
| Estimated RVSP: | 46 mmHg | Estimated RAP: | 5 mmHg |
| TR velocity: | 316 cm/s | TR gradient: | 39.94 mmHg |

Pulmonic Valve

| | | | |
|---|---|---|---|
| Peak velocity Normal Range (0.5- | 74.7 cm/s | Peak gradient: | 2.23 mmHg |

Non-Invasive Cardiology

Report

1.0m/s):

Estimated PASP: 44.94 mmHg

Aorta/Great Vessels

| | | | |
|---|---|---|---|
| Aortic root (2D): | 2.9 cm | Aortic arch: | 2.8 cm |
| Ascending aorta Normal Range (<3.4cm): | 2.7 cm | ACS (M-mode) Normal 2 cm Range (1.5-26cm): | |
| LVOT diameter: | 2.3 cm | | |

Wall Motion Scoring
Stage: Rest
Score:

0 0 0 0

0
0 0
0
0
0 0 0
0
0
0
0
0
0 0 0
0
0
0
0
0
0 0
0
0 0
0 0
0
0
0
0
0

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 - Dyskinesis 5 - Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

Full Name (First): David (M.I.): L. (Last Name): Fields

Social Security Number:

Height: 6'
Weight: 296.8
Blood Pressure: R 124/62 L 134/88

Employer Name: East TN Iron & Metal

## 2. Diagnosis

Primary ICD diagnostic Code (Required): I 50.9

Primary ICD diagnosis Description: heart failure

Secondary ICD Diagnosis Code: I 10

Secondary ICD Diagnosis Description: Hypertension

**Pregnancy** First Treated: __/__/__ Estimated Delivery: __/__/__ Date of Delivery: __/__/__ ☐ Vaginal ☐ C-Section

Symptoms:
Swelling of abdomen, extremities, back
Short of breath
fatigue
cough

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings):
Ejection fraction 10-15% per echo
Pro-BNP= 3,953
pt. to have heart cath 2/17/2023

## 3. Disability Circumstances - *Check if applicable*

☑ Illness ☐ Injury ☐ Work Related

If work related or injury, summarize circumstances:

Date of:

| | | |
|---|---|---|
| Symptoms first Appeared: 01/31/2023 | Reduced Ability to work: 02/06/23 | Advised to stop work: 02/09/2023 |
| Initial Treatment: 02/09/2023 | Most Recent Treatment: __/__/__ | Next Treatment: 02/17/2023 |
| Dates hospital confined: | __/__/__ | to __/__/__ |

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

no driving - no lifting -
Restrictions (what the patient SHOULD NOT do)

No Lifting greater than 25 lbs
Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | | Standing | O | Crouching | | Overhead | N |
| 6-10 lbs. | | Walking | O | Crawling | | Desk Level | O |
| 11-25 lbs. | O | Sitting | F | Grasping | | Below Waist | O |
| 26-50 lbs. | N | Balancing | O | Climbing | N | | |
| 51-100 lbs. | N | Stooping | | Pushing | N | | |
| 100 + lbs. | N | Kneeling | | Pulling | N | | |
| | | Fingering | | Bending | | | |

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________
Dressing ____/____/________
Transferring ____/____/________
Bathing ____/____/________
Toileting ____/____/________
Eating ____/____/________

Date patient experienced loss of
Cognitive Functioning: ____/____/________

**5. Treatment**

optimize meds
Cardiac cath - 2/17/23
Refer to heart failure clinic

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

**6. Prognosis**

guarded to see effect of treatment

Describe the patients prognosis for recovery

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

____/____/________ to ____/____/________

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

**7. Physician's Information**

Barry Michelson, MD
Name

10800 Parkside Dr, #331
Street Address

Knoxville | TN | 37934
City | State | Zip Code

Phone Number | Fax Number

[signature]
Signature | Date 02/09/23

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



PAGE 3/21 * RCVD AT 2/16/2023 3:49:07 PM [Eastern Standard Time] * SVR:VA1PWFAX401/2 * DNIS:8778433950 * CSID: * ANI:8653923454 * DURATION (mm-ss):11-00

**PATIENT:Fields, David** **(MR # 00577368)**

**Pro B-Type Natriuretic Peptide: Patient Communication**

2/7/2023 9:57 AM — Not seen

**Pro B-Type Natriuretic Peptide (Order 7292678)**
**Lab**

Ordering: **Greene, Sarah A**
Authorizing: **Barry I Michelson, MD**

Date: **2/7/2023**
Ordering Department: **HCMH CLINICAL LAB**

**Pro B-Type Natriuretic Peptide (Accession R23-038-A0004)**

**Results:**

**Abnormal !**

Status: **Final result**
**(Resulted: 2/7/2023 9:57 AM)**

| Component | Value | Ref Range & Units | Status |
|---|---|---|---|
| **pro B-Type Natriuretic Peptide** | **3,953 ^** | 0 - 125 pg/mL | Final |

**Additional Information**

| Specimen ID | Type | Source | Comment |
|---|---|---|---|
| R23-038-A0004 | Blood | | |

| Specimen Date Taken | Specimen Time Taken | Specimen Received Date | Specimen Received Time | Result Date | Result Time |
|---|---|---|---|---|---|
| Feb 7, 2023 | 9:18 AM | Feb 7, 2023 | 9:24 AM | Feb 7, 2023 | 9:57 AM |

**Lab Information**

Lab
HCMH CLINICAL LAB

**Associated Diagnoses**

**Other form of dyspnea** [R06.09] - Primary

**Order Provider Info**

| | | Office phone | Pager | E-mail |
|---|---|---|---|---|
| Ordering User | Sarah A Greene | -- | -- | -- |
| Authorizing Provider | Barry I Michelson, MD | 865-392-3400 | -- | -- |

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023)

| | | | |
|---|---|---|---|
| Ordering Provider | BARRY MICHELSON, MD | Performing facility | TURKEY CREEK MEDICAL CTR (LAB) |
| Reported Date | 02/09/2023 11:38 | Accession ID | 3042304000360 |
| Performed Date | 02/09/2023 09:44 | | |

Tennova - Turkey Creek Medical Center

Patien
t: FIELDS, DAVID MRN: 809309
DOB: Sex
: Male
Locatio
n: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession
304-23-040-00360

Exam Date/Time
2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid.
Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata.
Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

| | | | |
|---|---|---|---|
| Ordering Provider | , | Performing facility | |
| Reported Date | | Accession ID | |
| Performed Date | | | |

View XML | Save XML

# Encounter Summary for David Fields

## Most Recent Encounter

Connie A Manz Hinkle, MD: 1 Medical Park Blvd, Bristol, TN 37620, Ph. tel:+1-423-844-5560

## Reason for Visit

- | Reason | Comments |
  |---|---|
  | Abdominal Pain | C/O ongoing lower abdominal pain x 5 days. Reports sharp pain with feeling of "heartburn and nausea." Denies any vomiting or diarrhea. |

## Encounter Details

| Date | Type | Department | Care Team | Description |
|---|---|---|---|---|
| 01/31/2023 | Emergency | Hawkins County Memorial Hospital Emergency Dept.<br>851 Locust Street<br>Rogersville, TN 37857-2407<br>423-921-7000 | Hinkle, Connie A Manz, MD<br>1 Medical Park Blvd<br>Bristol, TN 37620<br>423-844-5560 (Work)<br>423-844-5569 (Fax) | Abdominal pain, unspecified abdominal location (Primary Dx) |

## Social History

| Tobacco Use | Types | Packs/Day | Years Used | Date |
|---|---|---|---|---|
| Smoking Tobacco: Never | | | | |
| Smokeless Tobacco: Never | | | | |

| Alcohol Use | Standard Drinks/Week | Comments |
|---|---|---|
| No | 0 (1 standard drink = 0.6 oz pure alcohol) | |

| Sex Assigned at Birth | Date Recorded |
|---|---|
| Not on file | |

| COVID-19 Exposure | Response | Date Recorded |
|---|---|---|
| In the last 10 days, have you been in contact with someone who was confirmed or suspected to have Coronavirus/COVID-19? | No / Unsure | 1/31/2023 4:46 PM EST |

documented as of this encounter

## Last Filed Vital Signs

| Vital Sign | Reading | Time Taken | Comments |
|---|---|---|---|
| Blood Pressure | 141/89 | 01/31/2023 7:12 PM EST | |
| Pulse | 91 | 01/31/2023 7:12 PM EST | |
| Temperature | 36.7 C (98 F) | 01/31/2023 7:12 PM EST | |
| Respiratory Rate | 17 | 01/31/2023 7:12 PM EST | |
| Oxygen Saturation | 98% | 01/31/2023 7:12 PM EST | |
| Inhaled Oxygen Concentration | - | - | |
| Weight | 127 kg (280 lb) | 01/31/2023 5:06 PM EST | |
| Height | 182.9 cm (6') | 01/31/2023 5:06 PM EST | |
| Body Mass Index | 37.97 | 01/31/2023 5:06 PM EST | |

documented in this encounter

## Discharge Instructions

- Attachments:

  The following attachments cannot be sent through Care Everywhere.

  - Abdominal Pain (English)

documented in this encounter

## Medications at Time of Discharge

| Medication | Sig | Dispensed | Refills | Start Date | End Date |
|---|---|---|---|---|---|
| aspirin 81 MG chewable tablet | Chew 81 mg by mouth daily. | | 0 | | |
| cetirizine (ZyrTEC) 10 MG tablet | Take 10 mg by mouth daily. | | 0 | | |
| lisinopril (PRINIVIL,ZESTRIL) 20 MG tablet | Take 20 mg by mouth daily. | | 0 | | |

documented as of this encounter

## Miscellaneous Notes

- Discharge Instructions - Connie A Manz Hinkle, MD - 01/31/2023 6:49 PM EST: Formatting of this note might be different from the original.
  Your x-ray is negative for any obstruction or acute finding. Your urine test is normal. And your COVID viral testing is also normal.
  Please follow-up with your primary care for your abdominal pain.
  Electronically signed by Connie A Manz Hinkle, MD at 01/31/2023 6:49 PM EST
- ED Provider Notes - Connie A Manz Hinkle, MD - 01/31/2023 5:16 PM EST: Formatting of this note is different from the original.
  Images from the original note were not included.

  History

  Chief Complaint
  Patient presents with
  Abdominal Pain
  C/O ongoing lower abdominal pain x 5 days. Reports sharp pain with feeling of "heartburn and nausea." Denies any vomiting or diarrhea.

  Patient reports 5 day history of left greater than right lower abdominal pain that he describes as a soreness and aching. He also reports acid reflux symptoms with nausea. Denies vomiting or diarrhea. He also reports shortness of breath over the last several days. Denies chest pain or cough. Pain is helped by lying on stomach.

  The history is provided by the patient. No language interpreter was used.

  Past Medical History:
  Diagnosis Date
  High blood pressure

  Past Surgical History:
  Procedure Laterality Date
  CARDIAC CATHETERIZATION

Family History
Problem Relation Age of Onset
Heart disease Father
Diabetes Father
Stroke Father
Cancer Maternal Aunt
Cancer Maternal Uncle
Heart disease Maternal Uncle
Sleep apnea Paternal Aunt
Diabetes Paternal Aunt
Stroke Paternal Aunt
Depression Paternal Aunt
Heart disease Paternal Uncle
Sleep apnea Paternal Uncle
Heart disease Paternal Grandmother

Social History

Tobacco Use
Smoking status: Never
Smokeless tobacco: Never
Substance Use Topics
Alcohol use: No
Drug use: No

Review of Systems
Constitutional: Negative for activity change, chills, diaphoresis, fatigue and fever.
HENT: Negative. Negative for congestion, ear pain and sinus pain.
Eyes: Negative. Negative for pain, discharge and itching.
Respiratory: Positive for shortness of breath. Negative for cough, chest tightness and wheezing.
Cardiovascular: Negative. Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Positive for abdominal pain and nausea. Negative for constipation, diarrhea and vomiting.
Genitourinary: Negative for dysuria and flank pain.
Musculoskeletal: Negative. Negative for back pain.
Skin: Negative for wound.
Allergic/Immunologic: Negative.
Neurological: Negative. Negative for speech difficulty, weakness, numbness and headaches.
Psychiatric/Behavioral: Negative. Negative for confusion, hallucinations and self-injury.
All other systems reviewed and are negative.

Physical Exam
Triage Vitals:
ED Triage Vitals [01/31/23 1706]
Temp 97.6 F (36.4 C)
Temp src Oral
Heart Rate 93 bpm
BP (!) 146/102
Resp 18
SpO2 100 %

Physical Exam
Vitals and nursing note reviewed.
Constitutional:
General: He is not in acute distress.
Appearance: Normal appearance. He is obese.
HENT:
Head: Normocephalic and atraumatic.
Mouth/Throat:
Mouth: Mucous membranes are moist.
Pharynx: Oropharynx is clear.
Eyes:
Pupils: Pupils are equal, round, and reactive to light.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulses: Normal pulses.
Heart sounds: Normal heart sounds.
Pulmonary:
Effort: Pulmonary effort is normal.
Breath sounds: No wheezing, rhonchi or rales.
Abdominal:
General: Abdomen is flat. Bowel sounds are normal. There is no distension.
Palpations: Abdomen is soft.
Tenderness: There is abdominal tenderness in the right lower quadrant and left lower quadrant. There is no right CVA tenderness, left CVA tenderness, guarding or rebound. Negative signs include Murphy's sign, McBurney's sign, psoas sign and obturator sign.

Musculoskeletal:
General: No swelling or tenderness. Normal range of motion.
Cervical back: Normal range of motion and neck supple.
Skin:
General: Skin is warm and dry.
Capillary Refill: Capillary refill takes less than 2 seconds.
Neurological:
General: No focal deficit present.
Mental Status: He is alert and oriented to person, place, and time. Mental status is at baseline.
Psychiatric:
Mood and Affect: Mood normal.
Behavior: Behavior normal.
Thought Content: Thought content normal.
Judgment: Judgment normal.

ED Course

Vitals Recorded in This Encounter
1/31/2023
1706

Temp: 97.6 F (36.4 C)
Temp src: Oral
Pulse: 93
Pulse Source: Right
Heart Rate: 93 bpm
Heart Rate Source: Monitor
Resp: 18
BP: 146/102
BP Location: Right arm
BP Method: Automatic
Patient Position: Sitting
SpO2: 100 %
O2 Device: None (Room air)
Pulse Oximetry Type: Intermittent

Procedures

Medical Decision Making
Patient seen with NP and assumed care at 6pm. Patient presents with lower abdominal pain, that he has stated his pain did improve with GI cocktail and he thinks he has reflux. Work up reviewed and is benign. Discharged in stable condition, follow up with primary care.

Abdominal pain, unspecified abdominal location: acute illness or injury
Amount and/or Complexity of Data Reviewed
Radiology: ordered.

Risk
OTC drugs.
Prescription drug management.

Connie A Manz Hinkle, MD
01/31/23 1913

Electronically signed by Connie A Manz Hinkle, MD at 01/31/2023 7:13 PM EST

documented in this encounter

## Plan of Treatment

Not on file

documented as of this encounter

## Procedures

| Procedure Name | Priority | Date/Time | Associated Diagnosis | Comments |
|---|---|---|---|---|
| BH URINE MICROSCOPIC | STAT | 01/31/2023 6:05 PM EST | | Results for this procedure are in the results section. |
| BH UA W/REFLEX MICROSCOPIC AND/OR CULTURE | STAT | 01/31/2023 6:05 PM EST | | Results for this procedure are in the results section. |
| XR ABDOMEN COMPLETE SERIES | STAT | 01/31/2023 5:51 PM EST | | Results for this procedure are in the results section. |
| COVID VIRAL 4PLEX | STAT | 01/31/2023 5:45 PM EST | | Results for this procedure are in the results section. |

documented in this encounter

## Results

- (ABNORMAL) Urine Microscopic (01/31/2023 6:05 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| UR WBC | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| UR RBC | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Squamous Epithelial Cells | 0-4 | 0 - 4 /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Bacteria | Trace (A) | Negative /hpf | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Mucus | Present (A) | None Seen | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |
| Reflex Status of Urine Culture | No - criteria not met | | | 01/31/2023 6:28 PM EST | HCMH CLINICAL LAB | |

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| Urine | URINE SPECIMEN COLLECTION, CLEAN CATCH / Unknown | Non-Blood Collection / Unknown | 01/31/2023 6:05 PM EST | 01/31/2023 6:07 PM EST |

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | URINE ORDERABLES |

| Performing Organization | Address | City/State/ZIP Code | Phone Number |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

- (ABNORMAL) Urinalysis w/ Reflex Microscopic and/or Culture (01/31/2023 6:05 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| Color | Yellow | Yellow/Straw | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB | |
| Appearance | Clear | Clear | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB | |
| Glucose | Negative | Negative | | 01/31/2023 | HCMH | |

| | | | | | |
|---|---|---|---|---|---|
| | | mg/dL | | 6:26 PM EST | CLINICAL LAB |
| Ketones (Acetone) | Negative | Negative mg/dL | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Bilirubin | Negative | Negative | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| pH | 5.0 | 5.0 - 8.0 | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Urine Specific Gravity | >=1.030 | 1.005 - 1.030 | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Urobilinogen | 1.0 | 0.2 - 1.0 mg/dL | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Blood | Negative | Negative | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Protein Semi-Quantitative | 30 (A) | Negative mg/dL | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Nitrite | Negative | Negative | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |
| Leukocyte Esterase | Negative | Negative | | 01/31/2023 6:26 PM EST | HCMH CLINICAL LAB |

| **Specimen (Source)** | **Anatomical Location / Laterality** | **Collection Method / Volume** | **Collection Time** | **Received Time** |
|---|---|---|---|---|
| Urine | URINE SPECIMEN COLLECTION, CLEAN CATCH / Unknown | Non-Blood Collection / Unknown | 01/31/2023 6:05 PM EST | 01/31/2023 6:07 PM EST |

| **Authorizing Provider** | **Result Type** |
|---|---|
| Christopher A Chamberlain FNP | URINE ORDERABLES |

| **Performing Organization** | **Address** | **City/State/ZIP Code** | **Phone Number** |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

- XR Abdomen Comp W Pa Chest (01/31/2023 5:51 PM EST):

| **Anatomical Region** | **Laterality** | **Modality** |
|---|---|---|
| Abdomen | | Digital Radiography |

| **Specimen (Source)** | **Anatomical Location / Laterality** | **Collection Method / Volume** | **Collection Time** | **Received Time** |
|---|---|---|---|---|

**Impressions**
01/31/2023 5:58 PM EST

IMPRESSION:
No acute cardiopulmonary disease with a normal bowel gas pattern.

Report dictation location: DESKTOP-PACS
**Narrative**
01/31/2023 5:58 PM EST

EXAM DESCRIPTION:
XR ABDOMEN COMPLETE SERIES

CLINICAL INFORMATION:

Abdominal pain and shortness of breath

COMPARISON:
Chest x-ray dated February 17, 2021.

FINDINGS:
No pulmonary edema or pneumonia. No suspicious pulmonary nodules. No pneumothorax or pleural effusion. The hilar and mediastinal contours are normal. There is borderline cardiomegaly.

The bowel gas pattern is unremarkable without ileus or obstruction. No gross free intraperitoneal air. Normal amount of colonic stool. No visualized urinary calculi.

**Procedure Note**

Ellis, Paul D, MD - 01/31/2023

Formatting of this note might be different from the original.
EXAM DESCRIPTION:
XR ABDOMEN COMPLETE SERIES

CLINICAL INFORMATION:
Abdominal pain and shortness of breath

COMPARISON:
Chest x-ray dated February 17, 2021.

FINDINGS:
No pulmonary edema or pneumonia. No suspicious pulmonary nodules. No pneumothorax or pleural effusion. The hilar and mediastinal contours are normal. There is borderline cardiomegaly.

The bowel gas pattern is unremarkable without ileus or obstruction. No gross free intraperitoneal air. Normal amount of colonic stool. No visualized urinary calculi.

IMPRESSION:
IMPRESSION:
No acute cardiopulmonary disease with a normal bowel gas pattern.

Report dictation location: DESKTOP-PACS

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | IMG DIAGNOSTIC IMAGING ORDERABLES |

- COVID VIRAL 4PLEX (01/31/2023 5:45 PM EST):

| Component | Value | Ref Range | Test Method | Analysis Time | Performed At | Pathologist Signature |
|---|---|---|---|---|---|---|
| Influenza A RNA, PCR | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Influenza B RNA, PCR | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Respiratory Syncytial Virus | Negative | Negative | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| SARS-CoV-2 | NEGATIVE | NotDet/Neg | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |
| Covid 4Plex Comment | | | GENEXPERT_CEPHEID_EUA | 01/31/2023 6:38 PM EST | HCMH CLINICAL LAB | |

Comment:
Testing was performed using Xpert Xpress SARS-CoV-2/Flu/RSV plus produced by Cepheid and authorized for use under Emergency Use Authorization (EUA). Users should refer to fact sheets for healthcare providers and

for patients that are associated with this authorization on the FDA website ( https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/vitro-diagnostics-euas ).

Interpretation:

NEGATIVE - Viral nucleic acids not detected
POSITIVE - Viral nucleic acids detected for stated organism.
INVALID - Presence or absence of the viral nucleic acids targets cannot be determined. Control results showed failure of amplification procedure. Possible causes include presence of a PCR inhibitor, improper specimen or collection procedure. Recollection may clarify the issue.

Test limitations:

Performance of the Xpert Xpress SARS-CoV-2 has only been established in nasopharyngeal swab specimens. Also acceptable are nasal swabs and nasal wash/aspirates but performance characteristics have not been established for these specimens.

Viral quantitation is not reported with this assay. It does not differentiate Influenza A subtypes, Influenza B lineages, or RSV subgroups. Potential for competitive interference exists when more than one viral target is present; clinical significance of this potential has not been evaluated.
Detection of viral nucleic acid does not necessarily indicate that infectious organisms are present. Results should not be used as the sole basis for treatment or other patient management decisions.

False negative results may occur if a specimen is improperly collected,

transported or handled, or if inadequate numbers of organisms are present in the specimen. Mutations within the target regions for the viruses that affect primer and/or probe binding could also cause false negatives, but manufacturer's studies show that these regions are highly conserved.

Interference studies showed absence of significant interference with a variety of substances that may occur in clinical specimens or with selected respiratory pathogens including other coronaviruses. Interference from non-tested substances or organisms cannot be excluded. Live attenuated viruses may cause false positive results, e.g. recent administration of Flumist.

This test cannot rule out diseases caused by other bacterial or viral pathogens. PCR respiratory panel is available for other common pathogens (order Respiratory Viral Panel).

| Specimen (Source) | Anatomical Location / Laterality | Collection Method / Volume | Collection Time | Received Time |
|---|---|---|---|---|
| Nasopharyngeal | SWAB FROM NASAL SINUS / Unknown | Non-Blood Collection / Unknown | 01/31/2023 5:45 PM EST | 01/31/2023 5:56 PM EST |

| Authorizing Provider | Result Type |
|---|---|
| Christopher A Chamberlain FNP | MICROBIOLOGY - GENERAL ORDERABLES |

| Performing Organization | Address | City/State/ZIP Code | Phone Number |
|---|---|---|---|
| HCMH CLINICAL LAB | Hawkins County Memorial Hospital<br><br>Medical Director: Gregory A. Stancel, M.D.<br><br>851 Locust Street | Rogersville, TN 37857 | 423-921-7000 |

documented in this encounter

## Visit Diagnoses

**Diagnosis**

Abdominal pain, unspecified abdominal location - Primary

documented in this encounter

## Administered Medications

**Inactive Administered Medications - up to 3 most recent administrations**

| Medication Order | MAR Action | Action Date | Dose | Rate | Site |
|---|---|---|---|---|---|
| alum & mag - simeth (Maalox) 200-200-20 MG/5ML suspension 15 mL<br><br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose, Shake well before use. | Given | 01/31/2023 5:44 PM EST | 15 mL | | |
| lidocaine (Xylocaine) 2 % mouth solution 15 mL<br><br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose | Given | 01/31/2023 5:44 PM EST | 15 mL | | |

documented in this encounter

## Active and Recently Administered Medications

Times are shown in EST.**Scheduled**

| Medication Order | 01/29/2023 | 01/30/2023 | 01/31/2023 |
|---|---|---|---|
| alum & mag - simeth (Maalox) 200-200-20 MG/5ML suspension 15 mL (COMPLETED)<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose, Shake well before use. | | | • 1744 (Given - Provider: Pamela J Williams, RN) |
| lidocaine (Xylocaine) 2 % mouth solution 15 mL (COMPLETED)<br>15 mL Once, Oral, On Tue 1/31/23 at 1726, For 1 dose | | | • 1744 (Given - Provider: Pamela J Williams, RN) |

documented in this encounter

## Care Teams

| Team Member | Relationship | Specialty | Start Date | End Date |
|---|---|---|---|---|
| Dalle-Ave, Mark Joseph, MD<br><br>4307 Hwy 66 South<br><br>Ste 4<br><br>Rogersville, TN 37857-3155<br><br>423-921-1600 (Work)<br><br>423-921-1677 (Fax) | PCP - General | | 3/23/13 | |

documented as of this encounter

## Demographics

| | | | |
|---|---|---|---|
| **Sex:** | Male | **Ethnicity:** | Not Hispanic or Latino |
| **DOB:** | | **Race:** | White or Caucasian |
| **Preferred language:** | English | **Marital status:** | Married |
| **Contact:** | 1199 STANLEY VALLEY RD, USA, Ph. tel:+1-423-921-4434 | | |

## Care Team Members

**Primary Care Provider**

| | |
|---|---|
| Mark Joseph Dalle-Ave, MD, Ballad Health - Epic | 4307 Hwy 66 South, Ste 4, Rogersville, TN 37857-3155, Ph. tel:+1-423-921-1600 |

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023, tied to order #8815636)

| Ordering Provider | BARRY MICHELSON, MD | Performing facility | TURKEY CREEK MEDICAL CTR (LAB) |
|---|---|---|---|
| Reported Date | 02/09/2023 12:56 | Accession ID | 3042304000241 |
| Performed Date | 02/09/2023 07:53 | | |

Tennova - Turkey Creek Medical Center

Patien t: FIELDS, DAVID MRN: 809309
DOB: Sex : Male
Locatio n: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession
304-23-040-00241

Exam Date/Time
2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure
Staff
MRN: 00809309
Referring
Physician: Barry Michelson, MD
Date of birth: Age: 45 year(s)
Sonographer:
Brandon Odom, RCS

Gender: Male BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no:
OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no:
3042304000241

FIN Number:
8945033

Study
location: Turkey Creek

Technical
quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global
hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly
diminished.
Valve is trileaflet and normal in structure. No
evidence of
stenosis.
Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global
hypokinesis.
Non-Invasive Cardiology

Report
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic
function is mildly
diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of
stenosis. Trace
mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No
evidence of
stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of
stenosis. Mild
tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of
stenosis. Trace
pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no
pericardial effusion
visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more
than 50%
respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm
(2.5 - 4
cm)

2D septum diastolic: 0.87 cm

Area systolic: 37.3 cm^2

2D post wall diastolic: 1.01 cm
(0.6 - 1 cm)

FS Normal Range (30-45%): 3%

Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml
(62 - 150 ml)

LVESV Teichholz: 175 ml
(21 - 61
ml)

LVEDVI Teichholz: 77.87 ml/m^2
(34 - 74 ml/m^2)

LVESVI Teichholz: 70.25
ml/m^2
(11 - 31
ml/m^2)

EF Teichholz: 15 %

EF Simpson (BP) Normal16 %
Range (55-85%): (51 - 72 %)

LVEDV Simpson (BP) Normal Range (56-155ml): 167 ml
(62 - 150 ml)

LVEDV (A2C) Normal Range (56-155ml): 160 ml
(62 - 150
ml)

LVESV Simpson (BP) Normal Range (19-58ml): 141 ml
(21 - 61 ml)

LVESV (A2C) Normal Range (19-58ml): 136 ml
(21 - 61
ml)

LVEDVI (A2C): 64.23
ml/m^2

LVEDV (A4C) Normal Range (56-155ml) : 173 ml
(62 - 150 ml)

LVESVI (A2C): 54.59
ml/m^2
(11 - 31
ml/m^2)

LVESV (A4C) Normal Range (19-58ml): 145 ml
(21 - 61 ml)

EF (A2C) Normal Range 15 %
(50-85%) :

LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report

LVESVI (A4C): 58.2 ml/m^2
(11 - 31 ml/m^2)

EF (A4C): 16 %

LV 3D/Strain

Right Ventricle
Diastolic dimension: 3.91 cm
Normal Range (2.7-3.4cm):

Systolic pressure: 44.94 mmHg

Left Atrium
LA diameter (2D) Normal Range (2.0-4.0cm): 4.5 cm

LA/Aorta (2D): 1.55

LA volume index: 40.14
ml/m^2
(16 - 34
ml/m^2)

LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal Range (2.0-4.0cm): 4.3 cm
Systolic pressure: 5 mmHg

Aortic Valve
Peak velocity Normal Range (0.9-1.7m/s) : 0.87 m/s
Mean velocity: 0.56 m/s
Mean gradient Normal Range (<10mmHG) : 1 mmHg
Peak gradient Normal Range (<10mmHG): 3.02 mmHg
Dimensionless index: 0.49
Area (cont VTI): 1.99 cm^2 (> 2 cm^2)
Mean velocity: 27.6 cm/s
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal Range (0.7-1.1m/s): 6.46 cm
Peak velocity: 42.6 cm/s
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal Range (0.60-1.30m/s) : 53.7 cm/s
Peak A-wave Normal Range( 0.30-0.60m/s) : 30.2 cm/s
E/A ratio Normal Range (0.8-2.5): 1.78
Peak gradient: 1.15 mmHg
Deceleration time Normal Range (160-240msec): 148 ms
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg
Estimated RAP: 5 mmHg
TR velocity: 316 cm/s
TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity Normal Range (0.5- 74.7 cm/s
Peak gradient: 2.23 mmHg

Non-Invasive Cardiology

Report

Estimated PASP: 44.94 mmHg

1.0m/s):

Aorta/Great Vessels
Aortic root (2D): 2.9 cm
Aortic arch: 2.8 cm
Ascending aorta Normal Range (<3.4cm): 2.7 cm
ACS (M-mode) Normal Range (1.5-26cm): 2 cm
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0

0

0

0

0
0 0
0
0
0 0 0
0
0
0
0
0
0 0 0
0
0
0
0
0
0 0
0
0 0
0 0
0
0
0
0
0

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 -
Dyskinesis 5 -
Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** MARK DALLE AVE MD

4307 HWY 66S, ROGERSVILLE, TN 37857
Phone: (423) 921-1600
Fax: (423) 921-1677

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 02/10/2023**

**This document contains the following records of the patient:**
- **Encounters and Procedures**
- **Imaging Results**
- **Lab Results**

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:98454-A-10667]

FIELDS, David L (id #98454, dob:

## Encounters and Procedures

Clinical Encounter Summaries

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/09/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/09/2023 01:45PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

## Chief Complaint

Followup: Heart failure
Followup: Essential hypertension

## Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

## Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

## Vitals

**Ht:** 6 ft 02/09/2023 01:51 pm

**Wt:** 296.8 lbs 02/09/2023 01:52 pm

**BP:** 124/62 sitting L arm 02/09/2023 02:01 pm
124/88 standing L arm 02/09/2023 02:02 pm

**BMI:** 40.3 02/09/2023 01:52 pm

**HR:** 88 02/09/2023 02:02 pm

## Measurements

None recorded.

## Allergies

Reviewed Allergies

**PENICILLINS:** Rash

## Medications

FIELDS, David L (id #98454, dob:

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/09/23 | prescribed |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/09/23 | prescribed |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/09/23 | prescribed |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |

2/9/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST.................BUFFY

Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

Problems

Reviewed Problems
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/09/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional

**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

## ROS

**Constitutional:** Constitutional: **weight gain (10lbs).**

**Cardiovascular:** Cardiovascular: **palpitations.**

FIELDS, David L (id #98454, dob:

**Respiratory:** Respiratory: **cough** and **wheezing**.

**Musculoskeletal:** Musculoskeletal: **swelling in the extremities**.

**Neurologic:** Neurologic: **weakness**.

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally**.

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft, **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Heart failure -**
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified

- CARDIAC CATHETERIZATION (SURG)

Weight (lbs): 297

**2. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

Return to Office

- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

## Encounter Sign-Off

Encounter signed-off by Barry Michelson, MD, 02/09/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/09/2023 at 2:34pm

FIELDS, David L (Id #98454, dob:

**Encounter Date: 02/06/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/06/2023 03:30PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Follow up 3+ years
Followup: Essential hypertension

PROBLEMS WITH SHORTNESS OF BREATH, SWELLING, COUGH AND FATIGUE

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/06/2023 03:05 pm | **Wt:** 301.1 lbs 02/06/2023 04:03 pm | **BP:** 126/90 sitting L arm 02/06/2023 04:04 pm<br>120/88 standing L arm 02/06/2023 04:05 pm |
| **BMI:** 40.8 02/06/2023 04:03 pm | **HR:** 90 02/06/2023 04:03 pm | **O2Sat:** 98% 02/06/2023 04:05 pm |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS:** Rash

Medications

Reviewed Medications

| | |
|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 entered |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 entered |
| **lisinopriL 20 mg tablet**<br>Take 1 tablet(s) every day by oral route for 90 days. | 11/25/22 filled |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 entered |

2/6/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST..............BUFFY

## Vaccines

Reviewed Vaccines
COVID VACCINATED

## Problems

Reviewed Problems
• Essential hypertension - Onset: 02/06/2023

## Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/06/2023
What is your level of alcohol consumption?: None
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male

**FIELDS, David L (id #98454, dob:**

Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
* Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
SLEEP APNEA: **Y**

## Documents for Discussion

**Discussed the following documents:**
- CT, CORONARY CALCIUM SCORE - 08/18/17
- ELECTROCARDIOGRAM - 08/18/17

  Result Note: EKG was reviewed. It demonstrates sinus rhythm. Q waves are present in 1 and aVL. Previous lateral infarction cannot be excluded however EKG is unchanged from previous
- LIPID PANEL, SERUM - 06/27/17

- Sleep Medicine - Sleep Study - Christopher Falin, Ballad Health - Epic - 02/06/23
- Central Scheduling - Transcribe Orders - Mark Dalle-Ave, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Neha Barakam, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Derek Darnell, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Connie Hinkle, Ballad Health - Epic - 02/06/23
- General Medicine - Continuity of Care Document - Ballad Health - Epic - 02/06/23

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

## ROS

**Constitutional:** Constitutional: **night sweats, weight gain (___lbs)**, and **exercise intolerance** and no fever.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds, nose problems, or sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Cardiovascular:** Cardiovascular: no arm pain on exertion or known heart murmur; **shortness of breath when walking** and **breath when lying down**; and **chest pain on exertion, palpitations (fluttering or**

FIELDS, David L (id #98454, dob:

heart racing), and **light-headed on standing**.

**Respiratory:** Respiratory: **cough, wheezing, shortness of breath**, and **sleep apnea (CPAP with forced air)** and no coughing up blood.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea, **dyspepsia** and **GERD**, and normal appetite and not vomiting blood; **stool has become very loose in the past 2 weeks and more frequent about 3 times daily.**

**Genitourinary:** Genitourinary: no incontinence, hematuria, difficulty urinating, or increased frequency.

**Musculoskeletal:** Musculoskeletal: no muscle aches or weakness; no arthralgias/joint pain or back pain; and **swelling in the extremities (stomach, around to back, legs from knees down)**.

**Integumentary:** Skin: no jaundice, rashes, laceration, or abnormal mole.

**Neurologic:** Neurologic: no weakness, numbness, seizures, dizziness, migraines, headaches, tremor, or loss of consciousness.

**Psychiatric:** Psych: no depression, anxiety, hallucinations, alcohol abuse, or suicidal thoughts; **sleep disturbances** and **restless sleep**; and feeling safe in a relationship.

**Endocrine:** Endocrine: **fatigue; hands and feet get cold more than normal**.

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising, swollen glands, or excessive bleeding.

**Allergic/Immunologic:** Allergy/Immunologic: no itching, hives, sinus pressure, or frequent sneezing and **runny nose.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral ; Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Dyspnea on exertion -**

Patient's not having orthopnea but has noted exercise intolerance we will evaluate with echocardiogram lab work and a stress test

R06.09: Other forms of dyspnea

- ELECTROCARDIOGRAM
- PRO BNP
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
- CBC WITH AUTOMATED DIFF (PLT COUNT INCLUDED)
- COMPREHENSIVE METABOLIC PNL
- TROPONIN I

- MAGNESIUM
- TSH

**2. Swollen abdomen -**
Patient feels as if his abdomen is distended. I do not appreciate a fluid wave on exam but given symptoms also consistent with heart failure abdominal ultrasound will be obtained to look at organs as well as whether or not edema is present
R19.00: Intra-abdominal and pelvic swelling, mass and lump, unspecified site
- US, ABDOMEN, COMPLETE

**3. Edema of lower extremity -**
See above
R60.0: Localized edema
- LEG AND ANKLE EDEMA: CARE INSTRUCTIONS

**4. Multiple premature ventricular complexes -**
Cardiac work-up will be completed we may need to consider getting a monitor if appropriate
I49.3: Ventricular premature depolarization

ELECTROCARDIOGRAM
- Result:
  **- Interpretation:: EKG reviewed sinus rhythm rate 90 nonspecific intraventricular conduction delay is present PVCs are present left atrial enlargement is present**

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/06/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/06/2023 at 4:51pm

**FIELDS, David L (id #98454, dob:**




## Imaging Results

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023 9:44am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309

DOB: Sex Male

Location: TNTC RAD

Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession 304-23-040-00360

Exam Date/Time 2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid.
Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata.
Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal

ascites,
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023 7:53am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID    MRN: 809309
DOB:    Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession 304-23-040-00241    Exam Date/Time 2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure Staff
MRN: 00809309
Referring Physician: Barry Michelson, MD
Date of birth:    Age: 45 year(s)
Sonographer: Brandon Odom, RCS

Gender: Male    BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg    BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no: OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no: 3042304000241

FIN Number: 8945033

Study location: Turkey Creek

Technical quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.
Valve is trileaflet and normal in structure. No evidence of

stenosis.
Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global
hypokinesis.
Non-Invasive Cardiology

Report
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic
function is mildly
diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of
stenosis. Trace
mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No
evidence of
stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of
stenosis. Mild
tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of
stenosis. Trace
pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no
pericardial effusion
visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more
than 50%
respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm
(2.5 - 4
cm)
2D septum diastolic: 0.87 cm
Area systolic: 37.3 cm^2
2D post wall diastolic: 1.01 cm
(0.6 - 1 cm) FS Normal Range (30- 3%
45%):
Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml LVESV Teichholz: 175 ml
(62 - 150 ml) (21 - 61
ml)
LVEDVI Teichholz: 77.87 ml/m^2 LVESVI Teichholz: 70.25
ml/m^2
(34 - 74 ml/m^2) (11 - 31
ml/m^2)

FIELDS, David L (id #98454, dob:

EF Teichholz: 15 % EF Simpson (BP) Normal 16 %
Range (55-85%): (51 - 72 %)
LVEDV Simpson (BP) 167 ml
Normal Range (56-155ml): (62 - 150 ml) LVEDV (A2C) Normal 160 ml
Range (56-155ml): (62 - 150 ml)
LVESV Simpson (BP) 141 ml LVESV (A2C) Normal 136 ml
Normal Range (19-58ml): (21 - 61 ml) Range (19-58ml): (21 - 61 ml)
LVEDVI (A2C): 64.23 ml/m^2
LVEDV (A4C) Normal 173 ml
Range (56-155ml) : (62 - 150 ml) LVESVI (A2C): 54.59 ml/m^2 (11 - 31 ml/m^2)
LVESV (A4C) Normal 145 ml
Range (19-58ml): (21 - 61 ml) EF (A2C) Normal Range 15 %
(50-85%) :
LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report

LVESVI (A4C): 58.2 ml/m^2
(11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: 3.91 cm Systolic pressure: 44.94 mmHg
Normal Range (2.7-3.4cm):

Left Atrium
LA diameter (2D) 4.5 cm LA/Aorta (2D): 1.55
Normal Range (2.0-4.0cm): LA volume index: 40.14 ml/m^2 (16 - 34 ml/m^2)
LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal 4.3 cm Systolic pressure: 5 mmHg
Range (2.0-4.0cm):

Aortic Valve
Peak velocity Normal 0.87 m/s Mean velocity: 0.56 m/s
Range (0.9-1.7m/s) :
Mean gradient Normal 1 mmHg
Peak gradient Normal 3.02 mmHg Range (<10mmHG) :
Range (<10mmHG):
Dimensionless index: 0.49
Area (cont VTI): 1.99 cm^2
Mean velocity: 27.6 cm/s
(> 2 cm^2)
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal 6.46 cm
Peak velocity: 42.6 cm/s Range (0.7-1.1m/s):
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal 53.7 cm/s Peak A-wave Normal 30.2 cm/s
Range (0.60-1.30m/s) : Range( 0.30-0.60m/s) :

FIELDS, David L (id #98454, dob:

E/A ratio Normal Range 1.78
(0.8-2.5):
Peak gradient: 1.15 mmHg
Deceleration time 148 ms
Normal Range (160-
240msec):
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg Estimated RAP: 5 mmHg
TR velocity: 316 cm/s TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity 74.7 cm/s Peak gradient: 2.23 mmHg
Normal Range (0.5-

Non-Invasive Cardiology

Report

Estimated PASP: 44.94 mmHg

1.0m/s):

Aorta/Great Vessels
Aortic root (2D): 2.9 cm Aortic arch: 2.8 cm
Ascending aorta 2.7 cm ACS (M-mode) Normal 2 cm
Normal Range Range (1.5-26cm):
(<3.4cm):
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0 0 0 0
0 0 0 0 0 0 0 0 0 0
0 0 0 0 0 0
0
0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0

FIELDS, David L (id #98454, dob:

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 - Dyskinesis 5 - Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Lab Results

**FIELDS, David L (id #98454, dob:**

Lab Result 02/07/2023 (#8818458, 02/07/2023)



**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| | | | |
|---|---|---|---|
| **Patient:** | Fields, David | **PCP:** | Mark J Delle-Ave, MD |
| **MRN:** | 00577368 | **Admitted:** | |
| **DOB:** | | **Diagnosis:** | |
| **Age:** | 45 yrs | **Location:** | HCMH CLINICAL LAB |
| **Sex:** | Male | | |

**Authorizing Provider**

**Barry I Michelson, MD** O: 865-392-3400

**CLINICAL LABORATORY RESULTS**

**CHEMISTRY - ROUTINE**

**Comprehensive Metabolic Panel** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| Sodium | 136 | 136 - 146 mmol/L |
| Potassium | 4.4 | 3.5 - 5.1 mmol/L |
| Chloride | 102 | 96 - 112 mmol/L |
| CO2 | 23 | 19 - 32 mmol/L |
| Anion Gap | 11 | 2 - 11 mmol/L |
| BUN | 18 | 6 - 23 mg/dL |
| Creatinine | 1.16 | 0.50 - 1.36 mg/dL |
| Glucose | 145 (H) | 70 - 99 mg/dL |
| Calcium | 9.4 | 8.4 - 10.5 mg/dL |
| Albumin | 4.0 | 3.5 - 5.2 g/dL |
| Total Protein | 7.3 | 6.6 - 8.7 g/dL |
| Alkaline Phosphatase | 94 | 39 - 117 U/L |
| ALT | 72 (H) | 0 - 40 U/L |
| AST | 51 (H) | 0 - 39 U/L |
| Globulin | 3.3 | 2.3 - 4.9 g/dL |
| Albumin/Globulin Ratio | 1.21 | 0.96 - 1.69 |
| Bilirubin, Total | 2.5 (H) | 0.3 - 1.2 mg/dL |
| eGFR | 79 | >=60 ml/min/BSA |

eGFR calculated using CKD-EPI 2021 refit equation recommended by NKF/ASN Task Force (JASN December 2021, 32 (12) 2994-3015).
New calculation was implemented at Balladhealth labs on 12/05/2022.
Expected Reference Interval: >=60mL/min/1.73 square meters

**Flag Legend:**

**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D. - Laboratory Director**
Clinical Laboratory 423-921-7230

| Component | Value | Reference |
|---|---|---|

CKD stages: I:>90 II:60-89 III:30-59 IV:15-29 V:<15
Estimated GFR (eGFR) calculated using the CKD-EPI 2021 refit equation. Results should be interpreted with caution in situations that predispose to inaccuracies of the eGFR, including non-steady state creatinine (acute kidney injury), extremes of muscle mass/body size, high protein diets/supplement use, dialysis, loss of extracellular fluid, drugs interfering with renal tubular secretion (eg cimetidine, trimethoprim) or gut creatinase activity (antibiotics), and analytic interferences related to altered metabolites (glucose, ketones, bilirubin) or drugs.

Resulting Lab: HCMH LAB

Order Questions

**Has the patient fasted?**

**Magnesium** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Magnesium** | 1.9 | 1.6 - 2.6 mg/dL |

Resulting Lab: HCMH LAB

**Troponin I** (Final result)

| | | | |
|---|---|---|---|
| ID: [redacted] | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **Tropon[redacted]** | <0.30 | <0.30 ng/mL |

TROP[redacted]N INTERPRETATIVE DATA:
Serum levels of troponin I are highly sensitive and specific for detection of myocardial injury due to ischemia, myocarditis, or cardiac contusion/surgery. Clinical studies have shown that troponin I levels are useful indicators of myocardial injury for a range of acute coronary syndromes including unstable angina, non Q-wave, and Q-wave myocardial infarction.

Resulting Lab: HCMH LAB

**pro B-Type Natriuretic Peptide** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **pro B-Type Natriuretic Peptide** | 3,653 (H) | 0 - 125 pg/mL |

Resulting Lab: HCMH LAB

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

## ENDOCRINOLOGY

**TSH** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| TSH | 4.30 | 0.34 - 5.00 uIU/mL |

Resulting Lab: HCMH LAB

## HEMATOLOGY

**COMPLETE BLOOD COUNTS**

| | 02/07/23 0918 | Reference |
|---|---|---|
| **WBC** | 5.4 | 3.5-11.0 K/uL |
| **RBC** | 5.21 | 4.22-5.81 M/uL |
| **Hemoglobin** | 15.5 | 13.9-18.0 g/dL |
| **Hematocrit** | 46.4 | 41.0-51.0 % |
| **MCV** | 89.1 | 78.0-98.0 fL |
| **MCH** | 29.8 | 25.0-34.0 pg |
| **MCHC** | 33.4 | 31.5-36.0 g/dL |
| **RDW** | 14.0 | 11.5-15.0 % |
| **Platelet Count** | 235 | 150-400 K/uL |
| **MPV** | 11.8 | 9.4-12.7 fL |
| **Neutrophils #** | 3.76 | 1.80-8.30 K/uL |
| **Lymphocytes #** | 0.95 | 0.70-4.00 K/uL |
| **Monocytes #** | 0.55 | 0.10-1.00 K/uL |
| **Eosinophils #** | 0.11 | 0.00-0.60 K/uL |
| **Basophils #** | 0.02 | 0.00-0.20 K/uL |
| **Neutrophils %** | 69.8 | % |
| **Lymphocytes %** | 17.6 | % |
| **Monocytes %** | 10.2 | % |
| **Eosinophils %** | 2.0 | % |
| **Basophils %** | 0.4 | % |
| Resulting Lab: | HCMH LAB | |

**Resulting Labs**

**HCMH LAB** HCMH CLINICAL LAB, Hawkins County Memorial Hospital, Medical Director: Gregory A. Stancel, M.D., 851 Locust Street, Rogersville TN 37857

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368
*Printed: 2/7/2023 12:01 PM* *Page: 3 of 3*

## Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** MARK DALLE AVE MD

4307 HWY 66S, ROGERSVILLE, TN 37857
Phone: (423) 921-1600
Fax: (423) 921-1677

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 02/10/2023**

**This document contains the following records of the patient:**
- **Encounters and Procedures**
- **Imaging Results**
- **Lab Results**

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have Internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:98454-A-10667]

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

| Full Name (First) | (M.I.) | (Last Name) | Social Security Number |
|---|---|---|---|
| David | L | Fields | |

| Height | Weight | Blood Pressure | Employer Name |
|---|---|---|---|
| 6' 0" | 296.8 | 124/62 sitting 124/88 standing | East TN. Iron and Metal |

## 2. Diagnosis

Primary ICD diagnostic Code (Required): Congestive Heart Failure

Primary ICD diagnosis Description:

Secondary ICD Diagnosis Code: Hypertension

Secondary ICD Diagnosis Description:

Pregnancy: First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery __/__/__ ☐ Vaginal ☐ C-Section

Symptoms: Shortness of breath, swelling, cough and fatigue

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings): Severe global left ventricular dysfunction with an ejection fraction of 10-15%. Hypertension

## 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 2/8/2023 | / / | 2/8/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 4/19/2010 | 8/27/22 | 2/27/2023 |

Dates hospital confined: __/__/__ to __/__/__

If work related or injury, summarize circumstances: SEEing DR. BARRY Michelson Cardiologist 10800 Parkside Dr. Suite 331, Knoxville, TN. 37934 (865) 392 3400. Congestive Heart Failure with ejection fx 10-15%

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

WE DO NOT DO Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

Indicate frequency per day the listed activities below can be used performed using:
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | | Standing | | Crouching | | Overhead | |
| 6-10 lbs. | | Walking | | Crawling | | Desk Level | |
| 11-25 lbs. | | Sitting | | Grasping | | Below Waist | |
| 26-50 lbs. | | Balancing | | Climbing | | | |
| 51-100 lbs. | | Stooping | | Pushing | | | |
| 100 + lbs. | | Kneeling | | Pulling | | | |
| | | Fingering | | Bending | | | |

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ___/___/___

Dressing ___/___/___

Transferring ___/___/___

Bathing ___/___/___

Toileting ___/___/___

Eating ___/___/___

Date patient experienced loss of Cognitive Functioning: ___/___/___

**5. Treatment**

HEArt echo on 2-9-23. HeArt Catherization on 2-17-23

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

Describe ongoing treatment frequency

**6. Prognosis**

Describe the patients prognosis for recovery

Patient able to return to work Full-Time on:

___/___/___ to ___/___/___

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

**7. Physician's Information**

MARK J. DAlle-Ave
Name

4307 HW 66 South
Street Address

ROGERSVILLE | TN | 37857
City | State | Zip Code

423 921 1624
Phone Number

423 921 1677
Fax Number

[signature]
Signature

2/9/2023
Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Authorization For Release Of Information

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________
(Last) (First) (Middle)

Date of Birth: ____/____/________ Social Security Number: XXX-XX-____________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
   PO Box 2609
   Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________ **DATE** ____/____/________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ______________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________

**ADDRESS:** ______________________________
(Street)

______________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________

(Please see FRAUD NOTICES attached)

FIELDS, David L (id #98454, dob:

## Encounters and Procedures

Clinical Encounter Summaries

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/09/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/09/2023 01:45PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

## Chief Complaint

Followup: Heart failure
Followup: Essential hypertension

## Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

## Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

## Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/09/2023 01:51 pm | **Wt:** 296.8 lbs 02/09/2023 01:52 pm | **BP:** 124/62 sitting L arm 02/09/2023 02:01 pm<br>124/88 standing L arm 02/09/2023 02:02 pm |
| **BMI:** 40.3 02/09/2023 01:52 pm | **HR:** 88 02/09/2023 02:02 pm | |

## Measurements

None recorded.

## Allergies

Reviewed Allergies

**PENICILLINS:** Rash

## Medications

Reviewed Medications

| | |
|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 entered |
| **carvedilol 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/09/23 prescribed |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/09/23 prescribed |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/09/23 prescribed |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 entered |

2/9/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST...............BUFFY

## Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

## Problems

Reviewed Problems
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

## Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/09/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional

**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

## ROS

**Constitutional:** Constitutional: **weight gain (10lbs)**.

**Cardiovascular:** Cardiovascular: **palpitations**.

FIELDS, David L (id #98454, dob:

**Respiratory:** Respiratory: **cough** and **wheezing.**

**Musculoskeletal:** Musculoskeletal: **swelling in the extremities.**

**Neurologic:** Neurologic: **weakness.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral ; Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

Assessment / Plan

**1. Heart failure** -
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified

- CARDIAC CATHETERIZATION (SURG)

Weight (lbs): 297

**2. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

Return to Office

- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off

Encounter signed-off by Barry Michelson, MD, 02/09/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/09/2023 at 2:34pm

FIELDS, David L (id #98454, dob:

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/06/2023**
Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/06/2023 03:30PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Follow up 3+ years
Followup: Essential hypertension

PROBLEMS WITH SHORTNESS OF BREATH, SWELLING, COUGH AND FATIGUE

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/06/2023 03:05 pm | **Wt:** 301.1 lbs 02/06/2023 04:03 pm | **BP:** 126/90 sitting L arm 02/06/2023 04:04 pm<br>120/88 standing L arm 02/06/2023 04:05 pm |
| **BMI:** 40.8 02/06/2023 04:03 pm | **HR:** 90 02/06/2023 04:03 pm | **O2Sat:** 98% 02/06/2023 04:05 pm |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS**: Rash

Medications

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **lisinopril 20 mg tablet**<br>Take 1 tablet(s) every day by oral route for 90 days. | 11/25/22 | filled |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |

2/6/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST................BUFFY

## Vaccines

Reviewed Vaccines
COVID VACCINATED

## Problems

Reviewed Problems
- Essential hypertension - Onset: 02/06/2023

## Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/06/2023
What is your level of alcohol consumption?: None
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender Identity: Identifies as Male

**FIELDS, David L (Id #98454, dob:**

Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
* Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
SLEEP APNEA: **Y**

## Documents for Discussion

**Discussed the following documents:**

- CT, CORONARY CALCIUM SCORE - 08/18/17
- ELECTROCARDIOGRAM - 08/18/17

  Result Note: EKG was reviewed. It demonstrates sinus rhythm. Q waves are present in 1 and aVL. Previous lateral infarction cannot be excluded however EKG is unchanged from previous
- LIPID PANEL, SERUM - 06/27/17

- Sleep Medicine - Sleep Study - Christopher Falin, Ballad Health - Epic - 02/06/23
- Central Scheduling - Transcribe Orders - Mark Dalle-Ave, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Neha Barakam, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Derek Darnell, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Connie Hinkle, Ballad Health - Epic - 02/06/23
- General Medicine - Continuity of Care Document - Ballad Health - Epic - 02/06/23

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

## ROS

**Constitutional:** Constitutional: **night sweats, weight gain (__lbs)**, and **exercise intolerance** and no fever.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds, nose problems, or sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Cardiovascular:** Cardiovascular: no arm pain on exertion or known heart murmur; **shortness of breath when walking** and **breath when lying down**; and **chest pain on exertion, palpitations (fluttering or**

**heart racing**), and **light-headed on standing**.

**Respiratory:** Respiratory: **cough, wheezing, shortness of breath**, and **sleep apnea (CPAP with forced air)** and no coughing up blood.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea, **dyspepsia** and **GERD**, and normal appetite and not vomiting blood; **stool has become very loose in the past 2 weeks and more frequent about 3 times daily.**

**Genitourinary:** Genitourinary: no incontinence, hematuria, difficulty urinating, or increased frequency.

**Musculoskeletal:** Musculoskeletal: no muscle aches or weakness; no arthralgias/joint pain or back pain; and **swelling in the extremities (stomach, around to back, legs from knees down).**

**Integumentary:** Skin: no jaundice, rashes, laceration, or abnormal mole.

**Neurologic:** Neurologic: no weakness, numbness, seizures, dizziness, migraines, headaches, tremor, or loss of consciousness.

**Psychiatric:** Psych: no depression, anxiety, hallucinations, alcohol abuse, or suicidal thoughts; **sleep disturbances** and **restless sleep**; and feeling safe in a relationship.

**Endocrine:** Endocrine: **fatigue; hands and feet get cold more than normal.**

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising, swollen glands, or excessive bleeding.

**Allergic/Immunologic:** Allergy/Immunologic: no itching, hives, sinus pressure, or frequent sneezing and **runny nose.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral ; Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding.**

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Dyspnea on exertion -**
Patient's not having orthopnea but has noted exercise intolerance we will evaluate with echocardiogram lab work and a stress test
R06.09: Other forms of dyspnea

- ELECTROCARDIOGRAM
- PRO BNP
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
- CBC WITH AUTOMATED DIFF (PLT COUNT INCLUDED)
- COMPREHENSIVE METABOLIC PNL
- TROPONIN I

FIELDS, David L (Id #98454, dob:

- MAGNESIUM
- TSH

**2. Swollen abdomen -**
Patient feels as if his abdomen is distended. I do not appreciate a fluid wave on exam but given symptoms also consistent with heart failure abdominal ultrasound will be obtained to look at organs as well as whether or not edema is present
R19.00: Intra-abdominal and pelvic swelling, mass and lump, unspecified site
- US, ABDOMEN, COMPLETE

**3. Edema of lower extremity -**
See above
R60.0: Localized edema
- LEG AND ANKLE EDEMA: CARE INSTRUCTIONS

**4. Multiple premature ventricular complexes -**
Cardiac work-up will be completed we may need to consider getting a monitor if appropriate
I49.3: Ventricular premature depolarization

ELECTROCARDIOGRAM
- Result:
  - **Interpretation:: EKG reviewed sinus rhythm rate 90 nonspecific intraventricular conduction delay is present PVCs are present left atrial enlargement is present**

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/06/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/06/2023 at 4:51pm

From: 02/08/2023 08:01 #518 P.006/006

David Fields
#98454

2/6/2023 4:57:03 PM
TENNOVA HEART-TURKEY

Rate 90 . Age not entered, assumed to be 50 years old for purpose of ECG interpretation
. Sinus rhythm..........................................normal P axis, V-rate 50- 99
PR 222 . Paired ventricular premature complexes..................sequence of 2 V complexes
QRSD 126 . Prolonged PR interval...................................PR >210, V-rate 50- 90
QT 362 . Right atrial enlargement.........................P>0.25mV 2 lds or<-0.24mV aVR/aVL
QTc 443 . RBBB and LPFB..........................................QRSd >120mS, axis(90,210)
. Baseline wander in lead(s) II

--AXIS--
P 60
QRS 141 - ABNORMAL ECG -
T -1
12 Lead; Standard Placement Unconfirmed Diagnosis

FIELDS, DA #98454
* 71204517a10887 Single Page E-ImageDoc




# Imaging Results

**FIELDS, David L (id #98454, dob:**

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023 9:44am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID    MRN: 809309
DOB:    Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession 304-23-040-00360    Exam Date/Time 2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid. Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata. Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal

ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

FIELDS, David L (id #98454, dob:

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023 7:53am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309
DOB: Sex: Male

Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession 304-23-040-00241
Exam Date/Time 2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure
Staff
MRN: 00809309
Referring
Physician: Barry Michelson, MD
Date of birth: Age: 45 year(s)
Sonographer:
Brandon Odom, RCS

Gender: Male BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no:
OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler
Patient status: Routine
Accession no:
3042304000241

FIN Number:
8945033

Study location: Turkey Creek

Technical quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.
Valve is trileaflet and normal in structure. No evidence of

FIELDS, David L (id #98454, dob:

stenosis. .

Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global hypokinesis.

Non-Invasive Cardiology

Report

Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic function is mildly diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of stenosis. Trace mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No evidence of stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of stenosis. Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of stenosis. Trace pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no pericardial effusion visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more than 50% respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (interpreting physician) on 2/9/2023 at 12:56 PM

Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm (2.5 - 4 cm)
2D septum diastolic: 0.87 cm
Area systolic: 37.3 cm^2
2D post wall diastolic: 1.01 cm (0.6 - 1 cm) FS Normal Range (30-45%): 3%
Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml (62 - 150 ml) LVESV Teichholz: 175 ml (21 - 61 ml)
LVEDVI Teichholz: 77.87 ml/m^2 (34 - 74 ml/m^2) LVESVI Teichholz: 70.25 ml/m^2 (11 - 31 ml/m^2)

FIELDS, David L (id #98454, dob:

EF Teichholz: 15 % EF Simpson (BP) Normal Range (55-85%): 16 % (51 - 72 %)
LVEDV Simpson (BP) Normal Range (56-155ml): 167 ml (62 - 150 ml) LVEDV (A2C) Normal Range (56-155ml): 160 ml (62 - 150 ml)
LVESV Simpson (BP) Normal Range (19-58ml): 141 ml (21 - 61 ml) LVESV (A2C) Normal Range (19-58ml): 136 ml (21 - 61 ml)
LVEDVI (A2C): 64.23 ml/m^2
LVEDV (A4C) Normal Range (56-155ml) : 173 ml (62 - 150 ml) LVESVI (A2C): 54.59 ml/m^2 (11 - 31 ml/m^2)
LVESV (A4C) Normal Range (19-58ml): 145 ml (21 - 61 ml) EF (A2C) Normal Range (50-85%) : 15 %
LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report
LVESVI (A4C): 58.2 ml/m^2 (11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: Normal Range (2.7-3.4cm): 3.91 cm Systolic pressure: 44.94 mmHg

Left Atrium
LA diameter (2D) Normal Range (2.0-4.0cm): 4.5 cm LA/Aorta (2D): 1.55
LA volume Index: 40.14 ml/m^2 (16 - 34 ml/m^2)
LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal Range (2.0-4.0cm): 4.3 cm Systolic pressure: 5 mmHg
Aortic Valve
Peak velocity Normal Range (0.9-1.7m/s) : 0.87 m/s Mean velocity: 0.56 m/s
Mean gradient Normal Range (<10mmHG) : 1 mmHg
Peak gradient Normal Range (<10mmHG): 3.02 mmHg
Dimensionless Index: 0.49
Area (cont VTI): 1.99 cm^2 (> 2 cm^2)
Mean velocity: 27.6 cm/s
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal Range (0.7-1.1m/s): 6.46 cm
Peak velocity: 42.6 cm/s
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal Range (0.60-1.30m/s) : 53.7 cm/s Peak A-wave Normal Range( 0.30-0.60m/s) : 30.2 cm/s

FIELDS, David L (id #98454, dob:

E/A ratio Normal Range 1.78
(0.8-2.5):
Peak gradient: 1.15 mmHg
Deceleration time 148 ms
Normal Range (160-
240msec):
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg Estimated RAP: 5 mmHg
TR velocity: 316 cm/s TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity 74.7 cm/s Peak gradient: 2.23 mmHg
Normal Range (0.5-

Non-Invasive Cardiology

Report
Estimated PASP: 44.94 mmHg
1.0m/s):

Aorta/Great Vessels
Aortic root (2D): 2.9 cm Aortic arch: 2.8 cm
Ascending aorta 2.7 cm ACS (M-mode) Normal 2 cm
Normal Range Range (1.5-26cm):
(<3.4cm):
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0

**FIELDS, David L (id #98454, dob:**

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 -
Dyskinesis 5 -
Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Lab Results

FIELDS, David L (id #98454, dob:

Lab Result 02/07/2023 (#8818458, 02/07/2023)



**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St. Rogersville TN 37857

**GREGORY A. STANCEL, M.D. - Laboratory Director**
Clinical Laboratory 423-921-7230

| | | | |
|---|---|---|---|
| **Patient:** | Fields, David | **PCP:** | Mark J Dalle-Ave, MD |
| **MRN:** | 00577368 | **Admitted:** | |
| **DOB:** | | **Diagnosis:** | |
| **Age:** | 45 yrs | **Location:** | HCMH CLINICAL LAB |
| **Sex:** | Male | | |

**Authorizing Provider**

**Barry I Michelson, MD** O: 865-392-3400

**CLINICAL LABORATORY RESULTS**

**CHEMISTRY - ROUTINE**

**Comprehensive Metabolic Panel** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Sodium** | 136 | 136 145 mmol/L |
| **Potassium** | 4.4 | 3.5 - 5.1 mmol/L |
| **Chloride** | 102 | 96 112 mmol/L |
| **CO2** | 23 | 19 - 32 mmol/L |
| **Anion Gap** | 11 | 2 - 11 mmol/L |
| **BUN** | 18 | 6 - 23 mg/dL |
| **Creatinine** | 1.16 | 0.50 - 1.35 mg/dL |
| **Glucose** | **146 (H)** | 70 - 99 mg/dL |
| **Calcium** | 9.4 | 8.4 - 10.5 mg/dL |
| **Albumin** | 4.0 | 3.5 5.2 g/dL |
| **Total Protein** | 7.3 | 6.6 - 8.7 g/dL |
| **Alkaline Phosphatase** | 94 | 59 117 U/L |
| **ALT** | **72 (H)** | 0 - 40 U/L |
| **AST** | **51 (H)** | 0 39 U/L |
| **Globulin** | 3.3 | 2.3 - 4.9 g/dL |
| **Albumin/Globulin Ratio** | 1.21 | 0.96 - 1.60 |
| **Bilirubin, Total** | **2.5 (H)** | 0.3 - 1.2 mg/dL |
| **eGFR** | 79 | >=60 mL/min/BSA |

eGFR calculated using CKD-EPI 2021 refit equation recommended by NKF/ASN Task Force (JASN December 2021, 32 (12) 2994-3015).
New calculation was implemented at Balladhealth labs on 12/05/2022.
Expected Reference Interval: >=60mL/min/1.73 square meters

**Flag Legend:**
**!=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368

*Printed: 2/7/2023 12:01 PM* ***Page: 1 of 3***

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| Component | Value | Reference |
|---|---|---|
| CKD stages: I:>90 II:60-89 III:30-59 IV:15-29 V:<15<br>Estimated GFR (eGFR) calculated using the CKD-EPI 2021 refit equation. Results should be interpreted with caution in situations that predispose to inaccuracies of the eGFR, including non-steady state creatinine (acute kidney injury), extremes of muscle mass/body size, high protein diets/supplement use, dialysis, loss of extracellular fluid, drugs interfering with renal tubular secretion (eg cimetidine, trimethoprim) or gut creatinase activity (antibiotics), and analytic interferences related to altered metabolites (glucose, ketones, bilirubin) or drugs. | | |

Resulting Lab: HCMH LAB

Order Questions

**Has the patient fasted?**

**Magnesium** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Magnesium** | 1.9 | 1.6 - 2.6 mg/dL |

Resulting Lab: HCMH LAB

**Troponin I** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **Troponin I** | <0.30 | <0.30 ng/mL |

TROPONIN INTERPRETATIVE DATA:
Serum levels of troponin I are highly sensitive and specific for detection of myocardial injury due to ischemia, myocarditis, or cardiac contusion/surgery. Clinical studies have shown that troponin I levels are useful indicators of myocardial injury for a range of acute coronary syndromes including unstable angina, non Q-wave, and Q-wave myocardial infarction.

Resulting Lab: HCMH LAB

**pro B-Type Natriuretic Peptide** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **pro B-Type Natriuretic Peptide** | 3,953 (H) | 0 - 125 pg/mL |

Resulting Lab: HCMH LAB

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

## ENDOCRINOLOGY

**TSH** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| TSH | 4.30 | 0.34 - 5.60 uIU/m.. |

Resulting Lab: HCMH LAB

## HEMATOLOGY

**COMPLETE BLOOD COUNTS**

| | 02/07/23 0918 | Reference |
|---|---|---|
| WBC | 5.4 | 3.8-11.0 K/uL |
| RBC | 5.21 | 4.22-5.81 M/uL |
| Hemoglobin | 15.5 | 13.9-16.8 g/dL |
| Hematocrit | 46.4 | 41.0-51.0 % |
| MCV | 89.1 | 78.0-98.0 fL |
| MCH | 29.8 | 25.0-34.0 pg |
| MCHC | 33.4 | 31.5-36.0 g/dL |
| RDW | 14.0 | 11.5-15.0 % |
| Platelet Count | 235 | 150-400 K/uL |
| MPV | 11.8 | 8.4-12.7 fL |
| Neutrophils # | 3.76 | 1.60-8.30 K/uL |
| Lymphocytes # | 0.95 | 0.70-4.00 K/uL |
| Monocytes # | 0.55 | 0.10-1.00 K/uL |
| Eosinophils # | 0.11 | 0.00-0.60 K/uL |
| Basophils # | 0.02 | 0.00-0.20 K/uL |
| Neutrophils % | 69.8 | % |
| Lymphocytes % | 17.6 | % |
| Monocytes % | 10.2 | % |
| Eosinophils % | 2.0 | % |
| Basophils % | 0.4 | % |
| Resulting Lab: | HCMH LAB | |

**Resulting Labs**

| | |
|---|---|
| HCMH LAB | HCMH CLINICAL LAB, Hawkins County Memorial Hospital, Medical Director: Gregory A. Stancel, M.D., 851 Locust Street, Rogersville TN 37857 |

**Flag Legend:**
**!=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**1. Patient Information**

| | | | |
|---|---|---|---|
| Full Name (First): David | (M.I.): L | (Last Name): Fields | Social Security Number: |
| Height: 6' 0" | Weight: 296.8 | Blood Pressure: 124/62 sitting; 124/88 standing | Employer Name: East TN. Iron and Metal |

**2. Diagnosis**

Primary ICD diagnostic Code **(Required)**: Congestive Heart Failure

Primary ICD diagnosis Description:

Secondary ICD Diagnosis Code: Hypertension

Secondary ICD Diagnosis Description:

**Pregnancy**

| First Treated | Estimated Delivery | Date of Delivery | ☐ Vaginal ☐ C-Section |
|---|---|---|---|
| / / | / / | / / | |

Symptoms: Shortness of breath, swelling, cough and fatigue

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings): Severe global left ventricular dysfunction with an ejection fraction of 10-15%. Hypertension

**3. Disability Circumstances** - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

| Date of: | | |
|---|---|---|
| Symptoms first Appeared: 2/8/2023 | Reduced Ability to work: / / | Advised to stop work: 2/8/2023 |
| Initial Treatment: 4/19/2010 | Most Recent Treatment: 8/29/22 | Next Treatment: 2/27/2023 |
| Dates hospital confined: / / to / / | | |

If work related or injury, summarize circumstances: Seeing Dr. Barry Michelson Cardiologist 10800 Parkside Dr. Suite 331, Knoxville, TN. 37934 (P) 865 392 3400. Congestive Heart Failure with ejection fx 10-15%

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

WE DO NOT DO Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ____ | Standing | ____ | Crouching | ____ | Overhead | ____ |
| 6-10 lbs. | ____ | Walking | ____ | Crawling | ____ | Desk Level | ____ |
| 11-25 lbs. | ____ | Sitting | ____ | Grasping | ____ | Below Waist | ____ |
| 26-50 lbs. | ____ | Balancing | ____ | Climbing | ____ | | |
| 51-100 lbs. | ____ | Stooping | ____ | Pushing | ____ | | |
| 100 + lbs. | ____ | Kneeling | ____ | Pulling | ____ | | |
| | | Fingering | ____ | Bending | ____ | | |

What job modifications would allow the patient to return to work?

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

**5. Treatment**

HEArt echo on 2-9-23. HeArt Catherization on 2-17-23

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

Date patient experienced loss of Cognitive Functioning: ____/____/________

**6. Prognosis**

Describe the patients prognosis for recovery

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

____/____/____ to ____/____/____

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

**7. Physician's Information**

MARK J. DALLE-AVE
Name

4307 HW 66 South
Street Address

ROGERSVILLE | TN | 37857
City | State | Zip Code

423 921 1624 | 423 921 1677
Phone Number | Fax Number

[signature] | 2/9/2023
Signature | Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

## Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** MARK DALLE AVE MD

4307 HWY 66S, ROGERSVILLE, TN 37857
Phone: (423) 921-1600
Fax: (423) 921-1677

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 02/10/2023**

**This document contains the following records of the patient:**
- **Encounters and Procedures**
- **Imaging Results**
- **Lab Results**

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have Internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation.
[ID:98454-A-10667]

Lincoln Financial Group®

# Authorization For Release Of Information

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________________________
(Last) (First) (Middle)

Date of Birth: ____/____/________ Social Security Number: XXX-XX-____________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations [including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had];
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.
5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.
6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.
7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ________________________________ **DATE** ____/____/________
Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ________________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________

**ADDRESS:** ________________________________
(Street)

________________________________
(City) (State) (Zip Code)

**PHONE NO:** ________________________________

(Please see FRAUD NOTICES attached)

FIELDS, David L (id #98454, dob:

## Encounters and Procedures

Clinical Encounter Summaries

**FIELDS, David L (id #98454, dob:**

**Encounter Date: 02/09/2023**
Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/09/2023 01:45PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Followup: Heart failure
Followup: Essential hypertension

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

**Ht:** 6 ft 02/09/2023 01:51 pm

**Wt:** 296.8 lbs 02/09/2023 01:52 pm

**BP:** 124/62 sitting L arm 02/09/2023 02:01 pm
124/88 standing L arm 02/09/2023 02:02 pm

**BMI:** 40.3 02/09/2023 01:52 pm

**HR:** 88 02/09/2023 02:02 pm

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS:** Rash

Medications

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **carvedilol 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/09/23 | prescribed |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/09/23 | prescribed |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/09/23 | prescribed |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |

2/9/2023...... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST..............BUFFY

Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

Problems

Reviewed Problems
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/09/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional

FIELDS, David L (id #98454, dob:

**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

## ROS

**Constitutional:** Constitutional: **weight gain (10lbs)**.

**Cardiovascular:** Cardiovascular: **palpitations**.

FIELDS, David L (id #98454, dob:

**Respiratory:** Respiratory: **cough** and **wheezing.**

**Musculoskeletal:** Musculoskeletal: **swelling in the extremities.**

**Neurologic:** Neurologic: **weakness.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral ; Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Heart failure** -
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified

- CARDIAC CATHETERIZATION (SURG)

Weight (lbs): 297

**2. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

### Return to Office

- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

## Encounter Sign-Off

Encounter signed-off by Barry Michelson, MD, 02/09/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/09/2023 at 2:34pm

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/06/2023**
Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/06/2023 03:30PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Follow up 3+ years
Followup: Essential hypertension

PROBLEMS WITH SHORTNESS OF BREATH, SWELLING, COUGH AND FATIGUE

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/06/2023 03:05 pm | **Wt:** 301.1 lbs 02/06/2023 04:03 pm | **BP:** 126/90 sitting L arm 02/06/2023 04:04 pm<br>120/88 standing L arm 02/06/2023 04:05 pm |
| **BMI:** 40.8 02/06/2023 04:03 pm | **HR:** 90 02/06/2023 04:03 pm | **O2Sat:** 98% 02/06/2023 04:05 pm |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS**: Rash

Medications

FIELDS, David L (id #98454, dob:

Reviewed Medications

**aspirin 81 mg chewable tablet** — 02/06/23 entered
Chew 1 tablet(s) every day by oral route for 90 days.

**esomeprazole magnesium 40 mg capsule,delayed release** — 02/06/23 entered
Take 1 capsule(s) every day by oral route.

**famotidine 20 mg tablet** — 02/06/23 entered
Take 1 tablet(s) twice a day by oral route.

**lisinopril 20 mg tablet** — 11/25/22 filled
Take 1 tablet(s) every day by oral route for 90 days.

**Multi Vitamin** — 02/06/23 entered
Mens vitafusion 1 daily

2/6/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST................BUFFY

## Vaccines

Reviewed Vaccines
COVID VACCINATED

## Problems

Reviewed Problems
- Essential hypertension - Onset: 02/06/2023

## Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

## Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/06/2023
What is your level of alcohol consumption?: None
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender Identity: Identifies as Male

**FIELDS, David L (Id #98454, dob:**

Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

Surgical History

Reviewed Surgical History
* Heart Catheterization - 08/16/2007

wisdom teeth extraction

Past Medical History

GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
SLEEP APNEA: **Y**

Documents for Discussion

**Discussed the following documents:**

- CT, CORONARY CALCIUM SCORE - 08/18/17
- ELECTROCARDIOGRAM - 08/18/17

 Result Note: EKG was reviewed. It demonstrates sinus rhythm. Q waves are present in 1 and aVL. Previous lateral infarction cannot be excluded however EKG is unchanged from previous

- LIPID PANEL, SERUM - 06/27/17
- Sleep Medicine - Sleep Study - Christopher Falin, Ballad Health - Epic - 02/06/23
- Central Scheduling - Transcribe Orders - Mark Dalle-Ave, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Neha Barakam, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Derek Darnell, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Connie Hinkle, Ballad Health - Epic - 02/06/23
- General Medicine - Continuity of Care Document - Ballad Health - Epic - 02/06/23

Screening

None recorded.

HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

ROS

**Constitutional:** Constitutional: **night sweats, weight gain (__lbs)**, and **exercise intolerance** and no fever.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds, nose problems, or sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Cardiovascular:** Cardiovascular: no arm pain on exertion or known heart murmur; **shortness of breath when walking** and **breath when lying down**; and **chest pain on exertion, palpitations (fluttering or**

FIELDS, David L (id #98454, dob:

heart racing), and **light-headed on standing**.

**Respiratory:** Respiratory: **cough, wheezing, shortness of breath**, and **sleep apnea (CPAP with forced air)** and no coughing up blood.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea, **dyspepsia** and **GERD**, and normal appetite and not vomiting blood; **stool has become very loose in the past 2 weeks and more frequent about 3 times daily.**

**Genitourinary:** Genitourinary: no incontinence, hematuria, difficulty urinating, or increased frequency.

**Musculoskeletal:** Musculoskeletal: no muscle aches or weakness; no arthralgias/joint pain or back pain; and **swelling in the extremities (stomach, around to back, legs from knees down).**

**Integumentary:** Skin: no jaundice, rashes, laceration, or abnormal mole.

**Neurologic:** Neurologic: no weakness, numbness, seizures, dizziness, migraines, headaches, tremor, or loss of consciousness.

**Psychiatric:** Psych: no depression, anxiety, hallucinations, alcohol abuse, or suicidal thoughts; **sleep disturbances** and **restless sleep**; and feeling safe in a relationship.

**Endocrine:** Endocrine: **fatigue; hands and feet get cold more than normal.**

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising, swollen glands, or excessive bleeding.

**Allergic/Immunologic:** Allergy/Immunologic: no itching, hives, sinus pressure, or frequent sneezing and **runny nose.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral ; Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding.**

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Dyspnea on exertion -**
Patient's not having orthopnea but has noted exercise intolerance we will evaluate with echocardiogram lab work and a stress test
R06.09: Other forms of dyspnea

- ELECTROCARDIOGRAM
- PRO BNP
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
- CBC WITH AUTOMATED DIFF (PLT COUNT INCLUDED)
- COMPREHENSIVE METABOLIC PNL
- TROPONIN I

FIELDS, David L (id #98454, dob:

- MAGNESIUM
- TSH

**2. Swollen abdomen -**
Patient feels as if his abdomen is distended. I do not appreciate a fluid wave on exam but given symptoms also consistent with heart failure abdominal ultrasound will be obtained to look at organs as well as whether or not edema is present
R19.00: Intra-abdominal and pelvic swelling, mass and lump, unspecified site
- US, ABDOMEN, COMPLETE

**3. Edema of lower extremity -**
See above
R60.0: Localized edema
- LEG AND ANKLE EDEMA: CARE INSTRUCTIONS

**4. Multiple premature ventricular complexes -**
Cardiac work-up will be completed we may need to consider getting a monitor if appropriate
I49.3: Ventricular premature depolarization

ELECTROCARDIOGRAM
- Result:
  - **Interpretation:: EKG reviewed sinus rhythm rate 90 nonspecific intraventricular conduction delay is present PVCs are present left atrial enlargement is present**

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/06/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/06/2023 at 4:51pm

FIELDS, David L (id #98454, dob:

From: 02/06/2023 08:01 #518 P.006/006

David Fields
#98454

2/6/2023 4:57:03 PM

TENNOVA HEART-TURKEY

| | | |
|---|---|---|
| Rate | 90 | . Age not entered, assumed to be 50 years old for purpose of ECG interpretation |
| | | . Sinus rhythm......................normal P axis, V-rate 50- 99 |
| PR | 222 | . Paired ventricular premature complexes..............sequence of 2 V complexes |
| QRSD | 126 | . Prolonged PR interval..............PR >210, V-rate 50- 90 |
| QT | 362 | . Right atrial enlargement..............P>0.25mV 2 lds or<-0.24mV aVR/aVL |
| QTc | 443 | . RBBB and LPFB..............QRSd >120mS, axis(90,210) |
| | | . Baseline wander in lead(s) II |
| --AXIS-- | | |
| P | 60 | |
| QRS | 141 | - ABNORMAL ECG - |
| T | -1 | |

12 Lead; Standard Placement

Unconfirmed Diagnosis

FIELDS, DAVI #98454

* 71204517a10807 Single Page E-ImagDoc




## Imaging Results

FIELDS, David L (id #98454, dob:

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023 9:44am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309

DOB: Sex: Male

Location: TNTC RAD

Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession 304-23-040-00360

Exam Date/Time 2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid.
Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata.
Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal

**FIELDS, David L (id #98454, dob:**

ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023 7:53am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309
DOB: Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession 304-23-040-00241
Exam Date/Time 2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure
Staff
MRN: 00809309
Referring
Physician: Barry Michelson, MD
Date of birth: Age: 45 year(s)
Sonographer:
Brandon Odom, RCS

Gender: Male BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no:
OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no:
3042304000241

FIN Number:
8945033

Study
location: Turkey Creek

Technical
quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.
Valve is trileaflet and normal in structure. No evidence of

FIELDS, David L (id #98454, dob:

stenosis. .

Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global
hypokinesis.

Non-Invasive Cardiology

Report

Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal, RV Global systolic
function is mildly
diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of
stenosis. Trace
mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No
evidence of
stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of
stenosis. Mild
tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly
elevated and is
estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of
stenosis. Trace
pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no
pericardial effusion
visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more
than 50%
respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm
(2.5 - 4
cm)
2D septum diastolic: 0.87 cm
Area systolic: 37.3 cm^2
2D post wall diastolic: 1.01 cm
(0.6 - 1 cm) FS Normal Range (30- 3%
45%):
Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml LVESV Teichholz: 175 ml
(62 - 150 ml) (21 - 61
ml)
LVEDVI Teichholz: 77.87 ml/m^2 LVESVI Teichholz: 70.25
ml/m^2
(34 - 74 ml/m^2) (11 - 31
ml/m^2)

**FIELDS, David L (id #98454, dob:**

EF Teichholz: 15 %
EF Simpson (BP) Normal Range (55-85%): 16 % (51 - 72 %)
LVEDV Simpson (BP) Normal Range (56-155ml): 167 ml (62 - 150 ml)
LVEDV (A2C) Normal Range (56-155ml): 160 ml (62 - 150 ml)
LVESV Simpson (BP) Normal Range (19-58ml): 141 ml (21 - 61 ml)
LVESV (A2C) Normal Range (19-58ml): 136 ml (21 - 61 ml)
LVEDVI (A2C): 64.23 ml/m^2
LVEDV (A4C) Normal Range (56-155ml) : 173 ml (62 - 150 ml)
LVESVI (A2C): 54.59 ml/m^2 (11 - 31 ml/m^2)
LVESV (A4C) Normal Range (19-58ml): 145 ml (21 - 61 ml)
EF (A2C) Normal Range (50-85%) : 15 %
LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report

LVESVI (A4C): 58.2 ml/m^2 (11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: Normal Range (2.7-3.4cm): 3.91 cm
Systolic pressure: 44.94 mmHg

Left Atrium
LA diameter (2D) Normal Range (2.0-4.0cm): 4.5 cm
LA/Aorta (2D): 1.55
LA volume Index: 40.14 ml/m^2 (16 - 34 ml/m^2)
LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal Range (2.0-4.0cm): 4.3 cm
Systolic pressure: 5 mmHg

Aortic Valve
Peak velocity Normal Range (0.9-1.7m/s) : 0.87 m/s
Mean velocity: 0.56 m/s
Mean gradient Normal Range (<10mmHG) : 1 mmHg
Peak gradient Normal Range (<10mmHG): 3.02 mmHg
Dimensionless Index: 0.49
Area (cont VTI): 1.99 cm^2 (> 2 cm^2)
Mean velocity: 27.6 cm/s
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal Range (0.7-1.1m/s): 6.46 cm
Peak velocity: 42.6 cm/s
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal Range (0.60-1.30m/s) : 53.7 cm/s
Peak A-wave Normal Range( 0.30-0.60m/s) : 30.2 cm/s

FIELDS, David L (id #98454, dob:

E/A ratio Normal Range (0.8-2.5): 1.78
Peak gradient: 1.15 mmHg
Deceleration time Normal Range (160-240msec): 148 ms
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg Estimated RAP: 5 mmHg
TR velocity: 316 cm/s TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity Normal Range (0.5-1.0m/s): 74.7 cm/s Peak gradient: 2.23 mmHg

Non-Invasive Cardiology

Report

Estimated PASP: 44.94 mmHg

Aorta/Great Vessels
Aortic root (2D): 2.9 cm Aortic arch: 2.8 cm
Ascending aorta Normal Range (<3.4cm): 2.7 cm ACS (M-mode) Normal Range (1.5-26cm): 2 cm
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0

**FIELDS, David L (id #98454, dob:**

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 -
Dyskinesis 5 -
Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on
2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Lab Results

FIELDS, David L (id #98454, dob:

Lab Result 02/07/2023 (#8818458, 02/07/2023)



**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St. Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| | | | |
|---|---|---|---|
| **Patient:** | Fields, David | **PCP:** | Mark J Dalle-Ave, MD |
| **MRN:** | 00577368 | **Admitted:** | |
| **DOB:** | | **Diagnosis:** | |
| **Age:** | 45 yrs | **Location:** | HCMH CLINICAL LAB |
| **Sex:** | Male | | |

**Authorizing Provider**

**Barry I Michelson, MD** O: 865-392-3400

**CLINICAL LABORATORY RESULTS**

**CHEMISTRY - ROUTINE**

**Comprehensive Metabolic Panel** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Sodium** | 136 | 136 145 mmol/L |
| **Potassium** | 4.4 | 3.5 - 5.1 mmol/L |
| **Chloride** | 102 | 96 112 mmol/L |
| **CO2** | 23 | 19 - 32 mmol/L |
| **Anion Gap** | 11 | 2 - 11 mmol/L |
| **BUN** | 18 | 6 - 23 mg/dL |
| **Creatinine** | 1.16 | 0.50 - 1.35 mg/dL |
| **Glucose** | **146 (H)** | 70 - 99 mg/dL |
| **Calcium** | 9.4 | 8.4 - 10.5 mg/dL |
| **Albumin** | 4.0 | 3.5 5.2 g/dL |
| **Total Protein** | 7.3 | 6.6 - 8.7 g/dL |
| **Alkaline Phosphatase** | 94 | 59 117 U/L |
| **ALT** | **72 (H)** | 0 - 40 U/L |
| **AST** | **51 (H)** | 0 39 U/L |
| **Globulin** | 3.3 | 2.3 - 4.9 g/dL |
| **Albumin/Globulin Ratio** | 1.21 | 0.96 - 1.69 |
| **Bilirubin, Total** | **2.5 (H)** | 0.3 - 1.2 mg/dL |
| **eGFR** | 79 | >=60 ml/min/BSA |

eGFR calculated using CKD-EPI 2021 refit equation recommended by NKF/ASN Task Force (JASN December 2021, 32 (12) 2994-3015).
New calculation was implemented at Balladhealth labs on 12/05/2022.
Expected Reference Interval: >=60mL/min/1.73 square meters

**Flag Legend:**
**!=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| Component | Value | Reference |
|---|---|---|

CKD stages: I:>90 II:60-89 III:30-59 IV:15-29 V:<15
Estimated GFR (eGFR) calculated using the CKD-EPI 2021 refit equation. Results should be interpreted with caution in situations that predispose to inaccuracies of the eGFR, including non-steady state creatinine (acute kidney injury), extremes of muscle mass/body size, high protein diets/supplement use, dialysis, loss of extracellular fluid, drugs interfering with renal tubular secretion (eg cimetidine, trimethoprim) or gut creatinase activity (antibiotics), and analytic interferences related to altered metabolites (glucose, ketones, bilirubin) or drugs.

Resulting Lab: HCMH LAB

Order Questions

**Has the patient fasted?**

**Magnesium** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Magnesium** | 1.9 | 1.6 - 2.6 mg/dL |

Resulting Lab: HCMH LAB

**Troponin I** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **Troponin I** | <0.30 | <0.30 ng/mL |

TROPONIN INTERPRETATIVE DATA:
Serum levels of troponin I are highly sensitive and specific for detection of myocardial injury due to ischemia, myocarditis, or cardiac contusion/surgery. Clinical studies have shown that troponin I levels are useful indicators of myocardial injury for a range of acute coronary syndromes including unstable angina, non Q-wave, and Q-wave myocardial infarction.

Resulting Lab: HCMH LAB

**pro B-Type Natriuretic Peptide** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **pro B-Type Natriuretic Peptide** | **3,953 (H)** | 0 - 125 pg/mL |

Resulting Lab: HCMH LAB

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

## ENDOCRINOLOGY

**TSH** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| TSH | 4.30 | 0.34 - 5.60 uIU/m.. |

Resulting Lab: HCMH LAB

## HEMATOLOGY

**COMPLETE BLOOD COUNTS**

| | 02/07/23 0918 | Reference |
|---|---|---|
| WBC | 5.4 | 3.8-11.0 K/uL |
| RBC | 5.21 | 4.22-5.81 M/uL |
| Hemoglobin | 15.5 | 13.9-16.8 g/dL |
| Hematocrit | 46.4 | 41.0-51.0 % |
| MCV | 89.1 | 75.0-95.0 fL |
| MCH | 29.8 | 25.0-34.0 pg |
| MCHC | 33.4 | 31.5 36.0 g/dL |
| RDW | 14.0 | 11.5-15.0 % |
| Platelet Count | 235 | 150-400 K/uL |
| MPV | 11.8 | 8.4-12.7 fL |
| Neutrophils # | 3.76 | 1 60-8 30 K/uL |
| Lymphocytes # | 0.95 | 0 70-4 00 K/uL |
| Monocytes # | 0.55 | 0 10-1 00 K/uL |
| Eosinophils # | 0.11 | 0 00-0 60 K/uL |
| Basophils # | 0.02 | 0 00-0 20 K/uL |
| Neutrophils % | 69.8 | % |
| Lymphocytes % | 17.6 | % |
| Monocytes % | 10.2 | % |
| Eosinophils % | 2.0 | % |
| Basophils % | 0.4 | % |
| Resulting Lab: | HCMH LAB | |

**Resulting Labs**

| | |
|---|---|
| HCMH LAB | HCMH CLINICAL LAB, Hawkins County Memorial Hospital, Medical Director: Gregory A. Stancel, M.D., 851 Locust Street, Rogersville TN 37857 |

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368
*Printed: 2/7/2023 12:01 PM* *Page: 3 of 3*

## Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** MARK DALLE AVE MD

4307 HWY 66S, ROGERSVILLE, TN 37857
Phone: (423) 921-1600
Fax: (423) 921-1677

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 02/10/2023**

**This document contains the following records of the patient:**

- **Encounters and Procedures**
- **Imaging Results**
- **Lab Results**

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation. [ID:98454-A-10667]

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

Full Name (First): DAvid
(M.I.): L
(Last Name): Fields
Social Security Number:

Height: 6' 0"
Weight: 296.8
Blood Pressure: 124/62 sitting 124/88 standing
Employer Name: EAST TN. IRON and Metal

## 2. Diagnosis

Primary ICD diagnostic Code (Required): Congestive HEArt Failure
Primary ICD diagnosis Description:

Secondary ICD Diagnosis Code: Hypertension
Secondary ICD Diagnosis Description:

Pregnancy: First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery __/__/__ ☐ Vaginal ☐ C-Section

Symptoms: Shortness of breath, swelling, Cough and fatigue

Objective Findings (include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings): Severe global left ventricular dysfunction with an ejection fraction of 10-15%. Hypertension

## 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 2/8/2023 | __/__/__ | 2/8/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 4/19/2010 | 8/27/22 | 2/27/2023 |

Dates hospital confined: __/__/__ to __/__/__

If work related or Injury, summarize circumstances: SEEING DR. BARRY Michelson Cardiologist 10800 Parkside Dr Suite 331, KNOXVille, TN. 37934 (P) 865 392 3400. Congestive HEArt FAilure with ejection fx 10-15%

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

WE DO NOT DO Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ____ | Standing | ____ | Crouching | ____ | Overhead | ____ |
| 6-10 lbs. | ____ | Walking | ____ | Crawling | ____ | Desk Level | ____ |
| 11-25 lbs. | ____ | Sitting | ____ | Grasping | ____ | Below Waist | ____ |
| 26-50 lbs. | ____ | Balancing | ____ | Climbing | ____ | | |
| 51-100 lbs. | ____ | Stooping | ____ | Pushing | ____ | | |
| 100 + lbs. | ____ | Kneeling | ____ | Pulling | ____ | | |
| | | Fingering | ____ | Bending | ____ | | |

What job modifications would allow the patient to return to work?

**5. Treatment**

HEArt echo on 2-9-23. HeArt Catherization on 2-17-23

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

**6. Prognosis**

Describe the patients prognosis for recovery

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ___/___/______

Dressing ___/___/______

Transferring ___/___/______

Bathing ___/___/______

Toileting ___/___/______

Eating ___/___/______

Date patient experienced loss of Cognitive Functioning: ___/___/______

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

___/___/___ to ___/___/___

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

**7. Physician's Information**

Name: MARK J. DAIIE-AVE

Street Address: 4307 HW 66 South

City: ROGERSVILLE State: TN Zip Code: 37857

Phone Number: 4239211624 Fax Number: 4239211677

Signature: [signature] Date: 2/9/2023

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________________________
(Last) (First) (Middle)

Date of Birth: ____ /____ /________ Social Security Number: ____ XXX-XX-________________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations (including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had);
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________________ **DATE** ____ /____ /________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ______________________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ________________

**ADDRESS:** ______________________________________
(Street)

______________________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________________

(Please see FRAUD NOTICES attached)

## Encounters and Procedures

Clinical Encounter Summaries

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/09/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/09/2023 01:45PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Followup: Heart failure
Followup: Essential hypertension

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/09/2023 01:51 pm | **Wt:** 296.8 lbs 02/09/2023 01:52 pm | **BP:** 124/62 sitting L arm 02/09/2023 02:01 pm<br>124/88 standing L arm 02/09/2023 02:02 pm |
| **BMI:** 40.3 02/09/2023 01:52 pm | **HR:** 88 02/09/2023 02:02 pm | |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS:** Rash

Medications

**FIELDS, David L (id #98454, dob:**

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/09/23 | prescribed |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/09/23 | prescribed |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/09/23 | prescribed |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |

2/9/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST...............BUFFY

Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

Problems

Reviewed Problems
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/09/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional

FIELDS, David L (id #98454, dob:

**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

## ROS

**Constitutional:** Constitutional: **weight gain (10lbs).**

**Cardiovascular:** Cardiovascular: **palpitations.**

FIELDS, David L (id #98454, dob:

**Respiratory:** Respiratory: **cough** and **wheezing**.

**Musculoskeletal:** Musculoskeletal: **swelling in the extremities**.

**Neurologic:** Neurologic: **weakness**.

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally**.

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft, **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

Assessment / Plan

**1. Heart failure** -
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified
- CARDIAC CATHETERIZATION (SURG)

Weight (lbs): 297

**2. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension
- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/09/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/09/2023 at 2:34pm

FIELDS, David L (id #98454, dob:

**FIELDS, David L (id #98454, dob:**

**Encounter Date: 02/06/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/06/2023 03:30PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Follow up 3+ years
Followup: Essential hypertension

PROBLEMS WITH SHORTNESS OF BREATH, SWELLING, COUGH AND FATIGUE

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/06/2023 03:05 pm | **Wt:** 301.1 lbs 02/06/2023 04:03 pm | **BP:** 126/90 sitting L arm 02/06/2023 04:04 pm<br>120/88 standing L arm 02/06/2023 04:05 pm |
| **BMI:** 40.8 02/06/2023 04:03 pm | **HR:** 90 02/06/2023 04:03 pm | **O2Sat:** 98% 02/06/2023 04:05 pm |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS:** Rash

Medications

FIELDS, David L (id #98454, dob:

Reviewed Medications

**aspirin 81 mg chewable tablet** 02/06/23 entered
Chew 1 tablet(s) every day by oral route for 90 days.

**esomeprazole magnesium 40 mg capsule,delayed release** 02/06/23 entered
Take 1 capsule(s) every day by oral route.

**famotidine 20 mg tablet** 02/06/23 entered
Take 1 tablet(s) twice a day by oral route.

**lisinopriL 20 mg tablet** 11/25/22 filled
Take 1 tablet(s) every day by oral route for 90 days.

**Multi Vitamin** 02/06/23 entered
Mens vitafusion 1 daily

2/6/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST..............BUFFY

Vaccines

Reviewed Vaccines
COVID VACCINATED

Problems

Reviewed Problems
• Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/06/2023
What is your level of alcohol consumption?: None
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male

**FIELDS, David L (id #98454, dob:**

Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
* Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
SLEEP APNEA: **Y**

## Documents for Discussion

**Discussed the following documents:**
- CT, CORONARY CALCIUM SCORE - 08/18/17
- ELECTROCARDIOGRAM - 08/18/17

  Result Note: EKG was reviewed. It demonstrates sinus rhythm. Q waves are present in 1 and aVL. Previous lateral infarction cannot be excluded however EKG is unchanged from previous
- LIPID PANEL, SERUM - 06/27/17

- Sleep Medicine - Sleep Study - Christopher Falin, Ballad Health - Epic - 02/06/23
- Central Scheduling - Transcribe Orders - Mark Dalle-Ave, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Neha Barakam, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Derek Darnell, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Connie Hinkle, Ballad Health - Epic - 02/06/23
- General Medicine - Continuity of Care Document - Ballad Health - Epic - 02/06/23

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

## ROS

**Constitutional:** Constitutional: **night sweats, weight gain (__lbs)**, and **exercise intolerance** and no fever.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds, nose problems, or sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Cardiovascular:** Cardiovascular: no arm pain on exertion or known heart murmur; **shortness of breath when walking** and **breath when lying down**; and **chest pain on exertion, palpitations (fluttering or**

FIELDS, David L (id #98454, dob:

heart racing), and **light-headed on standing**.

**Respiratory:** Respiratory: **cough, wheezing, shortness of breath**, and **sleep apnea (CPAP with forced air)** and no coughing up blood.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea, **dyspepsia** and **GERD**, and normal appetite and not vomiting blood; **stool has become very loose in the past 2 weeks and more frequent about 3 times daily.**

**Genitourinary:** Genitourinary: no incontinence, hematuria, difficulty urinating, or increased frequency.

**Musculoskeletal:** Musculoskeletal: no muscle aches or weakness; no arthralgias/joint pain or back pain; and **swelling in the extremities (stomach, around to back, legs from knees down)**.

**Integumentary:** Skin: no jaundice, rashes, laceration, or abnormal mole.

**Neurologic:** Neurologic: no weakness, numbness, seizures, dizziness, migraines, headaches, tremor, or loss of consciousness.

**Psychiatric:** Psych: no depression, anxiety, hallucinations, alcohol abuse, or suicidal thoughts; **sleep disturbances** and **restless sleep**; and feeling safe in a relationship.

**Endocrine:** Endocrine: **fatigue**; **hands and feet get cold more than normal**.

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising, swollen glands, or excessive bleeding.

**Allergic/Immunologic:** Allergy/Immunologic: no itching, hives, sinus pressure, or frequent sneezing and **runny nose.**

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally.**

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Dyspnea on exertion -**

Patient's not having orthopnea but has noted exercise intolerance we will evaluate with echocardiogram lab work and a stress test

R06.09: Other forms of dyspnea

- ELECTROCARDIOGRAM
- PRO BNP
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
- CBC WITH AUTOMATED DIFF (PLT COUNT INCLUDED)
- COMPREHENSIVE METABOLIC PNL
- TROPONIN I

- MAGNESIUM
- TSH

**2. Swollen abdomen -**
Patient feels as if his abdomen is distended. I do not appreciate a fluid wave on exam but given symptoms also consistent with heart failure abdominal ultrasound will be obtained to look at organs as well as whether or not edema is present
R19.00: Intra-abdominal and pelvic swelling, mass and lump, unspecified site
- US, ABDOMEN, COMPLETE

**3. Edema of lower extremity -**
See above
R60.0: Localized edema
- LEG AND ANKLE EDEMA: CARE INSTRUCTIONS

**4. Multiple premature ventricular complexes -**
Cardiac work-up will be completed we may need to consider getting a monitor if appropriate
I49.3: Ventricular premature depolarization

ELECTROCARDIOGRAM
- Result:
  - **Interpretation:: EKG reviewed sinus rhythm rate 90 nonspecific intraventricular conduction delay is present PVCs are present left atrial enlargement is present**

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/06/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/06/2023 at 4:51pm

**FIELDS, David L (id #98454, dob:**

From: 02/08/2023 08:01 #518 P.008/008

David Fields

#98454

2/6/2023 4:57:03 PM

TENNOVA HEART-TURKEY

| | | |
|---|---|---|
| Rate | 90 | . Age not entered, assumed to be 50 years old for purpose of ECG interpretation |
| | | . Sinus rhythm..........................................normal P axis, V-rate 50- 99 |
| PR | 222 | . Paired ventricular premature complexes.................sequence of 2 V complexes |
| QRSD | 126 | . Prolonged PR interval....................................PR >210, V-rate 50- 90 |
| QT | 362 | . Right atrial enlargement.........................P>0.25mV 2 lds or<-0.24mV aVR/aVL |
| QTc | 443 | . RBBB and LPFB..........................................QRSd >120mS, axis(90,210) |
| | | . Baseline wander in lead(s) II |
| --AXIS-- | | |
| P | 60 | |
| QRS | 141 | - ABNORMAL ECG - |
| T | -1 | |

12 Lead; Standard Placement

Unconfirmed Diagnosis

FIELDS, DAVID #98454

* 71204517W10807 Single Page E-ImageDoc




# Imaging Results

**FIELDS, David L (id #98454, dob:**

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023 9:44am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309

DOB: Sex Male

Location: TNTC RAD

Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession
304-23-040-00360

Exam Date/Time
2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid.
Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata.
Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal

ascites,
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

FIELDS, David L (id #98454, dob:

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023 7:53am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309
DOB: Sex: Male
Location: TNTC RAD
Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession 304-23-040-00241
Exam Date/Time 2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure Staff
MRN: 00809309
Referring Physician: Barry Michelson, MD
Date of birth: Age: 45 year(s)
Sonographer: Brandon Odom, RCS

Gender: Male BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no: OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no: 3042304000241

FIN Number: 8945033

Study location: Turkey Creek

Technical quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.
Valve is trileaflet and normal in structure. No evidence of

stenosis.
Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global hypokinesis.

Non-Invasive Cardiology

Report
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic function is mildly diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of stenosis. Trace mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No evidence of stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of stenosis. Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of stenosis. Trace pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no pericardial effusion visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more than 50% respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM

Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm (2.5 - 4 cm)
2D septum diastolic: 0.87 cm
Area systolic: 37.3 cm^2
2D post wall diastolic: 1.01 cm (0.6 - 1 cm) FS Normal Range (30-45%): 3%
Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml (62 - 150 ml) LVESV Teichholz: 175 ml (21 - 61 ml)
LVEDVI Teichholz: 77.87 ml/m^2 (34 - 74 ml/m^2) LVESVI Teichholz: 70.25 ml/m^2 (11 - 31 ml/m^2)

FIELDS, David L (id #98454, dob:

EF Teichholz: 15 %
EF Simpson (BP) Normal Range (55-85%): 16 % (51 - 72 %)
LVEDV Simpson (BP) Normal Range (56-155ml): 167 ml (62 - 150 ml)
LVEDV (A2C) Normal Range (56-155ml): 160 ml (62 - 150 ml)
LVESV Simpson (BP) Normal Range (19-58ml): 141 ml (21 - 61 ml)
LVESV (A2C) Normal Range (19-58ml): 136 ml (21 - 61 ml)
LVEDVI (A2C): 64.23 ml/m^2
LVEDV (A4C) Normal Range (56-155ml) : 173 ml (62 - 150 ml)
LVESVI (A2C): 54.59 ml/m^2 (11 - 31 ml/m^2)
LVESV (A4C) Normal Range (19-58ml): 145 ml (21 - 61 ml)
EF (A2C) Normal Range (50-85%) : 15 %
LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report

LVESVI (A4C): 58.2 ml/m^2 (11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: Normal Range (2.7-3.4cm): 3.91 cm
Systolic pressure: 44.94 mmHg

Left Atrium
LA diameter (2D) Normal Range (2.0-4.0cm): 4.5 cm
LA/Aorta (2D): 1.55
LA volume index: 40.14 ml/m^2 (16 - 34 ml/m^2)
LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal Range (2.0-4.0cm): 4.3 cm
Systolic pressure: 5 mmHg

Aortic Valve
Peak velocity Normal Range (0.9-1.7m/s) : 0.87 m/s
Mean velocity: 0.56 m/s
Mean gradient Normal Range (<10mmHG) : 1 mmHg
Peak gradient Normal Range (<10mmHG): 3.02 mmHg
Dimensionless index: 0.49
Area (cont VTI): 1.99 cm^2 (> 2 cm^2)
Mean velocity: 27.6 cm/s
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal Range (0.7-1.1m/s): 6.46 cm
Peak velocity: 42.6 cm/s
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal Range (0.60-1.30m/s) : 53.7 cm/s
Peak A-wave Normal Range( 0.30-0.60m/s) : 30.2 cm/s

FIELDS, David L (Id #98454, dob:

E/A ratio Normal Range (0.8-2.5): 1.78
Peak gradient: 1.15 mmHg
Deceleration time Normal Range (160-240msec): 148 ms
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg Estimated RAP: 5 mmHg
TR velocity: 316 cm/s TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity Normal Range (0.5-1.0m/s): 74.7 cm/s Peak gradient: 2.23 mmHg

Non-Invasive Cardiology

Report

Estimated PASP: 44.94 mmHg

Aorta/Great Vessels
Aortic root (2D): 2.9 cm Aortic arch: 2.8 cm
Ascending aorta Normal Range (<3.4cm): 2.7 cm ACS (M-mode) Normal Range (1.5-26cm): 2 cm
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0

FIELDS, David L (id #98454, dob:

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 - Dyskinesis 5 - Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Lab Results

FIELDS, David L (id #98454, dob:

Lab Result 02/07/2023 (#8818458, 02/07/2023)



**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| | | | |
|---|---|---|---|
| **Patient:** | Fields, David | **PCP:** | Mark J Delle-Ave, MD |
| **MRN:** | 00577368 | **Admitted:** | |
| **DOB:** | | **Diagnosis:** | |
| **Age:** | 45 yrs | **Location:** | HCMH CLINICAL LAB |
| **Sex:** | Male | | |

**Authorizing Provider**

**Barry I Michelson, MD** O: 865-392-3400

## CLINICAL LABORATORY RESULTS

**CHEMISTRY - ROUTINE**

**Comprehensive Metabolic Panel** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| Sodium | 136 | 136 - 146 mmol/L |
| Potassium | 4.4 | 3.5 - 5.1 mmol/L |
| Chloride | 102 | 96 - 112 mmol/L |
| CO2 | 23 | 19 - 32 mmol/L |
| Anion Gap | 11 | 2 - 11 mmol/L |
| BUN | 18 | 6 - 23 mg/dL |
| Creatinine | 1.16 | 0.50 - 1.35 mg/dL |
| Glucose | 145 (H) | 70 - 99 mg/dL |
| Calcium | 9.4 | 8.4 - 10.5 mg/dL |
| Albumin | 4.0 | 3.5 - 5.2 g/dL |
| Total Protein | 7.3 | 6.6 - 8.7 g/dL |
| Alkaline Phosphatase | 94 | 39 - 117 U/L |
| ALT | 72 (H) | 0 - 40 U/L |
| AST | 51 (H) | 0 - 39 U/L |
| Globulin | 3.3 | 2.3 - 4.9 g/dL |
| Albumin/Globulin Ratio | 1.21 | 0.96 - 1.69 |
| Bilirubin, Total | 2.5 (H) | 0.3 - 1.2 mg/dL |
| eGFR | 79 | >=60 ml/min/BSA |

eGFR calculated using CKD-EPI 2021 refit equation recommended by NKF/ASN Task Force (JASN December 2021, 32 (12) 2994-3015).
New calculation was implemented at Balladhealth labs on 12/05/2022.
Expected Reference Interval: >=60mL/min/1.73 square meters

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D. - Laboratory Director**
Clinical Laboratory 423-921-7230

| Component | Value | Reference |
|---|---|---|
| CKD stages: I:>90 II:60-89 III:30-59 IV:15-29 V:<15<br>Estimated GFR (eGFR) calculated using the CKD-EPI 2021 refit equation. Results should be interpreted with caution in situations that predispose to inaccuracies of the eGFR, including non-steady state creatinine (acute kidney injury), extremes of muscle mass/body size, high protein diets/supplement use, dialysis, loss of extracellular fluid, drugs interfering with renal tubular secretion (eg cimetidine, trimethoprim) or gut creatinase activity (antibiotics), and analytic interferences related to altered metabolites (glucose, ketones, bilirubin) or drugs. | | |

Resulting Lab: HCMH LAB

Order Questions

**Has the patient fasted?**

**Magnesium** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Magnesium** | 1.9 | 1.6 - 2.6 mg/dL |

Resulting Lab: HCMH LAB

**Troponin I** (Final result)

| | | | |
|---|---|---|---|
| ID: [redacted] | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **Tropon[redacted]** | <0.30 | <0.30 ng/mL |

TROP[redacted]N INTERPRETATIVE DATA:
Serum levels of troponin I are highly sensitive and specific for detection of myocardial injury due to ischemia, myocarditis, or cardiac contusion/surgery. Clinical studies have shown that troponin I levels are useful indicators of myocardial injury for a range of acute coronary syndromes including unstable angina, non Q-wave, and Q-wave myocardial infarction.

Resulting Lab: HCMH LAB

**pro B-Type Natriuretic Peptide** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **pro B-Type Natriuretic Peptide** | 3,653 (H) | 0 - 125 pg/mL |

Resulting Lab: HCMH LAB

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

## ENDOCRINOLOGY

**TSH** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **TSH** | 4.30 | 0.34 - 5.00 uIU/mL |

Resulting Lab: HCMH LAB

## HEMATOLOGY

**COMPLETE BLOOD COUNTS**

| | 02/07/23 0918 | Reference |
|---|---|---|
| **WBC** | 5.4 | 3.5-11.0 K/uL |
| **RBC** | 5.21 | 4.22-5.81 M/uL |
| **Hemoglobin** | 15.5 | 13.9-18.0 g/dL |
| **Hematocrit** | 46.4 | 41.0-51.0 % |
| **MCV** | 89.1 | 78.0-98.0 fL |
| **MCH** | 29.8 | 25.0-34.0 pg |
| **MCHC** | 33.4 | 31.5-36.0 g/dL |
| **RDW** | 14.0 | 11.5-15.0 % |
| **Platelet Count** | 235 | 150-400 K/uL |
| **MPV** | 11.8 | 9.4-12.7 fL |
| **Neutrophils #** | 3.76 | 1.60-8.30 K/uL |
| **Lymphocytes #** | 0.95 | 0.70-4.00 K/uL |
| **Monocytes #** | 0.55 | 0.10-1.00 K/uL |
| **Eosinophils #** | 0.11 | 0.00-0.60 K/uL |
| **Basophils #** | 0.02 | 0.00-0.20 K/uL |
| **Neutrophils %** | 69.8 | % |
| **Lymphocytes %** | 17.6 | % |
| **Monocytes %** | 10.2 | % |
| **Eosinophils %** | 2.0 | % |
| **Basophils %** | 0.4 | % |
| Resulting Lab: | HCMH LAB | |

**Resulting Labs**

**HCMH LAB** HCMH CLINICAL LAB, Hawkins County Memorial Hospital, Medical Director: Gregory A. Stancel, M.D., 851 Locust Street, Rogersville TN 37857

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368

*Printed: 2/7/2023 12:01 PM* *Page: 3 of 3*

Lincoln Financial Group

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Patient Information

Full Name (First): David (M.I.): L (Last Name): Fields
Social Security Number:
Height: 6' 0" Weight: 296.8 Blood Pressure: 124/62 sitting 124/88 standing
Employer Name: East TN. Iron and Metal

## 2. Diagnosis

Primary ICD diagnostic Code (Required): Congestive Heart Failure
Primary ICD diagnosis Description:
Secondary ICD Diagnosis Code: Hypertension
Secondary ICD Diagnosis Description:

Pregnancy: First Treated __/__/__ Estimated Delivery __/__/__ Date of Delivery __/__/__ ☐ Vaginal ☐ C-Section

Symptoms: Shortness of breath, swelling, cough and fatigue

Objective Findings (Include copies of any x-rays, laboratory data, EKG's, MRI's, scans and any clinical findings): Severe global left ventricular dysfunction with an ejection fraction of 10-15%. Hypertension

## 3. Disability Circumstances - *Check if applicable*

☒ Illness ☐ Injury ☐ Work Related

Date of:

| Symptoms first Appeared | Reduced Ability to work | Advised to stop work |
|---|---|---|
| 2/8/2023 | / / | 2/8/2023 |

| Initial Treatment | Most Recent Treatment | Next Treatment |
|---|---|---|
| 4/19/2010 | 8/27/22 | 2/27/2023 |

Dates hospital confined: / / to / /

If work related or Injury, summarize circumstances: SEEING DR. BARRY Michelson Cardiologist 10800 Parkside Dr. Suite 331, Knoxville, TN. 37934 (P) 865 392 3400. Congestive Heart Failure with ejection fx 10-15%

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.

(Please see FRAUD NOTICES attached)

Lincoln Financial Group®

# Short Term Disability Claim Form Physician's Statement

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

**4. Limitations and Restrictions**

WE DO NOT DO Limitations and Restrictions

Restrictions (what the patient SHOULD NOT do)

Limitations (what the patient CANNOT do)

**Indicate frequency per day the listed activities below can be used performed using:**
N= Never 0% O= Occasionally <33% F= Frequently 34%-66% C= Continuously 67% - 100%

| Lifting/Carrying | | | | | | Reaching | |
|---|---|---|---|---|---|---|---|
| 1-5 lbs. | ____ | Standing | ____ | Crouching | ____ | Overhead | ____ |
| 6-10 lbs. | ____ | Walking | ____ | Crawling | ____ | Desk Level | ____ |
| 11-25 lbs. | ____ | Sitting | ____ | Grasping | ____ | Below Waist | ____ |
| 26-50 lbs. | ____ | Balancing | ____ | Climbing | ____ | | |
| 51-100 lbs. | ____ | Stooping | ____ | Pushing | ____ | | |
| 100 + lbs. | ____ | Kneeling | ____ | Pulling | ____ | | |
| | | Fingering | ____ | Bending | ____ | | |

What job modifications would allow the patient to return to work?

**5. Treatment**

HEArt echo on 2-9-23. HeArt Catherization on 2-17-23

Describe current and recommended treatment plans including any completed or future surgeries. (Include dates)

**6. Prognosis**

Describe the patients prognosis for recovery

**Activities of Daily Living**

If patient cannot complete these activities of Daily living indicate, when they were first unable to do so. (M/D/Y)

Continence ____/____/________

Dressing ____/____/________

Transferring ____/____/________

Bathing ____/____/________

Toileting ____/____/________

Eating ____/____/________

Date patient experienced loss of Cognitive Functioning: ____/____/________

Describe ongoing treatment frequency

Patient able to return to work Full-Time on:

____/____/____ to ____/____/____

If a specific date is unavailable, please provide a date range you expect a fundamental or marked change.

**7. Physician's Information**

MARK J. DAILE-AVE
Name

4307 HW 66 South
Street Address

ROGERSVILLE | TN | 37857
City | State | Zip Code

423 921 1624 — Phone Number
423 921 1677 — Fax Number

[signature] — Signature
2/9/2023 — Date

The Lincoln National Life Insurance Company is not responsible for charges incurred due to completion of this form. The patient is responsible for any charges associated with form completion.
(Please see FRAUD NOTICES attached)

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group®

# Authorization For Release Of Information

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

1. In connection with a claim for benefits, I (the undersigned) **authorize** any physician, medical professional, pharmacist or other provider of health care services, hospital, clinic, other medical or medically related facility; insurance or reinsurance company; government agency; department of labor; acquaintance; group policyholder; employer; or policy or benefit plan administrator to release information from the records of:

Name of Insured: ______________________________________________
(Last) (First) (Middle)

Date of Birth: ____ /____ /________ Social Security Number: ____ XXX-XX-______________

2. **Information to be released (hereinafter referred to as "My Information"):**
   - data or records regarding my medical history, treatment, prescriptions, consultations (including medical and psychological reports, records, charts, notes (excluding psychotherapy notes), x-rays, films or correspondence, and any medical condition I may now have or have had);
   - any information regarding insurance coverage, claims or benefits; and/or
   - any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, retirement income, financial information, earnings and employment history).

3. **Information to be released to:** The Lincoln National Life Insurance Company ("Lincoln")
PO Box 2609
Omaha, NE 68103-2609

4. **I understand My Information will be used by Lincoln to evaluate and administer my claim for benefits. I also authorize Lincoln to release My Information as follows:**
   - to its reinsurer, or other persons or organizations performing business or legal services in connection with my claim(s); or
   - to a vendor, approved by Lincoln, which specializes in the application for Social Security Disability Benefits
   - to vendors/consultants providing me with wellness, disability or leave related services as part of an employer sponsored benefit plan; or
   - for self-insured disability plans only, to my employer; or
   - for fully insured plans, I understand the information obtained with this Authorization may be used in discussions between Lincoln and my employer regarding my functional capacity, and any related restrictions and limitations, in order to facilitate my return to work; or
   - as otherwise may be required by law or as I may further authorize.

5. I understand My Information may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be re-disclosed or reused by the recipient under Colorado law.

6. I understand that I may revoke this Authorization in writing at any time, except to the extent Lincoln has taken action in reliance on this Authorization. To initiate revocation of this Authorization, direct all correspondence to Lincoln at the above address. If written revocation is not received, this Authorization will be considered valid for a period of time not to exceed 24 months from the date of my signature below, or the duration of my claim for benefits, whichever is shorter.

7. A photocopy of this Authorization is to be considered as valid as the original. I am entitled to receive a copy of this Authorization.

**SIGNATURE** ______________________________________________ **DATE** ____ /____ /________

Claimant/legal representative (Nearest relative, legal guardian, or appointed representative to sign only if claimant/patient is a minor, legally incompetent, or deceased.) Power of attorney or guardianship must be attached.

**PRINT NAME:** ______________________________________________

Relationship to Claimant/Patient of personal/legal representative signing for Claimant/Patient ____________________

**ADDRESS:** ______________________________________________
(Street)

______________________________________________
(City) (State) (Zip Code)

**PHONE NO:** ______________________________________________

(Please see FRAUD NOTICES attached)

# Medical Records - CONFIDENTIAL

**FROM:** TN - CHS E TENNESSEE HEART CONSULTANTS

Cindy P
10800 PARKSIDE DR STE 331, KNOXVILLE, TN 37934-1982
Phone: (865) 392-3400
Fax: (865) 392-3449

**TO:** MARK DALLE AVE MD

4307 HWY 66S, ROGERSVILLE, TN 37857
Phone: (423) 921-1600
Fax: (423) 921-1677

**Name: FIELDS, DAVID L**

**DOB:**

**Date Range: 01/01/2023 to 02/10/2023**

**This document contains the following records of the patient:**
- **Encounters and Procedures**
- **Imaging Results**
- **Lab Results**

This fax may contain sensitive and confidential personal health information that is being sent for the sole use of the intended recipient. Unintended recipients are directed to securely destroy any materials received. You are hereby notified that the unauthorized disclosure or other unlawful use of this fax or any personal health information is prohibited. To the extent patient information contained in this fax is subject to 42 CFR Part 2, this regulation prohibits unauthorized disclosure of these records.

If you received this fax in error, please visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. Thank you for your attention and cooperation.
[ID:98454-A-10667]

## Encounters and Procedures

Clinical Encounter Summaries

FIELDS, David L (id #98454, dob:

**Encounter Date: 02/09/2023**

Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/09/2023 01:45PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Followup: Heart failure
Followup: Essential hypertension

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/09/2023 01:51 pm | **Wt:** 296.8 lbs 02/09/2023 01:52 pm | **BP:** 124/62 sitting L arm 02/09/2023 02:01 pm<br>124/88 standing L arm 02/09/2023 02:02 pm |
| **BMI:** 40.3 02/09/2023 01:52 pm | **HR:** 88 02/09/2023 02:02 pm | |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS:** Rash

Medications

Reviewed Medications

| | | |
|---|---|---|
| **aspirin 81 mg chewable tablet**<br>Chew 1 tablet(s) every day by oral route for 90 days. | 02/06/23 | entered |
| **carvediloL 6.25 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 90 days. | 02/09/23 | prescribed |
| **Entresto 49 mg-51 mg tablet**<br>Take 1 tablet(s) twice a day by oral route for 30 days. | 02/09/23 | prescribed |
| **esomeprazole magnesium 40 mg capsule,delayed release**<br>Take 1 capsule(s) every day by oral route. | 02/06/23 | entered |
| **famotidine 20 mg tablet**<br>Take 1 tablet(s) twice a day by oral route. | 02/06/23 | entered |
| **Farxiga 5 mg tablet**<br>Take 1 tablet(s) every day by oral route for 30 days. | 02/09/23 | prescribed |
| **Multi Vitamin**<br>Mens vitafusion 1 daily | 02/06/23 | entered |

2/9/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST..... .........BUFFY

Vaccines

Vaccines not reviewed (last reviewed 02/06/2023)
COVID VACCINATED

Problems

Reviewed Problems
- Heart failure - Onset: 02/09/2023
- Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/09/2023
Has tobacco cessation counseling been provided?: No
What is your level of alcohol consumption?: None
Do you use any illicit or recreational drugs?: No
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional

FIELDS, David L (Id #98454, dob:

**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender identity: Identifies as Male
Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

## Surgical History

Reviewed Surgical History
- Heart Catheterization - 08/16/2007

wisdom teeth extraction

## Past Medical History

Reviewed Past Medical History
CHEST PAIN: **Y**
CONGESTIVE HEART FAILURE: **Y**
GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
PALPITATIONS: **Y**
SLEEP APNEA: **Y**

## Screening

None recorded.

## HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

The patient had an echocardiogram performed which demonstrated severe global left ventricular dysfunction EF of 10 to 15%. Right ventricular function was diminished as well. No hemodynamically significant valvular abnormalities were seen. Troponin was normal proBNP was elevated at 3953 CBC was unremarkable there was mild elevation in ALT and AST BUN and creatinine were normal at 18 and 1.16 bilirubin was 2.5
Because of the findings we brought him back to the office as quickly as possible to initiate therapy. There is really been no change in his status over the last 3 days. We did discuss changes in medications including substituting Entresto for lisinopril and adding carvedilol as well as an SGLT2 2 inhibitor. We also discussed cardiac catheterization to rule out coronary disease as an etiology. We also discussed long-term goals and possible need for ICD or advanced care if he does not respond well to medication

## ROS

**Constitutional:** Constitutional: **weight gain (10lbs).**

**Cardiovascular:** Cardiovascular: **palpitations.**

**Respiratory:** Respiratory: **cough** and **wheezing**.

**Musculoskeletal:** Musculoskeletal: **swelling in the extremities**.

**Neurologic:** Neurologic: **weakness**.

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: Jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally**.

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft, **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Heart failure -**
Patient has severe global left ventricular dysfunction with an EF of 10 to 15%. I have recommended changes in his medical regimen to include the addition of Entresto and SGLT2 inhibitor and carvedilol the patient was instructed to stop hisACE inhibitor for 36 hours prior to initiating Entresto
I50.9: Heart failure, unspecified

- CARDIAC CATHETERIZATION (SURG)

Weight (lbs): 297

**2. Essential hypertension** - continued monitoring of blood pressures suggested to make sure adequate control is being obtained.
I10: Essential (primary) hypertension

- HIGH BLOOD PRESSURE: CARE INSTRUCTIONS
- LEARNING ABOUT HIGH BLOOD PRESSURE

Return to Office

- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

## Encounter Sign-Off

Encounter signed-off by Barry Michelson, MD, 02/09/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/09/2023 at 2:34pm

FIELDS, David L (Id #98454, dob:

**Encounter Date: 02/06/2023**
Patient

| | | | |
|---|---|---|---|
| **Name** | FIELDS, DAVID (45yo, M) ID# 98454 | **Appt. Date/Time** | 02/06/2023 03:30PM |
| **DOB** | | **Service Dept.** | ETHC_Turkey Creek |
| **Provider** | BARRY MICHELSON, MD | | |
| **Insurance** | Med Primary: BCBS-TN (PPO)<br>Insurance # : ZEB902762636<br>Policy/Group # : 87792<br>PCP : DALLE-AVE, MARK J<br>Prescription: CVS\|CAREMARK - Member is eligible. details | | |

Chief Complaint

Follow up 3+ years
Followup: Essential hypertension

PROBLEMS WITH SHORTNESS OF BREATH, SWELLING, COUGH AND FATIGUE

Patient's Care Team

**Primary Care Provider (Primary Insurance):** DALLE-AVE, MARK J: PO BOX 850, ROGERSVILLE, TN 37857, Ph (423) 921-1600, Fax (423) 921-1677

Patient's Pharmacies

**U-SAVE DRUG CENTER (ERX): 4017 HWY 66 # 7, ROGERSVILLE, TN 37857, Ph (423) 272-6408, Fax (423) 272-4685**

Vitals

| | | |
|---|---|---|
| **Ht:** 6 ft 02/06/2023 03:05 pm | **Wt:** 301.1 lbs 02/06/2023 04:03 pm | **BP:** 126/90 sitting L arm 02/06/2023 04:04 pm<br>120/88 standing L arm 02/06/2023 04:05 pm |
| **BMI:** 40.8 02/06/2023 04:03 pm | **HR:** 90 02/06/2023 04:03 pm | **O2Sat:** 98% 02/06/2023 04:05 pm |

Measurements

None recorded.

Allergies

Reviewed Allergies

**PENICILLINS**: Rash

Medications

FIELDS, David L (id #98454, dob:

Reviewed Medications

**aspirin 81 mg chewable tablet** 02/06/23 entered
Chew 1 tablet(s) every day by oral route for 90 days.

**esomeprazole magnesium 40 mg capsule,delayed release** 02/06/23 entered
Take 1 capsule(s) every day by oral route.

**famotidine 20 mg tablet** 02/06/23 entered
Take 1 tablet(s) twice a day by oral route.

**lisinopriL 20 mg tablet** 11/25/22 filled
Take 1 tablet(s) every day by oral route for 90 days.

**Multi Vitamin** 02/06/23 entered
Mens vitafusion 1 daily

2/6/2023....... VERIFIED MEDICATIONS WITH PATIENT, WIFE and LIST..............BUFFY

Vaccines

Reviewed Vaccines
COVID VACCINATED

Problems

Reviewed Problems
• Essential hypertension - Onset: 02/06/2023

Family History

Reviewed Family History

| | |
|---|---|
| Father | - Coronary artery bypass graft (died age: 65) |
| | - Cerebrovascular accident (died age: 65) |
| | - Myocardial infarction (died age: 65) |
| | - Diabetes mellitus |
| Paternal Grandfather | - Myocardial infarction (died age: 75) |
| Paternal Grandmother | - Cerebrovascular accident |

2/6/2023 a FEW weeks ago, Mother just recently DX with left ventricular hypertrophy

Social History

Reviewed Social History
**Substance Use**
Do you or have you ever smoked tobacco?: Never smoker
How much tobacco do you smoke?: None
How much tobacco do you chew?: none
Do you or have you ever used any other forms of tobacco or nicotine?: No
What was the date of your most recent tobacco screening?: 02/06/2023
What is your level of alcohol consumption?: None
What is your level of caffeine consumption?: None
**Diet and Exercise**
What is your exercise level?: Occasional
**Home and Environment**
Do you have smoke and carbon monoxide detectors in your home?: Yes
Are you passively exposed to smoke?: No
**Marriage and Sexuality**
What is your relationship status?: Married
**Public Health and Travel**
Have you recently traveled abroad?: No
**Other**
Marital status: Married
**Gender Identity and LGBTQ Identity**
Gender Identity: Identifies as Male

FIELDS, David L (id #98454, dob:

Assigned sex at birth: Male
Sexual orientation: Straight or heterosexual

Surgical History

Reviewed Surgical History
* Heart Catheterization - 08/16/2007

wisdom teeth extraction

Past Medical History

GERD/REFLUX: **Y**
HIGH BLOOD PRESSURE/HYPERTENSION: **Y**
OBESITY: **Y**
SLEEP APNEA: **Y**

Documents for Discussion

**Discussed the following documents:**
- CT, CORONARY CALCIUM SCORE - 08/18/17
- ELECTROCARDIOGRAM - 08/18/17

  Result Note: EKG was reviewed. It demonstrates sinus rhythm. Q waves are present in 1 and aVL. Previous lateral infarction cannot be excluded however EKG is unchanged from previous
- LIPID PANEL, SERUM - 06/27/17

- Sleep Medicine - Sleep Study - Christopher Falin, Ballad Health - Epic - 02/06/23
- Central Scheduling - Transcribe Orders - Mark Dalle-Ave, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Neha Barakam, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Sarah Crook, Ballad Health - Epic - 02/06/23
- Urgent Care - Office Visit - Derek Darnell, Ballad Health - Epic - 02/06/23
- Emergency Medicine - Emergency - Connie Hinkle, Ballad Health - Epic - 02/06/23
- General Medicine - Continuity of Care Document - Ballad Health - Epic - 02/06/23

Screening

None recorded.

HPI

Patient is a 39-year-old male that is asked to be seen in followup for cardiac evaluation. We had seen him about 10 years ago. Abnormal stress test. This led to a cardiac catheterization. A small circumflex arose anomalously from the right coronary cusp. LV function was normal. There is a strong family history of coronary disease in the patient's father beginning at age 33 of 34. He died within the last year of complications of coronary artery disease at age 65.. He also has a cousin who was told that he had an elevated coronary calcium score and subsequently went on to be a catheterization and bypass surgery.

The patient is not having symptoms of chest pain or exercise intolerance dyspnea or orthopnea. No dysrhythmias have been identified. He does have a history of hypertension which she states is typically well controlled. He attributes his elevated blood pressure today to nervousness. Patient does not exercise regularly but is able to do his normal activities without limitation. His last LDL cholesterol 58.

The patient requested follow-up on February 6, 2023. Over the past several weeks he has been complaining of abdominal distention pedal edema and shortness of breath with activity. He contacted Cindy Pittman who is a relative of his. She thought that follow-up was appropriate. The patient reported some vague epigastric and chest discomfort. He went to the emergency room in Rogersville. His chest x-ray suggested borderline cardiomegaly but was otherwise unremarkable. His abdominal gas pattern was normal. His COVID screen was negative. No lab work was done a UTI was not diagnosed based on a urine analysis was. He states in the last several weeks he has gained about 9 or 10 pounds. He feels as if his belly is swollen and distended. He has been treated with multiple GI medications and actually got partial relief. He complained of some fluttering in his chest but no syncope or near syncope. He is not having any chest pain. At its worst he had mild pitting edema just over his lower calfs. He reports he has been watching his diet as far as fluid and salt intake and recently has been eating primarily salads

Patient reports that his bowel habits have increased in frequency. He thinks urination may have diminished mildly

ROS

**Constitutional:** Constitutional: **night sweats, weight gain (__lbs)**, and **exercise intolerance** and no fever.

**Eyes:** Eyes: no irritation, dry eyes, or vision change.

**ENMT:** Ears: no difficulty hearing or ear pain. Nose: no frequent nosebleeds, nose problems, or sinus problems. Mouth/Throat: no snoring, sore throat, bleeding gums, dry mouth, mouth ulcers, oral abnormalities, or teeth problems.

**Cardiovascular:** Cardiovascular: no arm pain on exertion or known heart murmur; **shortness of breath when walking** and **breath when lying down**; and **chest pain on exertion, palpitations (fluttering or**

FIELDS, David L (id #98454, dob:

**heart racing**), and **light-headed on standing**.

**Respiratory:** Respiratory: **cough, wheezing, shortness of breath**, and **sleep apnea (CPAP with forced air)** and no coughing up blood.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea, **dyspepsia** and **GERD**, and normal appetite and not vomiting blood; **stool has become very loose in the past 2 weeks and more frequent about 3 times daily**.

**Genitourinary:** Genitourinary: no incontinence, hematuria, difficulty urinating, or increased frequency.

**Musculoskeletal:** Musculoskeletal: no muscle aches or weakness; no arthralgias/joint pain or back pain; and **swelling in the extremities (stomach, around to back, legs from knees down)**.

**Integumentary:** Skin: no jaundice, rashes, laceration, or abnormal mole.

**Neurologic:** Neurologic: no weakness, numbness, seizures, dizziness, migraines, headaches, tremor, or loss of consciousness.

**Psychiatric:** Psych: no depression, anxiety, hallucinations, alcohol abuse, or suicidal thoughts; **sleep disturbances** and **restless sleep**; and feeling safe in a relationship.

**Endocrine:** Endocrine: **fatigue**; **hands and feet get cold more than normal**.

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising, swollen glands, or excessive bleeding.

**Allergic/Immunologic:** Allergy/Immunologic: no itching, hives, sinus pressure, or frequent sneezing and **runny nose**.

**Additionally reports: I have personally reviewed and agree with what has been documented in the review of systems. Barry Michelson, M.D.**

## Physical Exam

**Constitutional:** General Appearance: appears stated age and **obese**. Level of Distress: comfortable.

**Psychiatric:** Mental Status: alert and normal affect. Orientation: oriented to time, place, and person. Insight: good judgement.

**Eyes:** Lids and Conjunctivae: no xanthelasma or arcus senilis.

**ENMT:** Lips, Teeth, and Gums: normal dentition. Nose: no lesions on external nose.

**Neck:** Neck: supple and trachea midline. Carotid Arteries: bilateral normal upstroke and no bruits. Jugular Veins: jugular venous pressure unable to assess. Cervical Lymph Nodes: non tender.

**Lungs:** Respiratory Effort: unlabored. Chest Exam: normal curvature. Auscultation: no wheezing, rales, or rhonchi and clear.

**Cardiovascular:** Precordial Exam: non displaced focal PMI. Rate And Rhythm: regular. Heart Sounds: normal S1 and physiologically split S2. Systolic Murmur: not heard. Diastolic Murmur: not heard. Extremities: **BTK edema bilateral** ; **Trace edema is noted bilaterally**.

**Peripheral Pulses:** Pulses: full and equal in all extremities except if noted. Radial Pulse: normal. Dorsalis Pedis Pulse: normal.

**Abdomen::** Inspection and Palpation: non distended or tender, normal aorta and bowel sounds, no bruit or masses, and soft; **Abdomen is mildly distended soft with no rebound or guarding**.

**Musculoskeletal:** Inspection: no joint tenderness.

**Neurologic:** Gait: normal gait. Motor: normal strength.

**Skin:** Inspection and Palpation: warm and dry.

## Assessment / Plan

**1. Dyspnea on exertion -**
Patient's not having orthopnea but has noted exercise intolerance we will evaluate with echocardiogram lab work and a stress test
R06.09: Other forms of dyspnea

- ELECTROCARDIOGRAM
- PRO BNP
- US, ECHOCARDIOGRAM, TRANSTHORACIC, COMPLETE, W/ COLOR FLOW
- CBC WITH AUTOMATED DIFF (PLT COUNT INCLUDED)
- COMPREHENSIVE METABOLIC PNL
- TROPONIN I

FIELDS, David L (id #98454, dob:

- MAGNESIUM
- TSH

**2. Swollen abdomen -**
Patient feels as if his abdomen is distended. I do not appreciate a fluid wave on exam but given symptoms also consistent with heart failure abdominal ultrasound will be obtained to look at organs as well as whether or not edema is present
R19.00: Intra-abdominal and pelvic swelling, mass and lump, unspecified site
- US, ABDOMEN, COMPLETE

**3. Edema of lower extremity -**
See above
R60.0: Localized edema
- LEG AND ANKLE EDEMA: CARE INSTRUCTIONS

**4. Multiple premature ventricular complexes -**
Cardiac work-up will be completed we may need to consider getting a monitor if appropriate
I49.3: Ventricular premature depolarization

ELECTROCARDIOGRAM
- Result:
  - **Interpretation:: EKG reviewed sinus rhythm rate 90 nonspecific intraventricular conduction delay is present PVCs are present left atrial enlargement is present**

Return to Office
- to see Barry Michelson, MD at ETHC_Turkey Creek on or around 02/27/2023

Encounter Sign-Off
Encounter signed-off by Barry Michelson, MD, 02/06/2023.

Encounter performed and documented by Barry Michelson, MD
Encounter reviewed & signed by Barry Michelson, MD on 02/06/2023 at 4:51pm

FIELDS, David L (id #98454, dob:




## Imaging Results

**FIELDS, David L (id #98454, dob:**

## US ABDOMEN COMPLETE (#8827180, Final, 02/09/2023 9:44am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID MRN: 809309

DOB: Sex: Male

Location: TNTC RAD

Ordering Physician: MICHELSON, BARRY I MD

Ultrasound

Accession
304-23-040-00360

Exam Date/Time
2/9/2023 11:23 EST

Reason for Exam
R19.00

Report
EXAM:
US Abdomen Complete

CLINICAL HISTORY:
45-year-old male with history of abdominal pain and distention.

COMPARISON:
None

TECHNIQUE:
Multiple grayscale and color Doppler images of the abdomen

FINDINGS:
Aorta: Aorta is partially obscured due to overlying bowel gas. Visualized segments of the aorta remain normal in caliber.

IVC: Poorly visualized due to obscuring bowel gas.

Liver: Coarsened appearance of the hepatic echotexture without appreciable nodularity of the contour. No focal suspicious hepatic lesions are visualized. Portal vein is patent with appropriate hepatopedal blood flow. Small volume of perihepatic ascites.

Gallbladder: No cholelithiasis. No gallbladder wall thickening or pericholecystic fluid. Negative sonographic Murphy's sign.

Common bile duct: Common bile duct measures 4 mm in diameter.

Pancreas: Not well visualized due to obscuring bowel gas.

Right kidney: 12.4cm. No hydronephrosis. No evidence of medical renal disease.

Left kidney: 12.2cm. No hydronephrosis. No evidence of medical renal disease.

Spleen: 13.3 cm in length. Small echogenic foci suggestive of underlying calcified granulomata. Small volume of perisplenic fluid.

Visualized bladder is unremarkable demonstrating a estimated bladder volume of 60 cc.

Visualized bilateral pleural effusions.

IMPRESSION:
1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal

FIELDS, David L (id #98454, dob:

ascites,
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

Ultrasound

Report

Dictating Physician: Dylan P Simmons, DO
Created and electronically signed by Dylan P Simmons, DO on 2/9/2023 11:36 AM

Workstation ID: 1417PACS01

***** Final *****

Signed by: Simmons, Dylan P DO
Signed (Electronic Signature): 02/09/2023 11:38 am EST

**FIELDS, David L (id #98454, dob:**

## NI ECHO TTE 2D COMPLETE W COLOR DOPPLER (#8827771, Final, 02/09/2023 7:53am)

Tennova - Turkey Creek Medical Center

Patient: FIELDS, DAVID    MRN: 809309

DOB:    Sex: Male

Location: TNTC RAD

Ordering Physician: MICHELSON, BARRY I MD

Non-Invasive Cardiology

Accession
304-23-040-00241

Exam Date/Time
2/9/2023 10:25 EST

Reason for Exam
Other forms of dyspnea

Report
Name: FIELDS DAVID
Procedure
Staff
MRN: 00809309
Referring
Physician: Barry Michelson, MD
Date of birth:    Age: 45 year(s)
Sonographer:
Brandon Odom, RCS

Gender: Male    BMI: 39.2 kg/m^2
Interpreting physician: Barry Michelson, MD
Weight: 131.09 kg    BSA: 2.49 m^2
Height: 182.88 cm

Procedure Information
Exam date time: 2/9/2023 8:24 AM
Room no:
OP
Procedure type: Echo
Proc. sub type: TTE procedure: NI Echo TTE 2D Complete w Color Doppler.
Patient status: Routine
Accession no:
3042304000241

FIN Number:
8945033

Study
location: Turkey Creek

Technical
quality: Adequate visualization

Indications
Dyspnea/SOB.

Physician Conclusions
Summary: EF estimated at 10-15 %. Severe global hypokinesis.
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
RV Global systolic function is mildly diminished.
Valve is trileaflet and normal in structure. No evidence of

FIELDS, David L (id #98454, dob:

stenosis.
Left atrium is mildly enlarged.
Right atrium is mildly enlarged
Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

Obervations
Left ventricle: EF estimated at 10-15 %. Severe global hypokinesis.

Non-Invasive Cardiology

Report
Diastolic filling pattern normal.
Left ventricle size is mildly dilated.
Left ventricle wall thickness is normal.
Right ventricle: Chamber size is normal. RV Global systolic function is mildly diminished.
Left atrium: Left atrium is mildly enlarged.
Right atrium: Right atrium is mildly enlarged.
Mitral valve: Valve appears structurally normal. No evidence of stenosis. Trace mtiral regurgitation visualized.
Aortic valve: Valve is trileaflet and normal in structure. No evidence of stenosis. No significant regurgitation visualized.
Tricuspid valve: Valve appears structurally normal. No evidence of stenosis. Mild tricuspid regurgitation visualized.
Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.
Pulmonic valve: Valve appears structurally normal. No evidence of stenosis. Trace pulmonic regurgitation visualized.
Pericardial: Pericardium appears normal. There is no pericardial effusion visualized.
Aorta/Great vessels: Aortic root is normal in size.
The inferior vena cava is slightly dilated and shows more than 50% respiratory variation.
Pleural: There is no pleural effusion present.

Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM

Left Ventricle
Diastolic dimension: 5.79 cm Systolic dimension: 5.59 cm (2.5 - 4 cm)
2D septum diastolic: 0.87 cm
Area systolic: 37.3 cm^2
2D post wall diastolic: 1.01 cm (0.6 - 1 cm) FS Normal Range (30-45%): 3%
Area diastolic: 43 cm^2
LV length: 9.61 cm
LV mass (ASE formula): 214.52 g
LV mass index: 86.11 g/m^2
RWT: 0.35
LV M-Mode

LV Ejection Fraction
LVEDV Teichholz: 194 ml (62 - 150 ml) LVESV Teichholz: 175 ml (21 - 61 ml)
LVEDVI Teichholz: 77.87 ml/m^2 (34 - 74 ml/m^2) LVESVI Teichholz: 70.25 ml/m^2 (11 - 31 ml/m^2)

FIELDS, David L (id #98454, dob:

EF Teichholz: 15 % EF Simpson (BP) Normal 16 %
Range (55-85%): (51 - 72 %)
LVEDV Simpson (BP) 167 ml
Normal Range (56-155ml): (62 - 150 ml) LVEDV (A2C) Normal 160 ml
Range (56-155ml): (62 - 150 ml)
LVESV Simpson (BP) 141 ml LVESV (A2C) Normal 136 ml
Normal Range (19-58ml): (21 - 61 ml) Range (19-58ml): (21 - 61 ml)
LVEDVI (A2C): 64.23 ml/m^2
LVEDV (A4C) Normal 173 ml
Range (56-155ml) : (62 - 150 ml) LVESVI (A2C): 54.59 ml/m^2 (11 - 31 ml/m^2)
LVESV (A4C) Normal 145 ml
Range (19-58ml): (21 - 61 ml) EF (A2C) Normal Range 15 % (50-85%) :
LVEDVI (A4C): 69.44 ml/m^2

Non-Invasive Cardiology

Report
LVESVI (A4C): 58.2 ml/m^2 (11 - 31 ml/m^2)
EF (A4C): 16 %
LV 3D/Strain

Right Ventricle
Diastolic dimension: 3.91 cm Systolic pressure: 44.94 mmHg
Normal Range (2.7-3.4cm):

Left Atrium
LA diameter (2D) 4.5 cm LA/Aorta (2D): 1.55
Normal Range (2.0-4.0cm): LA volume index: 40.14 ml/m^2 (16 - 34 ml/m^2)
LA area: 26.2 cm^2
LA volume: 100 ml

Right Atrium
RA dimension Normal 4.3 cm Systolic pressure: 5 mmHg
Range (2.0-4.0cm):
Aortic Valve
Peak velocity Normal 0.87 m/s Mean velocity: 0.56 m/s
Range (0.9-1.7m/s) :
Mean gradient Normal 1 mmHg
Peak gradient Normal 3.02 mmHg Range (<10mmHG) :
Range (<10mmHG):
Dimensionless index: 0.49
Area (cont VTI): 1.99 cm^2 (> 2 cm^2)
Mean velocity: 27.6 cm/s
Mean gradient: 0 mmHg
AV VTI: 13.5 cm
LVOT VTI Normal 6.46 cm
Peak velocity: 42.6 cm/s Range (0.7-1.1m/s):
Peak gradient: 1 mmHg
LVOT diameter: 2.3 cm

Mitral Valve
Peak E-wave Normal 53.7 cm/s Peak A-wave Normal 30.2 cm/s
Range (0.60-1.30m/s) : Range( 0.30-0.60m/s) :

**FIELDS, David L (id #98454, dob:**

E/A ratio Normal Range 1.78
(0.8-2.5):
Peak gradient: 1.15 mmHg
Deceleration time 148 ms
Normal Range (160-
240msec):
E' lateral velocity: 8.2 cm/s
E/E' lateral: 6.55

Tricuspid Valve
Estimated RVSP: 46 mmHg Estimated RAP: 5 mmHg
TR velocity: 316 cm/s TR gradient: 39.94 mmHg

Pulmonic Valve
Peak velocity 74.7 cm/s Peak gradient: 2.23 mmHg
Normal Range (0.5-

Non-Invasive Cardiology

**Report**

Estimated PASP: 44.94 mmHg

1.0m/s):

Aorta/Great Vessels
Aortic root (2D): 2.9 cm Aortic arch: 2.8 cm
Ascending aorta 2.7 cm ACS (M-mode) Normal 2 cm
Normal Range Range (1.5-26cm):
(<3.4cm):
LVOT diameter: 2.3 cm
Wall Motion Scoring
Stage: Rest
Score:

0
0
0
0
0
0 0
0
0
0 0 0
0
0
0
0
0
0 0 0
0
0
0
0
0
0 0
0
0 0
0 0
0
0
0
0
0

FIELDS, David L (id #98454, dob:

0 - Non Visualized 1 - Normal 1' - Hyperkinesis 2 - Hypokinesis 3 - Akinesis 4 - Dyskinesis 5 - Aneurysm

Non-Invasive Cardiology

Report
Electronically signed by Barry Michelson, MD (Interpreting physician) on 2/9/2023 at 12:56 PM
***** Final *****

Signed by: MICHELSON, BARRY I MD
Signed (Electronic Signature): 02/09/2023 12:56 pm EST

## Lab Results

**FIELDS, David L (id #98454, dob:**

Lab Result 02/07/2023 (#8818458, 02/07/2023)



**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

| | | | |
|---|---|---|---|
| **Patient:** | Fields, David | **PCP:** | Mark J Delle-Ave, MD |
| **MRN:** | 00577368 | **Admitted:** | |
| **DOB:** | | **Diagnosis:** | |
| **Age:** | 45 yrs | **Location:** | HCMH CLINICAL LAB |
| **Sex:** | Male | | |

**Authorizing Provider**

**Barry I Michelson, MD** O: 865-392-3400

**CLINICAL LABORATORY RESULTS**

**CHEMISTRY - ROUTINE**

**Comprehensive Metabolic Panel** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Sodium** | 136 | 136 146 mmol/L |
| **Potassium** | 4.4 | 3.5 - 5 1 mmol/L |
| **Chloride** | 102 | 96 112 mmol/L |
| **CO2** | 23 | 19 - 32 mmol/L |
| **Anion Gap** | 11 | 2 - 11 mmol/L |
| **BUN** | 18 | 6 - 23 mg/dL |
| **Creatinine** | 1.16 | 0.60 - 1 36 mg/dL |
| **Glucose** | **145 (H)** | 70 - 99 mg/dL |
| **Calcium** | 9.4 | 8 4 - 10 5 mg/dL |
| **Albumin** | 4.0 | 3.5 5 2 g/dL |
| **Total Protein** | 7.3 | 6.6 - 8 7 g/dL |
| **Alkaline Phosphatase** | 94 | 39 117 U/L |
| **ALT** | **72 (H)** | 0 - 40 U/L |
| **AST** | **51 (H)** | 0 39 U/L |
| **Globulin** | 3.3 | 2.3 - 4 9 g/dL |
| **Albumin/Globulin Ratio** | 1.21 | 0.96 - 1 69 |
| **Bilirubin, Total** | **2.5 (H)** | 0.3 - 1 2 mg/dL |
| **eGFR** | 79 | >=60 ml/min/BSA |

eGFR calculated using CKD-EPI 2021 refit equation recommended by NKF/ASN Task Force (JASN December 2021, 32 (12) 2994-3015).
New calculation was implemented at Balladhealth labs on 12/05/2022.
Expected Reference Interval: >=60mL/min/1.73 square meters

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D. - Laboratory Director**
Clinical Laboratory 423-921-7230

| Component | Value | Reference |
|---|---|---|
| CKD stages: I:>90 II:60-89 III:30-59 IV:15-29 V:<15<br>Estimated GFR (eGFR) calculated using the CKD-EPI 2021 refit equation. Results should be interpreted with caution in situations that predispose to inaccuracies of the eGFR, including non-steady state creatinine (acute kidney injury), extremes of muscle mass/body size, high protein diets/supplement use, dialysis, loss of extracellular fluid, drugs interfering with renal tubular secretion (eg cimetidine, trimethoprim) or gut creatinase activity (antibiotics), and analytic interferences related to altered metabolites (glucose, ketones, bilirubin) or drugs. | | |

Resulting Lab: HCMH LAB

Order Questions

**Has the patient fasted?**

**Magnesium** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| **Magnesium** | 1.9 | 1.6 - 2.6 mg/dL |

Resulting Lab: HCMH LAB

**Troponin I** (Final result)

| | | | |
|---|---|---|---|
| ID: [redacted] | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **Tropon[redacted]** | <0.30 | <0.30 ng/mL |

TROP[redacted]N INTERPRETATIVE DATA:
Serum levels of troponin I are highly sensitive and specific for detection of myocardial injury due to ischemia, myocarditis, or cardiac contusion/surgery. Clinical studies have shown that troponin I levels are useful indicators of myocardial injury for a range of acute coronary syndromes including unstable angina, non Q-wave, and Q-wave myocardial infarction.

Resulting Lab: HCMH LAB

**pro B-Type Natriuretic Peptide** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-A0004 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0957 |

| Component | Value | Reference |
|---|---|---|
| **pro B-Type Natriuretic Peptide** | 3,953 (H) | 0 - 125 pg/mL |

Resulting Lab: HCMH LAB

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

**HAWKINS COUNTY MEMORIAL HOSPITAL**
851 Locust St, Rogersville TN 37857

**GREGORY A. STANCEL, M.D.** - Laboratory Director
Clinical Laboratory 423-921-7230

## ENDOCRINOLOGY

**TSH** (Final result)

| | | | |
|---|---|---|---|
| ID: | R23-038-C0021 | Collected: | 2/7/2023 0918 |
| Type: | Blood | Source: | |
| Ordered by: | | Verified On: | 2/7/2023 0955 |

| Component | Value | Reference |
|---|---|---|
| TSH | 4.30 | 0.34 - 5.00 uIU/mL |

Resulting Lab: HCMH LAB

## HEMATOLOGY

**COMPLETE BLOOD COUNTS**

| | 02/07/23 0918 | Reference |
|---|---|---|
| WBC | 5.4 | 3.5-11.0 K/uL |
| RBC | 5.21 | 4.22-5.81 M/uL |
| Hemoglobin | 15.5 | 13.9-18.0 g/dL |
| Hematocrit | 46.4 | 41.0-51.0 % |
| MCV | 89.1 | 78.0-98.0 fL |
| MCH | 29.8 | 25.0-34.0 pg |
| MCHC | 33.4 | 31.5-36.0 g/dL |
| RDW | 14.0 | 11.5-15.0 % |
| Platelet Count | 235 | 150-400 K/uL |
| MPV | 11.8 | 8.4-12.7 fL |
| Neutrophils # | 3.76 | 1.60-8.30 K/uL |
| Lymphocytes # | 0.95 | 0.70-4.00 K/uL |
| Monocytes # | 0.55 | 0.10-1.00 K/uL |
| Eosinophils # | 0.11 | 0.00-0.60 K/uL |
| Basophils # | 0.02 | 0.00-0.20 K/uL |
| Neutrophils % | 69.8 | % |
| Lymphocytes % | 17.6 | % |
| Monocytes % | 10.2 | % |
| Eosinophils % | 2.0 | % |
| Basophils % | 0.4 | % |
| Resulting Lab: | HCMH LAB | |

**Resulting Labs**

**HCMH LAB** HCMH CLINICAL LAB, Hawkins County Memorial Hospital, Medical Director: Gregory A. Stancel, M.D., 851 Locust Street, Rogersville TN 37857

**Flag Legend:**
**I=Abnormal** **L=Low** **H=High** **C=Critical** **CL=Critical Low** **CH=Critical High**

Patient: David Fields MRN: 00577368
*Printed: 2/7/2023 12:01 PM* *Page: 3 of 3*

# FAX

**FROM**

Robin MacLellan

**Phone** (423) 235-4119 * 106
**Fax Number** (423) 235-0272

**TO**

Lincoln Financial Group - STD Claim Form Employee

**Phone**
**Fax Number** +18778433950

**DATE** 02/10/2023

**NOTE**

Employer form already sent and Employee form on this fax.  Doctor has also faxed medical records.

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employee

**The Lincoln National Life Insurance Company**
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

## 1. Your Information

| | | |
|---|---|---|
| David | L. | Fields |
| Full Name (First) | (M.I.) | (Last Name) |

Social Security Number | Date of Birth

Street Address

☒ Male ☐ Female

Phone Number

City | State | Zip Code

melindafields1@gmail.com
Email Address

## 2. Your Employer

East Tennessee Iron & Metal
Employer Name

Group ID | Job Title: Truck Driver

Policy Number | Billing Location

## 3. Reason for inability to work

Congestive Heart Failure w/ ejection fraction of 10-15%
Description of Sickness, Injury or Pregnancy

2/7/2023
Date Last Worked

Injury work related? ☐ Yes ☒ No

## 4. Other Income Being Received

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Social Security | | / / | / / | / / |
| Workers' Comp | | / / | / / | / / |
| Salary Continuance | | / / | / / | / / |
| State Disability | | / / | / / | / / |
| Other Disability | | / / | / / | / / |
| Sick Pay | | / / | / / | / / |

If approved, should Lincoln National Life Insurance Co. withhold Federal Income Taxes from your benefits?

☒ Yes ☐ No If yes, indicate how much? 10%

*(Minimum: $20 per week Short-Term Disability) (Minimum: $88 per Month Long-Term Disability)*

## 5. Who is your treating health care provider?

This is your primary health care professional. Please have them complete the Attending Physician's Statement. If you have additional health care providers, please also complete the Treating Medical Professional form.

Barry I. Michelson, MD
Physician's Full Name

865-392-3400 | 865-392-3449
Phone Number | Fax Number

10800 Parkside Dr. #331
Street Address

Knoxville | TN | 37934
City | State | Zip Code

## 6. Account for Direct Deposit ☒ Checking ☐ Saving

First Community Bank
Bank Name

Routing Number

Account Number

The above statements are true and complete to the best of my knowledge and belief. I have read and understand Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

David Fields | 2/10/23
Signature | Date

David L. Fields
Print Name

(Please see FRAUD NOTICES attached)

## Illness or Injury Supplemental Questionnaire

**Instructions: Please answer the questions to the best of your ability and sign and date below.**

1. Is someone else responsible for your illness/injury? ☐ Yes ☒ No
2. Are you making a claim against anyone or any insurance company other than Lincoln Financial Group? ☐ Yes ☒ No

**If you answered yes to either question above, please answer the following questions:**

3. Please describe in detail the cause of your illness or injury:
   heart failure with dyspnea/shortness of breath, swelling of extremities, abdomen and back.
4. Please provide the location and address where the illness or injury occurred:

5. Please provide the Responsible Party's information:
   1. Name: N/A
   2. Address:
   3. Telephone Number:
   4. Insurance Company's Name:
   5. Claim Number:
6. If you have hired an attorney to investigate or prosecute a claim related to your illness or injury, please provide your attorney's information:
   1. Name: N/A
   2. Address:
   3. Telephone Number:
7. If you have any documents related to any investigation into how your illness or injury occurred, please attach them.

**I have answered the above questions to the best of my ability. I understand that fraudulently answering any of these questions could result in the suspension or termination of my benefits. I further understand that I have an obligation to supplement any of the above responses should any of the above information change in the future.**

Print Name: David L. Fields

Signature: David Fields Date: 2 / 10 / 23

# FAX

**FROM**

Robin MacLellan

**Phone** (423) 235-4119 * 106
**Fax Number** (423) 235-0272

**TO**

Lincoln STD Claim Form
Lincoln

**Phone**
**Fax Number** +18778433950

**DATE** 02/10/2023

**NOTE**

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employer

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

*Please submit a written job description for the employee's position with this claim form
*Please submit a copy of this employee's enrollment statement with this claim form

**1. This claim is for:**

David | L | Fields
Full Name (First) | (M.I.) | (Last Name)

Social Security Number: ______ Coverage Start Date: __/__/____

**2. Employee's Coverage & Policy**

Organization Name: East TN Industrial
Insurance Class:
Group ID: ETIM-BL 153508
Policy Number:
Billing Location:
Claim Location:

**3. Describe Employee's Role**

Job Title: Driver

Description of Duties: ATTACHED TO FORM - Job Discription

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Retirement Income | | __/__/__ | __/__/__ | __/__/__ |
| Workers' Comp | | __/__/__ | __/__/__ | __/__/__ |
| Salary Continuance | | __/__/__ | __/__/__ | __/__/__ |
| State Disability | | __/__/__ | __/__/__ | __/__/__ |
| Other Disability pay | | __/__/__ | __/__/__ | __/__/__ |

Have you considered job accommodations? ☐ Yes ☒ No
Injury work related? ☐ Yes ☒ No

Date hired: 03/14/2005
Hours worked in a standard day: 9.6 Average
Date last worked: 2/7/2023
Hours worked in a standard week: 48 Average
Date back to work full-time: __/__/____
Hours worked on day last worked: 6 hours
Earnings: $ 24.05
Frequency (W/M/Y etc.): hourly + 1 1/2 or after 40 Hours

**5. Employer Contact**

Employer Contact Name: Robin MacLellan
Street Address: PO Box 460
City: Rogersville State: TN Zip Code: 37857
Phone Number: 423-921-0207 Fax Number: 423-235-0272
Email Address: robin@eastTNIroal.com

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: [signature] Date: 2/8/23
Print Name: Robin MacLellan

(Please see FRAUD NOTICES attached)

EAST TENNESSEE IRON & METAL
PROVIDING SOLUTIONS

EAST TENNESSEE IRON & METAL, INC.
P.O. Box 460
Rogersville, Tennessee 37857

Tel. 423-235-4119
Fax 423-235-4149

**JOB DESCRIPTION:**

**Position:** Driver

**Essential Duties**:

- Responsible for maintaining CDL and related requirements as outlined and enforced by TDOT.
- Safely Drive a straight shift 10 speed Truck (roll-off, flatbed or trailer) and do all steps required to Load and Unload a Roll-off Box(s), Hopper(s) and/or trailer. A load must be secured which includes tarping, chaining and properly securing load. This process would include climbing or other physically demanding tasks and ability to lift carry or move up to 25 lbs. If over 25 lbs. should be able to run equipment to move scrap or other items to secure the load.

Lincoln Financial Group®

# Short Term Disability Claim Form Statement Of Employer

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
Toll Free (800) 423-2765 Fax (877) 843-3950
www.LincolnFinancial.com
disabilityclaims@lfg.com

*Please submit a written job description for the employee's position with this claim form
*Please submit a copy of this employee's enrollment statement with this claim form

**1. This claim is for:**

Full Name (First): David
(M.I.): L
(Last Name): Fields
Social Security Number:
Coverage Start Date: ___/___/___

**2. Employee's Coverage & Policy**

Organization Name: East TN Industrial
Insurance Class:
Group ID: ETIM-BL 153508
Policy Number:
Billing Location:
Claim Location:

**3. Describe Employee's Role**

Job Title: Driver

Description of Duties: ATTACHED TO FORM - Job Discription

**4. Other Income Being Received**

| | Amount $ | Date Began | Date Will Terminate | Date Applied For |
|---|---|---|---|---|
| Retirement Income | | / / | / / | / / |
| Workers' Comp | | / / | / / | / / |
| Salary Continuance | | / / | / / | / / |
| State Disability | | / / | / / | / / |
| Other Disability pay | | / / | / / | / / |

Have you considered job accommodations? ☐ Yes ☒ No
Injury work related? ☐ Yes ☒ No

Date hired: 03/14/2005
Hours worked in a standard day: 9.6 Average
Date last worked: 2/7/2023
Hours worked in a standard week: 48 Average
Date back to work full-time: ___/___/___
Hours worked on day last worked: 6 hours
Earnings: $ 24.05
Frequency (W/M/Y etc.): hourly + 1/2 or after 40 Hours

**5. Employer Contact**

Employer Contact Name: Robin MacLellan
Street Address: PO Box 460
City: Rogersville State: TN Zip Code: 37857
Phone Number: 423-921-0207
Fax Number: 423-235-0272
Email Address: robin@eastTNIRON.com

The above statements are true and complete to the best of my knowledge and belief. I have read and understand the attached Fraud Warning Statements. I have completed and attached the Authorization for Release of Information.

Signature: [signature] Date: 2/8/23
Print Name: Robin MacLellan

(Please see FRAUD NOTICES attached)

EAST TENNESSEE IRON & METAL
PROVIDING SOLUTIONS

**EAST TENNESSEE IRON & METAL, INC.**
P.O. Box 460
Rogersville, Tennessee 37857

Tel. 423-235-4119
Fax 423-235-4149

**JOB DESCRIPTION:**

**Position:** Driver

**Essential Duties**:

- Responsible for maintaining CDL and related requirements as outlined and enforced by TDOT.
- Safely Drive a straight shift 10 speed Truck (roll-off, flatbed or trailer) and do all steps required to Load and Unload a Roll-off Box(s), Hopper(s) and/or trailer. A load must be secured which includes tarping, chaining and properly securing load. This process would include climbing or other physically demanding tasks and ability to lift carry or move up to 25 lbs. If over 25 lbs. should be able to run equipment to move scrap or other items to secure the load.

# GR LIFE CLAIM PROFILE

**Date:** 5/21/2026 **LFG** **Claim #:** 1230070518

**Insurer:** The Lincoln National Life Insurance Company **Posted:** 9/6/2023 **Location:** HOME
**Policy:** 00001020986000000 - **Status:** CLOSED **User ID:** HLUOL6
East Tennessee Iron & Metal Works, Inc. **Business:** TRUE LIFE
**Close Date:** 5/30/2024 **Close Reason:** Not TD Any Occ

**Claimant Information**

**Name:** DAVID L FIELDS **Phone:** ( **DOB:**
**SSN:** **Sex:** M **Hire:** 3/14/2005
**Address:** **Ins Eff:** 12/1/2021 **Class:** 2
USA **Occ:** TRUCK DRIVER, HEAVY (ar**DOT**lustry) 905663014
**Salary:** $64,157.77 **Period:** Annual

**Claim Information**

**Special Provisions:**

**Age:** 45
**DLW:** 2/7/2023 **DOD:** 2/7/2023 **S/A:** S **W/R:** N
**Type:** WAIVER **Nature:** ILLNESS
**Diagnosis Pri:** I50.30 Unspecified diastolic (congestive) heart
**Sec:** I10 Essential (primary) hypertension
**Recovery Date:** 10/20/2044

**Benefit Information**

**Date Ben Begin:** 2/7/2023 **Months Paid:** 0 **Actual Age:** 45
**Modal:** $0.00 **Reins:** $0.00 **Reserve:** $0.00
**Waiver:** **Waiver Approved:** **Date Waiver Approved:**
**Face Bas:** **Face Sup:** **Face Vol:**
**Cur Bas:** **Cur Sup:** **Cur Vol:**

**Policy Information**

| | Basic | Supplemental | Voluntary |
|---|---|---|---|
| Method: | | | |
| Min: | | | |
| Max: | | | |
| Add: | | | |
| Dis: | | | |

**Offset Information**

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| LI | PROCESSED | 2/7/2023 | 10/20/2044 | $129,000.00 | $0.00 |
| DLI | PROCESSED | 2/7/2023 | 10/20/2044 | $10,000.00 | $0.00 |

**Dependent Information**

| Type | DOB | Name |
|---|---|---|

| | | |
|---|---|---|
| Spouse | 9/23/1971 | MELINDA FIELDS |

**Alert Information**

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|

**Action Plan**

# Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | DAVID FIELDS | | | **Occupation:** | TRUCK DRIVER, HEAVY (any industry) | | |
| **SSN:** | | **DOB:** | | **Received Date:** | 9/6/2023 | **Months Dis:** | 39 |
| **Claim #:** | 1230070518 | **DOD:** | 2/7/2023 | **Ben:** | | **Months Pd:** | 0 |
| **Coverage:** | GR LIFE | **Status:** | CLOSED | **Close Date:** | 5/30/2024 | **Assignee:** | HLUOL6 |
| **Policy Holder:** | East Tennessee Iron & Metal Works, Inc. | | | | | **Deceased:** | |
| **Case Mgr. Status:** | NONE | | | **Close Code:** | Not TD Any Occ | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Action Plan | | | | |
| 9/6/2023 | Dependents | 1 | MELINDA FIELDS | Spouse | HLUOL6 |
| 9/6/2023 6:10:24 AM | Claim Tasks | 4 | Data mismatch-claim intake/Ardis | Requested | HLUOL6 |
| | Data mismatch betw een claim intake facility and ARDIS on the follow ing field(s): CLASS_NUM<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:59 am | | | | |
| 9/6/2023 6:10:24 AM | Claim Tasks | 3 | Verify BLOC / CLOC | Requested | HLUOL6 |
| | Verify Billing Location<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:58 am | | | | |
| 9/6/2023 6:10:24 AM | Claim Tasks | 2 | Verify Class | Requested | HLUOL6 |
| | Verify Class<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:57 am | | | | |
| 9/6/2023 6:10:24 AM | Claim Tasks | 1 | Missing Info | Requested | HLUOL6 |
| | The follow ing fields contained no data w hen the claim form w as submitted: CLASS_OF_COV,ACCOUNT_ID<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:56 am | | | | |
| 9/11/2023 | Claim Tasks | 4 | Data mismatch-claim intake/Ardis | Completed | HLUOL6 |
| | Data mismatch betw een claim intake facility and ARDIS on the follow ing field(s): CLASS_NUM<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:59 am | | | | |
| 9/11/2023 | Claim Tasks | 3 | Verify BLOC / CLOC | Completed | HLUOL6 |
| | Verify Billing Location<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:58 am | | | | |
| 9/11/2023 | Claim Tasks | 2 | Verify Class | Completed | HLUOL6 |
| | Verify Class<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:57 am | | | | |
| 9/11/2023 | Claim Tasks | 1 | Missing Info | Completed | HLUOL6 |
| | The follow ing fields contained no data w hen the claim form w as submitted: CLASS_OF_COV,ACCOUNT_ID<br><br>Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:56 am | | | | |
| 9/11/2023 2:53:13 PM | Claim Tasks | 5 | Terminate Claim / Coverage | Requested | HLUOL6 |
| | Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:00 am | | | | |
| 9/11/2023 2:53:26 PM | Claim Tasks | 6 | Update Claim Information | Requested | HLUOL6 |

Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023-at this time, LW is pending-sending claim for CR since no RLS are listed- follow up 1 w eek
- HLUOL6 - Sep 11, 2023 07:20:28 pm

Updated Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart



**Lincoln/Fields 2261**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

and essential primary hypertension DLW 2/7/2023---Per clinical review , APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning. Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23. LW is denying NTDAO-LW w ill proceed w ith denial and send email to conversions.
- HLUOL6 - Sep 14, 2023 07:34:32 am

Review finalized----sending letters and closing claim - HLUOL6 - Sep 14, 2023 08:47:12 am

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:01 am

| 9/11/2023 3:39:29 PM | Telephone (OUT) | 1 | DAVID L. FIELDS | Requested | HLUOL6 |
|---|---|---|---|---|---|

Initial call to EE-left message on voice mail- Hello, this is Heather w ith Lincoln Financial Group in the Life Claims Waiver Department. I am calling you about your life insurance policy's Extension of Death Benefit claim. I have been review ing the medical documentation on file to see if w e can possibly w aive your premiums for you, but I do have a few additional questions and need an update on how you are doing. Please give me a call back at 1-800-423-2765 ext 7127 Thank you so much, I look forw arding to hearing from you, and have a great day! - HLUOL6 - Sep 11, 2023 03:39:52 pm

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:55 am

| 9/11/2023 7:19:47 PM | Summary/Assessment/Pa | 1 | h initial - HLUOL6 - Sep 11, 2023 07:20:09 pm | Requested | HLUOL6 |
|---|---|---|---|---|---|

Summary Notes
initial - HLUOL6 - Sep 11, 2023 07:20:09 pm
Assessment Notes

Path Notes
initial

Summary

Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023

Eligibility
Bloc 1555082
Cloc 2257312
Auto letters- Y email
DOH 3/14/2005

LI- 129,000 DLI $10,000
Eff 12/1/2021-8/7/2023 policy 12/1/2015 (DOH prior to eff date) 1st of mth/ 30 hours
Class 2 All Other Full-Time Employees
Ext of death: tdao, under age 60, 6mo elim period, terms at ssnra.
2xBAE rounded to next higher 1,000-max of 135,000 (w -2 based)

--DLI $ 10,000 spouse

Salary- per ardis eff 1/1/2023 $64,157.77

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

AWD 2/10/2023 ER form-driver-DOH 3/14/2005---DLW 2/7/2023---48 a w eek-- $24.05 an hour -job description

***AWD 9/7/2023-Coverage

Medical-AWD

AWD 2/14/2023-APS Mark Jo Dave-Ave 2/19/2023
--medical records

AWD 2/17/2023-APS Barry Michelson MD 2/9/2023----DX: I50.9 Heart Failure & I10 Hypertension Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Ee as severe global left ventricular dysfunction w ith an EF of 10-15%- Per APS dated 02/09/2023 From Dr. Jark Dalle Ave.
EE had a heart echo on 02/09/2023 and a cath on 02/17/2023
Per Dr. Michelson on APS dated 02/09/25023, EE has been referred to heart failure clinic
----Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023
06/08/2023 Assessment plan
Nonischemic congestive cardiomyopathy- 2022
o/5/2023 EF 20%- Ee to hav ICD implantation procedure - Ee to f/u w ith Dr. Michelson
Chronic systolic heart failure.

STD phone note 2/21/2023--Spoke w ith David
Occupation: Truck Driver
DLW: 02/ 07/2023
DOD: 02/08/2023
Diagnosis (DX): CHF
Treatment: Heart Cath & w ent w ell, has w eak heart muscle
He's in a life vest for 90 days as of 02/18/2023 and meds.

AWD 4/21/2023 medical records

AWD 5/11/2023-echo report

AWD 5/25/2023 medical records

AWD 6/22/2023-APS Nilam Patel 6/19/2023
--medical records

AWD 8/3/2023-medical records Mark Dalle-Ave 8/1/2023
07/21/2023 TN heart consultants

Physical exam - Incision is clean, dry, intact, w ell approximated, no hematoma, erythema or drainage noted
Assessment / aPlan
Biventricular automatic implantable cardioverter defibrillator in sity
Nonischemic congestive cardiomyopathy
LHC 02/2023- normal coronaries EF 10-15%
05/2023 Ef 20%
Cardiac MRI: pending at UT
Chronic systolic heart failure
Essential hypertension
History of SARS p CoV2
First degree atrioventricular block
COPD
Obesity - BMI 35

AWD 8/3/2023-APS Nilam Patel (no date)

LTD phone 8/7/2023--Confirmed address, dob, last 4 of ssn, email address
No other income, has filed for SSDI - results pending

Melinda Fields 09/23/1971
No children under 25

Truck driver - Dumpster roll off truck. Works in a 100 mile radius
He has to lift to stuff things into the truck, fix the fly bed and help to off load.
So he has to sometimes lift up to 60-70 lbs.

EE does not expect to rtw . His EF is 27% and he now as a defibrillator and pace maker combo
He receives regular checks and does cardiac rehab at home on the internet.
EE is not able to lift his arm above his head and has a 10lbs lifting restriction for at least another w eek.

AWD 8/8/2023-auth 8/7/2023

AWD 8/30/2023 medical records Nilam Patel

Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023-at this time, LW is pending-sending claim for CR since no RLS are listed- follow up 1 w eek
- HLUOL6 - Sep 11, 2023 07:20:09 pm

Additional medical
Clinical Assessment:9/12/2023- This is a 45 year old truck driver w ith diagnosis of nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function); chronic systolic heart failure, hypertension (HTN: high blood pressure); DOD is 02/07/23. EE has history of nonischemic congestive cardiomyopathy, CHF (congestive heart failure), HTN, morbid/severe obesity, obstructive sleep apnea (OSA), had COVID-19 in 2022. Height is 6'; w eight 280 - 296 lbs. The EE had c/o difficulty breathing (dyspnea), fatigue, abdominal sw elling, LE (low er extremity) sw elling, reflux.. EE w ent to emergency department (ED) 01/31/23 for c/o abdominal pain, heartburn and nausea. Abdomen x-ray show ed no obstruction or acute findings, urine test w as normal, chest x-ray show ed borderline enlargement of the heart but otherw ise unremarkable. EE had GI (gastrointestinal) cocktail/medicine and pain improved. Work up w as benign and EE discharged home in stable condition. EE saw Barry Michelson, MD, Cardiology 02/6/23, 02/9/23. EE had echocardiogram (echo: ultrasound of the heart 02/09/23) that show ed severe global left ventricle heart dysfunction. EF (ejection fraction: percentage of blood the left ventricle pumps w ith each contraction) w as 10-15%. Abdomen ultrasound 02/9/23 show ed small amount of fluid in abdomen (ascites), bilateral fluid on the lungs (bilateral pleural effusions). EE had labs, had heart catheterization (02/17/23), w as referred to heart failure clinic. EE w as placed in life vest for 3 months. OV 3/8/23 w ith Dr. Michelson w as f/u on heart failure, HTN, left ventricular cardiac dysfunction. EE had no c/o chest pain, no exercise intolerance, no abnormal heart rhythms noted. HTN is typically w ell controlled. EE does not exercise regularly but is able to do normal activities w ithout limitation. Vitals are stable, BP/blood pressure good, w eight 281 lbs. Discussed ultrasound/echo, heart catheterization, labs, medications. Breathing has improved, EE lost about 20 lbs. of fluid, exercise tolerance is a little better, to see heart failure service and to monitor BP's (blood pressures). OV 4/13/23 w ith Warren Stribling, MD/cardiology notes EE has done much better since Feb/2023, lost 40 lbs., reported improvement in symptoms. EE is able to w alk regularly, has some positional dizziness. Entresto (for heart failure) w as recently reduce due to low blood pressure (low BP: hypotension), denies passing out/syncope. BP/blood pressure w as slightly low , pulse normal, w eight 266.2 lbs. PE/physical exam normal, lungs clear, respiratory effort unlabored, cardiovascular exam: regular rate and rhythm, normal heart sounds, no edema. Abdomen normal on exam, musculoskeletal exam: no joint tenderness or sw elling, normal back. Neurologic: gait normal, no focal deficits, cranial nerves intact; skin normal. Medications discussed regarding chronic systolic heart failure, nonischemic congestive cardiomyopathy, BMI (body mass index)/severely obese, OSA. Labs ordered, advise cardiac MRI in 4-6 w eeks, advised ongoing w eight loss and moderate exercise, is on CPAP (continuous positive airw ay pressure mask for OSA) and tolerating. Transthoracic echocardiogram (TTE: ultrasound of the heart) 5/8/23 show ed slight improvement in EF to 20%. After visit summary 5/24/23 (unsure of provider) notes EE continues to w ear life vest, follow s w ith heart failure specialist (Dr. Stribling), is scheduled for MRI, heart function and morphology. EE to continue w earing life vest as directed.
OV 6/08/23 w ith Nilam Patel, MD (cardiac electrophysiology) w as for left ventricular dysfunction, referral for ICD (implantable cardioverter defibrillator: device placed under the skin that keeps track of heart rate and can deliver

electric shocks if in an abnormal rhythm) evaluation. EE has been w earing life vest and received no alerts. Weight 263 lbs. PE normal, lungs clear, cardiovascular exam normal, peripheral pulses normal, no extremity edema, abdomen normal. Musculoskeletal exam normal, no joint tenderness or sw elling, neurologic: gait normal, motor: normal strength. Discussed ICD implantation procedure. OV 6/23/23 w ith Dr. Michelson notes cardiac MRI (from 6/15/23) confirmed severe dilated left ventricle w ith severe left ventricular dysfunction. EE has been doing reasonably w ell clinically, can w alk unlimited distances on level ground, has some dyspnea w hen w alking uphill. EE had ICD implantation 7/14/23. EE had ICD site/w ound checked 7/21/23 by Sara Johnson, NP (nurse practitioner). Wound w as w ell healed, EE to f/u in 3 months. Dr. Patel noted monitoring of ICD 7/21/23 - 7/25/23, to continue remote monitoring w ith monthly reporting. EE stated that he does cardiac rehab at home on the internet. OV 8/01/23 w ith Mark Dalle-Ave, MD, Primary Care w as f/u on conditions HTN: currently stable; heart failure: stable; cardiomyopathy: stable; presence of ICD: stable; OSA: stable; dependence on other enabling machines and devices: stable; morbid/severe obesity: unstable; high BMI (body mass index): unstable. BP/blood pressure good: 107/71, other vitals stable, oxygenation on room air 97%, w eight 259.8 lbs. PE is normal, cardiovascular exam: regular heart rate and rhythm, normal heart sounds, no edema, normal vascular exam, normal pulses. Musculoskeletal exam normal, all 4 extremities normal w ith no edema, neurological exam normal, normal memory, psychiatric exam normal. EE to continue meds as directed, see cardiologist as directed, try to low er BMI. Continue to monitor heart and HTN, screening colonoscopy, exercise, f/u 6 months, review ed labs, advised healthy diet and physical activity, low sodium diet, monitor home BP, use CPAP nightly for OSA.
APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning.
Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23.
Updated Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023---Per clinical review , APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning. Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23. LW is denying NTDAO-LW w ill proceed w ith denial and send email to conversions.
- HLUOL6 - Sep 14, 2023 07:34:07 am

Review finalized----sending letters and closing claim - HLUOL6 - Sep 14, 2023 08:46:44 am

AWD 3/8/2024-Appeal
**Sent email to appeals to start appeal for LW
- HLUOL6 - Mar 08, 2024 03:48:15 pm

9/11/2023 7:23:16 PM Referrals 1 Initial Claim Review Initial HLUOL6

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:04 am
Clinical Consultation- Referral Template

Demographics

Claimant Name: David Fields
Claim Number: 1230070518
Occupation/Level: truck driver (3)
Diagnosis: unspecified diastolic (congestive) heart and essential primary hypertension

DOD: 2/7/2023
DLW: 2/7/2023

Medical-AWD

AWD 2/14/2023-APS Mark Jo Dave-Ave 2/19/2023
--medical records

AWD 2/17/2023-APS Barry Michelson MD 2/9/2023----DX: I50.9 Heart Failure & I10 Hypertension Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Ee as severe global left ventricular dysfunction w ith an EF of 10-15%- Per APS dated 02/09/2023 From Dr. Jark Dalle Ave.
EE had a heart echo on 02/09/2023 and a cath on 02/17/2023
Per Dr. Michelson on APS dated 02/09/25023, EE has been referred to heart failure clinic
----Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023
06/08/2023 Assessment plan
Nonischemic congestive cardiomyopathy- 2022
o/5/2023 EF 20%- Ee to hav ICD implantation procedure - Ee to f/u w ith Dr. Michelson
Chronic systolic heart failure.

STD phone note 2/21/2023--Spoke w ith David
Occupation: Truck Driver
DLW: 02/ 07/2023
DOD: 02/08/2023
Diagnosis (DX): CHF
Treatment: Heart Cath & w ent w ell, has w eak heart muscle
He's in a life vest for 90 days as of 02/18/2023 and meds.

AWD 4/21/2023 medical records

AWD 5/11/2023-echo report

AWD 5/25/2023 medical records

AWD 6/22/2023-APS Nilam Patel 6/19/2023
--medical records

AWD 8/3/2023-medical records Mark Dalle-Ave 8/1/2023
07/21/2023 TN heart consultants

Physical exam - Incision is clean, dry, intact, w ell approximated, no hematoma, erythema or drainage noted
Assessment / aPlan
Biventricular automatic implantable cardioverter defibrillator in sity
Nonischemic congestive cardiomyopathy
LHC 02/2023- normal coronaries EF 10-15%
05/2023 Ef 20%
Cardiac MRI: pending at UT
Chronic systolic heart failure
Essential hypertension
History of SARS p CoV2
First degree atrioventricular block
COPD
Obesity - BMI 35

AWD 8/3/2023-APS Nilam Patel (no date)

LTD phone 8/7/2023--Confirmed address, dob, last 4 of ssn, email address

No other income, has filed for SSDI - results pending

Melinda Fields 09/23/1971
No children under 25

Truck driver - Dumpster roll off truck. Works in a 100 mile radius
He has to lift to stuff things into the truck, fix the fly bed and help to off load.
So he has to sometimes lift up to 60-70 lbs.

EE does not expect to rtw . His EF is 27% and he now as a defibrillator and pace maker combo
He receives regular checks and does cardiac rehab at home on the internet.
EE is not able to lift his arm above his head and has a 10lbs lifting restriction for at least another w eek.

AWD 8/30/2023 medical records Nilam Patel

Specific Medical Question:

Throughout the 6 mo EP, w hat is the clmt's max functional capacity that he w ould have been able to reliably and consistently perform? - HLUOL6 - Sep 11, 2023 07:23:42 pm
transfer to aljme2 per ebobe4 - EBOBE4 - Sep 12, 2023 06:25:49 am
Date:September 12, 2023

Subject:Nursing Memorandum - group life review

Claim#: 1230070518
Claimant: David Fields

Clinical Assessment: This is a 45 year old truck driver w ith diagnosis of nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function); chronic systolic heart failure, hypertension (HTN: high blood pressure); DOD is 02/07/23. EE has history of nonischemic congestive cardiomyopathy, CHF (congestive heart failure), HTN, morbid/severe obesity, obstructive sleep apnea (OSA), had COVID-19 in 2022. Height is 6'; w eight 280 - 296 lbs. The EE had c/o difficulty breathing (dyspnea), fatigue, abdominal sw elling, LE (low er extremity) sw elling, reflux.. EE w ent to emergency department (ED) 01/31/23 for c/o abdominal pain, heartburn and nausea. Abdomen x-ray show ed no obstruction or acute findings, urine test w as normal, chest x-ray show ed borderline enlargement of the heart but otherw ise unremarkable. EE had GI (gastrointestinal) cocktail/medicine and pain improved. Work up w as benign and EE discharged home in stable condition. EE saw Barry Michelson, MD, Cardiology 02/6/23, 02/9/23. EE had echocardiogram (echo: ultrasound of the heart 02/09/23) that show ed severe global left ventricle heart dysfunction. EF (ejection fraction: percentage of blood the left ventricle pumps w ith each contraction) w as 10-15%. Abdomen ultrasound 02/9/23 show ed small amount of fluid in abdomen (ascites), bilateral fluid on the lungs (bilateral pleural effusions). EE had labs, had heart catheterization (02/17/23), w as referred to heart failure clinic. EE w as placed in life vest for 3 months. OV 3/8/23 w ith Dr. Michelson w as f/u on heart failure, HTN, left ventricular cardiac dysfunction. EE had no c/o chest pain, no exercise intolerance, no abnormal heart rhythms noted. HTN is typically w ell controlled. EE does not exercise regularly but is able to do normal activities w ithout limitation. Vitals are stable, BP/blood pressure good, w eight 281 lbs. Discussed ultrasound/echo, heart catheterization, labs, medications. Breathing has improved, EE lost about 20 lbs. of fluid, exercise tolerance is a little better, to see heart failure service and to monitor BP's (blood pressures). OV 4/13/23 w ith Warren Stribling, MD/cardiology notes EE has done much better since Feb/2023, lost 40 lbs., reported improvement in symptoms. EE is able to w alk regularly, has some positional dizziness. Entresto (for heart failure) w as recently reduce due to low blood pressure (low BP: hypotension), denies passing out/syncope. BP/blood pressure w as slightly low , pulse normal, w eight 266.2 lbs. PE/physical exam normal, lungs clear, respiratory effort unlabored, cardiovascular exam: regular rate and rhythm, normal heart sounds, no edema. Abdomen normal on exam, musculoskeletal exam: no joint tenderness or sw elling, normal back. Neurologic: gait normal, no focal deficits, cranial nerves intact; skin normal. Medications discussed regarding chronic systolic heart failure, nonischemic congestive cardiomyopathy, BMI (body mass index)/severely obese, OSA. Labs ordered, advise cardiac MRI in 4-6 w eeks, advised ongoing w eight loss and moderate exercise, is on CPAP (continuous positive airw ay pressure mask for OSA) and tolerating. Transthoracic echocardiogram (TTE: ultrasound of the heart) 5/8/23 show ed slight improvement in EF to 20%. After visit summary 5/24/23 (unsure of provider) notes EE continues to w ear life vest, follow s w ith heart failure specialist (Dr. Stribling), is scheduled for MRI, heart function and morphology. EE to continue w earing life vest as directed.

OV 6/08/23 w ith Nilam Patel, MD (cardiac electrophysiology) w as for left ventricular dysfunction, referral for ICD (implantable cardioverter defibrillator: device placed under the skin that keeps track of heart rate and can deliver

electric shocks if in an abnormal rhythm) evaluation. EE has been wearing life vest and received no alerts. Weight 263 lbs. PE normal, lungs clear, cardiovascular exam normal, peripheral pulses normal, no extremity edema, abdomen normal. Musculoskeletal exam normal, no joint tenderness or swelling, neurologic: gait normal, motor: normal strength. Discussed ICD implantation procedure. OV 6/23/23 with Dr. Michelson notes cardiac MRI (from 6/15/23) confirmed severe dilated left ventricle with severe left ventricular dysfunction. EE has been doing reasonably well clinically, can walk unlimited distances on level ground, has some dyspnea when walking uphill. EE had ICD implantation 7/14/23. EE had ICD site/wound checked 7/21/23 by Sara Johnson, NP (nurse practitioner). Wound was well healed, EE to f/u in 3 months. Dr. Patel noted monitoring of ICD 7/21/23 - 7/25/23, to continue remote monitoring with monthly reporting. EE stated that he does cardiac rehab at home on the internet. OV 8/01/23 with Mark Dalle-Ave, MD, Primary Care was f/u on conditions HTN: currently stable; heart failure: stable; cardiomyopathy: stable; presence of ICD: stable; OSA: stable; dependence on other enabling machines and devices: stable; morbid/severe obesity: unstable; high BMI (body mass index): unstable. BP/blood pressure good: 107/71, other vitals stable, oxygenation on room air 97%, weight 259.8 lbs. PE is normal, cardiovascular exam: regular heart rate and rhythm, normal heart sounds, no edema, normal vascular exam, normal pulses. Musculoskeletal exam normal, all 4 extremities normal with no edema, neurological exam normal, normal memory, psychiatric exam normal. EE to continue meds as directed, see cardiologist as directed, try to lower BMI. Continue to monitor heart and HTN, screening colonoscopy, exercise, f/u 6 months, reviewed labs, advised healthy diet and physical activity, low sodium diet, monitor home BP, use CPAP nightly for OSA.

APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, walk, balance, reach desk level and below waist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to wear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw, welding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, walk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning.

Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that would preclude frequent sitting (with reasonable position changes as needed), independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23.

Andrea M., RN, BSN
Nurse Disability Consultant, Lincoln Financial Group - ALJME2 - Sep 12, 2023 04:49:03 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/11/2023 7:25:36 PM | Claim Tasks | 7 | Additional Required Info | Requested | HLUOL6 |

***AWD 9/7/2023-Conversion application

--send email to coverage team
- HLUOL6 - Sep 11, 2023 07:26:25 pm

Item Closed with Claim by System - HLUOL6 - Sep 14, 2023 11:28:02 am

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Referrals | 1 | Initial Claim Review | Completed | HLUOL6 |

Item Closed with Claim by System - HLUOL6 - Sep 14, 2023 11:28:04 am
Clinical Consultation- Referral Template

Demographics

Claimant Name: David Fields
Claim Number: 1230070518
Occupation/Level: truck driver (3)
Diagnosis: unspecified diastolic (congestive) heart and essential primary hypertension
DOD: 2/7/2023
DLW: 2/7/2023

Medical-AWD

AWD 2/14/2023-APS Mark Jo Dave-Ave 2/19/2023
--medical records

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

AWD 2/17/2023-APS Barry Michelson MD 2/9/2023----DX: I50.9 Heart Failure & I10 Hypertension Initial:
02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Ee as severe global left ventricular dysfunction w ith an EF of 10-15%- Per APS dated 02/09/2023 From Dr. Jark Dalle Ave.
EE had a heart echo on 02/09/2023 and a cath on 02/17/2023
Per Dr. Michelson on APS dated 02/09/25023, EE has been referred to heart failure clinic
----Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023
06/08/2023 Assessment plan
Nonischemic congestive cardiomyopathy- 2022
o/5/2023 EF 20%- Ee to hav ICD implantation procedure - Ee to f/u w ith Dr. Michelson
Chronic systolic heart failure.

STD phone note 2/21/2023--Spoke w ith David
Occupation: Truck Driver
DLW: 02/ 07/2023
DOD: 02/08/2023
Diagnosis (DX): CHF
Treatment: Heart Cath & w ent w ell, has w eak heart muscle
He's in a life vest for 90 days as of 02/18/2023 and meds.

AWD 4/21/2023 medical records

AWD 5/11/2023-echo report

AWD 5/25/2023 medical records

AWD 6/22/2023-APS Nilam Patel 6/19/2023
--medical records

AWD 8/3/2023-medical records Mark Dalle-Ave 8/1/2023
07/21/2023 TN heart consultants

Physical exam - Incision is clean, dry, intact, w ell approximated, no hematoma, erythema or drainage noted
Assessment / aPlan
Biventricular automatic implantable cardioverter defibrillator in sity
Nonischemic congestive cardiomyopathy
LHC 02/2023- normal coronaries EF 10-15%
05/2023 Ef 20%
Cardiac MRI: pending at UT
Chronic systolic heart failure
Essential hypertension
History of SARS p CoV2
First degree atrioventricular block
COPD
Obesity - BMI 35

AWD 8/3/2023-APS Nilam Patel (no date)

LTD phone 8/7/2023--Confirmed address, dob, last 4 of ssn, email address
No other income, has filed for SSDI - results pending

Melinda Fields 09/23/1971
No children under 25

Truck driver - Dumpster roll off truck. Works in a 100 mile radius
He has to lift to stuff things into the truck, fix the fly bed and help to off load.
So he has to sometimes lift up to 60-70 lbs.



**Lincoln/Fields 2269**

EE does not expect to rtw . His EF is 27% and he now as a defibrillator and pace maker combo
He receives regular checks and does cardiac rehab at home on the internet.
EE is not able to lift his arm above his head and has a 10lbs lifting restriction for at least another w eek.

AWD 8/30/2023 medical records Nilam Patel

Specific Medical Question:

Throughout the 6 mo EP, w hat is the clmt's max functional capacity that he w ould have been able to reliably and consistently perform? - HLUOL6 - Sep 11, 2023 07:23:42 pm
transfer to aljme2 per ebobe4 - EBOBE4 - Sep 12, 2023 06:25:49 am
Date:September 12, 2023

Subject:Nursing Memorandum - group life review

Claim#: 1230070518
Claimant: David Fields

Clinical Assessment: This is a 45 year old truck driver w ith diagnosis of nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function); chronic systolic heart failure, hypertension (HTN: high blood pressure); DOD is 02/07/23. EE has history of nonischemic congestive cardiomyopathy, CHF (congestive heart failure), HTN, morbid/severe obesity, obstructive sleep apnea (OSA), had COVID-19 in 2022. Height is 6'; w eight 280 - 296 lbs. The EE had c/o difficulty breathing (dyspnea), fatigue, abdominal sw elling, LE (low er extremity) sw elling, reflux.. EE w ent to emergency department (ED) 01/31/23 for c/o abdominal pain, heartburn and nausea. Abdomen x-ray show ed no obstruction or acute findings, urine test w as normal, chest x-ray show ed borderline enlargement of the heart but otherw ise unremarkable. EE had GI (gastrointestinal) cocktail/medicine and pain improved. Work up w as benign and EE discharged home in stable condition. EE saw Barry Michelson, MD, Cardiology 02/6/23, 02/9/23. EE had echocardiogram (echo: ultrasound of the heart 02/09/23) that show ed severe global left ventricle heart dysfunction. EF (ejection fraction: percentage of blood the left ventricle pumps w ith each contraction) w as 10-15%. Abdomen ultrasound 02/9/23 show ed small amount of fluid in abdomen (ascites), bilateral fluid on the lungs (bilateral pleural effusions). EE had labs, had heart catheterization (02/17/23), w as referred to heart failure clinic. EE w as placed in life vest for 3 months. OV 3/8/23 w ith Dr. Michelson w as f/u on heart failure, HTN, left ventricular cardiac dysfunction. EE had no c/o chest pain, no exercise intolerance, no abnormal heart rhythms noted. HTN is typically w ell controlled. EE does not exercise regularly but is able to do normal activities w ithout limitation. Vitals are stable, BP/blood pressure good, w eight 281 lbs. Discussed ultrasound/echo, heart catheterization, labs, medications. Breathing has improved, EE lost about 20 lbs. of fluid, exercise tolerance is a little better, to see heart failure service and to monitor BP's (blood pressures). OV 4/13/23 w ith Warren Stribling, MD/cardiology notes EE has done much better since Feb/2023, lost 40 lbs., reported improvement in symptoms. EE is able to w alk regularly, has some positional dizziness. Entresto (for heart failure) w as recently reduce due to low blood pressure (low BP: hypotension), denies passing out/syncope. BP/blood pressure w as slightly low , pulse normal, w eight 266.2 lbs. PE/physical exam normal, lungs clear, respiratory effort unlabored, cardiovascular exam: regular rate and rhythm, normal heart sounds, no edema. Abdomen normal on exam, musculoskeletal exam: no joint tenderness or sw elling, normal back. Neurologic: gait normal, no focal deficits, cranial nerves intact; skin normal. Medications discussed regarding chronic systolic heart failure, nonischemic congestive cardiomyopathy, BMI (body mass index)/severely obese, OSA. Labs ordered, advise cardiac MRI in 4-6 w eeks, advised ongoing w eight loss and moderate exercise, is on CPAP (continuous positive airw ay pressure mask for OSA) and tolerating. Transthoracic echocardiogram (TTE: ultrasound of the heart) 5/8/23 show ed slight improvement in EF to 20%. After visit summary 5/24/23 (unsure of provider) notes EE continues to w ear life vest, follow s w ith heart failure specialist (Dr. Stribling), is scheduled for MRI, heart function and morphology. EE to continue w earing life vest as directed.

OV 6/08/23 w ith Nilam Patel, MD (cardiac electrophysiology) w as for left ventricular dysfunction, referral for ICD (implantable cardioverter defibrillator: device placed under the skin that keeps track of heart rate and can deliver electric shocks if in an abnormal rhythm) evaluation. EE has been w earing life vest and received no alerts. Weight 263 lbs. PE normal, lungs clear, cardiovascular exam normal, peripheral pulses normal, no extremity edema, abdomen normal. Musculoskeletal exam normal, no joint tenderness or sw elling, neurologic: gait normal, motor: normal strength. Discussed ICD implantation procedure. OV 6/23/23 w ith Dr. Michelson notes cardiac MRI (from 6/15/23) confirmed severe dilated left ventricle w ith severe left ventricular dysfunction. EE has been doing reasonably w ell clinically, can w alk unlimited distances on level ground, has some dyspnea w hen w alking uphill. EE had ICD implantation 7/14/23. EE had ICD site/w ound checked 7/21/23 by Sara Johnson, NP (nurse practitioner). Wound w as w ell healed, EE to f/u in 3 months. Dr. Patel noted monitoring of ICD 7/21/23 - 7/25/23, to continue remote monitoring w ith monthly reporting. EE stated that he does cardiac rehab at home on the internet. OV 8/01/23

w ith Mark Dalle-Ave, MD, Primary Care w as f/u on conditions HTN: currently stable; heart failure: stable; cardiomyopathy: stable; presence of ICD: stable; OSA: stable; dependence on other enabling machines and devices: stable; morbid/severe obesity: unstable; high BMI (body mass index): unstable. BP/blood pressure good: 107/71, other vitals stable, oxygenation on room air 97%, w eight 259.8 lbs. PE is normal, cardiovascular exam: regular heart rate and rhythm, normal heart sounds, no edema, normal vascular exam, normal pulses. Musculoskeletal exam normal, all 4 extremities normal w ith no edema, neurological exam normal, normal memory, psychiatric exam normal. EE to continue meds as directed, see cardiologist as directed, try to low er BMI. Continue to monitor heart and HTN, screening colonoscopy, exercise, f/u 6 months, review ed labs, advised healthy diet and physical activity, low sodium diet, monitor home BP, use CPAP nightly for OSA.

APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning.

Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23.

Andrea M., RN, BSN
Nurse Disability Consultant, Lincoln Financial Group - ALJME2 - Sep 12, 2023 04:49:03 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Documents/Mail | 2 | Waiver Denial Not TD_Claimant | Completed | HLUOL6 |

Waiver Denial Not TD_ClaimantAttachments:Translation services

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Documents/Mail | 1 | Generic Denial Ltr Sent to Employer | Completed | HLUOL6 |

Generic Denial Ltr Sent to Employer

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Claim Tasks | 7 | Additional Required Info | Completed | HLUOL6 |

***AWD 9/7/2023-Conversion application

--send email to coverage team
 - HLUOL6 - Sep 11, 2023 07:26:25 pm

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:02 am

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Claim Tasks | 6 | Update Claim Information | Completed | HLUOL6 |

Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023-at this time, LW is pending-sending claim for CR since no RLS are listed- follow up 1 w eek
 - HLUOL6 - Sep 11, 2023 07:20:28 pm

Updated Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023---Per clinical review , APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning. Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23. LW is denying NTDAO-LW w ill proceed w ith denial and send email to conversions.
- HLUOL6 - Sep 14, 2023 07:34:32 am

Review finalized----sending letters and closing claim - HLUOL6 - Sep 14, 2023 08:47:12 am

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:01 am

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Telephone (OUT) | 2 | DAVID L. FIELDS | Completed | HLUOL6 |

Denial call to EE---left message on voice mail- Hello, this is Heather w ith Lincoln Financial Groups Life Waiver Department. I am calling about your life insurance policies. We have review ed all the documentation for Life Waiver, and w e are denying the Extension of Death Benefit/Waiver of Premium claim for NTDAO. There is nothing w e need you to do at the time. You w ill be receiving a denial letter in the mail w ith my contact information on it and instructions to follow . Please feel free to reach out to me w ith any questions and further explain at 1-800-423-2765 ext 7127. Thank you and have a great day! - HLUOL6 - Sep 14, 2023 11:26:56 am

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 | Telephone (OUT) | 1 | DAVID L. FIELDS | Completed | HLUOL6 |

Initial call to EE-left message on voice mail- Hello, this is Heather w ith Lincoln Financial Group in the Life Claims Waiver Department. I am calling you about your life insurance policy's Extension of Death Benefit claim. I have been review ing the medical documentation on file to see if w e can possibly w aive your premiums for you, but I do have a few additional questions and need an update on how you are doing. Please give me a call back at 1-800-423-2765 ext 7127 Thank you so much, I look forw arding to hearing from you, and have a great day! - HLUOL6 - Sep 11, 2023 03:39:52 pm

Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:27:55 am

| | | | | | |
|---|---|---|---|---|---|
| 9/14/2023 11:27:49 AM | Status | | Not TD Any Occ | CLOSED | HLUOL6 |
| 3/7/2024 | Telephone (OUT) | 3 | DAVID L. FIELDS | Completed | HLUOL6 |

**Placed call to EE-had received an email from (SS claims examiner) that he had questions about his life policy. I suggested that he appealed it 1st. since it w as denied in 9/2023 it w as over the time frame, but could start there. May still have the option to convert but w ould need to check w ith conversions-EE thanked me for calling and call w as ended - HLUOL6 - Mar 07, 2024 11:20:41 am

| | | | | | |
|---|---|---|---|---|---|
| 3/8/2024 | Summary/Assessment/Pa | 1 | initial - HLUOL6 - Sep 11, 2023 07:20:09 pm | Completed | HLUOL6 |

Summary Notes
initial - HLUOL6 - Sep 11, 2023 07:20:09 pm
Assessment Notes

Path Notes
initial

Summary

Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023

Eligibility
Bloc 1555082
Cloc 2257312
Auto letters- Y email
DOH 3/14/2005

LI- 129,000 DLI $10,000
Eff 12/1/2021-8/7/2023 policy 12/1/2015 (DOH prior to eff date) 1st of mth/ 30 hours
Class 2 All Other Full-Time Employees
Ext of death: tdao, under age 60, 6mo elim period, terms at ssnra.
2xBAE rounded to next higher 1,000-max of 135,000 (w -2 based)

--DLI $ 10,000 spouse

Salary- per ardis eff 1/1/2023 $64,157.77

AWD 2/10/2023 ER form-driver-DOH 3/14/2005---DLW 2/7/2023---48 a w eek-- $24.05 an hour -job description

***AWD 9/7/2023-Coverage

Medical-AWD

AWD 2/14/2023-APS Mark Jo Dave-Ave 2/19/2023
--medical records

AWD 2/17/2023-APS Barry Michelson MD 2/9/2023----DX: I50.9 Heart Failure & I10 Hypertension Initial: 02/09/2023NOV: 02/17/2023TX: Heart Cath & Meds. Referral to Heart Failure Clinic
Ee as severe global left ventricular dysfunction w ith an EF of 10-15%- Per APS dated 02/09/2023 From Dr. Jark Dalle Ave.
EE had a heart echo on 02/09/2023 and a cath on 02/17/2023
Per Dr. Michelson on APS dated 02/09/25023, EE has been referred to heart failure clinic
----Rec'd MR stating he has been placed in a life vest for 3 months per orders dated 05/24/2023
06/08/2023 Assessment plan
Nonischemic congestive cardiomyopathy- 2022
o/5/2023 EF 20%- Ee to hav ICD implantation procedure - Ee to f/u w ith Dr. Michelson
Chronic systolic heart failure.

STD phone note 2/21/2023--Spoke w ith David
Occupation: Truck Driver
DLW: 02/ 07/2023
DOD: 02/08/2023
Diagnosis (DX): CHF
Treatment: Heart Cath & w ent w ell, has w eak heart muscle
He's in a life vest for 90 days as of 02/18/2023 and meds.

AWD 4/21/2023 medical records

AWD 5/11/2023-echo report

AWD 5/25/2023 medical records

AWD 6/22/2023-APS Nilam Patel 6/19/2023
--medical records

AWD 8/3/2023-medical records Mark Dalle-Ave 8/1/2023
07/21/2023 TN heart consultants

Physical exam - Incision is clean, dry, intact, w ell approximated, no hematoma, erythema or drainage noted
Assessment / aPlan
Biventricular automatic implantable cardioverter defibrillator in sity
Nonischemic congestive cardiomyopathy
LHC 02/2023- normal coronaries EF 10-15%
05/2023 Ef 20%
Cardiac MRI: pending at UT
Chronic systolic heart failure
Essential hypertension
History of SARS p CoV2

First degree atrioventricular block
COPD
Obesity - BMI 35

AWD 8/3/2023-APS Nilam Patel (no date)

LTD phone 8/7/2023--Confirmed address, dob, last 4 of ssn, email address
No other income, has filed for SSDI - results pending

Melinda Fields 09/23/1971
No children under 25

Truck driver - Dumpster roll off truck. Works in a 100 mile radius
He has to lift to stuff things into the truck, fix the fly bed and help to off load.
So he has to sometimes lift up to 60-70 lbs.

EE does not expect to rtw . His EF is 27% and he now as a defibrillator and pace maker combo
He receives regular checks and does cardiac rehab at home on the internet.
EE is not able to lift his arm above his head and has a 10lbs lifting restriction for at least another w eek.

AWD 8/8/2023-auth 8/7/2023

AWD 8/30/2023 medical records Nilam Patel

Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023-at this time, LW is pending-sending claim for CR since no RLS are listed- follow up 1 w eek
- HLUOL6 - Sep 11, 2023 07:20:09 pm

Additional medical
Clinical Assessment:9/12/2023- This is a 45 year old truck driver w ith diagnosis of nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function); chronic systolic heart failure, hypertension (HTN: high blood pressure); DOD is 02/07/23. EE has history of nonischemic congestive cardiomyopathy, CHF (congestive heart failure), HTN, morbid/severe obesity, obstructive sleep apnea (OSA), had COVID-19 in 2022. Height is 6'; w eight 280 - 296 lbs. The EE had c/o difficulty breathing (dyspnea), fatigue, abdominal sw elling, LE (low er extremity) sw elling, reflux.. EE w ent to emergency department (ED) 01/31/23 for c/o abdominal pain, heartburn and nausea. Abdomen x-ray show ed no obstruction or acute findings, urine test w as normal, chest x-ray show ed borderline enlargement of the heart but otherw ise unremarkable. EE had GI (gastrointestinal) cocktail/medicine and pain improved. Work up w as benign and EE discharged home in stable condition. EE saw Barry Michelson, MD, Cardiology 02/6/23, 02/9/23. EE had echocardiogram (echo: ultrasound of the heart 02/09/23) that show ed severe global left ventricle heart dysfunction. EF (ejection fraction: percentage of blood the left ventricle pumps w ith each contraction) w as 10-15%. Abdomen ultrasound 02/9/23 show ed small amount of fluid in abdomen (ascites), bilateral fluid on the lungs (bilateral pleural effusions). EE had labs, had heart catheterization (02/17/23), w as referred to heart failure clinic. EE w as placed in life vest for 3 months. OV 3/8/23 w ith Dr. Michelson w as f/u on heart failure, HTN, left ventricular cardiac dysfunction. EE had no c/o chest pain, no exercise intolerance, no abnormal heart rhythms noted. HTN is typically w ell controlled. EE does not exercise regularly but is able to do normal activities w ithout limitation. Vitals are stable, BP/blood pressure good, w eight 281 lbs. Discussed ultrasound/echo, heart catheterization, labs, medications. Breathing has improved, EE lost about 20 lbs. of fluid, exercise tolerance is a little better, to see heart failure service and to monitor BP's (blood pressures). OV 4/13/23 w ith Warren Stribling, MD/cardiology notes EE has done much better since Feb/2023, lost 40 lbs., reported improvement in symptoms. EE is able to w alk regularly, has some positional dizziness. Entresto (for heart failure) w as recently reduce due to low blood pressure (low BP: hypotension), denies passing out/syncope. BP/blood pressure w as slightly low , pulse normal, w eight 266.2 lbs. PE/physical exam normal, lungs clear, respiratory effort unlabored, cardiovascular exam: regular rate and rhythm, normal heart sounds, no edema. Abdomen normal on exam, musculoskeletal exam: no joint tenderness or sw elling, normal back. Neurologic: gait normal, no focal deficits, cranial nerves intact; skin normal. Medications discussed regarding chronic systolic heart failure, nonischemic congestive cardiomyopathy, BMI (body mass index)/severely obese, OSA. Labs ordered, advise cardiac MRI in 4-6 w eeks, advised ongoing w eight loss and moderate exercise, is on CPAP (continuous positive airw ay pressure mask for OSA) and tolerating. Transthoracic echocardiogram (TTE: ultrasound of the heart) 5/8/23 show ed slight improvement in EF to 20%. After visit summary 5/24/23 (unsure of provider) notes EE continues to w ear life vest,

follow s w ith heart failure specialist (Dr. Stribling), is scheduled for MRI, heart function and morphology. EE to continue w earing life vest as directed.
OV 6/08/23 w ith Nilam Patel, MD (cardiac electrophysiology) w as for left ventricular dysfunction, referral for ICD (implantable cardioverter defibrillator: device placed under the skin that keeps track of heart rate and can deliver electric shocks if in an abnormal rhythm) evaluation. EE has been w earing life vest and received no alerts. Weight 263 lbs. PE normal, lungs clear, cardiovascular exam normal, peripheral pulses normal, no extremity edema, abdomen normal. Musculoskeletal exam normal, no joint tenderness or sw elling, neurologic: gait normal, motor: normal strength. Discussed ICD implantation procedure. OV 6/23/23 w ith Dr. Michelson notes cardiac MRI (from 6/15/23) confirmed severe dilated left ventricle w ith severe left ventricular dysfunction. EE has been doing reasonably w ell clinically, can w alk unlimited distances on level ground, has some dyspnea w hen w alking uphill. EE had ICD implantation 7/14/23. EE had ICD site/w ound checked 7/21/23 by Sara Johnson, NP (nurse practitioner). Wound w as w ell healed, EE to f/u in 3 months. Dr. Patel noted monitoring of ICD 7/21/23 - 7/25/23, to continue remote monitoring w ith monthly reporting. EE stated that he does cardiac rehab at home on the internet. OV 8/01/23 w ith Mark Dalle-Ave, MD, Primary Care w as f/u on conditions HTN: currently stable; heart failure: stable; cardiomyopathy: stable; presence of ICD: stable; OSA: stable; dependence on other enabling machines and devices: stable; morbid/severe obesity: unstable; high BMI (body mass index): unstable. BP/blood pressure good: 107/71, other vitals stable, oxygenation on room air 97%, w eight 259.8 lbs. PE is normal, cardiovascular exam: regular heart rate and rhythm, normal heart sounds, no edema, normal vascular exam, normal pulses. Musculoskeletal exam normal, all 4 extremities normal w ith no edema, neurological exam normal, normal memory, psychiatric exam normal. EE to continue meds as directed, see cardiologist as directed, try to low er BMI. Continue to monitor heart and HTN, screening colonoscopy, exercise, f/u 6 months, review ed labs, advised healthy diet and physical activity, low sodium diet, monitor home BP, use CPAP nightly for OSA.
APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning.
Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23.
Updated Path
Claimant is a 45-year-old male w ho is a truck driver (3) w ho is out due to unspecified diastolic (congestive) heart and essential primary hypertension DLW 2/7/2023---Per clinical review , APS 02/9/23 by Barry Michelson, MD, Cardiology notes R&L's: no driving, no lifting greater than 25 lbs. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, balance, reach desk level and below w aist. EE can frequently sit. No lift/carry over 25 lbs., no climb, push, pull, reach overhead. Form 5/3/23 by Dr. Michelson states EE is to w ear life vest for 3 months. APS 6/19/23 by Nilam Patel notes R&L's: avoid heavy lifting; avoid chainsaw , w elding. EE can occasionally lift/carry up to 25 lbs.; occasionally stand, w alk, sit. Treatment: continue medication optimization, continue therapy from biventricular pacing, treatment is lifelong management. EE has no deficits in ADL's, has no loss of cognitive functioning. Throughout the 6 month elimination period from 02/7/23 - 8/7/23, the medical findings do not support functional impairments that w ould preclude frequent sitting (w ith reasonable position changes as needed), independent occasional standing/w alking (w ith reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding for the entire duration of 02/7/23 - 8/7/23. LW is denying NTDAO-LW w ill proceed w ith denial and send email to conversions.
- HLUOL6 - Sep 14, 2023 07:34:07 am

Review finalized----sending letters and closing claim - HLUOL6 - Sep 14, 2023 08:46:44 am

AWD 3/8/2024-Appeal
**Sent email to appeals to start appeal for LW
- HLUOL6 - Mar 08, 2024 03:48:15 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/8/2024 | Documents/Mail<br>2024-03-08-11.59.07.437300O01 | 4 | Incoming Correspondence | Completed | HLUOL6 |
| 3/8/2024 | Documents/Mail<br>2024-03-08-11.59.07.437300O01 | 3 | Incoming Correspondence | Completed | HLUOL6 |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2024 | Documents/Mail | 5 | Email | Completed | HLUOL6 |
| | 2024-03-08-16.48.32.019320O01 | | | | |
| 3/11/2024 | Documents/Mail | 8 | Appeal Notice | Completed | HLUOL6 |
| | 2024-03-11-12.57.10.600440O01 | | | | |
| 3/11/2024 | Documents/Mail | 7 | Incoming Correspondence | Completed | HLUOL6 |
| | 2024-03-11-12.56.35.056440O01 | | | | |
| 3/11/2024 | Documents/Mail | 6 | Email | Completed | HLUOL6 |
| | 2024-03-08-16.48.32.041320O01 | | | | |
| 3/11/2024 11:59:59 AM | Status | | | REOPENED | BETWA1 |
| 4/9/2024 | Documents/Mail | 9 | Email | Completed | HLUOL6 |
| | 2024-04-08-12.29.32.958740O01 | | | | |
| 4/9/2024 | Documents/Mail | 12 | Incoming Correspondence | Completed | HLUOL6 |
| | 2024-03-11-12.56.35.056440O01 | | | | |
| 4/9/2024 | Documents/Mail | 13 | Appeal Notice | Completed | HLUOL6 |
| | 2024-03-11-12.57.10.600440O01 | | | | |
| 4/9/2024 | Documents/Mail | 11 | Email | Completed | HLUOL6 |
| | 2024-03-08-16.48.32.041320O01 | | | | |
| 4/9/2024 | Documents/Mail | 10 | Email | Completed | HLUOL6 |
| | 2024-03-08-16.48.32.019320O01 | | | | |
| 4/9/2024 2:19:58 PM | Appeal | 1 | Level 1 | New | JXBOOTH |
| 4/9/2024 8:00:46 PM | Claim Tasks | 8 | Appeal - 4 day notice | Requested | JXBOOTH |
| 4/10/2024 | Documents/Mail | 15 | Appeal WOP EE Ackappeal | Completed | JXBOOTH |
| | Appeal WOP EE Ackappeal | | | | |
| 4/10/2024 | Documents/Mail | 14 | Appeal WOP Delay to Group | Completed | JXBOOTH |
| | Appeal WOP Delay to Group | | | | |
| 4/10/2024 | Claim Tasks | 8 | Appeal - 4 day notice | Completed | JXBOOTH |
| 4/10/2024 | Telephone (OUT) | 4 | DAVID L. FIELDS | Completed | JXBOOTH |
| | Called claimant about appeal, apologiized for delay, not sure w hat happened but his CE w as on top of it. Discussed appeal process, he has nothing more to add. Will proceed w ith review and send ack letter, confirmed email address. - JXBOOTH - Apr 10, 2024 11:25:14 am | | | | |
| 4/10/2024 11:02:39 AM | Claim Tasks | 9 | Appeal - 45 Day Reminder | Requested | JXBOOTH |
| | 30th day 4/8/24 45th day 4/22/24 - JXBOOTH - Apr 10, 2024 11:03:11 am<br>rtr sent 5/7/24 - JXBOOTH - May 10, 2024 07:50:02 am | | | | |
| 4/10/2024 11:03:15 AM | Claim Tasks | 10 | Appeal 90 Day Extension | Requested | JXBOOTH |
| | 90th day 6/6/24 - JXBOOTH - Apr 10, 2024 11:03:55 am | | | | |
| 4/10/2024 11:26:06 AM | Summary/Assessment/Pa | 2h | Level 1 Appeal Pending Rationale - JXBOOTH - Apr 10, 2024 | Requested | JXBOOTH |

Summary Notes
Level 1 Appeal Pending Rationale - JXBOOTH - Apr 10, 2024 11:26:40 am
Assessment Notes

Path Notes

1st or 2nd Level Appeal: Level 1
Date Appeal Received:03/08/2024
30th day04/08/2024
45th Day:04/22/2024
90th Day:06/06/2024

Claimant Name: David Fields
Claim Number: 1230070518
Group ID & active/termed:ETIM East Tennessee Iron & Metal Works

Claim Demographics

Current Age: 46
Situs State:TNState Language applicable (y/n)
State of Residence:TNState Language applicable (y/n)
Estimated Net benefit amount(s):$129,000 LT $10,000 DLI
Date of Disability: 02/07/2023
EP: n/a
Benefit Commencement Date: 02/07/2023
Benefit Paid/Approved To Date:n/a
Change in Definition (COD) Date: n/a
Max Duration Date: 10/20/2044
Occupation / Location in AWD: Truck Driver
Physical Demand Level of Occ:heavy
Primary Diagnosis: unspecified diastolic heart
Co-Morbid Diagnoses: essential hypertension
ERISA or NON-ERISA: ERISA per FE
Attorney: n/a
Riders:n/a
STD claim status:1230012611 - closed
LW claim status:appealed
LTD claim status:1230051807 - open

Pre Ex investigation required (y/n)n/a
AO investigation required (y/n)n/a
SSDI Aw ard information needed/requested - if not - w hy - aw arded

Notes: Contractual Limits
Legal Action - 5 years
Proof of claim - 90 days after date of loss

Initial Claim Decision:
Reason/Date of denial: 9/14/23 - not TDAO
Type of Medical Review , Name, & Specialty: NDC

Prior peers:

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Nilam Patel - cardiology - 865-392-3400 (f)865-392-3449
Last Date of Service: 7/21/2023(LTD, STD)
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Mark Dalle-Ave - pcp - 423-921-1600 (f)921-1677
Last Date of Service: 8/1/23(LTD)
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: W Kyle Stribling - 615-222-3078 (f)612-222-5399
Last Date of Service:
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"He w ishes to appeal, SSDI deemed him totally disabled.

Information Submitted w ith appeal and not previously review ed:
"n/a

PATH: Send EE and ER ack letters, set up tasks, have cardiology peer completed.
- JXBOOTH - Apr 10, 2024 11:26:40 am

Rcvd peer, sent clarification for R&L's from 2/7/23-2/17/23 - JXBOOTH - Apr 24, 2024 08:39:38 am

Rcvd clarification rqtd w op tsa - JXBOOTH - Apr 26, 2024 08:44:42 am

Rcvd JD - JXBOOTH - Apr 30, 2024 12:58:08 pm

Rcvd TSA, identified occupations. Sent RTR and begin tolling. - JXBOOTH - May 07, 2024 03:01:52 pm

4/10/2024 12:43:21 PM Referrals 2 External Review Initial JXBOOTH

Please create file copy of STD 1230012611, LTD 1230051807 and WOP 1230070518 for a cardiology peer.

Referral Date: 04/10/2024
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review , or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): David Fields
Claim Number: 1230070518
"Include any additional claim #'s involved: 1230012611, 1230051807
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: TN
Customer/Group Name: East Tennessee Iron & Metal Works
Job Title: truck driver
Product Type: 1rst Appeal WOP

Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension
Date of Disability: 02/07/2023
Last Day Worked: 02/07/2023
Benefit Begin Date: 02/07/2023
Specialty Requested: Cardiology peer

Name and Specialty of prior external vendor review ers/ examiners: n/a

Attorney Involvement: Yes or No: no
Attorney Contact Information (If applicable):

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates

into restrictions and limitations from 02/07/2023 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name: Nilam Patel
"Phone Number:865-392-3400
"Fax Number: 865-392-3449

"Name: Mark Dalle-Ave
"Phone Number: 423-921-1600
"Fax Number: 423-921-1677
8. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that w ould impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

9. Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Apr 10, 2024 12:45:15 pm
Case submitted to CRT case #214772 for a peer review w ith an Cardiology physician. - CAMBY2 - Apr 11, 2024 09:55:59 am
CRT / ICP is unable to process - asked that w e Vend this out - File w as submitted to ECN #264694 for peer review w ith Cardiology physician - CAMBY2 - Apr 12, 2024 10:34:14 am
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - CAMBY2 - Apr 24, 2024 07:56:06 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/24/2024 | Referrals | 2 | External Review | Completed | JXBOOTH |

Please create file copy of STD 1230012611, LTD 1230051807 and WOP 1230070518 for a cardiology peer.

Referral Date: 04/10/2024
Claims Specialist Name: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) no

Referral Type: (Appeal, Standard File Review , or IME) Appeal
If Addendum, Select Physician:
"Attach relevant medical records (PDF) that need processing
Other Considerations (optional): (Language Request - Spanish or French, War Exclusion)

Claimant Name (First/Last): David Fields
Claim Number: 1230070518
"Include any additional claim #'s involved: 1230012611, 1230051807
Date of Birth:
Is Linked Provider in S1.NXT? / Please Specify: No -Burgundy Claim
Claimant Time Zone: TN
Customer/Group Name: East Tennessee Iron & Metal Works
Job Title: truck driver
Product Type: 1rst Appeal WOP

Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension
Date of Disability: 02/07/2023

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Last Day Worked: 02/07/2023
Benefit Begin Date: 02/07/2023
Specialty Requested: Cardiology peer

Name and Specialty of prior external vendor review ers/ examiners: n/a

Attorney Involvement: Yes or No: no
Attorney Contact Information (If applicable):

Core Questions: (delete any questions that you do not need)

1. Please identify the primary impairing Diagnosis(es) w ith ICD 10 Code(s)

2. If applicable, please identify clinically significant comorbid Diagnosis(es) w ith ICD w ith ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 02/07/2023 to current , and comment on the expected duration.

4. Do medical records support any R&Ls that w ere recommended by treating providers for the timeframes in questions?

5. Is the medical management recommended by the provider and/or follow ed by the claimant clinically reasonable and consistent w ith the apparent level of severity for the reported condition?

6. Are there any non-medical circumstances identified in the medical records (e.g. w orkplace conflicts-child or elder care issues, or legal issues) that may adversely impact w ork?

7. Please initiate AP contact w hen it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for w ork absence:
"Name: Nilam Patel
"Phone Number:865-392-3400
"Fax Number: 865-392-3449

"Name: Mark Dalle-Ave
"Phone Number: 423-921-1600
"Fax Number: 423-921-1677
8. Based on the claimant's medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that w ould impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.

9. Do the medical records indicate r/ls that w ould prevent the claimant from performing on a reliable and consistent basis? - JXBOOTH - Apr 10, 2024 12:45:15 pm
Case submitted to CRT case #214772 for a peer review w ith an Cardiology physician. - CAMBY2 - Apr 11, 2024 09:55:59 am
Final report received back from ECN - sent to LFGAppeals to be uploaded into AWD - CAMBY2 - Apr 24, 2024 07:56:06 am
CRT / ICP is unable to process - asked that w e Vend this out - File w as submitted to ECN #264694 for peer review w ith Cardiology physician - CAMBY2 - Apr 12, 2024 10:34:14 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/24/2024 | Documents/Mail | 16 | Email | Completed | JXBOOTH |
| | 2024-04-24-08.56.31.336940O01 | | | | |
| 4/24/2024 | Documents/Mail | 17 | Medical Records | Completed | JXBOOTH |
| | 2024-04-24-11.55.17.047080O01 | | | | |
| 4/24/2024 8:38:10 AM | Referrals | 3 | External Review | Initial | JXBOOTH |
| | Clarification, no new medical. | | | | |

| Posted Date | Category | Seq | Item | Status | User |
| --- | --- | --- | --- | --- | --- |

Referral Date: 04/24/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) yes

Referral Type: Clarification
Select / Previous Physician: David Friedman - ECN
Specialty of Prior Review er / Examiner: cardiologist
Claimant Name: David Fields
Date of Birth:
Claimant Time Zone: Est
Customer/Group Name: East Tennessee Iron & Metal Works
Is Linked Provider in S1.NXT? No

Claim Number: 1230070518
1rst Appeal WOP
Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension
Date of Disability: 02/07/2023
Benefit Begin Date: 02/07/2023
Job Title: Truck Driver
Last Day Worked: 02/07/2023

Thank you for your report regarding the LTD claim for David Fields After review ing your report, w e are requesting an clarification to your answ er for question 3.

1.Please state restrictions/limitations for the period of 2/7/23-2/17/23.

Thank you for your assistance. - JXBOOTH - Apr 24, 2024 08:39:01 am
Case submitted to ECN case #265643 for an clarification w ith Dr David Friedman (Cardio) - CAMBY2 - Apr 24, 2024 11:55:30 am
Clarification report received back from ECN - sent to LFGAppeals to be uploaded into AWD - CAMBY2 - Apr 25, 2024 03:01:52 pm

| 4/26/2024 | Referrals | 3 | External Review | Completed | JXBOOTH |
| --- | --- | --- | --- | --- | --- |

Clarification, no new medical.

Referral Date: 04/24/2024
Clinician/ Appeals Examiner: Jeff Booth
Phone Number: 402-361-2665
Email Address: jeff.booth@lfg.com

Is this referral COVID related? (Yes or No) yes

Referral Type: Clarification
Select / Previous Physician: David Friedman - ECN
Specialty of Prior Review er / Examiner: cardiologist
Claimant Name: David Fields
Date of Birth:
Claimant Time Zone: Est
Customer/Group Name: East Tennessee Iron & Metal Works
Is Linked Provider in S1.NXT? No

Claim Number: 1230070518
1rst Appeal WOP
Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension
Date of Disability: 02/07/2023

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Benefit Begin Date: 02/07/2023
Job Title: Truck Driver
Last Day Worked: 02/07/2023

Thank you for your report regarding the LTD claim for David Fields After review ing your report, w e are requesting an clarification to your answ er for question 3.

1.Please state restrictions/limitations for the period of 2/7/23-2/17/23.

Thank you for your assistance. - JXBOOTH - Apr 24, 2024 08:39:01 am
Case submitted to ECN case #265643 for an clarification w ith Dr David Friedman (Cardio) - CAMBY2 - Apr 24, 2024 11:55:30 am
Clarification report received back from ECN - sent to LFGAppeals to be uploaded into AWD - CAMBY2 - Apr 25, 2024 03:01:52 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/26/2024 | Documents/Mail | 18 | Email | Completed | JXBOOTH |
| | 2024-04-25-16.01.53.699080O01 | | | | |
| 4/26/2024 | Documents/Mail | 19 | Medical Records | Completed | JXBOOTH |
| | 2024-04-25-16.01.53.753080O01 | | | | |
| 4/26/2024 8:45:01 AM | Referrals | 4 | TSA | Initial | JXBOOTH |

WOP TSA

Demographics
Claimant Name: David Fields
Claim Number: 1230070518
Gainful Amount (only if defined in the policy):n/a
Gross Benefit Amount:n/a
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? y
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions? ERISA
If Local Economy, please identify EE's location at time of disability:n/a
Medical Information
Current Functional Capacity and R&Ls supported by physician:
Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.
From 4/1/23-6/7/23, and from 7/22/23 onw ard, the follow ing restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.
From 4/1/23-6/7/23, and from 7/22/23 onw ard, the follow ing restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness

and fatigue:
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Sitting: Constant Standing: Frequent Walking: Frequent
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the w aist: Unrestricted, bilateral
There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Balance: Never Climb ladders: Occasional Operate heavy machinery: Never
Drive: Occasional Climb stairs: Occasional Bend: Occasional Craw l: Occasional Stoop: Occasional Kneel: Occasional Squat: Occasional Tw ist: Occasional Crouch: Occasional Use low er extremity foot controls: Occasional, bilateral
From Clarification
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery.
Hand Dominance:
Vocational Information:
Job Title from ER: Driver
Previous OA/TSA/TSR/Voc Rehab review completed? n/a
Job Description on file? yes AWD dated 2/12/23 STD 1230012611
Job Analysis on file? n/a
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) no but DOH at employer is 3/14/2005
Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions: Please complete WOP TSA based on R&L's in peer dated 4/24/24 and clarification dated 4/25/24 in AWD.
- JXBOOTH - Apr 26, 2024 08:45:32 am

Life TSA research and report completed and forw arded to AWD for upload.
Summary:
The Transferable Skills Analysis identified occupations w ithin the insured's education, training, life experience, transferable skills, station in life and physical capacities outlined.
Examples of Occupations identified based on National labor market and the insured's ability profile analysis:

| DOT Code | Occupation | SVP | Str |
|---|---|---|---|
| 913.663-014 | Mobile Lounge Driver | 3 | L |
| 919.663-010 | Deliverer, Car Rental | 3 | L |
| 919.663-022 | Escort Vehicle Driver | 2 | S |
| 209.667-014 | Order Caller | 2 | L |
| 222.687-022 | Routing Clerk | 2 | L |

I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.________________________________________

Respectfully submitted,
Electronically Signed
Angelle W. Nash, MHS, CRC, LRC
Vocational Case Manager II
Group Benefits Claims
Lincoln Financial Group
- ANUNA7 - May 07, 2024 11:58:21 am

| | | | | | |
|---|---|---|---|---|---|
| 4/30/2024 | Documents/Mail<br>2024-04-30-09.02.36.363160O01 | 23 | Incoming Correspondence | Completed | JXBOOTH |
| 4/30/2024 | Documents/Mail<br>2024-04-30-09.01.20.996220O01 | 21 | Incoming Correspondence | Completed | JXBOOTH |
| 4/30/2024 | Documents/Mail<br>2024-04-30-09.02.36.324160O01 | 22 | Email | Completed | JXBOOTH |
| 4/30/2024 | Documents/Mail<br>2024-04-30-09.01.20.959220O01 | 20 | Email | Completed | JXBOOTH |
| 5/7/2024 | Referrals<br>WOP TSA | 4 | TSA | Completed | JXBOOTH |

Demographics
Claimant Name: David Fields
Claim Number: 1230070518
Gainful Amount (only if defined in the policy):n/a
Gross Benefit Amount:n/a
Authorization to discuss w ork capacity/R&Ls w ith Physician on file? y
Is the claim CA Sitused, ERISA/Non-ERISA, or other policy exceptions? ERISA
If Local Economy, please identify EE's location at time of disability:n/a
Medical Information
Current Functional Capacity and R&Ls supported by physician:
Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.
From 4/1/23-6/7/23, and from 7/22/23 onw ard, the follow ing restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.
From 4/1/23-6/7/23, and from 7/22/23 onw ard, the follow ing restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Sitting: Constant Standing: Frequent Walking: Frequent
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue: Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities Pulling: Occasional, up to 25 pounds, utilizing

bilateral upper extremities Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the w aist: Unrestricted, bilateral
There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Balance: Never Climb ladders: Occasional Operate heavy machinery: Never
Drive: Occasional Climb stairs: Occasional Bend: Occasional Craw l: Occasional Stoop: Occasional Kneel: Occasional Squat: Occasional Tw ist: Occasional Crouch: Occasional Use low er extremity foot controls: Occasional, bilateral
From Clarification
Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery.
Hand Dominance:
Vocational Information:
Job Title from ER: Driver
Previous OA/TSA/TSR/Voc Rehab review completed? n/a
Job Description on file? yes AWD dated 2/12/23 STD 1230012611
Job Analysis on file? n/a
Work History and Educational Information (TSA utilizes 15 years of w ork experience and highest education completed) no but DOH at employer is 3/14/2005
Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral. Provide your specific questions: Please complete WOP TSA based on R&L's in peer dated 4/24/24 and clarification dated 4/25/24 in AWD.
- JXBOOTH - Apr 26, 2024 08:45:32 am

Life TSA research and report completed and forw arded to AWD for upload.
Summary:
The Transferable Skills Analysis identified occupations w ithin the insured's education, training, life experience, transferable skills, station in life and physical capacities outlined.
Examples of Occupations identified based on National labor market and the insured's ability profile analysis:

| DOT Code | Occupation | SVP | Str |
|---|---|---|---|
| 913.663-014 | Mobile Lounge Driver | 3 | L |
| 919.663-010 | Deliverer, Car Rental | 3 | L |
| 919.663-022 | Escort Vehicle Driver | 2 | S |
| 209.667-014 | Order Caller | 2 | L |
| 222.687-022 | Routing Clerk | 2 | L |

I have not met w ith the insured for the purpose of this review . All opinions are based on review of vocational information, medical records and resources noted.________________________________________

Respectfully submitted,
Electronically Signed
Angelle W. Nash, MHS, CRC, LRC
Vocational Case Manager II
Group Benefits Claims
Lincoln Financial Group

- ANUNA7 - May 07, 2024 11:58:21 am

| | | | | | |
|---|---|---|---|---|---|
| 5/7/2024 | Documents/Mail | 24 | Appeal WOP EE 21 Day Letter | Completed | JXBOOTH |

Appeal WOP EE 21 Day LetterAttachments:D FIELDS 1230070518 FINAL REPORT.pdfD FIELDS 1230070518 CLARIFICATION REPORT.pdf1230070518 TSA 5 6 24.pdf

| | | | | | |
|---|---|---|---|---|---|
| 5/7/2024 3:01:00 PM | Claim Tasks | 11 | Review Claim | Requested | JXBOOTH |

Today's Date5/7/2024
Appeal Rcvd Date3/8/2024
Days Since Received61
Extension Sent Date5/7/2024
Tolling Start DateTolling end DateTolling Days
5/7/202430
0
0
0
0
0
0
Tolling Days30
90th Day of Active Review 7/6/2024
Active Review Days Remaining to 90th Day59
- JXBOOTH - May 07, 2024 03:01:23 pm

| | | | | | |
|---|---|---|---|---|---|
| 5/8/2024 | Documents/Mail | 25 | Email | Completed | JXBOOTH |

2024-05-07-12.59.58.636160O01

| | | | | | |
|---|---|---|---|---|---|
| 5/8/2024 | Documents/Mail | 26 | Incoming Correspondence | Completed | JXBOOTH |

2024-05-07-12.59.58.680160O01

| | | | | | |
|---|---|---|---|---|---|
| 5/30/2024 | Summary/Assessment/Pa | 3h | Level 1 Appeal Decision Rationale - JXBOOTH - May 30, 2024 | Completed | JXBOOTH |

Summary Notes
Level 1 Appeal Decision Rationale - JXBOOTH - May 30, 2024 11:18:06 am
Assessment Notes

Path Notes
Claimant is a 46 year old Truck Driver that stopped w orking due to unspecified diastolic heart failure, essential hypertension. At claims level an NDC w as completed and the claim closed as not TDAO.

On appeal a cardiology peer w as completed and the folow ing R&L's w ere identified.

"From 4/1/23-6/7/23, and from 7/22/23 onw ard, the follow ing restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Sitting: Constant
Standing: Frequent
Walking: Frequent
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the w aist: Unrestricted, bilateral
There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Type: Unrestricted, bilateral
Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Balance: Never
Climb ladders: Occasional
Operate heavy machinery: Never
Drive: Occasional
Climb stairs: Occasional
Bend: Occasional
Craw l: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Tw ist: Occasional
Crouch: Occasional
Use low er extremity foot controls: Occasional, bilateral
"The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24) "
A Clarification from Dr. Friedman stated:
"Due to the severity of the claimant complaints, w ith diagnoses of congestive heart failure and cardiomyopathy, w ith examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this review er that the claimant is totally restricted from all w ork-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery. "

A WOP TSA identified occupations. RTR sent no response received.

PATH close appeal hanlding and send EE and ER letters. - JXBOOTH - May 30, 2024 11:18:06 am

| | | | | | |
|---|---|---|---|---|---|
| 5/30/2024 | Summary/Assessment/Path | | Level 1 Appeal Pending Rationale - JXBOOTH - Apr 10, 2024 | Completed | JXBOOTH |

Summary Notes
Level 1 Appeal Pending Rationale - JXBOOTH - Apr 10, 2024 11:26:40 am
Assessment Notes

Path Notes

1st or 2nd Level Appeal: Level 1
Date Appeal Received:03/08/2024
30th day04/08/2024
45th Day:04/22/2024
90th Day:06/06/2024

Claimant Name: David Fields
Claim Number: 1230070518
Group ID & active/termed:ETIM East Tennessee Iron & Metal Works

Claim Demographics
Current Age: 46
Situs State:TNState Language applicable (y/n)
State of Residence:TNState Language applicable (y/n)
Estimated Net benefit amount(s):$129,000 LT $10,000 DLI
Date of Disability: 02/07/2023
EP: n/a
Benefit Commencement Date: 02/07/2023
Benefit Paid/Approved To Date:n/a
Change in Definition (COD) Date: n/a
Max Duration Date: 10/20/2044
Occupation / Location in AWD: Truck Driver

Physical Demand Level of Occ:heavy
Primary Diagnosis: unspecified diastolic heart
Co-Morbid Diagnoses: essential hypertension
ERISA or NON-ERISA: ERISA per FE
Attorney: n/a
Riders:n/a
STD claim status:1230012611 - closed
LW claim status:appealed
LTD claim status:1230051807 - open

Pre Ex investigation required (y/n)n/a
AO investigation required (y/n)n/a
SSDI Aw ard information needed/requested - if not - w hy - aw arded

Notes: Contractual Limits
Legal Action - 5 years
Proof of claim - 90 days after date of loss

Initial Claim Decision:
Reason/Date of denial: 9/14/23 - not TDAO
Type of Medical Review , Name, & Specialty: NDC

Prior peers:

Current Providers - last 18 to 24 months
AP Name/Specialty/Phone Number: Nilam Patel - cardiology - 865-392-3400 (f)865-392-3449
Last Date of Service: 7/21/2023(LTD, STD)
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: Mark Dalle-Ave - pcp - 423-921-1600 (f)921-1677
Last Date of Service: 8/1/23(LTD)
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number: W Kyle Stribling - 615-222-3078 (f)612-222-5399
Last Date of Service:
Restrictions and Limitations/Duration:

AP Name/Specialty/Phone Number:
Last Date of Service:
Restrictions and Limitations/Duration:

Date and Type of Recent Surgeries:

Appeal being discussed
Reasons for disagreement as explained in appeal:
"He w ishes to appeal, SSDI deemed him totally disabled.

Information Submitted w ith appeal and not previously review ed:
"n/a

PATH: Send EE and ER ack letters, set up tasks, have cardiology peer completed.
- JXBOOTH - Apr 10, 2024 11:26:40 am

Rcvd peer, sent clarification for R&L's from 2/7/23-2/17/23 - JXBOOTH - Apr 24, 2024 08:39:38 am

| | | | | | |
|---|---|---|---|---|---|
| | Rcvd clarification rqtd w op tsa - JXBOOTH - Apr 26, 2024 08:44:42 am | | | | |
| | Rcvd JD - JXBOOTH - Apr 30, 2024 12:58:08 pm | | | | |
| | Rcvd TSA, identified occupations. Sent RTR and begin tolling. - JXBOOTH - May 07, 2024 03:01:52 pm | | | | |
| 5/30/2024 | Appeal | 1 | Level 1 | Closed | JXBOOTH |
| 5/30/2024 | Documents/Mail | 28 | Appeal WOP Uphold Ltr to Group | Completed | JXBOOTH |
| | Appeal WOP Uphold Ltr to Group | | | | |
| 5/30/2024 | Documents/Mail | 27 | Appeal WOP Level 1 Uphold to EE | Completed | JXBOOTH |
| | Appeal WOP Level 1 Uphold to EEAttachments:Translation services | | | | |
| 5/30/2024 | Claim Tasks | 11 | Review Claim | Completed | JXBOOTH |
| | Today's Date5/7/2024<br>Appeal Rcvd Date3/8/2024<br>Days Since Received61<br>Extension Sent Date5/7/2024<br>Tolling Start DateTolling end DateTolling Days<br>5/7/202430<br>0<br>0<br>0<br>0<br>0<br>0<br>Tolling Days30<br>90th Day of Active Review 7/6/2024<br>Active Review Days Remaining to 90th Day59<br>- JXBOOTH - May 07, 2024 03:01:23 pm | | | | |
| 5/30/2024 | Claim Tasks | 9 | Appeal - 45 Day Reminder | Completed | JXBOOTH |
| | 30th day 4/8/24 45th day 4/22/24 - JXBOOTH - Apr 10, 2024 11:03:11 am<br>rtr sent 5/7/24 - JXBOOTH - May 10, 2024 07:50:02 am | | | | |
| 5/30/2024 | Claim Tasks | 10 | Appeal 90 Day Extension | Completed | JXBOOTH |
| | 90th day 6/6/24 - JXBOOTH - Apr 10, 2024 11:03:55 am | | | | |
| 5/30/2024 11:22:07 AM | Status | | Not TD Any Occ | CLOSED | JXBOOTH |
| 9/20/2044 | Claim Tasks | 5 | Terminate Claim / Coverage | Completed | HLUOL6 |
| | Item Closed w ith Claim by System - HLUOL6 - Sep 14, 2023 11:28:00 am | | | | |

AMENDMENT NO. 1

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010209860

ISSUED TO: East Tennessee Iron & Metal Works, Inc.

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated December 1, 2021.

The effective date of this amendment is December 1, 2021; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

Accepted by the Group Policyholder this ________ day of _________________________ 20______

By ______________________________________ Title ____________________________________

GL1100 AMEND.

The Lincoln National Life Insurance Company
A Stock Company    Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office: 8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765    Online: www.LincolnFinancial.com

Group Policyholder:

East Tennessee Iron & Metal Works, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on January 1, 2016, and on the same day of each month after that. Policy anniversaries will be each December 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska. The issue date of this Policy is December 1, 2015.


SECRETARY


PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010209860
PROVIDING
LIFE INSURANCE
ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
DEPENDENT LIFE INSURANCE

**This Policy contains an Accelerated Death Benefit provision. Receipt of an Accelerated Death Benefit will reduce benefits specified in this Policy. Accelerated Death Benefits may be taxable. As with all tax matters, the Insured Person should consult a professional tax advisor before applying for this benefit. Please read the Limitations section of the Accelerated Death Benefit included in this Policy.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

## TABLE OF CONTENTS

Schedule of Insurance....3
Definitions....8
General Provisions....9
Provisions Applicable to Participating Employers....10
Eligibility and Effective Dates for Personal Insurance....11
Individual Terminations....12
Premiums and Premium Rates....13
Grace Period....14
Policy Termination....14
Beneficiary....15
Assignments....16
Facility of Payment....17
Death Benefit....17
Settlement Options....17
Extension of Death Benefit....18
Accelerated Death Benefit....20
Conversion Privilege....22
Dependents Life Insurance....23
Claims Procedures for Life or Accidental Death and Dismemberment Benefits....25
Accidental Death and Dismemberment Insurance....28
Safe Driver Benefit....34
Notice....35
Prior Insurance Credit Provision....37

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**

## ELIGIBLE CLASSES

Class 1 Owners

Class 2 All Other Full-Time Employees

The amount of an Insured Person's insurance is determined from the following table. The initial amount of coverage is the amount which applies to an Insured Person's Class on the date his or her coverage takes effect. An Insured Person may become eligible for increases in the amount of insurance in accord with the table. Any such increase will take effect on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the date on which the Insured Person becomes eligible for the increase; if Actively at Work on that day;
(2) the day the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
(3) the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not the Insured Person is Actively at Work.

The amount of an Insured Person's Life Insurance shall be reduced by the amount of any Life Insurance in effect as a result of exercising the rights under the Conversion Privilege section of this Policy.

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 1 - Owners**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**Basic Annual Earnings** means the Insured Person's annual gross earnings from the Group Policyholder during the tax year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It is figured from the income box on the Insured Person's W-2 form, which reports wages, tips and other compensation from the Group Policyholder for federal income tax purposes. It includes the Insured Person's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:

1. any Group Policyholder contributions to a deferred compensation plan;
2. income received from any car, housing or moving allowance; or
3. income from a source other than the Group Policyholder.

It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less. For an Insured Person who did not receive a W-2 form from the Group Policyholder prior to the Determination Date, it is figured by averaging the gross earnings received during the actual period of employment, as shown in the Group Policyholder's financial records.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | Three times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $300,000. |
| AD&D Insurance Principal Sum | Three times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $500,000. |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 70, benefits will reduce by 35% of the original amount;
- At age 75, benefits will reduce an additional 15% of the original amount.

Benefits will terminate when the Insured Person retires.

If the Insured Person first enrolls for Personal Life and AD&D Insurance at age 70 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which he or she is eligible.

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 1**
**LIFE AND AD&D INSURANCE (CONTINUED)**

## DEPENDENTS INSURANCE

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $10,000 |
| Dependent Child (age 14 days to 6 months) | $5,000 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $5,000 |

Spouse Life Insurance will terminate when the Spouse attains age 70

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - All Other Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Date" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

CONTRIBUTIONS: Insured Persons are not required to make contributions for Personal Life & AD&D Insurance and Dependent Life Insurance.

**Basic Annual Earnings** means the Insured Person's annual gross earnings from the Group Policyholder during the tax year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It is figured from the income box on the Insured Person's W-2 form, which reports wages, tips and other compensation from the Group Policyholder for federal income tax purposes. It includes the Insured Person's income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:

1. any Group Policyholder contributions to a deferred compensation plan;
2. income received from any car, housing or moving allowance; or
3. income from a source other than the Group Policyholder.

It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less. For an Insured Person who did not receive a W-2 form from the Group Policyholder prior to the Determination Date, it is figured by averaging the gross earnings received during the actual period of employment, as shown in the Group Policyholder's financial records.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $135,000. |
| AD&D Insurance Principal Sum | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $135,000. |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 70, benefits will reduce by 35% of the original amount;
- At age 75, benefits will reduce an additional 15% of the original amount.

Benefits will terminate when the Insured Person retires.

If the Insured Person first enrolls for Personal Life and AD&D Insurance at age 70 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which he or she is eligible.

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 2**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
|---|---|
| Spouse | $10,000 |
| Dependent Child (age 14 days to 6 months) | $5,000 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $5,000 |

Spouse Life Insurance will terminate when the Spouse attains age 70

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:
(1) the GROUP POLICYHOLDER'S place of business; or
(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:
(1) a Saturday, Sunday or holiday which is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY OR DATE means at 12:01 A.M., Standard Time, at the GROUP POLICYHOLDER'S place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

FULL-TIME EMPLOYEE means an employee of the GROUP POLICYHOLDER:
(1) whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance.

GROUP POLICYHOLDER means the person, partnership, corporation, or trust as shown on the Title Page of this Policy.

INSURANCE MONTH means that period of time:
(1) beginning at 12:01 A.M. Standard Time, at the GROUP POLICYHOLDER'S place of business on the first day of any calendar month; and
(2) ending at 12:00 midnight on the last day of the same calendar month.

INSURED PERSON means a PERSON for whom the coverages provided by this Policy are in effect.

PERSON means a FULL-TIME EMPLOYEE of the GROUP POLICYHOLDER:
(1) who is a member of an employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form.

PERSONAL INSURANCE means the insurance provided by this Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means this Group Insurance Policy issued by the Company to the Group Policyholder.

## GENERAL PROVISIONS

ENTIRE CONTRACT. The entire contract between the parties consists of:
(1) this Policy and the Group Policyholder's application (a copy is attached);
(2) the Participating Employer's participation agreement; and
(3) the Insured Persons' enrollment cards, if any.

All statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy; unless:
(1) it is contained in a written statement signed by that Insured Person; and
(2) a copy of the statement is furnished to the Insured Person or Beneficiary.

Only an Officer of the Company may change this Policy or extend the time for payment of any premium. No change will be valid unless made in writing and signed by an Officer of the Company. Any change so made will be binding on all persons referred to in this Policy.

INCONTESTABILITY. Except for the non-payment of premiums, the Company may not contest the validity of this Policy as to any Insured Person after it has been in force for two years during his or her lifetime. This clause will not affect the Company's right to contest claims made for disability, accidental death, or accidental dismemberment benefits.

NONPARTICIPATION. This Policy will not be entitled to share in the surplus earnings of the Company.

BASIS OF RESERVE. The reserve for this Policy will not be less than the reserve computed using:
(1) the 1970 Intercompany Group Life Disability Valuation Table; and
(2) interest at not less than three percent per annum.

INFORMATION TO BE FURNISHED. The Group Policyholder and Participating Employers may be required to furnish any information needed to administer this Policy. Clerical error by the Group Policyholder or Participating Employer will not:
(1) affect the amount of insurance which otherwise would be in effect; or
(2) continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the twelve month period which precedes the date the Company receives proof such an adjustment should be made.

The Company may inspect any of the Group Policyholder's or Participating Employers' records which relate to this Policy.

MISSTATEMENT OF AGE. If an Insured Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit depends upon age; then the benefit will be that which would have been payable, based upon the person's correct age.

CERTIFICATES. The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between the Policy and the Certificate, the Policy will control.

CONFORMITY WITH STATE STATUTES. If any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

WORKER'S COMPENSATION. This Policy is not to be construed to provide benefits required by Worker's Compensation laws.

## PROVISIONS APPLICABLE TO PARTICIPATING EMPLOYERS

A Participating Employer has no rights under this Policy except as provided in this Section. The Participating Employer will be responsible for all premiums payable with respect to any of its Employees who are Insured Persons under this Policy.

PARTICIPATING EMPLOYER means an employer who has been approved by the Company for participation in the coverage provided by this Policy. The following are Participating Employers:

Brooks Sports Management, LLC

EFFECTIVE DATE. As it applies to any Participating Employer, the Effective Date of this Policy will be the later of:

- (a) the date this Policy is issued;
- (b) the first day of the Insurance Month following the Company's approval of the employer's Participation Agreement; or
- (c) a date agreed upon by the Company, the Participating Employer, and the Group Policyholder.

TERMINATION: A Participating Employer's participation under this Policy ends on the earliest of the following dates:

- (a) the date the employer no longer meets the definition of a Participating Employer;
- (b) the date the Participating Employer has fewer than 10 Insured Persons;
- (c) the date the Participating Employer suspends active business operations, is placed in bankruptcy or receivership, dissolves, merges or relocates;
- (d) the date the Participating Employer, without good cause, fails to:
  - (a) promptly furnish the Company any information it may reasonably require; or
  - (b) perform its duties pertaining to this Policy in good faith;
- (e) the last day of the Insurance Month for which premium is paid;
- (f) the last day of the Insurance Month in which the Company receives the Participating Employer's written request to cease participation; or
- (g) the date the Company terminates the coverage under this Policy for all Participating Employers in this state.

On the day participation ends, Policy coverage will terminate for all the Participating Employer's employees and their Dependents. If an employer ceases to be a Participating Employer, it may not be a Participating Employer again; until the Company reapproves it as such.

**ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE**

ELIGIBILITY. A Person becomes eligible for the coverage provided by this Policy on the later of:
(1) the Policy's date of issue; or
(2) the date the Waiting Period is completed.

WAITING PERIOD. (See Schedule of Insurance).

EFFECTIVE DATE. Personal Insurance becomes effective on the latest of:
(1) the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for Personal Insurance; and signs:
    (a) a payroll deduction order, if Insured Persons pay any part of the Policy premium; or
    (b) an order to pay premiums from the Person's Section 125 Plan account, if Employer contributions are made through a Section 125 Plan; or
(4) the date the Company approves the Person's coverage, if evidence of insurability is required.

EVIDENCE OF INSURABILITY. Evidence of insurability satisfactory to the Company must be submitted when:
(1) a Person makes written application for Personal Insurance more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for Personal Insurance after he or she has requested:
    (a) to cancel Personal Insurance;
    (b) to stop payroll deductions for the coverage; or
    (c) to stop premium payments from the Section 125 Plan account.

EXCEPTIONS. If an Insured Person's coverage terminates due to an approved leave of absence or military leave, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within six months after the leave begins;
(2) the Person applies or is enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

For Classes 1 and 2, If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within 12 months after the date the lay-off begins;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the date the Insured Person returns to Active Work.

For Classes 1 and 2, If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person is rehired within 12 months after employment terminated;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the date the Insured Person returns to Active Work.

## INDIVIDUAL TERMINATIONS

An Insured Person's coverage will terminate on the earliest of:

(1) the date this Policy terminates;
(2) the last day of the Insurance Month in which the Insured Person requests termination;
(3) the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(4) the date the Insured Person ceases to be in a class of employees which is eligible for coverage under this Policy;
(5) with respect to any particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
(6) the date the Insured Person's employment with the Group Policyholder or Participating Employer terminates; or
(7) the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work results in termination of insurance; but coverage may be continued as follows:

(1) If the Insured Person is disabled due to illness or injury, then coverage may be continued until the earliest of:
    (a) 12 Insurance Months after the disability begins;
    (b) the date the Person is no longer disabled; or
    (c) for Life Insurance; the date the Insured Person qualifies for any Extension of Death Benefit under this Policy;

    provided premium payments are made on his or her behalf.
(2) If the Insured Person ceases work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued:
    (a) for three Insurance Months after the lay off or leave begins;
    (b) provided premium payments are made on his or her behalf.

## PREMIUMS AND PREMIUM RATES

PAYMENT OF PREMIUMS. No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

PREMIUM RATE CHANGE. The Company may change any premium rate on any of the following dates:
(1) the date this Policy's terms are changed;
(2) the date the Company's liability is changed due to a change in federal, state or local law;
(3) the date the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, dissolves or merges, or is added to or removed from this Policy;
(4) the date any coverage for one or more classes ceases to be provided under this Policy;
(5) the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6) on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

PREMIUM AMOUNT. The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.
(1) When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2) When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3) When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

| | |
|---|---|
| Monthly AD&D Rate | $.03 per $1,000 of insurance |
| Monthly Dependent Life Rate | $4.09 per Family Unit |
| Monthly Group Life Rate | $.165 per $1,000 of insurance |

## GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:

(1) the total number of Insured Persons is less than ten;
(2) all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
(3) part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
(4) the Group Policyholder, without good cause, fails to:
  (a) promptly furnish any information the Company reasonably requires; or
  (b) perform its duties pertaining to this Policy in good faith;
(5) the Company terminates all other policies where permitted by their terms, which provide life insurance in the same state in which this Policy was issued; or
(6) state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

(1) on the date the Company receives the notice; or
(2) any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

## BENEFICIARY

PAYMENTS TO BENEFICIARY. At an Insured Person's death, the amount of his or her Personal Life Insurance will be paid to the surviving Beneficiary. If the Insured Person has not named a Beneficiary, or if no named Beneficiary survives the Insured Person; then payment will be made to that Insured Person's:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of this Policy.

The amount payable to anyone shown above will be reduced by any amount paid in accord with the Facility of Payment section.

In determining who is to receive payment, the Company may rely upon an affidavit by a member of the class of relatives to receive payment. The Company will make payment based upon the affidavit it has; unless it receives notice of a valid claim by some other person, at its Group Insurance Service Office, before paying the proceeds. Such payment will release the Company from any further obligation for the Insured Person's life insurance benefit.

If an Insured Person's named Beneficiary dies:

(1) within 15 days of the Insured Person's death; and
(2) before the Company receives satisfactory proof of the Insured Person's death;

then payment will be made as if the Insured Person had survived that Beneficiary; unless other provisions have been made.

NAMING THE BENEFICIARY. An Insured Person's Beneficiary will be as shown on his or her enrollment card, unless changed. This Policy may replace a group policy providing similar coverages. In that event, the Beneficiary which the Insured Person named under the prior policy will be the Beneficiary under this Policy, until changed.

CHANGING THE BENEFICIARY. Only the Insured Person, or his or her assignee, may change the Beneficiary. A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office. The change will be effective as of the date it was signed; subject to any action the Company takes before receiving notice of the change.

When applying for a conversion policy under the Conversion Privilege Section, an Insured Person must name a Beneficiary. The Beneficiary named for the conversion policy may be someone other than the person named under this Policy. In that event, the application for the conversion policy will be treated as a written notice of change of Beneficiary.

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under this Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:

(1) it is made on a form furnished by the Company;
(2) the original is completed and filed with the Company at its Group Insurance Service Office; and
(3) it is approved by the Company.

The Company and the Group Policyholder do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. An Insured Person may make an irrevocable assignment of his or her Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing he or she has the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of the Insured Person's relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, an Insured Person's spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If an Insured Person makes an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. An Insured Person should consult with his or her own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, the Insured Person can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to the Insured Person in the absence of the assignment under this Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon an Insured Person's death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of this Policy.

## FACILITY OF PAYMENT

Policy benefits may become payable to an Insured Person's estate, to a minor, or to a person who the Company does not consider competent to give a valid release. In that event, the Company has the option to pay one or more of the following:

(1) a person who has assumed the care and support of the Insured Person or Beneficiary;
(2) a person who has incurred expense as a result of the Insured Person's last illness or death;
(3) the personal representative of the Insured Person's estate; or
(4) any person related by blood or marriage to the Insured Person.

No payment made under this section may exceed $500. Any payment made in good faith under this section will fully discharge the Company to the extent of the payment. Any remaining amount of benefit will be paid as shown in the Beneficiary section.

## DEATH BENEFIT

AMOUNT PAYABLE ON DEATH. Upon receipt of satisfactory proof of an Insured Person's death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of death. This amount is shown in the Schedule of Insurance. The benefit will be paid as shown in the Beneficiary, Facility of Payment, and Settlement Options sections.

## SETTLEMENT OPTIONS

INSTALLMENTS. All or part of the death benefit may be received in installments, by making written election to the Company.

ELECTION. While living, an Insured Person may direct the Company to pay the death benefit in installments. If no such direction is in effect at the time of the Insured Person's death, the Beneficiary may make such an election.

CONDITIONS. Any election, whether by an Insured Person or a Beneficiary, must comply with the Company's practices at the time it is made. The amount applied under a settlement option must be at least $2,000. It must be sufficient to provide a payment of at least $20 per month.

## EXTENSION OF DEATH BENEFIT

BENEFIT. Life insurance will be continued, **without payment of premiums**, for an Insured Person who:

(1) becomes Totally Disabled while insured under this policy and before reaching age 60;
(2) remains Totally Disabled for at least 6 months in a row; and
(3) submits satisfactory proof within the 7th through the 12th months of disability; or:
   (a) as soon as reasonably possible after that; but
   (b) not later than the 24th month of disability, unless he or she was legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until:

(1) the day the Insured Person is approved for this Extension of Death Benefit; or
(2) the day this Policy terminates (whichever occurs first).

Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for the Insured Person's life insurance, from the 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means an Insured Person, due to sickness or injury:

(1) is completely and continuously unable to perform his or her regular occupation; or to engage in any occupation for which such Insured Person is reasonably fitted by education, training or experience; and
(2) remains so disabled for at least 6 months in a row.

A person engaging in any gainful employment or occupation is not Totally Disabled.

AMOUNT CONTINUED. The life insurance continued by this section:

(1) will be the amount of Personal Life Insurance and any Dependent Life Insurance in effect on the day the Insured Person's Total Disability begins; and
(2) will be subject to the reductions and terminations in effect under this Policy on that day.

If the Insured Person receives an Accelerated Death Benefit, the amount will be reduced in accord with that provision. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. At any time during this continuation, the Company may require the Insured Person:

(1) to submit further proof of his or her continued Total Disability; and
(2) to be examined by a Physician of the Company's choice, as often as reasonably necessary.

After the first two years of Total Disability, the Company will not request proof or an exam more than once a year. Proof will be at the Insured Person's expense; unless the Company requests an exam by a Physician of its choice.

When an Insured Person dies after submitting proof, further proof must be submitted to the Company showing that he or she remained continuously and Totally Disabled until death. When an Insured Person dies within 12 months after Total Disability begins, but before submitting proof; then his or her death benefit will still be paid under the terms of this Policy. But the Company must first receive satisfactory proof of his or her continuous Total Disability, from the last day of Active Work until the date of death.

TERMINATION. Any life insurance extended under this section will terminate automatically on:

(1) the day the Insured Person ceases to be Totally Disabled;
(2) the day the Insured Person fails to take a required medical examination;
(3) the 60th day after the Company mails a request for additional proof, if it is not given;
(4) the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
(5) the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

RIGHTS AFTER TERMINATION. If Total Disability ends, and the Insured Person **does not return** to a class eligible for Policy coverage; then he or she may exercise the Conversion Privilege. If Total Disability ends, and the Insured Person **does return** to an eligible class; then his or her Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided below.

CONVERSION POLICIES. If the Insured Person has exercised the Conversion Privilege, and the benefits payable under this Policy and the conversion policy combined would exceed:

(1) the Insured Person's original amount of Policy coverage prior to the conversion; or
(2) any greater amount for which he or she later becomes insured under this Policy;

then benefits will be payable under the terms of this Policy. But the conversion policy must first be surrendered to the Company; and no claim may be made under the conversion policy, except for refund of premium less any dividends and policy loans.

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of the Insured Person's Personal Life Insurance. It may be paid to the Insured Person, in a lump sum, once during the Insured Person's lifetime.

To qualify, a Terminal Insured Person must:

(1) have satisfied the Active Work requirement under this Policy;
(2) have been insured under this Policy for at least 12 months; and
(3) have at least $2,000 of Personal Life Insurance under this Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means the Insured Person has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, the Insured Person (or his or her legal representative) must send the Company:

(1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
(2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4 and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO THE INSURED PERSON SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. The Insured Person may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:

(1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
(2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:

A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless the Insured Person qualifies for waiver of premium under this Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under this Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. The Insured Person's Death Benefit will be paid in accord with the Beneficiary section of this Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to the Insured Person. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if the Insured Person has filed for bankruptcy;
(4) without the written consent of the beneficiary, if the Insured Person has named an irrevocable beneficiary;
(5) without the written consent of the assignee, if the Insured Person has assigned his or her rights under this Policy;
(6) if any part of the Life Insurance must be paid to the Insured Person's child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
(8) if a government agency requires the Insured Person or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(9) if an Accelerated Death Benefit has been previously paid for the Claimant under this Policy.

## CONVERSION PRIVILEGE - CONVERSION BENEFITS

GENERAL BENEFIT. An individual life policy, known as a conversion policy, may be purchased from the Company without evidence of insurability if all or part of anyone's life insurance, provided by this Policy, terminates for any reason except:
- (1) termination or amendment of the Policy; or
- (2) the Insured Person's request for:
  - (a) termination of insurance; or
  - (b) cancellation of payroll deduction.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.
Any policy issued under the General Conversion Benefit will:
- (1) be for an amount not to exceed the amount of the life insurance which was terminated;
- (2) be on any form (except term) then issued by the Company at the age and amount for which application is made;
- (3) be issued at the Insured Person's age at nearest birthday;
- (4) be issued without disability or other supplemental benefits; and
- (5) require premiums based on the class of risk to which the person then belongs.

CONVERSION BENEFIT-POLICY TERMINATION OR AMENDMENT. A conversion policy also may be purchased from the Company if:
- (1) all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and
- (2) that person has been covered continuously under this Policy for at least five years.

Any conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Benefit except its amount may not exceed the lesser of:
- (1) $2,000; and
- (2) the Amount of Life Insurance which terminates less the amount of any group life insurance for which the Insured Person becomes eligible within 31 days after the termination.

## PROVISIONS APPLICABLE TO ALL CONVERSION POLICIES

EFFECTIVE DATES. The coverage provided by a conversion policy issued under this Section will be effective on the later of:
- (1) its date of issue; or
- (2) 31 days after the date on which the person's life insurance terminated.

DEATH DURING CONVERSION PERIOD. The Company will pay a death benefit under this Policy equal to the amount of the life insurance which could have been converted, if the person:
- (1) was entitled to purchase a conversion policy; and
- (2) dies within the 31 day conversion period.

This death benefit will be paid even if no one applied for the conversion policy. If the first premium was paid for the conversion policy, the amount of the premium will be refunded and the conversion policy will be void.

NOTICE OF CONVERSION PRIVILEGES-INSURED PERSONS. When an Insured Person's Personal Insurance terminates, written notice of the right to convert will be:
- (1) given personally to the Insured Person;
- (2) mailed by the Group Policyholder to the Insured Person at his last known address; or
- (3) mailed by the Company to the Insured Person at his last known address as furnished by the Group Policyholder.

An additional period in which to convert will be granted if this written notice is not given to the Insured Person at least 15 days before the end of the 31 day conversion period. Any such extension of the conversion period will expire on the earliest of:
- (1) 15 days after the Insured Person is given the written notice; and
- (2) 60 days after the end of the 31 day conversion period even if the Insured Person is never given such notice.

No death benefit will be payable under this Policy after the 31 day conversion period has expired even though the right to convert may be extended.

## DEPENDENTS LIFE INSURANCE

BENEFIT. Upon receipt of satisfactory proof of a Dependent's death while insured under this Policy, the Company will pay the amount of the Dependents Life Insurance in effect on the date of such death. This amount is shown in the Schedule of Insurance. The death benefit will be paid:

(1) to the Insured Person; or
(2) if the Insured Person fails to survive the Dependent, to the Insured Person's Beneficiary or according to the Facility of Payment Section.

DEPENDENT. A Dependent means a person who meets the definition of a dependent of the Insured Person under the provision of the U.S. Internal Revenue Code; and is an Insured Person's:

(1) spouse who is not legally separated from the Insured Person;
(2) unmarried child at least 14 days but less than 19 years of age;
(3) unmarried child less than 23 years of age, if attending an accredited educational institution for the minimum credit hours required to maintain full-time student status there; or
(4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 19 years of age.

A legally adopted child is considered the Insured Person's child from the date of placement in the Insured Person's home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.

In addition to naturally born and legally adopted children, the word "child" includes an Insured Person's stepchild or foster child; provided the child resides in the Insured Person's household and is dependent on the Insured Person for principal support.

The term Dependent does not include anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard.

ELIGIBILITY. An Insured Person becomes eligible for Dependents Life Insurance on the latest of:

(1) the date the Insured Person becomes eligible for Personal Insurance;
(2) the effective date of this Section; or
(3) the date the Insured Person first acquires a Dependent.

EFFECTIVE DATES. An Insured Person's Dependents Life Insurance will become effective on the latest of the following dates:

(1) the date the Insured Person becomes eligible for Dependents Life Insurance;
(2) the date the Insured Person makes written application for Dependents Life Insurance and signs a payroll deduction order; and
(3) the date the Company approves any required evidence of insurability on all the Insured Person's Dependents.

If an Insured Person acquires a new Dependent while insured for Dependents Life Insurance, insurance for that Dependent will take effect on the date the Dependent is acquired.

If a Dependent is confined in a hospital on the date his or her Dependents Life Insurance would otherwise take effect, then Dependents Life Insurance for that Dependent will not take effect until ten days after final discharge from the hospital.

EVIDENCE OF INSURABILITY. Each Insured Person's Dependent must submit evidence of insurability satisfactory to the Company if the Insured Person:

(1) makes application for Dependents Insurance more than 31 days after the date such Insured Person becomes eligible for Dependents Insurance;
(2) elects to be insured for Dependents Insurance after such Insured Person had requested:
    (a) termination of the Dependents Insurance; or
    (b) cancellation of the payroll deduction order; or
(3) makes application for Dependents Insurance after it has automatically terminated, due to failure to pay premium by the end of the grace period.

INDIVIDUAL TERMINATION OF DEPENDENT INSURANCE. An Insured Person's Dependents Insurance will cease for all of the Insured Person's Dependents on the earliest of:

(1) the date the Insured Person's Personal Insurance terminates;
(2) the date Dependent Insurance is discontinued under this Policy;
(3) the date the Insured Person ceases to be in a class of employees eligible for Dependent Insurance;
(4) the date the Insured Person requests that the Dependent Insurance be terminated; or
(5) the last day of the premium paying period for which the Insured Person has made any required contribution toward the cost of the Dependent Insurance.

Dependents Insurance on a particular Dependent will cease on the earliest of:

(1) the date he or she ceases to be a Dependent as defined in this Policy;
(2) the date he or she becomes covered under this Policy as an Insured Person; or
(3) the date he or she enters the armed forces of any state or country; except for duty of 30 days or less in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

MISSTATEMENT OF AGE. If the age of a Dependent has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit is dependent upon age, the benefit will be that which would have been payable based upon the Dependent's correct age.

ASSIGNMENT. Dependents Insurance may not be assigned.

INCONTESTABILITY. Except for non-payment of premiums, the Company may not contest the validity of this Policy as to any Dependent, after it has been in force for two years during the lifetime of that Dependent. This clause will not affect the Company's right to contest claims made for accidental death, or dismemberment benefits.

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: This Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.***** The notice must be sent to the Company's Group Insurance Service Office. It should include:
(1) the Insured Person's name and address; and
(2) the number of this Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then the Insured Person or Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.***** Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:
(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.
These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have the Insured Person examined:
(1) by a Physician of the Company's choice;
(2) as often as reasonably required.
If the Insured Person fails to cooperate with an examiner or fails to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

### TO WHOM PAYABLE

**Death.** Any benefits payable for the Insured Person's death will be paid in accord with the Beneficiary, Facility of Payment, and Settlement Options sections of this Policy. If this Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
(1) the Insured Person, if he or she survives that Dependent; or
(2) the Insured Person's Beneficiary, or in accord with the Facility of Payment section; if the Insured Person does not survive that Dependent.

**Dismemberment.** If this Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than the Insured Person's death benefit, will be paid to the Insured Person.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
(1) the reason for the denial, under the terms of this Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:
(1) 90 days after receiving the first proof of a death or dismemberment claim; or
(2) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.
The notice will explain the special circumstances which require the delay, and when a decision can be expected.

In any event, the Company must send written notice of its decision within:
(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
(1) any further appeal procedures available under this Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the Insured Person a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from the Insured Person, or from his or her Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to:

(1) fraud or misrepresentation of relevant facts;
(2) the Company's error in processing a claim; or
(3) any other reason.

However, if the overpayment is due solely to the Company's error in processing the claim; then this right of recovery will be limited to overpayments made within the 15 months prior to the Company's discovery of the error and request for reimbursement.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than five years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that this Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

(1) manage this Policy and administer claims under it; and
(2) interpret the provisions and resolve questions arising under this Policy.

The Company's authority includes (but is not limited to) the right to:

(1) establish and enforce procedures for administering this Policy and claims under it;
(2) determine Employees' eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and
(4) resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to the Insured Person's or Beneficiary's rights to:

(1) request a state insurance department review; or
(2) bring legal action.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

(1) an Insured Person sustains an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | ½ Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |
| Quadriplegia (Paralysis of Both Arms and Both Legs) | 2 Times Principal Sum | Principal Sum |
| Paraplegia (Paralysis of Both Legs) | Principal Sum | ½ Principal Sum |
| Hemiplegia (Paralysis of Arm and Leg of Same Side) | Principal Sum | ½ Principal Sum |

The Principal Sum for the Insured Person's class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If an Insured Person sustains more than one loss resulting from the same accident, the benefit:

(1) will be the one largest amount listed;
(2) will not exceed two times the Principal Sum for all of that person's combined losses resulting from a Common Carrier Accident; and
(3) will not exceed the Principal Sum for all that person's combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for the Insured Person's loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to the Insured Person.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

**DEFINITIONS.**

"Beneficiary" means the person(s) named on the Insured Person's enrollment form. The Insured Person may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:

(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint. (In South Carolina, "Loss of Hand" can also mean the loss of four whole fingers from one hand.)

(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

"Paralysis" means complete and irreversible loss or use of an arm or leg (without severance).

**REPATRIATION BENEFIT.** The Company will pay a Repatriation Benefit, if:

(1) the Insured Person dies as a result of a covered accident at least 150 miles from his or her principal place of residence; and

(2) expense is incurred for the preparation and transportation of the Insured Person's body to a mortuary.

This benefit will be in addition to all other benefits payable under this Policy. This benefit will equal the expenses incurred for the preparation and transportation of the Insured Person's body to a mortuary subject to a maximum of $5,000. This benefit will be paid:

(1) when the benefit for accidental loss of life is paid; or

(2) when the Company receives proof of expense incurred, if later.

**PROOF.** In order for this benefit to be payable, proof of payment for any expenses incurred for Repatriation must be provided to the Company.

**TO WHOM PAYABLE.** Benefits for Repatriation will be paid in accord with the Beneficiary and/or Facility of Payment sections of this Policy.

Benefits will not be payable for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section.

**EDUCATION BENEFIT.** The Company will pay an Education Benefit for each of the Insured Person's eligible Dependent Children, if the Insured Person:

(1) is injured in a covered accident while insured under this Policy;
(2) dies as a direct result of such injuries within 365 days after the accident; and
(3) is survived by one or more Dependent Children who are eligible for the benefit.

To be eligible for the Education Benefit, a Dependent Child:

(1) must be dependent on the Insured Person for principal support;
(2) must be enrolled as a Full-Time Student on the date of the Insured Person's death or within 365 days after that date; and
(3) must incur expenses after the date of the Insured Person's death for tuition, fees, books, room and board, or any other costs payable directly to (or approved and certified by) that school.

This benefit will be paid in addition to all other benefits payable under this Policy. The benefit will equal the actual expense incurred after the date of the Insured Person's death up to 5% of the Insured Person's Principal Sum, subject to a maximum of $5,000 for each eligible Dependent Child per year, for up to 4 consecutive years or until age 25. The benefit will be paid to the Dependent Child, if the child has reached the age of majority. Otherwise, benefits will be paid to the child's legal guardian. The first payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of payment for the expenses incurred and that an eligible Dependent Child meets the above requirements, if later.

Subsequent payments will be made when the Company receives:

(1) verification that the eligible Dependent Child continues to be a Full-Time Student during each additional semester/year; and
(2) proof of payment for the expenses incurred.

"Full-Time Student" means a Dependent Child who:

(1) is attending a licensed or accredited college, university or vocational school (beyond the 12th grade);
(2) is considered a full-time student based upon that school's standards; and
(3) incurs expenses for tuition, fees, books, room and board, or other costs payable directly to (or approved or certified by) that school.

"Child" includes the Insured Person's naturally born child, legally adopted child, stepchild, and foster child.

**SPOUSE TRAINING BENEFIT.** The Company will pay a Spouse Training Benefit to the Insured Person's surviving Spouse, if the Insured Person:

(1) is injured in a covered accident while insured under this Policy;
(2) dies as a direct result of such injuries within 365 days after the accident; and
(3) is survived by a Spouse who is eligible for the benefit.

To be eligible for the Spouse Training Benefit, the Insured Person's Spouse:

(1) must not be legally separated from the Insured Person on the date of the accident;
(2) must be enrolled as a student on the date of the Insured Person's death or within 365 days after that date in any school to retrain or refresh skills needed for employment; and
(3) must incur expenses after the date of the Insured Person's death for tuition, fees, books, room and board or other costs payable directly to (or approved or certified by) that school.

This benefit will be paid in addition to all other benefits payable under this Policy. The benefit will equal the actual expense incurred after the date of the Insured Person's death up to 5% of Insured Person's Principal Sum; subject to a maximum of $5,000. The benefit will be paid for one year. Payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of payment for the expenses incurred and that the Spouse meets the above requirements, if later.

**EXCLUSIONS.** Benefits will not be payable for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section.



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 415 of 548
PageID #: 2369

**CHILD CARE BENEFIT.** The Company will pay a Child Care Benefit for each of the Insured Person's eligible Dependent Children, if the Insured Person:

(1) is injured in a covered accident while insured under this Policy;
(2) dies as a direct result of such injuries within 365 days after the accident; and
(3) is survived by one or more Dependent Children who are eligible for the benefit.

To be eligible for the Child Care Benefit, a Dependent Child must:

(1) be dependent on the Insured Person for principal support;
(2) be under age 13 on the date of the accident; and
(3) attend a licensed Child Care Center on a regular basis on the date of the Insured Person's death or within 365 days after that date.

The Child Care Benefit is paid in addition to all other Policy benefits. The benefit will equal the actual expense incurred after the date of the Insured Person's death, up to 5% of the Insured Person's Principal Sum; subject to a maximum of $5,000 for each eligible Dependent Child per year. The benefit will be paid to the legal guardian of the eligible Dependent Child:

(1) for up to 4 consecutive years; or
(2) until the Dependent Child's 13th birthday (whichever occurs first).

The first payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of expense incurred and that an eligible Dependent Child meets the above requirements; if later.

Subsequent payments will be made quarterly on a reimbursement basis when the Company receives:

(1) verification that the eligible Dependent Child continues to attend a licensed Child Care Center on a regular basis; and
(2) satisfactory proof of payment for the child care expense incurred.

**DEFINITIONS. "Child Care Center"** means any facility (other than a family day care home) which:

(1) is licensed as such by the state; and
(2) provides non-medical care and supervision for children in a group setting; and
(3) cares for children at least 6 but less than 24 hours per day.

**"Child"** includes the Insured Person's naturally born child, legally adopted child, stepchild, and foster child.

**"Expense Incurred"** means the cost for the supervision and care of a Dependent Child, excluding any fees for extra activities, which are directly payable to a Child Care Center.

**EXCLUSIONS.** Benefits will not be paid:

(1) when the Dependent Child's care is provided by (or at a facility operated by) the child's grandparent, parent, aunt, uncle or sibling; or
(2) for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section of this Policy.

**COMA BENEFIT.** The Company will pay a Coma Benefit, when the Insured Person remains in a coma; provided:

(1) the coma is caused by an Injury sustained while insured under this Policy;
(2) the coma begins within 365 days after the date of the accident; and
(3) the person remains in a continuous coma for at least 31 days in a row.

The coma must result directly from the Injury and from no other causes.

This benefit will be paid in addition to all other benefits payable under this Policy. The Coma Benefit will equal a one-time payment of 5% of the Insured Person's Principal Sum; subject to a maximum of $5,000.

**PROOF.** Proof of the coma must be provided to the Company. The Company retains the right to investigate and to determine whether the coma exists.

**TO WHOM PAYABLE.** Upon receipt of satisfactory proof, the Coma Benefit will be paid to the Insured Person.

**"Coma"** means being in a state of complete mental unresponsiveness, with no evidence of appropriate responses to stimulation.

**EXCLUSIONS.** Benefits will not be paid:

(1) when the Insured Person remains in a coma for less than 31 days in a row; or
(2) for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section of this Policy.

## SAFE DRIVER BENEFIT

BENEFIT. If an Insured Person dies as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

(1) an additional Seat Belt Benefit will be payable, if the Insured Person was wearing a properly fastened seat belt at the time of the accident; and

(2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000 per Insured Person. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

(1) the official accident report; or

(2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Group Policyholder.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

(1) seat belt or lap and shoulder restraint; or

(2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

(1) the Accidental Death and Dismemberment Benefits is not paid under this Policy for the Insured Person's death; or

(2) at the time of the accident, the Insured Person or any other person who was driving the auto in which the Insured Person was traveling:
   - (a) was driving without a valid drivers' license;
   - (b) was driving in excess of the legal speed limit; or
   - (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

   The above limitations will apply, whether or not the driver is convicted.

**NOTICE CONCERNING COVERAGE UNDER**

**THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT**

Insurance companies and health maintenance organizations (HMOs) licensed in this state to write life insurance, annuities or health insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to provide a safety-net of coverage , within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in the state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverage, exclusions and limits. **This summary does not cover all provisions of the law or describe all of the conditions and limitations relating to coverage. This summary does not in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.**

COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, HMO contract, or an annuity, or if they are insured under a group insurance contract issued by an insurer authorized to conduct business in Tennessee. Health insurance includes disability and long term care policies. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

1) They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2) The insurer was not authorized to do business in this state;

3) Their policy was issued by a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does not provide coverage for:

1) Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2) Any policy of reinsurance (unless an assumption certificate was issued);

3) Interest rate yields that exceed an average rate;

4) Dividends;

5) Credits given in connection with the administration of a policy by a group contractholder;

6) Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

7) Unallocated annuity contracts (which give rights to group contractholders, not individuals).

LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Guaranty Association is obligated to pay out. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. For any one insured life, the Guaranty Association guarantees payments up to a stated maximum no matter how many policies and contracts there were with the same company, even if they provided different types of coverage. These aggregate limits per life are as follows:

- $300,000 for policies and contracts of all types, except as described in the next point
- $500,000 for basic hospital, medical and surgical insurance and major medical insurance issued by companies that become insolvent after January 1, 2010

Within these overall limits, the Guaranty Association cannot guarantee payment of benefits greater than the following:

- Life insurance death benefits - $300,000
- Life insurance cash surrender value - $100,000
- Present value of annuity benefits for companies insolvent before July 1, 2009 - $100,000
- Present value of annuity benefits for companies insolvent after June 30, 2009 - $250,000
- Health insurance benefits for companies declared insolvent before January 1, 2010 - $100,000
- Health insurance benefits for companies declared insolvent on or after January 1, 2010:
    - $100,000 for limited benefits and supplemental health coverages
    - $300,000 for disability and long term care insurance
    - $500,000 for basic hospital, medical and surgical insurance or major medical insurance

*****************************************************************************************

**NOTE**

**The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer for which you have assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

Tennessee Life and Health Guaranty Association
P.O. Box 190434
Nashville, TN 37219
Website: www.tnlifega.org

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, TN 37243

*****************************************************************************************

**AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO: 000010209860**

**ISSUED TO: East Tennessee Iron & Metal Works, Inc.**

**The Policy is amended by the addition of the following provisions.**

## PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan"** means a prior carrier's group life insurance policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, this Policy will provide life coverage for a Person who:

(1) was insured under the prior plan on its termination date;
(2) was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) is not entitled to any extension of life insurance under the prior plan; and
(4) is not Totally Disabled (as defined in the Extension of Death Benefit section of this Policy) on the date this Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until the Person satisfies this Policy's Active Work rule, the amount of his or her group life insurance under this Policy will not exceed the amount for which the Person was insured under the prior plan on its termination date.

**This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**



Officer of the Company

The Lincoln National Life Insurance Company
A Stock Company    Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765    Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No. 000010209860 has been issued to

East Tennessee Iron & Metal Works, Inc.
(The Group Policyholder)

The issue date of the Policy is December 1, 2015.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 2

You are entitled to the benefits described in this Certificate if you are eligible for insurance under the provisions of the Policy. This Certificate replaces any other certificates for the benefits described inside. As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.

**The Policy contains an Accelerated Death Benefit provision. Receipt of an Accelerated Death Benefit will reduce benefits specified in the Policy. Accelerated Death Benefits may be taxable. As with all tax matters, the Insured Person should consult a professional tax advisor before applying for this benefit. Please read the Limitations section of the Accelerated Death Benefit included in the Policy.**

Ellen Cooper
PRESIDENT

**CERTIFICATE OF GROUP INSURANCE**

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**

**ELIGIBLE CLASS**

Class 2 All Other Full-Time Employees

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 2 - All Other Full-Time Employees**

MINIMUM HOURS: 30 hours per week

WAITING PERIOD: (For date insurance begins, refer to "Effective Dates of Coverages" section)
(a) None for employees who were hired on or before the Policy Issue Date.
(b) 60 days of continuous Active Work for employees who were hired after the Policy Issue Date.

**Basic Annual Earnings** means your annual gross earnings from the Employer during the tax year just prior to the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It is figured from the income box on your W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes your income before taxes and any deductions for pre-tax contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan. It does **not** include:
1. any Employer contributions to a deferred compensation plan;
2. income received from any car, housing or moving allowance; or
3. income from a source other than the Employer.

It will not exceed the amount shown in the Employer's financial records or the amount for which premium has been paid; whichever is less. If you did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the gross earnings received during the actual period of employment, as shown in the Employer's financial records.

**LIFE AND AD&D INSURANCE**

| | Benefit Amount |
|---|---|
| Personal Life Insurance | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $135,000. |
| AD&D Insurance Principal Sum | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a maximum of $135,000. |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 70, benefits will reduce by 35% of the original amount;
- At age 75, benefits will reduce an additional 15% of the original amount.

Benefits will terminate when you retire.

If you first enroll for Personal Life and AD&D Insurance at age 70 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which you are eligible.

**East Tennessee Iron & Metal Works, Inc.**
**000010209860**
**SCHEDULE OF INSURANCE**
**For**
**Class 2**
**LIFE AND AD&D INSURANCE (CONTINUED)**

**DEPENDENTS INSURANCE**

| Dependent Life Insurance | Benefit Amount |
| --- | --- |
| Spouse | $10,000 |
| Dependent Child (age 14 days to 6 months) | $5,000 |
| Dependent Child (age 6 months to 19 years, 23 years if a full-time student) | $5,000 |

Spouse Life Insurance will terminate when your Spouse attains age 70

**TABLE OF CONTENTS**

Amount of Insurance....3

Definitions....3

Eligibility.... 4

Effective Dates of Coverages....4

Termination of Coverage.... 5

Death Benefit.... 6

Beneficiary....6

Assignments....7

Extension of Death Benefit....8

Accelerated Death Benefit.... 9

Conversion Privilege....11

Dependents Life Insurance.... 12

Accidental Death and Dismemberment Insurance....14

Safe Driver Benefit.... 20

Claims Procedures for Life or Accidental Death and Dismemberment Benefits.... 21

Prior Insurance Credit Provision....24

## AMOUNT OF INSURANCE

The amount of your insurance is determined by the Schedule of Insurance in the Policy. The initial amount of coverage is the amount which applies to your class on the day your coverage takes effect. You may become eligible for increases in the amount of insurance in accord with the Schedule of Insurance. Any such increase will take effect on the latest of:

(1) the first day of the Insurance Month which coincides with or follows the date on which you become eligible for the increase; provided you are Actively at Work on that day;
(2) the day you resume Active Work, if you are not Actively at Work on the day the increase would otherwise take effect; or
(3) the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not you are Actively at Work.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:

(1) the EMPLOYER’S place of business; or
(2) any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:

(1) a Saturday, Sunday or holiday which is not a scheduled workday;
(2) a paid vacation day, or other scheduled or unscheduled non-workday; or
(3) an excused or emergency leave of absence (except a medical leave).

COMPANY means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY or DATE means at 12:01 A.M., Standard Time, at the Group Policyholder's place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

EMPLOYER means the Group Policyholder or the Participating Employer named on the Face Page.

FULL-TIME EMPLOYEE means an employee of the EMPLOYER:

(1) whose employment with the EMPLOYER is the employee's principal occupation;
(2) who is not a temporary or seasonal employee; and
(3) who is regularly scheduled to work at such occupation at least the Minimum Hours shown in the Schedule of Insurance.

INSURANCE MONTH means:

(1) that period of time beginning on the Issue Date of the Policy and extending for one month; and
(2) each subsequent month beginning on the same day after that.

PERSONAL INSURANCE means the insurance provided by the Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means the Group Insurance Policy issued by the Company to the Group Policyholder. A copy of the Policy may be examined upon request at the Group Insurance Service Office of the Group Policyholder.

## ELIGIBILITY

If you are a Full-Time Employee and a member of an employee class shown in the Schedule of Insurance; then you will become eligible for the coverage provided by the Policy on the later of:

(1) the Policy's date of issue; or
(2) the day you complete the Waiting Period.

WAITING PERIOD. (See Schedule of Insurance).

## EFFECTIVE DATES OF COVERAGES

Your insurance is effective on the latest of:

(1) the first day of the Insurance Month coinciding with or next following the day you become eligible for the coverage;
(2) the day you resume Active Work, if you are not Actively at Work on the day you become eligible;
(3) the day you make written application for coverage; and sign:
    (a) a payroll deduction order, if you pay any part of the premium; or
    (b) an order to pay premiums from your Section 125 Plan account, if Employer contributions are paid through a Section 125 Plan; or
(4) the day the Company approves your coverage, if evidence of insurability is required.

Evidence of insurability is required if:

(1) you apply for coverage more than 31 days after you become eligible; or
(2) you make written application to re-enroll for coverage after you have requested:
    (a) to cancel your coverage;
    (b) to stop payroll deductions for the coverage; or
    (c) to stop premium payments from your Section 125 Plan account.

EXCEPTIONS. If your coverage terminates due to an approved leave of absence or a military leave, any Waiting Period or evidence of insurability requirement will be waived upon your return; provided:

(1) you return within six months after the leave begins;
(2) you apply or are enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

If your coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you return within 12 months after the date the lay-off begins;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the date you return to Active Work.

If your coverage terminates because your employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon your return; provided:

(1) you are rehired within 12 months after employment terminated;
(2) you apply or are reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

Reinstatement will take effect on the date you return to Active Work.

## TERMINATION OF COVERAGE

Your coverage terminates on the earliest of:

(1) the day the Policy terminates;
(2) the last day of the Insurance Month in which you request termination;
(3) the last day of the period for which the premium for your insurance has been paid;
(4) the day you cease to be a member of an employee class shown in the Schedule of Insurance;
(5) with respect to any particular insurance benefit, the day the part of the Policy providing that benefit terminates;
(6) the day your employment with the Employer terminates; or
(7) the day you enter the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work terminates your eligibility. However, it may be possible to continue all or part of your insurance during a temporary lay off, leave of absence or military leave; or while you are unable to work due to sickness or injury. The conditions concerning such a continuance may be found in the Policy. See your Employer for this information.

## DEATH BENEFIT

Upon receipt of satisfactory proof of your death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of your death. The benefit will be paid in accord with the Beneficiary section. Arrangements may be made to have this death benefit paid in installments.

## BENEFICIARY

Your Beneficiary is the person or persons named on your enrollment card. The Beneficiary may be changed in accord with the terms of the Policy. If you have not named a Beneficiary, or if no named Beneficiary is living when you die; then the death benefit will be paid to your:

(1) surviving spouse; or, if none
(2) surviving child or children in equal shares; or, if none
(3) surviving parent or parents in equal shares; or, if none
(4) surviving brothers and sisters in equal shares; or, if none
(5) estate, or in accord with the Facility of Payment section of the Policy.

## ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under the Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
- (1) it is made on a form furnished by the Company;
- (2) the original is completed and filed with the Company at its Group Insurance Service Office; and
- (3) it is approved by the Company.

The Company and the Employer do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS. You may make an irrevocable assignment of your Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing you have the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of your relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, your spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If you make an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. You should consult with your own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, you can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to you in the absence of the assignment under the Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS. Upon your death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of the Policy.

## EXTENSION OF DEATH BENEFIT IF YOU BECOME TOTALLY DISABLED

Your life insurance will be continued, **without payment of premiums**, if:

(1) you become Totally Disabled while insured and before reaching age 60;
(2) you remain Totally Disabled for at least 6 months in a row; and
(3) you submit satisfactory proof within the 7th through 12th months of disability; or:
  (a) as soon as reasonably possible after that; but
  (b) not later than the 24th month of disability, unless you were legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until you are approved for this benefit, or the Policy terminates, if earlier. Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for your life insurance, from your 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means you, due to sickness or injury:

(1) are completely and continuously unable to perform your regular occupation; or to engage in any occupation for which you are reasonably fitted by education, training or experience; and
(2) remain so disabled for at least 6 months in a row.

If you engage in any gainful employment or occupation, you are not Totally Disabled.

AMOUNT CONTINUED. The amount of Personal Life Insurance and any Dependent Life Insurance continued will be subject to the reductions and terminations in effect under the Policy on the day your Total Disability begins. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. From time to time, you must submit proof that your Total Disability is continuing. Proof will be at your expense; unless the Company requests to have you examined by a Physician of its choice. If you die after submitting proof, further proof must be submitted to the Company showing that you remained continuously and Totally Disabled until death. If you die within 12 months after Total Disability begins, but before submitting proof; then your death benefit will still be paid under the terms of the Policy. But the Company must first receive satisfactory proof of your continuous Total Disability, from your last day of Active Work until your date of death.

TERMINATION. Any life insurance continued under this section will terminate automatically on:

(1) the day you cease to be Totally Disabled;
(2) the day you fail to take a required medical examination;
(3) the 60th day after the Company mails a request for additional proof, if it is not given;
(4) the effective date of your individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
(5) the day you reach Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

If your Total Disability ends, and you **do not return** to a class eligible for Policy coverage; then you may exercise the Conversion Privilege. If your Total Disability ends, and you **do return** to an eligible class; then your Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided in the Policy.

## ACCELERATED DEATH BENEFIT

BENEFIT. The Accelerated Death Benefit is an advance payment of part of your Personal Life Insurance. It may be paid to you, in a lump sum, once during your lifetime.

To qualify, you must:
- (1) have satisfied the Active Work requirement under the Policy;
- (2) have been insured under the Policy for at least 12 months; and
- (3) have at least $2,000 of Personal Life Insurance under the Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means you have a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, you (or your legal representative) must send the Company:
- (1) written election of the Accelerated Death Benefit, on forms supplied by the Company; and
- (2) satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO YOU SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. You may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
- (1) a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
- (2) a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
- A. the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
- B. the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

ADMINISTRATIVE CHARGE: NONE

WITHDRAWAL FEE: NONE

EFFECT ON AMOUNT OF LIFE INSURANCE. "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid. The Remaining Life Insurance will equal:

(1) the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
(2) any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
(3) the amount of the Accelerated Death Benefit withdrawn.

PREMIUM: There is no additional charge for this benefit. Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless you qualify for waiver of premium under the Policy's Extension of Death Benefit provision, if included.

CONDITIONS. If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under the Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT. When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit. Your Death Benefit will be paid in accord with the Beneficiary section of the Policy. If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid. The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS. Any Accelerated Death Benefit amount withdrawn may be taxable income to you. Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit. The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS. No Accelerated Death Benefit will be paid:

(1) if any required premium is due and unpaid;
(2) on any conversion policy purchased in accord with the Conversion Privilege;
(3) without the written approval of the bankruptcy court, if you have filed for bankruptcy;
(4) without the written consent of the beneficiary, if you have named an irrevocable beneficiary;
(5) without the written consent of the assignee, if you have assigned your rights under the Policy;
(6) if any part of the Life Insurance must be paid to your child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
(7) if the Claimant is Terminal due to a suicide attempt, while sane or insane; or due to an intentionally self-inflicted injury;
(8) if a government agency requires you or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
(9) if an Accelerated Death Benefit has been previously paid for the Claimant under the Policy.

## CONVERSION PRIVILEGE

If your insurance or insurance on a Dependent terminates for any reason except:

- (1) termination or amendment of the Policy; or
- (2) your request for:
  - (a) termination of insurance; or
  - (b) cancellation of your payroll deduction,

an individual life policy, known as a conversion policy, may be purchased without evidence of insurability.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated.

The conversion policy will:

- (1) be in an amount not to exceed the amount of life insurance which was terminated;
- (2) be on any form (except term) then issued by the Company at the age and amount for which application is made;
- (3) be issued at the person's age at nearest birthday;
- (4) be issued without disability or other supplemental benefits; and
- (5) require premiums based on the class of risk to which the person then belongs.

A conversion policy also may be purchased if:

- (1) all or part of your insurance or insurance on a Dependent terminates due to amendment or termination of the Policy; and
- (2) the person applying for the conversion policy has been covered continuously under the Policy for at least 5 years.

A conversion policy issued due to amendment or termination of the Policy will be subject to the conditions shown in parts (2) through (5) above; but its amount may not exceed the lesser of:

- (1) $2,000; or
- (2) the amount of life insurance which terminates, less the amount of any group life insurance for which the person becomes eligible within 31 days after the termination.

The conversion policy will take effect on the later of:

- (1) its date of issue; or
- (2) 31 days after the date the insurance terminated.

If death occurs during the 31 day conversion period, the Company will pay the life insurance which could have been converted even if no one applied for the conversion policy.

When your insurance terminates, written notice of your right to convert will be given to you.

If written notice is not given to you at least 15 days before the end of the 31 day conversion period, an additional period in which to convert will be granted. Any such extension of the conversion period will expire on the earliest of:

- (1) 15 days after you are given the written notice; or
- (2) 60 days after the end of the 31 day conversion period, even if you are never given such notice.

No death benefit will be payable under the Policy after the 31 day conversion period has expired even though the right to convert may be extended.

## DEPENDENTS LIFE INSURANCE

DEATH BENEFIT. If your Dependent dies while insured under the Policy, the Company will pay the amount of Dependents Life Insurance in effect on the date of the death. This amount is shown in the Schedule of Insurance. The death benefit will be paid to you. If you are not living when your Dependent dies, the death benefit will be paid to your beneficiary or in accord with the Facility of Payment section of the Policy.

DEPENDENT. A Dependent means a person who meets the definition of your dependent under the provision of the U.S. Internal Revenue Code; and is your:

(1) spouse who is not legally separated from you;
(2) unmarried child at least 14 days but less than 19 years of age;
(3) unmarried child less than 23 years of age, if attending an accredited educational institution for the minimum credit hours required to maintain full-time student status there; or
(4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 19 years of age.

A legally adopted child is considered your child from the date of placement in your home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.

In addition to naturally born and legally adopted children, the word "child" includes your stepchild or foster child; provided the child resides in your household and is dependent on you for principal support.

The term Dependent does not include anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard.

ELIGIBILITY. You become eligible for Dependents Life Insurance on the later of:

(1) the date you become eligible for other coverages provided by the Policy;
(2) the effective date of this section; or
(3) the date you first acquire a Dependent.

EFFECTIVE DATE. Your Dependents Life Insurance will become effective on the later of:

(1) the date you become eligible for Dependents Life Insurance;
(2) the date you sign your payroll deduction order and apply for the coverage; or
(3) the date the Company approves any required evidence of insurability on all your Dependents.

If you acquire a new Dependent while insured for Dependents Life Insurance, his or her insurance will become effective on the date the Dependent is acquired.

If a Dependent is confined in a hospital on the date insurance would otherwise take effect, his or her insurance will become effective on the 10th day following final discharge from the hospital.

EVIDENCE OF INSURABILITY. Each of your Dependents must submit evidence of insurability to the Company, if you apply for Dependents Life Insurance:

(1) more than 31 days after the date you become eligible for Dependents Life Insurance;
(2) after requesting to terminate Dependents Life Insurance or cancelling the payroll deduction order; or
(3) after coverage has automatically terminated, due to failure to pay premium by the end of the grace period.

INDIVIDUAL TERMINATION OF DEPENDENT INSURANCE. Your Dependents Life Insurance will cease for all your Dependents on the earliest of:

(1) the date your Personal Insurance terminates;
(2) the date Dependent Life Insurance is discontinued under the Policy;
(3) the date you cease to be in a class of employees eligible for Dependent Life Insurance;
(4) the date you request that the Dependent Life Insurance be terminated; or
(5) the last day of the period for which you have made any required contribution for the cost of the Dependents Life Insurance.

Dependents Life Insurance on a particular Dependent will cease on the earliest of:

(1) the date he or she ceases to be a Dependent as defined in the Policy;
(2) the date he or she becomes covered under the Policy as an Insured Person; or
(3) the date he or she enters the armed forces of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If you send proof of military service, the Company will refund any unearned premium.)

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**DEATH OR DISMEMBERMENT BENEFIT FOR AN INSURED PERSON.** The Company will pay the benefit listed below, if:

(1) you sustain an accidental bodily injury while insured under this provision; and
(2) that injury directly causes one of the following losses within 365 days after the date of the accident.

The loss must result directly from the injury and from no other causes.

| LOSS | BENEFIT FOR COMMON CARRIER ACCIDENT | BENEFIT FOR OTHER COVERED ACCIDENT |
|---|---|---|
| Loss of Life | 2 Times Principal Sum | Principal Sum |
| Loss of One Member (Hand, Foot or Eye) | Principal Sum | ½ Principal Sum |
| Loss of Two or More Members | 2 Times Principal Sum | Principal Sum |
| Quadriplegia (Paralysis of Both Arms and Both Legs) | 2 Times Principal Sum | Principal Sum |
| Paraplegia (Paralysis of Both Legs) | Principal Sum | ½ Principal Sum |
| Hemiplegia (Paralysis of Arm and Leg of Same Side) | Principal Sum | ½ Principal Sum |

The Principal Sum for your class is shown in the Schedule of Insurance.

**MAXIMUM PER PERSON.** If you sustain more than one loss resulting from the same accident, the benefit:

(1) will be the one largest amount listed;
(2) will not exceed two times the Principal Sum for all of your combined losses resulting from a Common Carrier Accident; and
(3) will not exceed the Principal Sum for all of your combined losses resulting from any other covered accident.

**TO WHOM PAYABLE.** Benefits for your loss of life will be paid in accord with the Beneficiary section. All other benefits will be paid to you.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:

(1) intentional self-inflicted injury or self-destruction;
(2) disease, bodily or mental infirmity, or medical or surgical treatment of these;
(3) participation in a riot;
(4) duty as a member of any military, naval or air force;
(5) war or any act of war, declared or undeclared;
(6) participation in the commission of a felony;
(7) voluntary use of drugs; except when prescribed by a Physician;
(8) voluntary inhalation of gas, including carbon monoxide;
(9) travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
(10) driving a vehicle while intoxicated.

**DEFINITIONS.**

"Beneficiary" means the person(s) named on your enrollment form. You may change the Beneficiary by filing a written notice of the change with the Company at its Group Insurance Service Office.

"Common Carrier Accident" means a covered accidental bodily injury, which is sustained while riding as a fare paying passenger (not a pilot, operator or crew member) in or on, boarding or getting off from a Common Carrier.

"Common Carrier" means any land, air or water conveyance operated under a license to transport passengers for hire.

"Intoxicated" shall be defined by the jurisdiction where the accident occurs. The exclusion will apply whether or not the driver is convicted.

"Loss of a Member" includes the following:

(1) "Loss of Hand or Foot," means complete severance through or above the wrist or ankle joint. (In South Carolina, "Loss of Hand" can also mean the loss of four whole fingers from one hand.)

(2) "Loss of an Eye," means total and irrevocable loss of sight in that eye.

"Paralysis" means complete and irreversible loss or use of an arm or leg (without severance).

**REPATRIATION BENEFIT.** The Company will pay a Repatriation Benefit, if:

(1) you die as a result of a covered accident at least 150 miles from your principal place of residence; and

(2) expense is incurred for the preparation and transportation of your body to a mortuary.

This benefit will be paid in addition to all other benefits payable under the Policy. This benefit will equal the expenses incurred for the preparation and transportation of your body to a mortuary subject to a maximum of $5,000. This benefit will be paid:

(1) when the benefit for accidental loss of life is paid; or

(2) when the Company receives proof of expense incurred, if later.

**PROOF.** In order for this benefit to be payable, proof of payment for any expenses incurred for Repatriation must be provided to the Company.

**TO WHOM PAYABLE.** Benefits for Repatriation will be paid in accord with the Beneficiary and/or Facility of Payment sections of the Policy.

Benefits will not be payable for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section.

**EDUCATION BENEFIT.** The Company will pay an Education Benefit for each of your eligible Dependent Children, if you:

(1) are injured in a covered accident while insured under the Policy;
(2) die as a direct result of such injuries within 365 days after the accident; and
(3) are survived by one or more Dependent Children who are eligible for the benefit.

To be eligible for the Education Benefit, your Dependent Child:

(1) must be dependent on you for principal support;
(2) must be enrolled as a Full-Time Student on the date of your death or within 365 days after that date; and
(3) must incur expenses after the date of your death for tuition, fees, books, room and board, or any other costs payable directly to (or approved and certified by) that school.

This benefit will be paid in addition to all other benefits payable under the Policy. The benefit will equal the actual expense incurred after the date of your death up to 5% of your Principal Sum, subject to a maximum of $5,000 for each eligible Dependent Child per year, for up to 4 consecutive years or until age 25. The benefit will be paid to your Dependent Child, if your child has reached the age of majority. Otherwise, benefits will be paid to your child's legal guardian. The first payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of payment for the expenses incurred and that your eligible Dependent Child meets the above requirements, if later.

Subsequent payments will be made when the Company receives:

(1) verification that the eligible Dependent Child continues to be a Full-Time Student during each additional semester/year; and
(2) proof of payment for the expenses incurred.

"Full-Time Student" means a Dependent Child who:

(1) is attending a licensed or accredited college, university or vocational school (beyond the 12th grade);
(2) is considered a full-time student based upon that school's standards; and
(3) incurs expenses for tuition, fees, books, room and board, or other costs payable directly to (or approved or certified by) that school.

"Child" includes your naturally born child, legally adopted child, stepchild, and foster child.

**SPOUSE TRAINING BENEFIT.** The Company will pay a Spouse Training Benefit to your surviving Spouse, if you:

(1) are injured in a covered accident while insured under the Policy;
(2) die as a direct result of such injuries within 365 days after the accident; and
(3) are survived by a Spouse who is eligible for the benefit.

To be eligible for the Spouse Training Benefit, your Spouse:

(1) must not be legally separated from you on the date of the accident;
(2) must be enrolled as a student on the date of your death or within 365 days after that date in any school to retrain or refresh skills needed for employment; and
(3) must incur expenses after the date of your death for tuition, fees, books, room and board or other costs payable directly to (or approved or certified by) that school.

This benefit will be paid in addition to all other benefits payable under the Policy. The benefit will equal the actual expense incurred after the date of your death up to 5% of your Principal Sum; subject to a maximum of $5,000. The benefit will be paid for one year. Payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of expense incurred and that the Spouse meets the above requirements, if later.

**EXCLUSIONS.** Benefits will not be payable for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section.

**CHILD CARE BENEFIT.** The Company will pay a Child Care Benefit for each of your eligible Dependent Children, if you:

(1) are injured in a covered accident while insured under the Policy;
(2) die as a direct result of such injuries within 365 days after the accident; and
(3) are survived by one or more Dependent Children who are eligible for the benefit.

To be eligible for the Child Care Benefit, your Dependent Child must:

(1) be dependent on you for principal support;
(2) be under age 13 on the date of the accident; and
(3) attend a licensed Child Care Center on a regular basis on the date of your death or within 365 days after that date.

The Child Care Benefit is paid in addition to all other Policy benefits. The benefit will equal the actual expense incurred after the date of your death, up to 5% of your Principal Sum; subject to a maximum of $5,000 for each eligible Dependent Child per year. The benefit will be paid to the legal guardian of the eligible Dependent Child:

(1) for up to 4 consecutive years; or
(2) until your Dependent Child's 13th birthday (whichever occurs first).

The first payment will be made:

(1) when the benefit for accidental loss of life is paid; or
(2) when the Company receives proof of expense incurred and that an eligible Dependent Child meets the above requirements; if later.

Subsequent payments will be made quarterly on a reimbursement basis when the Company receives:

(1) verification that your eligible Dependent Child continues to attend a licensed Child Care Center on a regular basis; and
(2) satisfactory proof of payment for the child care expense incurred.

**DEFINITIONS. "Child Care Center"** means any facility (other than a family day care home) which:

(1) is licensed as such by the state; and
(2) provides non-medical care and supervision for children in a group setting; and
(3) cares for children at least 6 but less than 24 hours per day.

**"Child"** includes your naturally born child, legally adopted child, stepchild, and foster child.

**"Expense Incurred"** means the cost for the supervision and care of a Dependent Child, excluding any fees for extra activities, which are directly payable to a Child Care Center.

**EXCLUSIONS.** Benefits will not be paid:

(1) when the Dependent Child's care is provided by (or at a facility operated by) the child's grandparent, parent, aunt, uncle or sibling; or
(2) for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section of the Policy.

**COMA BENEFIT.** The Company will pay a Coma Benefit, while you remain in a coma; provided:
(1) the coma is caused by an Injury sustained while you are insured under the Policy;
(2) the coma begins within 365 days after the date of the accident; and
(3) you remain in a continuous coma for at least 31 days in a row.
The coma must result directly from the Injury and from no other causes.

This benefit will be paid in addition to all other benefits payable under the Policy. The Coma Benefit will equal a one-time payment of 5% of the Insured Person's Principal Sum; subject to a maximum of $5,000.

**PROOF.** Proof of the coma must be provided to the Company. The Company retains the right to investigate and to determine whether the coma exists.

**TO WHOM PAYABLE.** Upon receipt of satisfactory proof, the Coma Benefit will be paid to you.

**"Coma"** means being in a state of complete mental unresponsiveness, with no evidence of appropriate responses to stimulation.

**EXCLUSIONS.** Benefits will not be paid:
(1) when you remain in a coma for less than 31 days in a row; or
(2) for any loss excluded under the Accidental Death and Dismemberment Insurance Limitations section of the Policy.

## SAFE DRIVER BENEFIT

BENEFIT. If you die as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:

(1) an additional Seat Belt Benefit will be payable, if you were wearing a properly fastened seat belt at the time of the accident; and

(2) an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:

(1) the official accident report; or

(2) the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Employer.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:

(1) seat belt or lap and shoulder restraint; or

(2) other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:

(1) the Accidental Death and Dismemberment Benefits is not paid under the Policy for your death; or

(2) at the time of the accident, you or any other person who was driving the auto in which you were traveling:

    (a) was driving without a valid drivers' license;

    (b) was driving in excess of the legal speed limit; or

    (c) was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

    The above limitations will apply, whether or not the driver is convicted.

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE: The Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.**

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include:

(1) your name and address; and
(2) the number of the Policy.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then you or your Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:

(1) A certified copy of the death certificate, for proof of death.
(2) A copy of any police report, for proof of accidental death or dismemberment.
(3) A signed authorization for the Company to obtain more information.
(4) Any other items the Company may reasonably require in support of the claim.

*** Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done:

(1) as soon as reasonably possible; and
(2) in no event more than one year after it was required.

These time limits will not apply while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have you examined:

(1) by a Physician of the Company's choice;
(2) as often as reasonably required.

If you fail to cooperate with an examiner or fail to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.

### TO WHOM PAYABLE

**Death.** Any benefits payable for your death will be paid in accord with the Beneficiary, Facility of Payment and Settlement Options sections of the Policy. If the Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:

(1) you, if you survive that Dependent; or
(2) your Beneficiary, or in accord with the Facility of Payment section; if you do not survive that Dependent.

**Dismemberment.** If the Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than your death benefit, will be paid to you.

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:

(1) the reason for the denial, under the terms of the Policy and any internal guidelines;
(2) how the claimant may request a review of the Company's decision; and
(3) whether more information is needed to support the claim.

The Company will send this notice within 15 days after resolving the claim. If reasonably possible, the Company will send it within:

(1) 90 days after receiving the first proof of a death or dismemberment claim; or
(2) 45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:

(1) by the 15th day after receiving the first proof of claim; and
(2) every 30 days after that, until the claim is resolved.

The notice will explain the special circumstances which require the delay, and when a decision can be expected. In any event, the Company must send written notice of its decision within:

(1) 180 days after receiving the first proof of a death or dismemberment claim; or
(2) 105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:

(1) 60 days after receiving a denial notice of a death or dismemberment claim; or
(2) 180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:

(1) any further appeal procedures available under the Policy;
(2) the right to access relevant claim information; and
(3) the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under the Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the claimant a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

(1) the special circumstances which require the delay;
(2) whether more information is needed to review the claim; and
(3) when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA (**Employee Retirement Income Security Act of 1974**).** Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

(1) reduce future benefits until full reimbursement is made; and
(2) recover such overpayments from you, or from your Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to:

(1) fraud or misrepresentation of relevant facts;
(2) the Company's error in processing a claim; or
(3) any other reason.

However, if the overpayment is due solely to the Company's error in processing the claim; then this right of recovery will be limited to overpayments made within the 15 months prior to the Company's discovery of the error and request for reimbursement.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than five years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the Company has the authority to:

(1) manage the Policy and administer claims under it; and
(2) interpret the provisions and resolve questions arising under the Policy.

The Company's authority includes (but is not limited to) the right to:

(1) establish and enforce procedures for administering the Policy and claims under it;
(2) determine your eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and
(4) resolve all matters when a claim review is requested.

Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to your or your Beneficiary's rights to:

(1) request a state insurance department review; or
(2) bring legal action.

**AMENDMENT TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000010209860**

**ISSUED TO: East Tennessee Iron & Metal Works, Inc.**

**Your Certificate is amended by the addition of the following provisions.**

**PRIOR INSURANCE CREDIT UPON TRANSFER OF LIFE INSURANCE CARRIERS**

This provision prevents loss of life insurance coverage for you, which could otherwise occur solely because of a transfer of insurance carriers. The Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"**Prior Plan"** means a prior carrier's group life insurance policy, which the Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, the Policy will provide life coverage if you:

(1) were insured under the prior plan on its termination date;
(2) were otherwise eligible under the Policy; but were not Actively-At-Work due to Injury or Sickness on its Effective Date;
(3) are not entitled to any extension of life insurance under the prior plan; and
(4) are not Totally Disabled (as defined in the Extension of Death Benefit section of the Policy) on the date the Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until you satisfy the Policy's Active Work rule, the amount of your group life insurance under the Policy will not exceed the amount for which you were insured under the prior plan on its termination date.

**This Amendment takes effect on your effective date of coverage under the Policy. In all other respects, your Certificate remains unchanged.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company



Case 2:26-cv-00086-DCLC-CRW Document 15-6 Filed 08/28/26 Page 448 of 548 PageID #: 2402

## What Does Lincoln Financial Do with Your Personal Information?

The Lincoln Financial companies* are committed to protecting your privacy. To provide the products and services you expect from a financial services leader, we must collect personal information about you. While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law. Even after that relationship ends, we will continue to protect your personal information. You do not need to take any action because of this Notice, but you do have certain rights as described below.

We are committed to the responsible use of information and protecting individual privacy rights. As such, we look to leading data protection standards to guide our privacy program. These standards include collecting data through fair and lawful means, such as obtaining your consent when appropriate.

## Information We May Collect and Use

We collect personal information about you:

- to help us identify you as a consumer, our customer, or our former customer;
- to process your requests and transactions;
- to offer investment, insurance, retirement, and other financial services to you;
- to pay your claim;
- to enhance our products and services;
- to tell you about our products or services we believe you may want and use; and
- as otherwise permitted by law.

The types of personal information we collect depends on your relationship and on the products or services you request and may include the following:

- **Information from you:** When you submit your application or other forms, you give us information such as your name; address; Social Security number; your financial health; and employment history. We may also collect voice recordings or biometric data for use in accordance with applicable law.
- **Information about your transactions:** We maintain information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; payment details; and your payment and claims history.
- **Information from outside our family of companies:** If you are applying for or purchasing insurance products, we may collect information from consumer reporting agencies, such as your credit history; credit scores; and driving and employment records. With your authorization, we may also collect information (such as medical information, retirement information, and information related to Social Security benefits), from other individuals or businesses.
- **Information from your employer:** If your employer applies for or purchases group products from us, we may obtain information about you from your employer or group representative to enroll you in the plan.

When you are no longer our customer, we continue to share your information as described in this notice.

## How We Share and Use Your Personal Information

We may share your personal information within our companies and with certain service providers. They may use this information:

- to process transactions you, your employer, or your group representative have requested;
- to provide customer service;
- to evaluate or enhance our products and services;
- to gain customer insight; to provide education and training to our workforce and customers; and/or
- to inform you of products or services we offer that you may find useful.

Our service providers may or may not be affiliated with us. Affiliates are companies related by common ownership or control. Nonaffiliates are companies not related by common ownership or control. They include:

- Financial service providers: third party administrators; broker-dealers; insurance agents and brokers; registered representatives; reinsurers and other financial services companies with which we have joint marketing agreements. A joint marketing agreement is a formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include, but are not limited to, insurance providers and financial technology solutions.
- Non-financial companies and individuals: consultants; vendors; and companies that perform marketing services on our behalf.

Information we obtain from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law. We may execute agreements with our service providers that permit the service provider to process your personal information outside of the United States, when not prohibited by our contracts and permitted by applicable law.

When you apply for one of our products:

- We may share information about your application with credit bureaus.
- We may provide information to group policy owners or their designees (for example, to your employer for employer-sponsored plans and their authorized service providers).
- We may provide information to regulatory authorities, law enforcement officials, and to other nonaffiliated or affiliated parties as permitted by law.
- In the event of a sale of all or part of our businesses, we may share customer information with the acquiror as part of the sale.
- **We do not sell or release your information to outside marketers who may want to offer you their own products and services unless we receive your express consent; nor do we release information we receive about you from a consumer reporting agency.**

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Lincoln chooses to share, and whether you can limit this sharing.

| Reasons we can share your personal information | Does Lincoln share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**—to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**—information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | No | We Don't Share |
| **For our affiliates to market to you** | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

Federal law gives you the right to limit only:

- sharing for our affiliates' everyday business purposes – information about your creditworthiness;
- sharing for our affiliates to market to you; and
- sharing for nonaffiliates to market to you.



**Lincoln/Fields 2356**

State laws and individual companies may give you additional rights to limit sharing. California residents can review our California Privacy Notice located at https://www.lincolnfinancial.com/public/general/privacy/californiaprivacynotice.

## Security of Information

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secure files, and buildings. Our employees are authorized to access your information only when they need it to perform their job responsibilities. Employees who have access to your personal information are required to keep it confidential. Employees are required to complete privacy training annually.

## Your Rights Regarding Your Personal Information

Lincoln complies with all applicable laws and regulations regarding the provision of personal information. The rights provided to you in this Privacy Notice will be administered in accordance with your state's specific laws and regulations.

**Access to personal information:** You must submit a written request to receive a copy of your personal information. You may see your personal information in person, or you may ask us to send you a copy of your personal information by mail or electronically. We will need to verify your identity before we process the request. Within 30 business days of receiving your request, we will, depending on the specific request you make, (1) inform you of the nature and substance of the recorded personal information we have about you; (2) permit you to obtain a copy of your personal information; and (3) provide the identity (if recorded) of persons to whom we disclosed your personal information within two years prior to the request (if this information is not recorded, we will provide you with the names of those insurance institutions, agents, insurance support organizations or other persons to whom such information is normally disclosed). We will send you notification within 30 business days if we need additional time to respond to your request. If you request a copy of your information by mail, we may charge you a fee for copying and mailing costs.

**Changes to personal information:** If you believe that your personal information is inaccurate or incomplete, you may ask us to correct, amend, or delete the information. Your request must be in writing and must include the reason you are requesting the change. We will respond within 30 business days from the date we receive your request.

If we make changes to your records because of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received your personal information within the past two years. We will also send the updated information to any insurance support organization that gave us the information, and any insurance support organization that systematically received personal information from us within the prior 7 years unless that support organization no longer maintains your personal information.

If we deny your request to correct, amend, or delete your information, we will provide you with the reasons for the denial. You may write to us and concisely describe what you believe our records should say and why you disagree with our denial of your request to correct, amend, or delete that information. We will file this communication from you with the disputed information, identify the disputed information if it is disclosed, and provide notice of the disagreement to the recipients and in the manner described in the paragraph above.

**Basis for adverse underwriting decision:** You may ask in writing for specific reasons for an adverse underwriting decision. An adverse underwriting decision is where we decline your application for insurance, offer to insure you at a higher than standard rate, or terminate your coverage.

Your state may provide additional privacy protections under applicable laws. We will protect your information in accordance with these additional protections.

If you would like to exercise your rights regarding your personal information, please provide your full name, address and telephone number and either email your inquiry to our Data Subject Access Request Team at DSAR@lfg.com or mail to: Lincoln Financial, Attn: Corporate Privacy Office, 1301 South Harrison St., Fort Wayne, IN 46802. **The DSAR@lfg.com email address should only be used for inquiries related to this Privacy Notice.**

For general account service requests or inquiries unrelated to this Privacy Notice, please call 1-877-ASK-LINC.

*This information applies to the following Lincoln Financial companies:

First Penn-Pacific Life Insurance Company
Lincoln Retirement Services Company, LLC
Lincoln Life & Annuity Company of New York
Financial Investments Corporation (formerly
Lincoln Investment Advisors Corporation)

Lincoln Financial Distributors, Inc.
Lincoln Financial Group Trust Company, Inc.
Lincoln Variable Insurance Products Trust Lincoln
The Lincoln National Life Insurance Company
Lincoln Financial Insurance Agency Incorporated

E-communication from Lincoln Financial Group

Date: Thu May 30 11:25:15 CDT 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: robin@easttniron.com
Message-ID: <1902216702.3.1717086315524.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 30, 2024

EAST TENNESSEE IRON & METAL WORKS, INC.
ATTN Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Re: Extension of Death Benefit
Insured: David Fields
Policy Number: 00001020986000000
Claim Number: 1230070518

Dear Robin McLellan:

We have completed our review of your employee's appeal for Extension of Death Benefit.

Upon review of the entire claim file and all additional information provided, it has been determined that we are unable to overturn the original denial of your employee's claim.

We cannot provide you with a copy of the detailed letter sent to the employee due to the confidential information that is contained in the letter regarding their medical records.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Thu May 30 11:20:30 CDT 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: melindafields1@gmail.com
E-confirmation from Lincoln Financial Group
Message-ID: <1435089133.13.1717086030603.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 30, 2024

DAVID L FIELDS

RE: Extension of Death Benefit
Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear David:

We have completed our review of your appeal for Extension of Death Benefit. Based on the information provided, we have determined that we are unable to approve benefits. In our appeal review process, all information previously submitted as well as any new documentation is used to make a determination.

To be eligible for continued life insurance coverage without payment of premium under the policy issued to East Tennessee Iron & Metal Works, Inc., an individual must satisfy all of the provisions of the policy. The specific terms, conditions and limitations of the Extension of Death Benefit section of East Tennessee Iron & Metal Works, Inc. plan include, but are not limited to, the following:

> DEFINITION. For this benefit, Total Disability or Totally Disabled means an Insured Person, due to sickness or injury:
>
> (1) is completely and continuously unable to perform his or her regular occupation; or to engage in any occupation for which such Insured Person is reasonably fitted by education, training or experience; and
>
> (2) remains so disabled for at least 6 months in a row.
>
> A person engaging in any gainful employment or occupation is not Totally Disabled.

**<u>Summary of Initial Claim Filing</u>**

Your initial claim forms state that you stopped working on 02/07/2023 due to Unspecified diastolic (congestive) heart.

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Extension of Death Benefit were not approved after a review of medical records failed to support a Total Disability as defined above. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report from a health care consultant. For complete details please refer to our letter dated 09/14/2023.

**Summary of Appeal**

On 03/08/2024 you filed an appeal in response to our determination to deny benefits. Additional information was not submitted with your appeal.

As part of our appeal review all current and new medical information was reviewed by Dr. David Friedman, an independent physician who is Board Certified in Cardiology. Dr. Sims' reviewed noted, in part:

> "From 4/1/23-6/7/23, and from 7/22/23 onward, the following restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
>
> Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
> Sitting: Constant
> Standing: Frequent
> Walking: Frequent
>
> Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
> Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
> Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
> Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
> Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities
>
> Reaching may exacerbate the claimant's lightheadedness
> Reach at desk level: Unrestricted, bilateral
> Reach above the shoulder: Occasional, bilateral
> Reach below the waist: Unrestricted, bilateral
>
> There are no upper extremity complaints below the shoulder level
> Fine manipulation: Unrestricted, bilateral
> Firm/simple grasp: Unrestricted, bilateral
> Handle/finger/feel: Unrestricted, bilateral
> Type: Unrestricted, bilateral
>
> Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
> Balance: Never
> Climb ladders: Occasional
> Operate heavy machinery: Never
> Drive: Occasional
> Climb stairs: Occasional
> Bend: Occasional

Crawl: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Twist: Occasional
Crouch: Occasional
Use lower extremity foot controls: Occasional, bilateral

> "The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24) "

A Clarification from Dr. Friedman stated:

> "Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery. "

A copy of the peer report, clarification report and Transferrable Skills Analysis was sent to you to review and respond to by 05/28/2024. No response was received.

**Appeal Decision**

We understand that you have been diagnosed with Unspecified diastolic (congestive) heart. However, our review of the medical documentation, which included consultation with and/or review of a written report an independent physician who is Board Certified in Cardiology does not support that you were Totally Disabled as defined above beyond 02/07/2023.

The medical records from your treating providers indicate that you do have restrictions and limitations due to your diagnosis of unspecified diastolic heart failure and essential hypertension. However, the restrictions do not prevent you from working in a sedentary full-time or part-time occupation.

**Vocational**

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity.

Using *The Dictionary of Occupational Titles* as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Physical Demand |
|---|---|---|
| 1. 913.633-014 | Mobile Lounge Driver | Light |
| 2. 919.663-010 | Deliverer, Car Rental | Light |
| 3. 919.663-022 | Escort Vehicle Driver | Sedentary |
| 4. 209.667-014 | Order Caller | Light |
| 5, 222.687-022 | Routing Clerk | Light |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities.

We are aware that you have qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our group policy and review process is independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and independent information received by the SSA. The claim decision made under the Lincoln Financial Group policy was based upon information we have obtained from you, your treating medical professionals, and the results of any internal and/or independent reviews of your claim.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards, or other similar criteria in reaching this claim determination.

**Appeal Rights**

As a reminder, you have exhausted your first level of appeal. If you disagree with this decision, you, your attorney, or a person legally authorized as your representative, may pursue a final administrative appeal.

To initiate this process submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays, or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Your employer's plan has a contractual limitations period of five years, which means that a lawsuit must be brought within five years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 05/08/2028.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'déę́' t'áá jiik'eh, ná hóló̜. Koji̜' hódíílnih áǫį̨óóǫéą̨ą́ǫą́íę́ę.

**Lincoln/Fields 2366**

Date: Tue May 07 15:15:30 CDT 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: melindafields1@gmail.com
E-communication from Lincoln Financial Group
Message-ID: <1193749715.3.1715112930455.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 7, 2024

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear David:

This letter is in regard to your appeal for Extension of Death Benefit.

As part of your appeal review, your medical information was reviewed by an independent Board Certified physician. We are enclosing a copy of the report with this letter for your review prior to completion of our appeal decision.

You may wish to provide this assessment to your treating physician(s) for further review. Any additional written information or comments must be provided within 21 days.

The 21-day period will expire on 05/28/2024. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or fax it to 402-361-1460. If you will not be responding to the review, please advise us in writing immediately.

We are not making a final determination on your claim at this time as we want to provide you every opportunity to review our assessment and provide a response.

If we do not receive a response by 05/28/2024, then we will render a decision based on the information currently in the file.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

**April 23, 2024**

**Claimant Name: David Fields**

**Claim #: 1230070518**

**Primary Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension**

**DOD: 2/7/2023**

**DOR: 04/10/2024**

**Job Title: truck driver**

**ECN #: 264694-1**

**Specialty: Cardiology**

# David A Friedman MD

***Board Certified in Cardiology***

**Claimant Name:** David Fields
**Date of Loss:** 02/07/2023
**ECN #:** 264694-1
**Claim #:** 1230070518
**Date of service:** 04/23/2024

**PEER REVIEW**

**MEDICAL INFORMATION REVIEWED**

I have been asked to review the medical records on behalf of ECN

- 01/31/2023 – Hawkins County Memorial Hospital – Hospitalization – Connie A. Manz Hinkle, MD
- 02/06/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD
- 02/06/2023 – Tennova Heart – Turkey – Electrocardiogram
- 02/07/2023 – 07/14/2023 – Lab Reports
- 02/09/2023 – Turkey Creek Medical Center – TTE Echo – Barry Michelson, MD
- 02/09/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD
- 02/09/2023 – Lincoln Financial Group – Attending Physician Statement – Mark J. Dalle-Ave, MD
- 02/09/2023 – Tennova – Turkey Creek Medical Center – Ultrasound Abdomen Complete – Dylan P Simmons, DO
- 02/17/2023 – Tennova – Turkey Creek Medical Center – Cardiac Catheterization – Barry I. Michelson, MD
- 02/24/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD
- 03/08/2023 – ETHC–South – Follow-Up – Barry Michelson, MD
- 03/09/2023 – Tennova Heart Nurse Station 2 – Blood Pressure Log
- 03/18/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD
- 04/13/2023 – Saint Thomas Medical Partners – Progress Note – Warren K. Stribling, MD
- 05/03/2023 – Treatment Plan – Barry Michelson, MD
- 05/08/2023 – Jefferson Memorial Hospital Tennova – TTE ECHO – Barry Michelson, MD
- 05/24/2023 – ETHC – Office Visit – Mark J. Dalle-Ave, MD
- 05/24/2023 – ETHC – Turkey Creek – Work Status Report – Barry Michelson, MD:
- 06/08/2023 – ECG
- 06/08/2023 – ETHC–Turkey Creek – Office Visit – Nilam Patel, MD
- 06/09/2023– Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD
- 06/15/2023 – The University of Tennessee Medical Center – MRI Cardiac Morphology with and without Contrast Flow Velocity Quantification – Anne Kassira, MD
- 06/23/2023 – ETHC – South – Follow-Up – Barry Michelson, MD
- 07/14/2023 – Tennova - Turkey Creek Medical Center – X-ray of the Chest 2 Views DR – Dylan P. Simmons, D
- 07/21/2023 – ETHC – Turkey Creek – Office Visit – Sara Johnson, NP
- 07/21/2023 – Cardiac Monitoring

- 07/25/2023 – Geneva Health Solutions – Cardiac Resynchronization Therapy-Defibrillator Report (CRT-D) – Nilamkumar Patel, MD
- 07/31/2023 – ETHC Knoxville HMA Cardiology PPM LLC – Electrocardiogram
- 08/01/2023 – Rural Health Services Consortium, Inc – Office Visit – Mark J. Dalle-Ave, MD
- Undated – Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD

**CLINICAL SYNOPSIS**

The claimant is a 46-year-old male who was primarily diagnosed with unspecified diastolic (congestive) heart failure and essential hypertension.

**DIAGNOSTIC REPORTS**

02/06/2023 – Tennova Heart – Turkey – Electrocardiogram:

1. Abnormal ECG.
2. EKG reviewed sinus rhythm rate 90 non-specific intraventricular conduction delay is present.
3. PVCs are present.
4. Left atrial enlargement is present.

02/09/2023 – Turkey Creek Medical Center – TTE Echo – Barry Michelson, MD:

1. EF estimated at 10-15% Severe global hypokinesis.
2. Diastolic filling pattern normal.
3. The left ventricle size is mildly dilated.
4. RV Global systolic function is mildly diminished.
5. A valve is a tri-leaflet and normal in structure. No evidence of stenosis.
6. The left atrium is mildly enlarged.
7. The right atrium is mildly enlarged.
8. Mild tricuspid regurgitation visualized.
9. Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

02/09/2023 – Tennova – Turkey Creek Medical Center – Ultrasound Abdomen Complete – Dylan P Simmons, DO:

1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

02/24/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD:

1. No impression given.

03/18/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD:

1. No impression given.

05/08/2023 – Jefferson Memorial Hospital Tennova – TTE ECHO – Barry Michelson, MD:

1. The left ventricle size is moderately dilated.
2. Left ventricular systolic function is estimated at 20%.
3. Diastolic filling pattern Grade II, which is consistent with moderately elevated LV filling pressure.
4. The right ventricle systolic function is mildly impaired.
5. Mild aortic regurgitation.
6. The left atrium is mild to moderately enlarged.
7. Mild to moderate mitral regurgitation is present.
8. Mild tricuspid regurgitation is present.

9. The right ventricular systolic pressure is mildly elevated and is estimated at 40 mmHg.

06/08/2023 – ECG:
1. Sinus rhythm with prolonged PR interval.
2. Probable left atrial enlargement.
3. Nonspecific intraventricular conduction delay with left axis deviation.
4. ST elevation with probable normal early repolarization pattern.
5. Abnormal ECG.

06/15/2023 – The University of Tennessee Medical Center – MRI Cardiac Morphology with and without Contrast Flow Velocity Quantification – Anne Kassira, MD:
1. Severely dilated left ventricle with moderate systolic dysfunction, EF 26.97%. There is akinesis and wall thinning of the anterior, inferior, and lateral walls. The septal wall contracts best. There is no evidence of iron overload. There is 50% subendocardial LGE in the basal and mid lateral walls consistent with an infarct pattern. There is also nonspecific mid myocardial LGE in the basal septal wall, not consistent with infarct pattern.
2. Normal right ventricular size with moderate systolic dysfunction, EF 31.79%.
3. Moderate left atrial enlargement, mild right atrial enlargement.
4. Mild mitral regurgitation.
5. Dilated main pulmonary artery.

07/14/2023 – Tennova - Turkey Creek Medical Center – X-ray of the Chest 2 Views DR – Dylan P. Simmons, DO:
1. Biventricular cardiac pacer/AICD.
2. No pneumothorax.
3. Cardiomegaly with mild interstitial pulmonary edema and bibasilar atelectasis.
4. Focal right perihilar opacity which may be related to atelectasis, focal airspace disease, or pulmonary nodule. Follow-up chest radiograph is recommended to evaluate for resolution.

07/21/2023 – Cardiac Monitoring:
1. No impression was given.

07/25/2023 – Geneva Health Solutions – Cardiac Resynchronization Therapy-Defibrillator Report (CRT-D) – Nilamkumar Patel, MD:
1. Monitoring period: 07/21/2023 - 07/25/2023.
2. AP: 31 %, Right ventricular pacing (RVP): 96%, and left ventricular pacing: 99%.
3. Battery and Leads: Normal parameters are noted on the battery and lead and auto-threshold measurement unavailable or programmed off on the lead. Status: 9.5 years.
4. Presenting Rhythm: Atrial Sensing – Biventricular Pacing (AS-BiVP).
5. Arrhythmic events: No new arrhythmic events in the monitoring period.
6. Cardiovascular Physiologic Parameters: No abnormalities in physiologic parameters were identified.

07/31/2023 – ETHC Knoxville HMA Cardiology PPM LLC – Electrocardiogram:
1. No impression was given.

**LAB REPORTS**
02/07/2023 – Lab Reports
Glucose: 145.0, Result: High
ALT: 72.0, Result: High
AST: 51.0, Result: High

Total Bilirubin: 2.5, Result: High
pro-B-Type Natriuretic Peptide: 3953.0, Result: High

02/17/2023 – Lab Reports:
PT: 17.0, Result: High

03/08/2023 – Lab Reports:
NT PROBNP: 2739, Result: High
Sodium: 136.0, Result: Low

07/14/2023 – Lab Reports:
Sodium: 137.0, Result: Low
PT: 14.2, Result: High
WBC: 3.0, Result: Low
INSTR WBC: 3.0, Result: Low

**OPERATIVE REPORTS**
02/17/2023 – Tennova – Turkey Creek Medical Center – Cardiac Catheterization – Barry I. Michelson, MD:
The preoperative diagnosis was severe left ventricular dysfunction.
The postoperative diagnosis was dilated nonischemic cardiomyopathy.
The procedure performed was a left heart catheterization, coronary angiography, and left ventriculography under conscious sedation for 21 minutes.
The claimant tolerated the procedure well.

**OFFICE VISITS**
01/31/2023 – Hawkins County Memorial Hospital – Hospitalization – Connie A. Manz Hinkle, MD:
The claimant presented with ongoing lower abdominal pain, heartburn, and nausea for 5 days. He reported acid reflux, and shortness of breath, and described his abdominal pain as soreness and aching. His examination revealed tenderness in the lower quadrants. Tests showed abnormal urinalysis results of protein semi-quantitative (30). X-rays indicated no acute findings. His assessment was unspecified abdominal pain. Discharged with medications and advised to follow up with primary care for further evaluation.

02/06/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD:
The claimant was seen for a follow-up regarding cardiac evaluation. The claimant complained of shortness of breath, swelling, cough, and fatigue. He stated that he gained weight, felt his belly was swollen and distended, and had mild edema over his lower calves. Additionally, he reported his bowel habits increased in frequency and urination diminished lightly. Examination revealed elevated blood pressure, obesity, and abdominal distention. The diagnosis included dyspnea on exertion, swollen abdomen, edema of the lower extremity, and multiple premature ventricular complexes. The treatment plan involved cardiac evaluation, echocardiogram, lab work, stress test, abdominal ultrasound, and potential cardiac monitor.

02/09/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD:
The claimant presented for follow-up for cardiac evaluation due to complaints of abdominal distention, pedal edema, and shortness of breath with activity. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The assessment included heart failure and essential hypertension. The treatment plan included changes in medication regimen with the addition of Entresto and SGLT2 inhibitor, continued monitoring of blood pressures for essential hypertension, and cardiac catheterization.

02/19/2023 – Lincoln Financial Group – Attending Physician Statement – Mark J. Dalle-Ave, MD:

The claimant presented with symptoms of shortness of breath, swelling, cough, and fatigue. Examination findings revealed severe global left ventricular dysfunction with an ejection fraction of 10-15% and hypertension. The diagnosis was congestive heart failure and hypertension. His condition led him to reduce his ability to work and was advised to stop working on 02/08/2023. The provider stated that they do not do limitations and restrictions. The treatment plan included a heart echo on 02/09/2023, heart catheterization on 02/17/2023, and being seen by Dr. Barry Michelson, MD (cardiologist).

03/08/2023 – ETHC–South – Follow-Up – Barry Michelson, MD:
The claimant presented with complaints of heart failure, essential hypertension, and left ventricular cardiac dysfunction. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The claimant was assessed for primary idiopathic dilated cardiomyopathy, heart failure, and essential hypertension. The planned treatment included adding spironolactone to the medical regimen, increasing the dose of carvedilol, and scheduling a follow-up evaluation by the advanced heart failure team from St. Thomas. Changes in medication, including the addition of Entresto and an SGLT2 inhibitor, were recommended. The claimant was also instructed to continue monitoring blood pressure for adequate control.

03/09/2023 – Tennova Heart Nurse Station 2 – Blood Pressure Log:
The claimant's medical records indicated a series of blood pressure readings from 03/09/2023 to 06/08/2023. The readings fluctuated between 93-108 systolic and 53-73 diastolic. No specific diagnosis or treatment plan was provided in the document.

04/13/2023 – Saint Thomas Medical Partners – Progress Note – Warren K. Stribling, MD:
The claimant presented a history of COVID-19 and a recent diagnosis of NICM EF 10-15%, along with CSHF. He reported significant improvement in symptoms, including weight loss and increased mobility. The claimant was assessed for chronic systolic heart failure, nonischemic congestive cardiomyopathy, severely obese BMI, and obstructive sleep apnea syndrome. The planned treatment included ongoing medication management, assessment of LVSF, advice on weight loss, and continued use of CPAP for sleep apnea. Recommended follow-up on 10/12/2023.

05/03/2023 – Treatment Plan – Barry Michelson, MD:
The claimant was being managed with GDMT - Entresto, Farxiga, and spironolactone. The claimant was unable to up-titrate medications due to a hypotensive response. The healthcare provider planned to reassess EF on 05/08/2023, and the heart failure clinic wanted to continue MRI on 06/15/2023 and referred the claimant to an EP doctor for further evaluation. Additionally, the claimant was scheduled for an MRI to assess heart function.

05/24/2023 – ETHC – Office Visit – Mark J. Dalle-Ave, MD:
The claimant presented with primary idiopathic dilated cardiomyopathy, left ventricular cardiac dysfunction, and essential hypertension. He continued to wear a Life Vest and was scheduled for a clinical cardiac electrophysiology consult with Dr. Nilam Patel on June 8, 2023. Additionally, he was following up with the heart failure specialist, Dr. Stribling, and was scheduled for an MRI to assess heart function and morphology with and without contrast on 06/15/2023. The care plan included continuing to wear the Life Vest as directed, continuing medications, and undergoing testing as indicated. The goal was to improve the left ventricular ejection fraction.

06/08/2023 – ETHC – Turkey Creek – Office Visit – Nilam Patel, MD:
The claimant presented with left ventricular dysfunction and was diagnosed with nonischemic congestive cardiomyopathy. The assessments included nonischemic congestive cardiomyopathy, chronic systolic heart failure, essential hypertension, history of Sars Cov-2, first-degree atrioventricular block, obstructive sleep apnea syndrome, and obesity. The planned treatment included medication management with Entresto, Farxiga, spironolactone, and carvedilol. Additionally, the claimant was indicated for the insertion of a

permanent subcutaneous implantable defibrillator system due to the persistently low left ventricular systolic function despite maximum tolerable medical therapy for heart failure.

06/09/2023– Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD:
The claimant presented with dyspnea, swelling, and hypertension. Examination revealed reduced left ventricular function at <35% on maximum tolerable medical therapy. He was diagnosed with non-ischemic congestive cardiomyopathy and chronic systolic heart failure. MRI of the heart was pending. The symptoms first appeared on 02/01/2023 and he was advised to stop working on 02/06/2023. He was recommended to avoid heavy lifting and use chainsaws or welding. He could occasionally perform sitting, walking, standing, carrying/lifting up to 10 lbs. The treatment plan included medication optimization and probable subcutaneous ICD, to be decided after cardiac MRI. The prognosis was guarded, and the claimant's ability to return to work full-time was yet to be determined.

06/23/2023 – ETHC – South – Follow-Up – Barry Michelson, MD:
The claimant presented with first-degree atrioventricular block and nonischemic congestive cardiomyopathy. Examination revealed severe global left ventricular dysfunction and a history of SARS-CoV-2. He underwent an MRI which revealed a severe dilated left ventricle with severe dysfunction. The interpretation could not exclude prior infarction, but this certainly would not be consistent with findings on his coronary angiography. He was assessed with primary idiopathic dilated cardiomyopathy, first-degree atrioventricular block, and a history of SARS-CoV-2. The treatment plan included adding Spironolactone, increasing carvedilol dosage, and scheduling a subcutaneous ICD implantation in July. Follow-up appointments were scheduled with Dr. Patel and the advanced heart failure team at St. Thomas.

07/21/2023 – ETHC – Turkey Creek – Office Visit – Sara Johnson, NP:
The claimant presented for a wound check post-CRT-D. He reported lightheadedness and fatigue but denied chest pain, dyspnea, edema, or palpitations. The physical exam revealed a clean incision. He was assessed with biventricular automatic implantable cardioverter defibrillator in situ, non-ischemic congestive cardiomyopathy, chronic systolic heart failure, essential hypertension, history of SARS-Cov-2, first-degree atrioventricular block, obstructive sleep apnea syndrome, and obesity. The assessment plan included monitoring the wound and assessing the cardiac function. Follow-up appointments were scheduled.

08/01/2023 – Rural Health Services Consortium, Inc – Office Visit – Mark J. Dalle-Ave, MD:
The claimant presented with complaints of hypertension and heart failure. He had a history of chronic conditions, including dilated cardiomyopathy, the presence of an autonomic cardiac defibrillator, dependence on other enabling machines and devices, morbid obesity due to excess calories, body mass index, and obstructive sleep apnea. The provider recommended continued medication, monitoring, and lifestyle modifications to manage the conditions. He was advised to follow up with a cardiologist and maintain a low-salt diet. Additionally, the claimant was encouraged to exercise and maintain a healthy BMI. The claimant's functional status remained unchanged.

Undated – Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD:
The claimant presented with symptoms of dyspnea, swelling, and hypotension, indicative of left ventricular dysfunction at 35% on maximum tolerable medical therapy. The recent CRT-D implantation was performed. He was diagnosed with nonischemic cardiomyopathy and chronic systolic heart failure. The symptoms first appeared on 02/01/2023 and he was advised to stop working on 02/08/2023. He was recommended to avoid heavy lifting and using chainsaw or welding. He could occasionally perform sitting, walking, standing, carrying/lifting to 25 lbs. The treatment plan included medication optimization and therapy from biventricular pacing from CRT-D. The claimant’s prognosis was guarded, and his ability to return to work full-time was uncertain.

**WORK STATUS REPORT**
05/24/2023 – ETHC – Turkey Creek – Work Status Report – Barry Michelson, MD:
The claimant was advised not to return to work for 3 months.

**AP CALLS**

Nilam Patel at 865-392-3400

4/16/2024 at 9:35AM. Call placed to Nilam Patel at 865-392-3400 to offer the provider an opportunity to provide additional information regarding their patient. Reached the voicemail and detailed reason for the call and contact information was provided.
4/17/2024 at 9:15AM. Call placed to Nilam Patel at 865-392-3400 to offer the provider an opportunity to provide additional information regarding their patient. Reached the voicemail and detailed reason for the call and contact information was provided.

Mark Dalle-Ave at 423-921-1600

4/16/2024 at 9:36AM Call placed to Mark Dalle-Ave at 423-921-1600 to offer the provider an opportunity to provide additional information regarding their patient. The line would not connect due to busy signal, no message was left.
4/17/2024 at 9:30AM. Call placed to Mark Dalle-Ave at 423-921-1600 to offer the provider an opportunity to provide additional information regarding their patient. The line would not connect due to busy signal, no message was left.

**QUESTIONS TO BE ADDRESSED:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s)**

A. Unspecified diastolic (congestive) heart failure, I50.30
B. chronic combined systolic & diastolic heart failure, I50.42
C. Essential hypertension, I10

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

A. Non-ischemic congestive cardiomyopathy, I42.9

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 02/07/2023 to current, and comment on the expected duration.**

The claimant is a 46-year-old male who was primarily diagnosed with unspecified diastolic (congestive) heart failure and essential hypertension. He presented on 1/31/23 with complaints of shortness of breath and abdominal pain. On 2/6/23 the claimant was seen for a follow-up regarding a cardiac evaluation. He complained of shortness of breath, swelling, cough, and fatigue. Examination revealed elevated blood pressure, obesity, and abdominal distention. An electrocardiogram revealed:

1. Abnormal ECG.

2. EKG reviewed sinus rhythm rate 90 non-specific intraventricular conduction delay is present.
3. PVCs are present.
4. Left atrial enlargement is present.

On 2/9/23 pedal edema was noted. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The claimant underwent a cardiac catheterization on 2/17/23 which revealed severe left ventricular dysfunction and dilated nonischemic cardiomyopathy. A blood pressure log dated 3/9/23 indicated a series of blood pressure readings from 03/09/2023 to 06/08/2023. The readings fluctuated between 93-108 systolic and 53-73 diastolic. On 5/24/23 the claimant presented with idiopathic dilated cardiomyopathy, left ventricular cardiac dysfunction, and essential hypertension. He continued to wear a Life Vest and was scheduled for a clinical cardiac electrophysiology consult with Dr. Nilam Patel on June 8, 2023. Additionally, he was following up with the heart failure specialist, Dr. Stribling, and was scheduled for an MRI to assess heart function and morphology with and without contrast on 06/15/2023. An examination on 6/23/23 revealed severe global left ventricular dysfunction and a history of SARS-CoV-2. He underwent an MRI which revealed a severe dilated left ventricle with severe dysfunction. The interpretation could not exclude prior infarction, but this certainly would not be consistent with findings on his coronary angiography. He was scheduled for a CRT-D implant in July. On 7/21/23 the claimant presented for a wound check post CRT-D. Monitoring was performed from 7/21-7/25 and revealed:

1. AP: 31 %, Right ventricular pacing (RVP): 96%, and left ventricular pacing: 99%.
2. Battery and Leads: Normal parameters are noted on the battery and lead and auto-threshold measurement unavailable or programmed off on the lead. Status: 9.5 years.
3. Presenting Rhythm: Atrial Sensing – Biventricular Pacing (AS-BiVP).
4. Arrhythmic events: No new arrhythmic events in the monitoring period.
5. Cardiovascular Physiologic Parameters: No abnormalities in physiologic parameters were identified.

He reported lightheadedness and fatigue but denied chest pain, dyspnea, edema, or palpitations. An undated short term disability form reported symptoms of dyspnea, swelling, and hypotension, indicative of left ventricular dysfunction at 35% on maximum tolerable medical therapy. The recent CRT-D implantation was performed. He was diagnosed with nonischemic cardiomyopathy and chronic systolic heart failure.

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:

Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.

From 4/1/23-6/7/23, and from 7/22/23 onward, the following restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Sitting: Constant
Standing: Frequent
Walking: Frequent

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities

Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the waist: Unrestricted, bilateral

There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Balance: Never
Climb ladders: Occasional
Operate heavy machinery: Never
Drive: Occasional
Climb stairs: Occasional
Bend: Occasional
Crawl: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Twist: Occasional
Crouch: Occasional
Use lower extremity foot controls: Occasional, bilateral

The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24)

**4. Do medical records support any Restrictions and Limitations that were recommended by treating providers for the timeframes in questions?**

An attending physician's statement dated 6/9/23 noted that the claimant was advised to stop working on 02/06/2023. He was recommended to avoid heavy lifting and use chainsaws or welding. He could occasionally perform sitting, walking, standing, carrying/lifting up to 10 pounds. This reviewer respectfully disagrees due to the fact that the claimant was to undergo cardiac catheterization on 2/17/23 and therefore should be restricted from all work-related activities from 2/17/23 to 3/31/23 to allow for recovery. The periods of total restriction are from 2/17/23-3/31/23 for heart cath and recovery, and from 6/8/23 to 7/21/23 for defibrillator implantation and recovery. From 4/1/23 to 6/7/23, and from 7/22/23 onward, the above-mentioned restrictions and limitations are supported.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes. The medical management recommended by the provider and/or followed by the claimant included medications, ICD implantation, diagnostic imaging, and follow-up appointments. These are clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No. There are no non-medical circumstances identified in the medical records that would adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.**

No. There is no evidence that the claimant suffers any side effects from the medications that would impact occupational functioning.

**8. Do the medical records indicate restrictions and Limitations that would prevent the claimant from performing on a reliable and consistent basis?**

During the time period of 2/7/23-7/21/23 it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities and therefore is unable to perform on a reliable and consistent basis during that time. However, from 7/22/23 onward, this reviewer opines that within the confines of the restrictions and limitations noted above, the claimant is capable of performing on a reliable and consistent basis.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment, or issue under review for this specific case. I have current, relevant experience and/or knowledge to determine this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to the referral of this review. I have no relationship, affiliation, or conflict of interest with the covered person or the covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial, or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review,

any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial, or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

David A. Friedman, MD
Board Certified Cardiologist
NY: 223696-01

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office

Claimant Name: David Fields
Claim Number: 1230070518
Case Number: 264694-1

"I, David A Friedman, MD, am a physician duly licensed to practice medicine in the State of NY. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

4/23/2024

Signature of Physician Date

Medical/Professional License # 223696-01

**Lincoln/Fields 2382**

Corporate Office

Exam Coordinators Network A division of Genex Services, LLC

**April 25, 2024**

**Claimant Name: David Fields**

**Claim #: 1230070518**

**Primary Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension**

**DOD: 2/7/2023**

**DOR: 4/10/2024**

**Job Title: truck driver**

**ECN #: 264694-2**

**Specialty: Cardiology**

# David A Friedman MD

***Board Certified in Cardiology***

**Claimant Name:** David Fields
**Date of Loss:** 02/07/2023
**ECN #:** 264694-2
**Claim #:** 1230070518
**Date of service:** 04/25/2024

**Clarification:**
**Thank you for your report regarding the LTD claim for David Fields. After reviewing your report, we are requesting a clarification to your answer for question 3.**
**1. Please state restrictions/limitations for the period of 2/7/23-2/17/23.**

Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment, or issue under review for this specific case. I have current, relevant experience and/or knowledge to determine this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to the referral of this review. I have no relationship, affiliation, or conflict of interest with the covered person or the covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial, or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial, or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

David A. Friedman, MD
Board Certified Cardiologist
NY: 223696-01

Angelle Nash, MHS, CRC
Email: Angelle.Nash@lfg.com
Group Benefits Claims

## Life Transferable Skills Analysis

**Date:** 5/6/24
**Insured:** David Fields
**Claim #:** 1230070518
**Claim Specialist:** Jeff Booth
**Policyholder:**. East Tennessee Iron & Metal Works, Inc.

A life Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the insured's transferable skills to determine if alternative occupations exist in the national economy.

**Documentation/Resources reviewed:**
Job description 4/30/24, DOT, ONET, and the restrictions and limitations in the peer report completed by Dr. David Friedman, cardiologist dated 4/24/24 and the clarification letter dated 4/25/24

**Education & Training:**
Education: The insured is a 46-year-old male who has worked as a truck driver for the last 18 years. He has performed the work as a truck driver for the same employer since 2005. Ther is no training, education and experience form on file. It is assumed that he has a high school diploma given his work history and length of sustained employment.

**Work History:**

| DOT Code | Job Title/Occupation Title | SVP | Yrs. | Strength |
|---|---|---|---|---|
| 905.663-014 | Truck Driver, Heavy | 4 | 17 | M |

**Restrictions and Limitations:**
The R&Ls per Dr. Friedman

"Due to history of chronic heart conditions, the presence of an autonomic cardiac detibnllator, and symptoms of lightheadedness and fatigue:
Sitting: Constant
Standing: Frequent
Walking: Frequent

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities

Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the waist: Unrestricted, bilateral

There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:

Balance: Never
Climb ladders: Occasional
Operate heavy machinery: Never
Drive: Occasional
Climb stairs: Occasional
Bend: Occasional
Crawl: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Twist: Occasional
Crouch: Occasional
Use lower extremity foot controls: Occasional, bilateral

The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24)."

Per the clarification dated 4/25/24:

"Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery."

**Skills & Abilities:**

**Truck Driver, Heavy**

Knowing how to operate motor vehicles or control movement of marine craft; coordinating eyes, hands, and feet to control movement of vehicle or craft on roads or waterways; observing traffic regulations; and using arithmetic for collecting delivery receipts or money.

**Profile Adjustments:**

GED: Reasoning, mathematics and language adjusted to grades 9-12
Strength: adjusted to light
Physical: Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown.
Environmental conditions: Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown.
Work Situations: Performing a variety of duties, attaining precise limits/tolerances, following specific instructions, dealing with people, and making judgments and decisions were adjusted to yes. The insured was responsible for securing equipment onto trailers, hauling/driving equipment and supplies according to DOT requirements, delivering equipment according to instructions from customers and management; and completing inspection reports and log sheets according to company requirements.
Work Functions:

- Data: Computing and copying were adjusted to yes. The insured was responsible for calculating mileage distances and completing inspection sheets, log sheets, and mileage reports.
- People: Taking instructions-helping were adjusted to yes. The insured was responsible for following instructions from customers and managers regarding delivery of equipment.
- Things: Manipulating and handling were adjusted to yes because the insured was responsible for securing equipment onto trailers, performing inspections and basic troubleshooting, and using hands/arms to operate equipment and trucks.

**Summary:**

The Transferable Skills Analysis identified occupations within the insured's education, training, life experience, transferable skills, station in life and physical capacities outlined.

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | SVP | Str |
|---|---|---|---|
| 913.663-014 | Mobile Lounge Driver | 3 | L |

Updated 5/7/24

| | | | |
|---|---|---|---|
| 919.663-010 | Deliverer, Car Rental | 3 | L |
| 919.663-022 | Escort Vehicle Driver | 2 | S |
| 209.667-014 | Order Caller | 2 | L |
| 222.687-022 | Routing Clerk | 2 | L |

I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information, medical records and resources noted.

---

*Respectfully submitted,*

***Electronically Signed***

*Angelle W. Nash, MHS, CRC, LRC*
*Vocational Case Manager II*
*Group Benefits Claims*
*Lincoln Financial Group*

**Name:** Fields, David

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 905.663-014 | Truck Driver, Heavy | 4 | 18 | 0 | Y | N | N | M | 05.08.01 |

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

| | | Changed From | Changed To |
|---|---|---|---|
| **Specific Vocational Preparation** | | | |
| Maximum | | 4 (3 to 6 months) | No Change |
| Minimum | | 4 (3 to 6 months) | 1 (Short demo only) |
| **General Educational Development** | | | |
| Reasoning | | 3 Grades 7-8 | 4 Grades 9-12 |
| Mathematics | | 2 Grades 4-6 | 4 Grades 9-12 |
| Language | | 2 Grades 4-6 | 4 Grades 9-12 |
| **Physical Demands** | | | |
| Strength | Maximum | M Medium | L Light |
| | Minimum | M Medium | S Sedentary |
| Climbing | | Occasionally | No Change |
| Balancing | | Never | No Change |
| Stooping | | Occasionally | No Change |
| Kneeling | | Never | Occasionally |
| Crouching | | Occasionally | No Change |
| Crawling | | Never | Occasionally |
| Reaching | | Frequently | Constantly |
| Handling | | Frequently | Constantly |
| Fingering | | Frequently | Constantly |
| Feeling | | Never | Unknown |
| Talking | | Occasionally | Unknown |
| Hearing | | Occasionally | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Frequently | Unknown |
| Depth Perception | | Frequently | Unknown |
| Accommodation | | Never | Unknown |
| Color Vision | | Frequently | Unknown |
| Field of Vision | | Frequently | Unknown |
| **Environmental Conditions** | | | |
| Exposure to Weather | | Occasionally | Unknown |
| Extreme Cold | | Never | Unknown |
| Extreme Heat | | Never | Unknown |
| Wet and/or Humid | | Never | Unknown |
| Vibration | | Never | Unknown |
| Atmospheric Conditions | | Never | Unknown |
| Proximity to Moving Mechanical Parts | | Never | Unknown |
| Exposure to Electrical Shock | | Never | Unknown |
| Working in High Exposed Places | | Never | Unknown |
| Exposure to Radiation | | Never | Unknown |
| Working with Explosives | | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals | | Never | Unknown |
| Other Environmental Conditions | | Never | Unknown |
| Noise Intensity Level | | Loud | Very Loud |

**DOT Aptitudes**

Updated 5/7/24

| | | |
|---|---|---|
| General Learning Ability | 3 (34-66 Percentile) | No Change |
| Verbal Aptitude | 4 (11-33 Percentile) | No Change |
| Numerical Aptitude | 4 (11-33 Percentile) | No Change |
| Spatial Aptitude | 3 (34-66 Percentile) | No Change |
| Form Perception | 4 (11-33 Percentile) | No Change |
| Clerical Aptitude | 4 (11-33 Percentile) | No Change |
| Motor Coordination | 3 (34-66 Percentile) | No Change |
| Finger Dexterity | 4 (11-33 Percentile) | No Change |
| Manual Dexterity | 3 (34-66 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 3 (34-66 Percentile) | No Change |
| Color Discrimination | 4 (11-33 Percentile) | No Change |
| **Work Situations (Temperaments)** | | |
| Directing, Controlling, Planning | No | No Change |
| Performing Repetitive Work | Yes | No Change |
| Influencing People | No | No Change |
| Performing a Variety of Duties | No | Yes |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | Yes |
| Following Specific Instructions | No | Yes |
| Dealing with People | No | Yes |
| Making Judgments and Decisions | No | Yes |
| **Work Functions - Data** | | |
| 0 Synthesizing | No | No Change |
| 1 Coordinating | No | No Change |
| 2 Analyzing | No | No Change |
| 3 Compiling | No | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | Yes | No Change |
| **Work Functions - People** | | |
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | No | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | No Change |
| 8 Taking Instructions-Helping | No | Yes |
| **Work Functions - Things** | | |
| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | Yes | No Change |
| 4 Manipulating | No | Yes |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | No | Yes |

Angelle Nash, MHS, CRC
Email: Angelle.Nash@lfg.com
Group Benefits Claims

## Life Transferable Skills Analysis

**Date:** 5/6/24
**Insured:** David Fields
**Claim #:** 1230070518
**Claim Specialist:** Jeff Booth
**Policyholder:**. East Tennessee Iron & Metal Works, Inc.

A life Transferable Skills Analysis utilizing the Occupational Access System (OASYS) was completed to assess the insured's transferable skills to determine if alternative occupations exist in the national economy.

**Documentation/Resources reviewed:**
Job description 4/30/24, DOT, ONET, and the restrictions and limitations in the peer report completed by Dr. David Friedman, cardiologist dated 4/24/24 and the clarification letter dated 4/25/24

**Education & Training:**
Education: The insured is a 46-year-old male who has worked as a truck driver for the last 18 years. He has performed the work as a truck driver for the same employer since 2005. Ther is no training, education and experience form on file. It is assumed that he has a high school diploma given his work history and length of sustained employment.

**Work History:**

| DOT Code | Job Title/Occupation Title | SVP | Yrs. | Strength |
|---|---|---|---|---|
| 905.663-014 | Truck Driver, Heavy | 4 | 17 | M |

**Restrictions and Limitations:**
The R&Ls per Dr. Friedman

"Due to history of chronic heart conditions, the presence of an autonomic cardiac detibnllator, and symptoms of lightheadedness and fatigue:
Sitting: Constant
Standing: Frequent
Walking: Frequent

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities

Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the waist: Unrestricted, bilateral

There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:

Balance: Never
Climb ladders: Occasional
Operate heavy machinery: Never
Drive: Occasional
Climb stairs: Occasional
Bend: Occasional
Crawl: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Twist: Occasional
Crouch: Occasional
Use lower extremity foot controls: Occasional, bilateral

The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24)."

Per the clarification dated 4/25/24:

"Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery."

**Skills & Abilities:**

**Truck Driver, Heavy**

Knowing how to operate motor vehicles or control movement of marine craft; coordinating eyes, hands, and feet to control movement of vehicle or craft on roads or waterways; observing traffic regulations; and using arithmetic for collecting delivery receipts or money.

**Profile Adjustments:**

GED: Reasoning, mathematics and language adjusted to grades 9-12
Strength: adjusted to light
Physical: Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown.
Environmental conditions: Adjusted to match restrictions and limitations above. Where no restrictions or limitations are provided, adjusted to unknown.
Work Situations: Performing a variety of duties, attaining precise limits/tolerances, following specific instructions, dealing with people, and making judgments and decisions were adjusted to yes. The insured was responsible for securing equipment onto trailers, hauling/driving equipment and supplies according to DOT requirements, delivering equipment according to instructions from customers and management; and completing inspection reports and log sheets according to company requirements.
Work Functions:

- Data: Computing and copying were adjusted to yes. The insured was responsible for calculating mileage distances and completing inspection sheets, log sheets, and mileage reports.
- People: Taking instructions-helping were adjusted to yes. The insured was responsible for following instructions from customers and managers regarding delivery of equipment.
- Things: Manipulating and handling were adjusted to yes because the insured was responsible for securing equipment onto trailers, performing inspections and basic troubleshooting, and using hands/arms to operate equipment and trucks.

**Summary:**

The Transferable Skills Analysis identified occupations within the insured's education, training, life experience, transferable skills, station in life and physical capacities outlined.

**Examples of Occupations identified based on National labor market and the insured's ability profile analysis:**

| DOT Code | Occupation | SVP | Str |
|---|---|---|---|
| 913.663-014 | Mobile Lounge Driver | 3 | L |

Updated 5/7/24

**Lincoln/Fields 2392**

| | | | |
|---|---|---|---|
| 919.663-010 | Deliverer, Car Rental | 3 | L |
| 919.663-022 | Escort Vehicle Driver | 2 | S |
| 209.667-014 | Order Caller | 2 | L |
| 222.687-022 | Routing Clerk | 2 | L |

I have not met with the insured for the purpose of this review. All opinions are based on review of vocational information, medical records and resources noted.

---

*Respectfully submitted,*

***Electronically Signed***

*Angelle W. Nash, MHS, CRC, LRC*
*Vocational Case Manager II*
*Group Benefits Claims*
*Lincoln Financial Group*

**Name:** Fields, David

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 905.663-014 | Truck Driver, Heavy | 4 | 18 | 0 | Y | N | N | M | 05.08.01 |

**ADJUSTED VARIABLES SUMMARY**

This report summarizes the changes made to the person's ability profile.

| | | Changed From | Changed To |
|---|---|---|---|
| **Specific Vocational Preparation** | | | |
| Maximum | | 4 (3 to 6 months) | No Change |
| Minimum | | 4 (3 to 6 months) | 1 (Short demo only) |
| **General Educational Development** | | | |
| Reasoning | | 3 Grades 7-8 | 4 Grades 9-12 |
| Mathematics | | 2 Grades 4-6 | 4 Grades 9-12 |
| Language | | 2 Grades 4-6 | 4 Grades 9-12 |
| **Physical Demands** | | | |
| Strength | Maximum | M Medium | L Light |
| | Minimum | M Medium | S Sedentary |
| Climbing | | Occasionally | No Change |
| Balancing | | Never | No Change |
| Stooping | | Occasionally | No Change |
| Kneeling | | Never | Occasionally |
| Crouching | | Occasionally | No Change |
| Crawling | | Never | Occasionally |
| Reaching | | Frequently | Constantly |
| Handling | | Frequently | Constantly |
| Fingering | | Frequently | Constantly |
| Feeling | | Never | Unknown |
| Talking | | Occasionally | Unknown |
| Hearing | | Occasionally | Unknown |
| Tasting/Smelling | | Never | Unknown |
| Near Acuity | | Frequently | Unknown |
| Far Acuity | | Frequently | Unknown |
| Depth Perception | | Frequently | Unknown |
| Accommodation | | Never | Unknown |
| Color Vision | | Frequently | Unknown |
| Field of Vision | | Frequently | Unknown |
| **Environmental Conditions** | | | |
| Exposure to Weather | | Occasionally | Unknown |
| Extreme Cold | | Never | Unknown |
| Extreme Heat | | Never | Unknown |
| Wet and/or Humid | | Never | Unknown |
| Vibration | | Never | Unknown |
| Atmospheric Conditions | | Never | Unknown |
| Proximity to Moving Mechanical Parts | | Never | Unknown |
| Exposure to Electrical Shock | | Never | Unknown |
| Working in High Exposed Places | | Never | Unknown |
| Exposure to Radiation | | Never | Unknown |
| Working with Explosives | | Never | Unknown |
| Exposure to Toxic or Caustic Chemicals | | Never | Unknown |
| Other Environmental Conditions | | Never | Unknown |
| Noise Intensity Level | | Loud | Very Loud |

**DOT Aptitudes**

| | | |
|---|---|---|
| General Learning Ability | 3 (34-66 Percentile) | No Change |
| Verbal Aptitude | 4 (11-33 Percentile) | No Change |
| Numerical Aptitude | 4 (11-33 Percentile) | No Change |
| Spatial Aptitude | 3 (34-66 Percentile) | No Change |
| Form Perception | 4 (11-33 Percentile) | No Change |
| Clerical Aptitude | 4 (11-33 Percentile) | No Change |
| Motor Coordination | 3 (34-66 Percentile) | No Change |
| Finger Dexterity | 4 (11-33 Percentile) | No Change |
| Manual Dexterity | 3 (34-66 Percentile) | No Change |
| Eye-Hand-Foot Coordination | 3 (34-66 Percentile) | No Change |
| Color Discrimination | 4 (11-33 Percentile) | No Change |
| **Work Situations (Temperaments)** | | |
| Directing, Controlling, Planning | No | No Change |
| Performing Repetitive Work | Yes | No Change |
| Influencing People | No | No Change |
| Performing a Variety of Duties | No | Yes |
| Expressing Personal Feelings | No | No Change |
| Working Alone or in Isolation | No | No Change |
| Performing Under Stress | No | No Change |
| Attaining Precise Limits/Tolerances | No | Yes |
| Following Specific Instructions | No | Yes |
| Dealing with People | No | Yes |
| Making Judgments and Decisions | No | Yes |
| **Work Functions - Data** | | |
| 0 Synthesizing | No | No Change |
| 1 Coordinating | No | No Change |
| 2 Analyzing | No | No Change |
| 3 Compiling | No | No Change |
| 4 Computing | No | Yes |
| 5 Copying | No | Yes |
| 6 Comparing | Yes | No Change |
| **Work Functions - People** | | |
| 0 Mentoring | No | No Change |
| 1 Negotiating | No | No Change |
| 2 Instructing | No | No Change |
| 3 Supervising | No | No Change |
| 4 Diverting | No | No Change |
| 5 Persuading | No | No Change |
| 6 Speaking-Signaling | Yes | No Change |
| 7 Serving | No | No Change |
| 8 Taking Instructions-Helping | No | Yes |
| **Work Functions - Things** | | |
| 0 Setting Up | No | No Change |
| 1 Precision Working | No | No Change |
| 2 Operating-Controlling | No | No Change |
| 3 Driving-Operating | Yes | No Change |
| 4 Manipulating | No | Yes |
| 5 Tending | No | No Change |
| 6 Feeding-Offbearing | No | No Change |
| 7 Handling | No | Yes |

EAST TENNESSEE IRON & METAL, INC.
P. O. Box 460
Rogersville, Tennessee 37857

Tel. 423-235-4119
Fax 423-235-4149

**JOB DESCRIPTION:**

**Position:** Driver

**Essential Duties:**

- Responsible for maintaining CDL and related requirements as outlined and enforced by TDOT.
- Safely Drive a straight shift 10 speed Truck (roll-off, flatbed or trailer) and do all steps required to Load and Unload a Roll-off Box(s), Hopper(s) and/or trailer. A load must be secured which includes tarping, chaining and properly securing load. This process would include climbing or other physically demanding tasks and ability to lift carry or move up to 25 lbs. If over 25 lbs. should be able to run equipment to move scrap or other items to secure the load.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 10, 2024

EAST TENNESSEE IRON & METAL WORKS, INC.
ATTN Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Re: Extension of Death Benefit
Insured: David Fields
Policy Number: 00001020986000000
Claim Number: 1230070518

Dear Robin McLellan:

We are writing in regard to the Extension of Death Benefit appeal for David Fields.

We have found it necessary to request additional information from David.

As soon as the requested information is received, we will notify you of the disposition of the appeal. Thank you for your patience during this time

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

ECN
Exam Coordinators Network
Corporate Office

**April 25, 2024**

**Claimant Name: David Fields**

**Claim #:  1230070518**

**Primary Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension**

**DOD:  2/7/2023**

**DOR:  4/10/2024**

**Job Title: truck driver**

**ECN #: 264694-2**

**Specialty: Cardiology**

# David A Friedman MD

***Board Certified in Cardiology***

**Claimant Name:** David Fields
**Date of Loss:** 02/07/2023
**ECN #:** 264694-2
**Claim #:** 1230070518
**Date of service:** 04/25/2024

**Clarification:**
**Thank you for your report regarding the LTD claim for David Fields. After reviewing your report, we are requesting a clarification to your answer for question 3.**
**1. Please state restrictions/limitations for the period of 2/7/23-2/17/23.**

Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/7/23-2/16/23 prior to heart cath, and then from 2/17/23 to 3/31/23 for recovery.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment, or issue under review for this specific case. I have current, relevant experience and/or knowledge to determine this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to the referral of this review. I have no relationship, affiliation, or conflict of interest with the covered person or the covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial, or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review, any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial, or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

David A. Friedman, MD
Board Certified Cardiologist
NY: 223696-01

ECN
Exam Coordinators Network
Corporate Office
Boca Raton, Florida 33487
Toll Free: [illegible]


**April 23, 2024**

**Claimant Name: David Fields**

**Claim #:  1230070518**

**Primary Diagnosis: unspecified diastolic (congestive) heart failure, essential hypertension**

**DOD:  2/7/2023**

**DOR:  04/10/2024**

**Job Title: truck driver**

**ECN #: 264694-1**

**Specialty: Cardiology**

**Lincoln/Fields 2401**

# David A Friedman MD

***Board Certified in Cardiology***

**Claimant Name:** David Fields
**Date of Loss:** 02/07/2023
**ECN #:** 264694-1
**Claim #:** 1230070518
**Date of service:** 04/23/2024

## PEER REVIEW

**MEDICAL INFORMATION REVIEWED**

I have been asked to review the medical records on behalf of ECN

- 01/31/2023 – Hawkins County Memorial Hospital – Hospitalization – Connie A. Manz Hinkle, MD
- 02/06/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD
- 02/06/2023 – Tennova Heart – Turkey – Electrocardiogram
- 02/07/2023 – 07/14/2023 – Lab Reports
- 02/09/2023 – Turkey Creek Medical Center – TTE Echo – Barry Michelson, MD
- 02/09/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD
- 02/09/2023 – Lincoln Financial Group – Attending Physician Statement – Mark J. Dalle-Ave, MD
- 02/09/2023 – Tennova – Turkey Creek Medical Center – Ultrasound Abdomen Complete – Dylan P Simmons, DO
- 02/17/2023 – Tennova – Turkey Creek Medical Center – Cardiac Catheterization – Barry I. Michelson, MD
- 02/24/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD
- 03/08/2023 – ETHC–South – Follow-Up – Barry Michelson, MD
- 03/09/2023 – Tennova Heart Nurse Station 2 – Blood Pressure Log
- 03/18/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD
- 04/13/2023 – Saint Thomas Medical Partners – Progress Note – Warren K. Stribling, MD
- 05/03/2023 – Treatment Plan – Barry Michelson, MD
- 05/08/2023 – Jefferson Memorial Hospital Tennova – TTE ECHO – Barry Michelson, MD
- 05/24/2023 – ETHC – Office Visit – Mark J. Dalle-Ave, MD
- 05/24/2023 – ETHC – Turkey Creek – Work Status Report – Barry Michelson, MD:
- 06/08/2023 – ECG
- 06/08/2023 – ETHC–Turkey Creek – Office Visit – Nilam Patel, MD
- 06/09/2023– Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD
- 06/15/2023 – The University of Tennessee Medical Center – MRI Cardiac Morphology with and without Contrast Flow Velocity Quantification – Anne Kassira, MD
- 06/23/2023 – ETHC – South – Follow-Up – Barry Michelson, MD
- 07/14/2023 – Tennova - Turkey Creek Medical Center – X-ray of the Chest 2 Views DR – Dylan P. Simmons, D
- 07/21/2023 – ETHC – Turkey Creek – Office Visit – Sara Johnson, NP
- 07/21/2023 – Cardiac Monitoring

- 07/25/2023 – Geneva Health Solutions – Cardiac Resynchronization Therapy-Defibrillator Report (CRT-D) – Nilamkumar Patel, MD
- 07/31/2023 – ETHC Knoxville HMA Cardiology PPM LLC – Electrocardiogram
- 08/01/2023 – Rural Health Services Consortium, Inc – Office Visit – Mark J. Dalle-Ave, MD
- Undated – Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD

**CLINICAL SYNOPSIS**

The claimant is a 46-year-old male who was primarily diagnosed with unspecified diastolic (congestive) heart failure and essential hypertension.

**DIAGNOSTIC REPORTS**

02/06/2023 – Tennova Heart – Turkey – Electrocardiogram:

1. Abnormal ECG.
2. EKG reviewed sinus rhythm rate 90 non-specific intraventricular conduction delay is present.
3. PVCs are present.
4. Left atrial enlargement is present.

02/09/2023 – Turkey Creek Medical Center – TTE Echo – Barry Michelson, MD:

1. EF estimated at 10-15% Severe global hypokinesis.
2. Diastolic filling pattern normal.
3. The left ventricle size is mildly dilated.
4. RV Global systolic function is mildly diminished.
5. A valve is a tri-leaflet and normal in structure. No evidence of stenosis.
6. The left atrium is mildly enlarged.
7. The right atrium is mildly enlarged.
8. Mild tricuspid regurgitation visualized.
9. Right ventricular systolic pressure is mildly elevated and is estimated at 46mmHg.

02/09/2023 – Tennova – Turkey Creek Medical Center – Ultrasound Abdomen Complete – Dylan P Simmons, DO:

1. Mildly coarsened hepatic parenchymal echotexture with a small volume of upper abdominal ascites.
2. Bilateral pleural effusions.
3. Limited visualization of the liver, spleen, aorta, and IVC due to obscuring bowel gas.

02/24/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD:

1. No impression given.

03/18/2023 – ETHC Knoxville HMA Cardiology PPM LLC – ICD Monitoring – Barry Michelson, MD:

1. No impression given.

05/08/2023 – Jefferson Memorial Hospital Tennova – TTE ECHO – Barry Michelson, MD:

1. The left ventricle size is moderately dilated.
2. Left ventricular systolic function is estimated at 20%.
3. Diastolic filling pattern Grade II, which is consistent with moderately elevated LV filling pressure.
4. The right ventricle systolic function is mildly impaired.
5. Mild aortic regurgitation.
6. The left atrium is mild to moderately enlarged.
7. Mild to moderate mitral regurgitation is present.
8. Mild tricuspid regurgitation is present.

9. The right ventricular systolic pressure is mildly elevated and is estimated at 40 mmHg.

06/08/2023 – ECG:
1. Sinus rhythm with prolonged PR interval.
2. Probable left atrial enlargement.
3. Nonspecific intraventricular conduction delay with left axis deviation.
4. ST elevation with probable normal early repolarization pattern.
5. Abnormal ECG.

06/15/2023 – The University of Tennessee Medical Center – MRI Cardiac Morphology with and without Contrast Flow Velocity Quantification – Anne Kassira, MD:
1. Severely dilated left ventricle with moderate systolic dysfunction, EF 26.97%. There is akinesis and wall thinning of the anterior, inferior, and lateral walls. The septal wall contracts best. There is no evidence of iron overload. There is 50% subendocardial LGE in the basal and mid lateral walls consistent with an infarct pattern. There is also nonspecific mid myocardial LGE in the basal septal wall, not consistent with infarct pattern.
2. Normal right ventricular size with moderate systolic dysfunction, EF 31.79%.
3. Moderate left atrial enlargement, mild right atrial enlargement.
4. Mild mitral regurgitation.
5. Dilated main pulmonary artery.

07/14/2023 – Tennova - Turkey Creek Medical Center – X-ray of the Chest 2 Views DR – Dylan P. Simmons, DO:
1. Biventricular cardiac pacer/AICD.
2. No pneumothorax.
3. Cardiomegaly with mild interstitial pulmonary edema and bibasilar atelectasis.
4. Focal right perihilar opacity which may be related to atelectasis, focal airspace disease, or pulmonary nodule. Follow-up chest radiograph is recommended to evaluate for resolution.

07/21/2023 – Cardiac Monitoring:
1. No impression was given.

07/25/2023 – Geneva Health Solutions – Cardiac Resynchronization Therapy-Defibrillator Report (CRT-D) – Nilamkumar Patel, MD:
1. Monitoring period: 07/21/2023 - 07/25/2023.
2. AP: 31 %, Right ventricular pacing (RVP): 96%, and left ventricular pacing: 99%.
3. Battery and Leads: Normal parameters are noted on the battery and lead and auto-threshold measurement unavailable or programmed off on the lead. Status: 9.5 years.
4. Presenting Rhythm: Atrial Sensing – Biventricular Pacing (AS-BiVP).
5. Arrhythmic events: No new arrhythmic events in the monitoring period.
6. Cardiovascular Physiologic Parameters: No abnormalities in physiologic parameters were identified.

07/31/2023 – ETHC Knoxville HMA Cardiology PPM LLC – Electrocardiogram:
1. No impression was given.

**LAB REPORTS**
02/07/2023 – Lab Reports
Glucose: 145.0, Result: High
ALT: 72.0, Result: High
AST: 51.0, Result: High

Total Bilirubin: 2.5, Result: High
pro-B-Type Natriuretic Peptide: 3953.0, Result: High

02/17/2023 – Lab Reports:
PT: 17.0, Result: High

03/08/2023 – Lab Reports:
NT PROBNP: 2739, Result: High
Sodium: 136.0, Result: Low

07/14/2023 – Lab Reports:
Sodium: 137.0, Result: Low
PT: 14.2, Result: High
WBC: 3.0, Result: Low
INSTR WBC: 3.0, Result: Low

**OPERATIVE REPORTS**
02/17/2023 – Tennova – Turkey Creek Medical Center – Cardiac Catheterization – Barry I. Michelson, MD:
The preoperative diagnosis was severe left ventricular dysfunction.
The postoperative diagnosis was dilated nonischemic cardiomyopathy.
The procedure performed was a left heart catheterization, coronary angiography, and left ventriculography under conscious sedation for 21 minutes.
The claimant tolerated the procedure well.

**OFFICE VISITS**
01/31/2023 – Hawkins County Memorial Hospital – Hospitalization – Connie A. Manz Hinkle, MD:
The claimant presented with ongoing lower abdominal pain, heartburn, and nausea for 5 days. He reported acid reflux, and shortness of breath, and described his abdominal pain as soreness and aching. His examination revealed tenderness in the lower quadrants. Tests showed abnormal urinalysis results of protein semi-quantitative (30). X-rays indicated no acute findings. His assessment was unspecified abdominal pain. Discharged with medications and advised to follow up with primary care for further evaluation.

02/06/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD:
The claimant was seen for a follow-up regarding cardiac evaluation. The claimant complained of shortness of breath, swelling, cough, and fatigue. He stated that he gained weight, felt his belly was swollen and distended, and had mild edema over his lower calves. Additionally, he reported his bowel habits increased in frequency and urination diminished lightly. Examination revealed elevated blood pressure, obesity, and abdominal distention. The diagnosis included dyspnea on exertion, swollen abdomen, edema of the lower extremity, and multiple premature ventricular complexes. The treatment plan involved cardiac evaluation, echocardiogram, lab work, stress test, abdominal ultrasound, and potential cardiac monitor.

02/09/2023 – ETHC – Turkey Creek – Follow-up – Barry Michelson, MD:
The claimant presented for follow-up for cardiac evaluation due to complaints of abdominal distention, pedal edema, and shortness of breath with activity. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The assessment included heart failure and essential hypertension. The treatment plan included changes in medication regimen with the addition of Entresto and SGLT2 inhibitor, continued monitoring of blood pressures for essential hypertension, and cardiac catheterization.

02/19/2023 – Lincoln Financial Group – Attending Physician Statement – Mark J. Dalle-Ave, MD:

The claimant presented with symptoms of shortness of breath, swelling, cough, and fatigue. Examination findings revealed severe global left ventricular dysfunction with an ejection fraction of 10-15% and hypertension. The diagnosis was congestive heart failure and hypertension. His condition led him to reduce his ability to work and was advised to stop working on 02/08/2023. The provider stated that they do not do limitations and restrictions. The treatment plan included a heart echo on 02/09/2023, heart catheterization on 02/17/2023, and being seen by Dr. Barry Michelson, MD (cardiologist).

03/08/2023 – ETHC–South – Follow-Up – Barry Michelson, MD:
The claimant presented with complaints of heart failure, essential hypertension, and left ventricular cardiac dysfunction. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The claimant was assessed for primary idiopathic dilated cardiomyopathy, heart failure, and essential hypertension. The planned treatment included adding spironolactone to the medical regimen, increasing the dose of carvedilol, and scheduling a follow-up evaluation by the advanced heart failure team from St. Thomas. Changes in medication, including the addition of Entresto and an SGLT2 inhibitor, were recommended. The claimant was also instructed to continue monitoring blood pressure for adequate control.

03/09/2023 – Tennova Heart Nurse Station 2 – Blood Pressure Log:
The claimant's medical records indicated a series of blood pressure readings from 03/09/2023 to 06/08/2023. The readings fluctuated between 93-108 systolic and 53-73 diastolic. No specific diagnosis or treatment plan was provided in the document.

04/13/2023 – Saint Thomas Medical Partners – Progress Note – Warren K. Stribling, MD:
The claimant presented a history of COVID-19 and a recent diagnosis of NICM EF 10-15%, along with CSHF. He reported significant improvement in symptoms, including weight loss and increased mobility. The claimant was assessed for chronic systolic heart failure, nonischemic congestive cardiomyopathy, severely obese BMI, and obstructive sleep apnea syndrome. The planned treatment included ongoing medication management, assessment of LVSF, advice on weight loss, and continued use of CPAP for sleep apnea. Recommended follow-up on 10/12/2023.

05/03/2023 – Treatment Plan – Barry Michelson, MD:
The claimant was being managed with GDMT - Entresto, Farxiga, and spironolactone. The claimant was unable to up-titrate medications due to a hypotensive response. The healthcare provider planned to reassess EF on 05/08/2023, and the heart failure clinic wanted to continue MRI on 06/15/2023 and referred the claimant to an EP doctor for further evaluation. Additionally, the claimant was scheduled for an MRI to assess heart function.

05/24/2023 – ETHC – Office Visit – Mark J. Dalle-Ave, MD:
The claimant presented with primary idiopathic dilated cardiomyopathy, left ventricular cardiac dysfunction, and essential hypertension. He continued to wear a Life Vest and was scheduled for a clinical cardiac electrophysiology consult with Dr. Nilam Patel on June 8, 2023. Additionally, he was following up with the heart failure specialist, Dr. Stribling, and was scheduled for an MRI to assess heart function and morphology with and without contrast on 06/15/2023. The care plan included continuing to wear the Life Vest as directed, continuing medications, and undergoing testing as indicated. The goal was to improve the left ventricular ejection fraction.

06/08/2023 – ETHC – Turkey Creek – Office Visit – Nilam Patel, MD:
The claimant presented with left ventricular dysfunction and was diagnosed with nonischemic congestive cardiomyopathy. The assessments included nonischemic congestive cardiomyopathy, chronic systolic heart failure, essential hypertension, history of Sars Cov-2, first-degree atrioventricular block, obstructive sleep apnea syndrome, and obesity. The planned treatment included medication management with Entresto, Farxiga, spironolactone, and carvedilol. Additionally, the claimant was indicated for the insertion of a

permanent subcutaneous implantable defibrillator system due to the persistently low left ventricular systolic function despite maximum tolerable medical therapy for heart failure.

06/09/2023– Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD:
The claimant presented with dyspnea, swelling, and hypertension. Examination revealed reduced left ventricular function at <35% on maximum tolerable medical therapy. He was diagnosed with non-ischemic congestive cardiomyopathy and chronic systolic heart failure. MRI of the heart was pending. The symptoms first appeared on 02/01/2023 and he was advised to stop working on 02/06/2023. He was recommended to avoid heavy lifting and use chainsaws or welding. He could occasionally perform sitting, walking, standing, carrying/lifting up to 10 lbs. The treatment plan included medication optimization and probable subcutaneous ICD, to be decided after cardiac MRI. The prognosis was guarded, and the claimant's ability to return to work full-time was yet to be determined.

06/23/2023 – ETHC – South – Follow-Up – Barry Michelson, MD:
The claimant presented with first-degree atrioventricular block and nonischemic congestive cardiomyopathy. Examination revealed severe global left ventricular dysfunction and a history of SARS-CoV-2. He underwent an MRI which revealed a severe dilated left ventricle with severe dysfunction. The interpretation could not exclude prior infarction, but this certainly would not be consistent with findings on his coronary angiography. He was assessed with primary idiopathic dilated cardiomyopathy, first-degree atrioventricular block, and a history of SARS-CoV-2. The treatment plan included adding Spironolactone, increasing carvedilol dosage, and scheduling a subcutaneous ICD implantation in July. Follow-up appointments were scheduled with Dr. Patel and the advanced heart failure team at St. Thomas.

07/21/2023 – ETHC – Turkey Creek – Office Visit – Sara Johnson, NP:
The claimant presented for a wound check post-CRT-D. He reported lightheadedness and fatigue but denied chest pain, dyspnea, edema, or palpitations. The physical exam revealed a clean incision. He was assessed with biventricular automatic implantable cardioverter defibrillator in situ, non-ischemic congestive cardiomyopathy, chronic systolic heart failure, essential hypertension, history of SARS-Cov-2, first-degree atrioventricular block, obstructive sleep apnea syndrome, and obesity. The assessment plan included monitoring the wound and assessing the cardiac function. Follow-up appointments were scheduled.

08/01/2023 – Rural Health Services Consortium, Inc – Office Visit – Mark J. Dalle-Ave, MD:
The claimant presented with complaints of hypertension and heart failure. He had a history of chronic conditions, including dilated cardiomyopathy, the presence of an autonomic cardiac defibrillator, dependence on other enabling machines and devices, morbid obesity due to excess calories, body mass index, and obstructive sleep apnea. The provider recommended continued medication, monitoring, and lifestyle modifications to manage the conditions. He was advised to follow up with a cardiologist and maintain a low-salt diet. Additionally, the claimant was encouraged to exercise and maintain a healthy BMI. The claimant's functional status remained unchanged.

Undated – Lincoln Financial Group – Short-Term Disability Claim Form Physician Statement – Nilam Patel, MD:
The claimant presented with symptoms of dyspnea, swelling, and hypotension, indicative of left ventricular dysfunction at 35% on maximum tolerable medical therapy. The recent CRT-D implantation was performed. He was diagnosed with nonischemic cardiomyopathy and chronic systolic heart failure. The symptoms first appeared on 02/01/2023 and he was advised to stop working on 02/08/2023. He was recommended to avoid heavy lifting and using chainsaw or welding. He could occasionally perform sitting, walking, standing, carrying/lifting to 25 lbs. The treatment plan included medication optimization and therapy from biventricular pacing from CRT-D. The claimant’s prognosis was guarded, and his ability to return to work full-time was uncertain.

**WORK STATUS REPORT**

05/24/2023 – ETHC – Turkey Creek – Work Status Report – Barry Michelson, MD:
The claimant was advised not to return to work for 3 months.

**AP CALLS**

Nilam Patel at 865-392-3400

4/16/2024 at 9:35AM. Call placed to Nilam Patel at 865-392-3400 to offer the provider an opportunity to provide additional information regarding their patient. Reached the voicemail and detailed reason for the call and contact information was provided.
4/17/2024 at 9:15AM. Call placed to Nilam Patel at 865-392-3400 to offer the provider an opportunity to provide additional information regarding their patient. Reached the voicemail and detailed reason for the call and contact information was provided.

Mark Dalle-Ave at 423-921-1600

4/16/2024 at 9:36AM Call placed to Mark Dalle-Ave at 423-921-1600 to offer the provider an opportunity to provide additional information regarding their patient. The line would not connect due to busy signal, no message was left.
4/17/2024 at 9:30AM. Call placed to Mark Dalle-Ave at 423-921-1600 to offer the provider an opportunity to provide additional information regarding their patient. The line would not connect due to busy signal, no message was left.

**QUESTIONS TO BE ADDRESSED:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s)**

A. Unspecified diastolic (congestive) heart failure, I50.30
B. chronic combined systolic & diastolic heart failure, I50.42
C. Essential hypertension, I10

**2. If applicable, please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

A. Non-ischemic congestive cardiomyopathy, I42.9

**3. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 02/07/2023 to current, and comment on the expected duration.**

The claimant is a 46-year-old male who was primarily diagnosed with unspecified diastolic (congestive) heart failure and essential hypertension. He presented on 1/31/23 with complaints of shortness of breath and abdominal pain. On 2/6/23 the claimant was seen for a follow-up regarding a cardiac evaluation. He complained of shortness of breath, swelling, cough, and fatigue. Examination revealed elevated blood pressure, obesity, and abdominal distention. An electrocardiogram revealed:

1. Abnormal ECG.

2. EKG reviewed sinus rhythm rate 90 non-specific intraventricular conduction delay is present.
3. PVCs are present.
4. Left atrial enlargement is present.

On 2/9/23 pedal edema was noted. Examination revealed severe global left ventricular dysfunction with an EF of 10 to 15%. The claimant underwent a cardiac catheterization on 2/17/23 which revealed severe left ventricular dysfunction and dilated nonischemic cardiomyopathy. A blood pressure log dated 3/9/23 indicated a series of blood pressure readings from 03/09/2023 to 06/08/2023. The readings fluctuated between 93-108 systolic and 53-73 diastolic. On 5/24/23 the claimant presented with idiopathic dilated cardiomyopathy, left ventricular cardiac dysfunction, and essential hypertension. He continued to wear a Life Vest and was scheduled for a clinical cardiac electrophysiology consult with Dr. Nilam Patel on June 8, 2023. Additionally, he was following up with the heart failure specialist, Dr. Stribling, and was scheduled for an MRI to assess heart function and morphology with and without contrast on 06/15/2023. An examination on 6/23/23 revealed severe global left ventricular dysfunction and a history of SARS-CoV-2. He underwent an MRI which revealed a severe dilated left ventricle with severe dysfunction. The interpretation could not exclude prior infarction, but this certainly would not be consistent with findings on his coronary angiography. He was scheduled for a CRT-D implant in July. On 7/21/23 the claimant presented for a wound check post CRT-D. Monitoring was performed from 7/21-7/25 and revealed:

1. AP: 31 %, Right ventricular pacing (RVP): 96%, and left ventricular pacing: 99%.
2. Battery and Leads: Normal parameters are noted on the battery and lead and auto-threshold measurement unavailable or programmed off on the lead. Status: 9.5 years.
3. Presenting Rhythm: Atrial Sensing – Biventricular Pacing (AS-BiVP).
4. Arrhythmic events: No new arrhythmic events in the monitoring period.
5. Cardiovascular Physiologic Parameters: No abnormalities in physiologic parameters were identified.

He reported lightheadedness and fatigue but denied chest pain, dyspnea, edema, or palpitations. An undated short term disability form reported symptoms of dyspnea, swelling, and hypotension, indicative of left ventricular dysfunction at 35% on maximum tolerable medical therapy. The recent CRT-D implantation was performed. He was diagnosed with nonischemic cardiomyopathy and chronic systolic heart failure.

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine and any other medication or other treatment side effects, the supported level of impairment translates into restriction and limitations from 2/7/23 to current and beyond of:

Due to the severity of the claimant complaints, with diagnoses of congestive heart failure and cardiomyopathy, with examination findings of chest pain, shortness of breath, edema, cough, and fatigue, and ejection fraction as low as 10-15% as noted on 2/9/23 attending physician's statement, a cardiac catheterization being performed on 2/17/23, and an implantation of cardioverter defibrillator in July of 2023, it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities from 2/17/23 to 3/31/23 to allow for cardiac catheterization and recovery, and from 6/8/23 to 7/21/23 for cardiac defibrillator implantation and recovery. The restrictions and limitations noted below are supported due to chronic heart conditions, lightheadedness, fatigue, and the presence of an autonomic cardiac defibrillator.

From 4/1/23-6/7/23, and from 7/22/23 onward, the following restrictions and limitations are supported due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Sitting: Constant
Standing: Frequent
Walking: Frequent

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Lifting: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pushing: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Pulling: Occasional, up to 25 pounds, utilizing bilateral upper extremities
Carrying: Occasional, up to 25 pounds, utilizing bilateral upper extremities

Reaching may exacerbate the claimant's lightheadedness
Reach at desk level: Unrestricted, bilateral
Reach above the shoulder: Occasional, bilateral
Reach below the waist: Unrestricted, bilateral

There are no upper extremity complaints below the shoulder level
Fine manipulation: Unrestricted, bilateral
Firm/simple grasp: Unrestricted, bilateral
Handle/finger/feel: Unrestricted, bilateral
Type: Unrestricted, bilateral

Due to history of chronic heart conditions, the presence of an autonomic cardiac defibrillator, and symptoms of lightheadedness and fatigue:
Balance: Never
Climb ladders: Occasional
Operate heavy machinery: Never
Drive: Occasional
Climb stairs: Occasional
Bend: Occasional
Crawl: Occasional
Stoop: Occasional
Kneel: Occasional
Squat: Occasional
Twist: Occasional
Crouch: Occasional
Use lower extremity foot controls: Occasional, bilateral

The above-recommended restrictions and limitations are temporary. A re-evaluation of the claimant's condition may be advisable in 3 months' time (7/16/24)

**4. Do medical records support any Restrictions and Limitations that were recommended by treating providers for the timeframes in questions?**

An attending physician's statement dated 6/9/23 noted that the claimant was advised to stop working on 02/06/2023. He was recommended to avoid heavy lifting and use chainsaws or welding. He could occasionally perform sitting, walking, standing, carrying/lifting up to 10 pounds. This reviewer respectfully disagrees due to the fact that the claimant was to undergo cardiac catheterization on 2/17/23 and therefore should be restricted from all work-related activities from 2/17/23 to 3/31/23 to allow for recovery. The periods of total restriction are from 2/17/23-3/31/23 for heart cath and recovery, and from 6/8/23 to 7/21/23 for defibrillator implantation and recovery. From 4/1/23 to 6/7/23, and from 7/22/23 onward, the above-mentioned restrictions and limitations are supported.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes. The medical management recommended by the provider and/or followed by the claimant included medications, ICD implantation, diagnostic imaging, and follow-up appointments. These are clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No. There are no non-medical circumstances identified in the medical records that would adversely impact work.

**7. Based on the claimant`s medication list, is there any evidence that he/she suffers any side effects from the medications that he/she is taking that would impact occupational functioning? If so, please outline specific side effects suffered, their impact on the occupational functioning and any appropriate restrictions as noted by the physician due to noted side effects.**

No. There is no evidence that the claimant suffers any side effects from the medications that would impact occupational functioning.

**8. Do the medical records indicate restrictions and Limitations that would prevent the claimant from performing on a reliable and consistent basis?**

During the time period of 2/7/23-7/21/23 it is the opinion of this reviewer that the claimant is totally restricted from all work-related activities and therefore is unable to perform on a reliable and consistent basis during that time. However, from 7/22/23 onward, this reviewer opines that within the confines of the restrictions and limitations noted above, the claimant is capable of performing on a reliable and consistent basis.

I hereby attest, as the reviewer of this request, I have personally reviewed all documents presented to me and that the opinion in this report is my own. I have a scope of licensure that typically manages the medical condition, procedure, treatment, or issue under review for this specific case. I have current, relevant experience and/or knowledge to determine this case. To the best of my knowledge, I have not been involved with the specific episode of care prior to the referral of this review. I have no relationship, affiliation, or conflict of interest with the covered person or the covered person's authorized representative whose treatment is the subject of this review. I have no material professional, familial, or financial conflict of interest with the referring entity, the insurance issuer or group health plan that is the subject of this review,

any officer director, or management employee of the insurance issuer that is the subject of this review, any group health plan administrator, plan fiduciary, or plan employee. I have no material professional, familial, or financial conflict of interest with the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of this review, the facility at which the recommended health care service or treatment would be provided or the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of this review, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review. As an independent reviewer, I have not and will not accept compensation for this or any other independent review activities that is dependent in any way on the specific outcome of this case or other cases. It is important to point out that this review is meant to be of assistance in the case evaluation process and is not intended to establish a patient/doctor relationship. Furthermore, my opinion does not constitute recommendations as to specific or administrative function. The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty.

Sincerely,

David A. Friedman, MD
Board Certified Cardiologist
NY: 223696-01

ECN Exam Coordinators Network A division of Genex Services, LLC
Corporate Office

Claimant Name: David Fields
Claim Number: 1230070518
Case Number: 264694-1

"I, David A Friedman, MD, am a physician duly licensed to practice medicine in the State of NY. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered
- All opinions are rendered within a reasonable degree of medical certainty

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

4/23/2024

Signature of Physician                                        Date

Medical/Professional License # 223696-01

**Lincoln/Fields 2413**

Date: Wed Apr 10 12:50:35 CDT 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: robin@easttniron.com
E-communication from Lincoln Financial Group
Message-ID: <1664469481.18.1712771435218.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.


**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com



Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 10, 2024

EAST TENNESSEE IRON & METAL WORKS, INC.
ATTN Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Re: Extension of Death Benefit
Insured: David Fields
Policy Number: 00001020986000000
Claim Number: 1230070518

Dear Robin McLellan:

We are writing in regard to the Extension of Death Benefit appeal for David Fields.

We have found it necessary to request additional information from David.

As soon as the requested information is received, we will notify you of the disposition of the appeal. Thank you for your patience during this time

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Wed Apr 10 12:50:37 CDT 2024
From: Jeff Booth <Jeff.Booth@lfg.com>
To: melindafields1@gmail.com
E-confirmation from Lincoln Financial Group
Message-ID: <34284196.23.1712771437998.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields.   You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com.   If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

April 10, 2024

DAVID L FIELDS

Re: Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear David:

This is to acknowledge receipt of your appeal for Extension of Death Benefit. We received your letter on 03/08/2024.

We are in the process of reviewing your appeal and we will notify you of the results within 45 days or as soon as a decision has been made.
At this time we will be coordinating medical records within your Long Term Disability claim.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Jeff Booth
800-423-2765 ex 2665
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2024 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

To Whom it May Concern: 03/08/24

My name is David Fields and I would like to ask that you reconsider my request for extension of my death benefits. In the letter enclosed your company deemed that I am not totally disabled but I now have been declaired disabled by social security. I am within my 180 days of appeal time.

Thank you in advance for your assistance.

# Fax

| | | | |
|---|---|---|---|
| To: | Heather Olson<br>Lincoln Financial Group | From: | David Fields |
| Fax: | 402-361-1460 | Pages: | 6 including coversheet |
| Phone: | | Date | 3-8-24 |
| Re: | | cc: | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐

Comments:

PAGE 3/6 * RCVD AT 3/8/2024 8:12:58 AM [Eastern Standard Time] * SVR:VA1PWFAX01/0 * DNIS:4023611460 * CSID:4233571811 * ANI:14233571811 * DURATION (mm-ss):01-52

Lincoln Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 14, 2023

DAVID L FIELDS

RE: Extension of Death Benefit
Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear Mr. Fields:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

In order for you to qualify for continued coverage without the payment of premiums under the group life policy issued to East Tennessee Iron & Metal Works, Inc. by The Lincoln National Life Insurance Company, it must be established that you are Totally Disabled. The policy defines Totally Disabled as follows:

> An Insured person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

Information submitted on your claim does not support that you are Totally Disabled per the definition above.

The documentation on file shows you ceased active work on 2/7/2023 due to a diagnosis of unspecified diastolic (congestive) heart and essential primary hypertension. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined above, throughout your six-month elimination period. Outlined below is the information reviewed which led to our determination.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

According to the Attending Physicians Statement dated 2/9/2023 by Dr. Barry Michelson, MD, Cardiology you were diagnosed with nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function), chronic systolic heart failure, and hypertension (HTN: high blood pressure). Dr. Michelson noted the following restrictions and limitations of occasionally lift/carry 0-25 pounds, stand, walk, balance, reach at desk level and below waist; frequently sit; and unable to drive, lift more than 25 pounds, climb, push, pull, and reach overhead. There had been no deficits in ADLs or loss of cognitive functioning.

Based on our review of the medical information received, we find that the records do not support restrictions and limitations that would preclude you from working in any occupation throughout the 6-month elimination period from 2/7/2023 - 8/7/2023. The medical findings do not support functional impairments that would preclude frequent sitting (with reasonable position changes as needed), independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding.

While your impairment may prevent you from performing the essential duties of your own occupation as truck driver, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

Due to these reasons, we find that you are not Totally Disabled based on the policy provision. Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy.

If you choose to appeal this decision, as part of our review of your appeal, you may also submit information associated with your Social Security Disability Award for our review, which may include a copy of the Administrative Law Judge Favorable Decision or a complete copy of your administrative file from the Social Security Administration. The pursuit and submission of this information will be at your own cost and is optional.

A separate letter that does not include your confidential information has been mailed to East Tennessee Iron & Metal Works, Inc. advising of our decision.

Please contact your Group Administrator regarding any life coverages not listed above. Continuation options may be available to you.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact East Tennessee Iron & Metal Works, Inc. within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

If you disagree with the company's decision, you have the right to file a complaint with the department:

TN Department of Commerce and Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243

The telephone number is 1-800-342-4029, or you may submit the request for review electronically to that section's website, currently found at: https://tn.gov/commerce/topic/commerce-file-a-complaint.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Heather Olson
800-423-2765 X-7127
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

# Fax

To: Lincoln Financial Group Heather Olson | From: David Fields

Fax: 402-361-1400 | Pages: 6 including coversheet

Phone: | Date 3-8-24

Re: | cc:

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐

Comments:

PAGE 1/6 * RCVD AT 3/8/2024 8:12:58 AM [Eastern Standard Time] * SVR:VA1PWFAX301/0 * DNIS:4023611400 * CSID:4233571811 * ANI:14233571811 * DURATION (mm-ss):01-52

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 14, 2023

DAVID L FIELDS

RE: Extension of Death Benefit
Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986C00000
Claim Number: 1230070518
Claimant: David Fields

Dear Mr. Fields:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

In order for you to qualify for continued coverage without the payment of premiums under the group life policy issued to East Tennessee Iron & Metal Works, Inc. by The Lincoln National Life Insurance Company, it must be established that you are Totally Disabled. The policy defines Totally Disabled as follows:

> An Insured person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

Information submitted on your claim does not support that you are Totally Disabled per the definition above.

The documentation on file shows you ceased active work on 2/7/2023 due to a diagnosis of unspecified diastolic (congestive) heart and essential primary hypertension. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined above, throughout your six-month elimination period. Outlined below is the information reviewed which led to our determination.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

According to the Attending Physicians Statement dated 2/9/2023 by Dr. Barry Michelson, MD, Cardiology you were diagnosed with nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function), chronic systolic heart failure, and hypertension (HTN: high blood pressure). Dr. Michelson noted the following restrictions and limitations of occasionally lift/carry 0-25 pounds, stand, walk, balance, reach at desk level and below waist; frequently sit; and unable to drive, lift more than 25 pounds, climb, push, pull, and reach overhead. There had been no deficits in ADLs or loss of cognitive functioning.

Based on our review of the medical information received, we find that the records do not support restrictions and limitations that would preclude you from working in any occupation throughout the 6-month elimination period from 2/7/2023 - 8/7/2023. The medical findings do not support functional impairments that would preclude frequent sitting (with reasonable position changes as needed), independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding.

While your impairment may prevent you from performing the essential duties of your own occupation as truck driver, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

Due to these reasons, we find that you are not Totally Disabled based on the policy provision. Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy.

If you choose to appeal this decision, as part of our review of your appeal, you may also submit information associated with your Social Security Disability Award for our review, which may include a copy of the Administrative Law Judge Favorable Decision or a complete copy of your administrative file from the Social Security Administration. The pursuit and submission of this information will be at your own cost and is optional.

A separate letter that does not include your confidential information has been mailed to East Tennessee Iron & Metal Works, Inc. advising of our decision.

Please contact your Group Administrator regarding any life coverages not listed above. Continuation options may be available to you.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact East Tennessee Iron & Metal Works, Inc. within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

If you disagree with the company's decision, you have the right to file a complaint with the department:

TN Department of Commerce and Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243

The telephone number is 1-800-342-4029, or you may submit the request for review electronically to that section's website, currently found at: https://tn.gov/commerce/topic/commerce-file-a-complaint.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Heather Olson
800-423-2765 X-7127
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

To Whom it May Concern: 03/08/24

My name is David Fields and I would like to ask that you reconsider my request for extension of my death benefits. In the letter enclosed your company deemed that I am not totally disabled but I now have been declaired disabled by social security. I am within my 180 days of appeal time.

Thank you in advance for your assistance.

# Fax

Heather Olson
To: Lincoln Financial Group | From: David Fields

Fax: 402-361-1460 | Pages: 6 including coversheet

Phone: | Date 3-8-24

Re: | cc:

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐

Comments:

Lincoln Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 14, 2023

DAVID L FIELDS

RE: Extension of Death Benefit
Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear Mr. Fields:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

In order for you to qualify for continued coverage without the payment of premiums under the group life policy issued to East Tennessee Iron & Metal Works, Inc. by The Lincoln National Life Insurance Company, it must be established that you are Totally Disabled. The policy defines Totally Disabled as follows:

> An Insured person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

Information submitted on your claim does not support that you are Totally Disabled per the definition above.

The documentation on file shows you ceased active work on 2/7/2023 due to a diagnosis of unspecified diastolic (congestive) heart and essential primary hypertension. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined above, throughout your six-month elimination period. Outlined below is the information reviewed which led to our determination.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

According to the Attending Physicians Statement dated 2/9/2023 by Dr. Barry Michelson, MD, Cardiology you were diagnosed with nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function), chronic systolic heart failure, and hypertension (HTN: high blood pressure). Dr. Michelson noted the following restrictions and limitations of occasionally lift/carry 0-25 pounds, stand, walk, balance, reach at desk level and below waist; frequently sit; and unable to drive, lift more than 25 pounds, climb, push, pull, and reach overhead. There had been no deficits in ADLs or loss of cognitive functioning.

Based on our review of the medical information received, we find that the records do not support restrictions and limitations that would preclude you from working in any occupation throughout the 6-month elimination period from 2/7/2023 - 8/7/2023. The medical findings do not support functional impairments that would preclude frequent sitting (with reasonable position changes as needed), independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding.

While your impairment may prevent you from performing the essential duties of your own occupation as truck driver, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

Due to these reasons, we find that you are not Totally Disabled based on the policy provision. Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy.

If you choose to appeal this decision, as part of our review of your appeal, you may also submit information associated with your Social Security Disability Award for our review, which may include a copy of the Administrative Law Judge Favorable Decision or a complete copy of your administrative file from the Social Security Administration. The pursuit and submission of this information will be at your own cost and is optional.

A separate letter that does not include your confidential information has been mailed to East Tennessee Iron & Metal Works, Inc. advising of our decision.

Please contact your Group Administrator regarding any life coverages not listed above. Continuation options may be available to you.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact East Tennessee Iron & Metal Works, Inc. within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

If you disagree with the company's decision, you have the right to file a complaint with the department:

TN Department of Commerce and Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243

The telephone number is 1-800-342-4029, or you may submit the request for review electronically to that section's website, currently found at: https://tn.gov/commerce/topic/commerce-file-a-complaint.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Heather Olson
800-423-2765 X-7127
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

To Whom it May Concern: 03/08/24

My name is David Fields and I would like to ask that you reconsider my request for extension of my death benefits. In the letter enclosed your company deemed that I am not totally disabled but I now have been declaired disabled by social security. I am within my 180 days of appeal time.

Thank you in advance for your assistance.

Date: Thu Sep 14 08:50:51 CDT 2023
From: Heather Olson <Heather.Olson@lfg.com>
To: robin@easttniron.com
E-communication from Lincoln Financial Group
Message-ID: <1500388503.38.1694699451910.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Heather Olson**
**Sr. Claims Examiner, Life Waiver 1**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X-7127
Fax: 402-951-0472
Email: Heather.Olson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 14, 2023

EAST TENNESSEE IRON & METAL WORKS, INC.
ATTN Robin McLellan
P.O. Box 460
Rogersville, TN 37857

Re: Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear Robin McLellan:

This letter is to inform you that the Extension of Death Benefit claim for David Fields has been denied.

A detailed letter has been sent to Mr. Fields advising of our decision and offering appeal rights. The letter also provides information regarding conversion. Due to protected health information, we are unable to provide you with a copy of the denial letter.

There may be two options available in order for Mr. Fields's life insurance coverage to remain in force. One option is to continue to pay premiums on Mr. Fields's behalf. Another option is to exercise the right to convert the life insurance policy. Mr. Fields has been advised to contact East Tennessee Iron & Metal Works, Inc. within 15 days from the date of this letter regarding eligibility for the conversion privilege.

Please contact our office with any questions you may have at the number listed below or email us at disabilityclaims@lfg.com.

Sincerely,

Heather Olson
800-423-2765 X-7127
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Date: Thu Sep 14 08:50:55 CDT 2023
From: Heather Olson <Heather.Olson@lfg.com>
To: melindafields1@gmail.com
Message-ID: <374353680.43.1694699455502.JavaMail.gman@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1230070518 (SECURE)

E-confirmation from Lincoln Financial Group

Lincoln Financial Group

LINCOLN FOR GROUP BENEFITS

## Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Heather Olson**
**Sr. Claims Examiner, Life Waiver 1**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
omaha, Nebraska 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 X-7127
Fax: 402-951-0472
Email: Heather.Olson@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

You're In Charge

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

September 14, 2023

DAVID L FIELDS

RE: Extension of Death Benefit
Policyholder: East Tennessee Iron & Metal Works, Inc.
Policy Number: 00001020986000000
Claim Number: 1230070518
Claimant: David Fields

Dear Mr. Fields:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by you or your employer. We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

In order for you to qualify for continued coverage without the payment of premiums under the group life policy issued to East Tennessee Iron & Metal Works, Inc. by The Lincoln National Life Insurance Company, it must be established that you are Totally Disabled. The policy defines Totally Disabled as follows:

> An Insured person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

Information submitted on your claim does not support that you are Totally Disabled per the definition above.

The documentation on file shows you ceased active work on 2/7/2023 due to a diagnosis of unspecified diastolic (congestive) heart and essential primary hypertension. After a thorough review of the information currently contained in your claim file, we have determined that you do not meet the policy's definition of Total Disability, as defined above, throughout your six-month elimination period. Outlined below is the information reviewed which led to our determination.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

According to the Attending Physicians Statement dated 2/9/2023 by Dr. Barry Michelson, MD, Cardiology you were diagnosed with nonischemic cardiomyopathy (disease of heart muscle that can cause decreased heart function), chronic systolic heart failure, and hypertension (HTN: high blood pressure). Dr. Michelson noted the following restrictions and limitations of occasionally lift/carry 0-25 pounds, stand, walk, balance, reach at desk level and below waist; frequently sit; and unable to drive, lift more than 25 pounds, climb, push, pull, and reach overhead. There had been no deficits in ADLs or loss of cognitive functioning.

Based on our review of the medical information received, we find that the records do not support restrictions and limitations that would preclude you from working in any occupation throughout the 6-month elimination period from 2/7/2023 - 8/7/2023. The medical findings do not support functional impairments that would preclude frequent sitting (with reasonable position changes as needed), independent occasional standing/walking (with reasonable positional changes throughout the day), lifting up to 10lbs occasionally, and performing repetitive tasks such as typing and keyboarding.

While your impairment may prevent you from performing the essential duties of your own occupation as truck driver, the medical evidence we have been provided does not support a significant impairment resulting in restrictions and limitations from working in any capacity.

Due to these reasons, we find that you are not Totally Disabled based on the policy provision. Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy.

If you choose to appeal this decision, as part of our review of your appeal, you may also submit information associated with your Social Security Disability Award for our review, which may include a copy of the Administrative Law Judge Favorable Decision or a complete copy of your administrative file from the Social Security Administration. The pursuit and submission of this information will be at your own cost and is optional.

A separate letter that does not include your confidential information has been mailed to East Tennessee Iron & Metal Works, Inc. advising of our decision.

Please contact your Group Administrator regarding any life coverages not listed above. Continuation options may be available to you.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact East Tennessee Iron & Metal Works, Inc. within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

**Appeal Rights**

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Once we receive your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. You may also request copies of records and other information relevant to your claim free of charge.

If your policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency.

In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under law.

If you disagree with the company's decision, you have the right to file a complaint with the department:

TN Department of Commerce and Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243

The telephone number is 1-800-342-4029, or you may submit the request for review electronically to that section's website, currently found at: https://tn.gov/commerce/topic/commerce-file-a-complaint.

Please contact us at the number listed below or at disabilityclaims@lfg.com with any questions. You can also register for our website at www.LincolnFinancial.com to view your benefits and claim status.

Sincerely,

Heather Olson
800-423-2765 X-7127
Sr. Claims Examiner, Life Waiver 1
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Koj̨į' hódíílnih áǫį̨óóǫéą̨ą́ǫąíę́ę.

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | Disability Claims |
| **Sent:** | Tuesday, May 7, 2024 12:59 PM |
| **To:** | entrprserip |
| **Subject:** | FW: upload request #1230070518 |
| **Attachments:** | 1230070518 TSA 5 6 24.pdf |

---

**From:** Nash, Angelle
**Sent:** Tuesday, May 7, 2024 12:58:47 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Disability Claims
**Cc:** Booth, Jeff
**Subject:** upload request #1230070518

Please upload the attached TSA report for #1230070518
Thanks,

**Angelle Nash, MHS, CRC, LRC**
Vocational Rehabilitation Counselor
Group Protection
**Lincoln Financial Group**
100 Liberty Way
Dover, NH 03820

531-375-4144 Phone
888- 358-3309 Fax

**LincolnFinancial.com**

**Follow us on:**

# ClaimsHOAdmin

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Tuesday, April 30, 2024 9:02 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE) |
| **Attachments:** | JOB DESCRIPTION Driver.doc |

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Tuesday, April 30, 2024 8:01:05 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE)

---

**From:** Robin MacLellan <robin@easttniron.com>
**Sent:** Tuesday, April 30, 2024 7:08 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** RE: Lincoln Financial Group Information for Claim 1230070518 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Here is David Fields Job description.

*Thanks,*
*Robin MacLellan*
*Accounting Manager*
*East TN Iron & Metal*
*423-235-0272*

---

**From:** Robin MacLellan
**Sent:** Tuesday, April 30, 2024 8:07 AM
**To:** Jeff.Booth@lfg.com
**Subject:** FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE)

See the attached job description for David Fields.

*Thanks,*
*Robin MacLellan*
*Accounting Manager*
*East TN Iron & Metal*
*423-235-0272*

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Wednesday, April 10, 2024 1:51 PM
**To:** Robin MacLellan <robin@easttniron.com>
**Subject:** Lincoln Financial Group Information for Claim 1230070518 (SECURE)

IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender Jeff.Booth@lfg.com

This message was sent securely using Zix®

a communication from Lincoln Financial Group

Lincoln Financial Group®

LINCOLN FOR GROUP BENEFITS

# Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1 800 423 2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by Zix®.

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Tuesday, April 30, 2024 9:01 AM |
| **To:** | entrprserip |
| **Subject:** | FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE) |
| **Attachments:** | LFG.PDF |

---

**From:** Booth, Jeff <Jeff.Booth@lfg.com>
**Sent:** Tuesday, April 30, 2024 8:00:39 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE)

---

**From:** Robin MacLellan <robin@easttniron.com>
**Sent:** Tuesday, April 30, 2024 7:07 AM
**To:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** FW: Lincoln Financial Group Information for Claim 1230070518 (SECURE)

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

See the attached job description for David Fields.

*Thanks,*
*Robin MacLellan*
*Accounting Manager*
*East TN Iron & Metal*
*423-235-0272*

---

**From:** Jeff Booth <Jeff.Booth@lfg.com>
**Sent:** Wednesday, April 10, 2024 1:51 PM
**To:** Robin MacLellan <robin@easttniron.com>
**Subject:** Lincoln Financial Group Information for Claim 1230070518 (SECURE)

**IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender Jeff.Booth@lfg.com**

This message was sent securely using Zix®

E-communication from Lincoln Financial Group

# Important Information for Claim #1230070518

Please review the attached letter and/or document(s) regarding the Claim #1230070518 for David Fields. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Jeff Booth**
**Specialist, Appeals Claims**
LN10-Lincoln National Life Insurance Co
8801 Indian Hills
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 800-423-2765 ex 2665
Fax: 402-361-1460
Email: Jeff.Booth@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

You're In Charge

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. This email and its attachments may collect your personal information to improve Lincoln products or to provide you with services related to its products. For more information, please see our privacy policy. Thank You.**

This message was secured by **Zix®**.

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Thursday, April 25, 2024 4:01 PM |
| **To:** | entrprserip |
| **Subject:** | FW: D FIELDS 1230070518 CLARIFICATION REPORT |
| **Attachments:** | D FIELDS 1230070518 CLARIFICATION REPORT.pdf |

---

**From:** Bygott, Carrie <Carrie.Bygott@lfg.com>
**Sent:** Thursday, April 25, 2024 3:00:38 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** D FIELDS 1230070518 CLARIFICATION REPORT

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - CLARIFICATION REPORT


Carrie Bygott
File Support Coordinator
Group Protection Claims
Lincoln Financial Group

800-423-2765 Office
484-583-9082 Direct

LincolnFinancial.com

Follow us on:



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Wednesday, April 24, 2024 8:56 AM |
| **To:** | entrprserip |
| **Subject:** | FW: D FIELDS 1230070518  FINAL REPORT |
| **Attachments:** | D FIELDS 1230070518  FINAL REPORT.pdf |

---

**From:** Bygott, Carrie <Carrie.Bygott@lfg.com>
**Sent:** Wednesday, April 24, 2024 7:55:28 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Cc:** Booth, Jeff <Jeff.Booth@lfg.com>
**Subject:** D FIELDS 1230070518 FINAL REPORT

Please index as:

Business Area: GPRISKCLMS

Source Type as MEDRECSG

Source Identifier as MEDR - PEER REPORT


Carrie Bygott
File Support Coordinator
Group Protection Claims
Lincoln Financial Group

800-423-2765 Office
484-583-9082 Direct

LincolnFinancial.com

Follow us on:



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

## ClaimsHOAdmin

| | |
|---|---|
| **From:** | LFGAppeals |
| **Sent:** | Monday, April 8, 2024 12:29 PM |
| **To:** | entrprserip |
| **Subject:** | FW: Follow up on Appeal-- FW: David Fields' life insurance |

**From:** Olson, Heather L <Heather.Olson@lfg.com>
**Sent:** Monday, April 8, 2024 11:28:24 AM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** Follow up on Appeal-- FW: David Fields' life insurance

Good morning,

I have the claimants reaching out to me reaching the appeal for LW. I do not see in the claim who it is assigned too? Can you please assist me? Thanks Heather

**From:** Melinda Fields <melindafields1@gmail.com>
**Sent:** Monday, April 8, 2024 5:03 AM
**To:** Olson, Heather L <Heather.Olson@lfg.com>
**Subject:** David Fields' life insurance

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good morning Heather. I was just wondering when we should expect to hear about David's appeal for his life insurance. I sent in the appeal more than a month ago. I appreciate your help with this.

## ClaimsHOAdmin

**From:** LFGAppeals
**Sent:** Friday, March 8, 2024 4:48 PM
**To:** entrprserip
**Subject:** FW: (secure/additional information)
**Attachments:** appeal DF.pdf

---

**From:** Olson, Heather L <Heather.Olson@lfg.com>
**Sent:** Friday, March 8, 2024 3:47:29 PM (UTC-06:00) Central Time (US & Canada)
**To:** LFGAppeals <LFGAppeals@lfg.com>
**Subject:** (secure/additional information)

Please start an appeal for Life waiver.

Thanks

Heather Olson
Senior Claims Examiner, Life Waiver
Group Protection – Claim Solutions

Lincoln Financial Group
8801 Indian Hills Drive
Omaha, Nebraska 68114
Phone: 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 ext. 7127
Fax: 800-462-4660

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. For more information, please see our privacy policy. Thank You.**